In The
# United States District Court
# Northern District of Florida

| | | |
|---|---|---|
| WALT DISNEY RESORTS & PARKS, | ) | Number: 4:23-cv-00163-MW-MAF |
| PLAINTIFF, | ) | |
| V. | ) | |
| RONALD DESANTIS, ET AL, | ) | |
| DEFENDANTS. | ) | |

## VERIFIED MOTION TO INTERVENE
## and
## Ex Parte Motion for Temporary Restraining Order

NOW COMES, Scott Huminski ("Huminski"), and, under oath, swears, states, deposes and moves to intervene pursuant to F.R.C.P. 24 and for an ex parte restraining order as follows:

### Introduction

- Both Huminski and the Plaintiff suffer(ed) extreme governmental retaliation for the content of core protected political First Amendment speech critical of government. See Generally Complaint.

- Huminski was prohibited from any and all communication with the entire State of Florida government, for life, in a court gag order retaliating for his core protected political expression in *State of Florida v. Huminski*, 17-MM-815, to wit;



- In 2021 and 2022 DeSantis aided by Ashley Moody, Esq. obsessively fought to preserve, maintain and continue to enforce the above gag order in violation of Huminski's First Amendment rights in 2 State Court matters in the Florida 11th Judicial

Circuit and the Third District Court of Appeal.

1.  A central gravamen of the Complaint below is that Ronald DeSantis ("DeSantis") engages in a systemic procedure, policy, custom or practice of silencing First Amendment speech via the use of notorious discriminatory tactics targeting speech of those of a specific viewpoint such as the Plaintiff and Huminski, both staunch critics of policies of the Florida Governor and police state. In the case at Bar, one of those viewpoints is that residents/citizens of Florida have the right to freedom of speech absent the fear of governmental retaliation or viewpoint discrimination based upon a criteria such as the content of speech or, more succinctly, speech with content that discusses topics that the government is uncomfortable with, such as, what Plaintiff below and Huminski consider unconstitutional and oppressive conduct of Ronald Desantis and other government actors. The targeted speech of Disney and Huminski is core protected political expression contradictory to the positions of Mr. DeSantis and Huminski has had a long history of journalism related to what he perceives as police state tactics and oppression.

2.  In retaliation for Huminski's anti-Police-State First Amendment core protected political expression, Ronald DeSantis engaged in the following retaliatory conduct:

    •   In 2021 and 2022 Ronald DeSantis engaged in a course of conduct in the Florida State courts that sought to silence any and all communication by Huminski with the entire State of Florida government for life that was preceded by the following patently illegal/unconstitutional deeds which DeSantis sought to make permanent along with the perpetual speech prohibition foisted upon Huminski,

    •   At Huminski's conviction in *State of Florida v. Huminski*, the State of Florida insisted upon an **order barring Huminski from any contact/communication with the State of Florida for life**. A true and correct copy of the final judgment/conviction order memorializing the perpetual speech prohibition is attached hereto as Exhibit "A". Although Huminski's final judgment was characterized as a criminal conviction, the case was *sui generis* common law contempt arising in *Huminski v. Gilbert*, 17-ca-421 and the record in the case does not have one mention of a statutory misdemeanor nor felony in the 2407 page record. See entire case record at,

https://edca.2dca.org/DcaDocs/2019/1914/2019-1914_Brief_530010_RC09.pdf

The true and correct speech prohibition (the "Gag Order") excerpted below from the final judgment in *State v. Huminski*, 17-mm-815, championed by DeSantis in 2021 and 2022 specified no communication by a resident of the State, Huminski, with/to the entire State of Florida government – FOR LIFE. A bit over-broad considering the "parties" (The State of Florida).

Clerk to Update Case w/ Defendants Information Listed _____    COS Fees Due & Owing in the amount $ _____
Defense Motion for Mistrial - Denied ' Motion to Dismiss - Denied ' Any Future Filings Are
To Be Under The Signature of A Licensed Attorney' No Communication with The Parties
In The Civil or Criminal Case
Pre-sentence Investigation/Sentencing _____    Full/Partial

If probation has not been imposed, you must return prior financial obligations within the time ... ...

"Defense motion for mistrial - denied; Motion to Dismiss - denied; Any future filings are to be under the signature of a licensed attorney; **No communication with the parties in the civil or criminal cases**" (emphasis added)

3. In 2021 and 2022 State court litigation in the 11th Judicial Circuit and the 3rd District Court of Appeal, Defendant DeSantis conspired with Florida Attorney General Ashley Moody to make the lifetime speech prohibition set forth in the prior paragraph permanent. This conduct appears to violate 18 U.S.C.§§ 241, 242, criminal statutes that can not be prosecuted by Huminski nor Plaintiff, nevertheless, indicators of how far the government is willing to go to silence speech. Title 18 is enforced by the Department of Justice.

4. The Gag Order prior restraint prohibits the service of this paper upon attorneys employed by the State of Florida and the Florida Attorney General's office constituting Obstruction of Justice and other related federal crimes which is truly and factually set forth at, https://cdn.muckrock.com/outbound_composer_attachments/s_huminski%40live.com/121109/desantis_obstruction_complaint.pdf (clickable supportive links included) and attached hereto as Exhibit "B". Crimes can not be prosecuted in this matter, however, the Court may invoke its contempt powers to address the Gag Order's implicit and obvious threat against service in this matter. Huminski uses muckrock.com in support of his reportorial activities. Muckrock assists journalists in FOIA requests.

5. Since the entry of the Gag Order in 2018, it has obstructed service upon the State of Florida and Florida's employees, agents, representatives and attorneys in multiple State

and Federal court matters in violation of the First Amendment and in violation of Federal and State criminal laws related to obstruction of justice which can not be prosecuted in this context. See generally Exhibit "B".

6.  The plain language of the gag order prohibits the service upon all State of Florida entities with this paper including the Governor who obsessively protected the gag order in State Court litigation in 2021 and 2022 with the aid of Attorney General Ashley Moody.

7.  Huminski did not only suffer the same First Amendment viewpoint based discrimination as the Plaintiff – he was incarcerated for his speech "crime". Defendant DeSantis fought vigorously to maintain the Gag Order in 2021 and 2022 in State courts.

8.  The Gag Order included in the final judgment conviction in *State v. Huminski*, in the best light, was a *sui generis* common law case – contempt, whereby, only the allegedly offended Court has the ability to hear and conduct a trial (i.e. only the 20th Circuit Court had subject matter jurisdiction to hear contempt in *Huminski v. Town of Gilbert, Et al.*, 17-CA-421, not a County Court criminal case captioned as *State v. Huminki*). See *Huminski v. State*, 2d19-1247 (FL 2 DCA 2019) (hearing contempt private to the allegedly offended Court). See Generally, *South Dade Farms v. Peters*, 88 So. 2d 891 (Fla. 1956) (Approvingly quoting " … without referring the issues of fact or law [concerning contempt] to another tribunal or to a jury in the same tribunal.…", *Bessette v. W.B. Conkey Co.*, 194 U.S. 324 337, 24 S. Ct. 665, 48 L.Ed. [997] 1005.). If a court enters an order prior to the filing of proper pleadings, the court lacks jurisdiction (i.e. the charging document in *State v. Huminski*, did not list the State as a Plaintiff nor was it signed by a State prosecutorial authority nor did it specify a criminal statute). *Lovett v. Lovett*, 93 Fla. 611, 112 So. 768, 775-76 (1927). Despite the lack of personal jurisdiction (no service in *State v. Huminski*) and no subject matter jurisdiction, Defendant DeSantis chose to conspire with Ashley Moody, Esq. to assure that Huminski was prejudiced with the *void ab initio* perpetual speech prohibition and criminal conviction for life in contravention of the United States Constitution.

9.  Huminski's long-time labeling of Florida as a Police State is not far from reality when criminal prosecutions commence absent the participation of the State, without service and proceed to judgment in the absence of any and all jurisdiction and banish all communication with the entire State of Florida government for life. What notoriously corrupt entity filed the commencement document in State v. Huminski remains a mystery although the forgery of the County Court charging document was accomplished by

Assistant State's Attorney Anthony Kunasek (suicide 2022 related to these issues) and the paper contains no signature of an attorney representing the State of Florida, yet, a criminal conviction stands to this day *per se* prejudicing Huminski. Ronald DeSantis has done his very best to engage in conduct in other fora to cover-up the patently illegal and unconstitutional conduct foisted upon Huminski set forth in material herein and this conduct proximately caused the suicide of State prosecutor Anthony Kunasek, Esq. who forged, but did not sign, the charging document in *State v. Huminski*.    The suicide occurred 30 days after the issue was brought to the attention of the federal courts in *Equality Florida v. DeSantis* (USDC, Northern District of Florida).  Nothing seems to shock the consciousness in a police state pursuing an agenda of silencing dissent.

10. Defendant DeSantis has directed his attorney general to obsessively oppose any attempt by Huminski regarding a collateral attack upon *State v. Huminski* or any attempt to vindicate his rights related to *State v. Huminski* in bad faith and with unclean hands on the part of the State of Florida concerning their securing of a lifetime speech prohibition and criminal conviction absent their authoring of a commencement document and absent service in *State v. Huminski* and absent a criminal statute and with the perpetual governmental speech banishment(s) on the record in that matter.

11. Ronald DeSantis, did direct his Attorney General to use any and all methods to continue the First Amendment prohibitions foisted upon Huminski in *State v. Huminski* on or about September 1, 2021 and also directed his Attorney general to assure Huminski's lifetime speech prohibition and criminal misdemeanor conviction for *sui generis* common law contempt stands and prejudices him for life despite the absence of a criminal statute that Huminski allegedly violated mentioned anywhere in the entire court record in the case.

12. F.S. 900.04  does not define a violation of the criminal codes of Florida and it does not define a statutory misdemeanor nor felony.  See a true and correct docket excerpt describing Huminski's "criminal misdemeanor" conviction intending to silence speech in perpetuity with the Gag Order that is featured in the final judgment order,

5

| Uniform Case Number | Case Type | Status | Date Filed | Judge | Appear By |
|---|---|---|---|---|---|
| 362017MM000815000ACH | Misdemeanor | Reopened Case Closed | 06/30/2017 | Josephine M Gagliardi | |

| Parties | | | | |
|---|---|---|---|---|
| Name | DOB | Connection | Attorney | Atty Phone |
| State of Florida | | Plaintiff | | |
| Scott Huminski | 12/01/1958 | Defendant | | |

| Charge Details | | | | |
|---|---|---|---|---|

| Offense Date | Charge | Plea | Arrest | Disposition |
|---|---|---|---|---|
| 05/05/2017 | 1. CONTEMPT OF COURT CIRCUIT OR COUNTY Statute: 900.04 No Charge - No Level | 03/16/2018 Pled Not Guilty | | 03/16/2018 Non Jury Trial - Adjudicated Guilty |

"No Charge – No Level" above is not consistent with the violation of a criminal statute suggesting that the *State v. Huminski* and the Gag Order therein was a sham and fraud.

13. No procedure, statute, law or authority exists that converts alleged *sui generis* common law contempt arising in *Huminski v. Gilbert*, 17-CA-421, 20th Circuit Court, into a County Court case entitled S*tate v. Huminski*, 17-MM-815, that DeSantis fought to maintain and protect in 2021 and 2022. See true and corrct excerpt from the Florida Attorney General's brief in *Huminski v. State*, 2D19-1914, 2/21/2020 authored by Ashley Moody, Esq./Chelsea Simms, Esq. also below,

> Issue 4: Appellee concedes that imposition of the cost of prosecution was improper because contempt is a common law crime and the statutes governing contempt do not explicitly allow for the cost of prosecution to be imposed.

The term "crime" is misleading because all Florida authority and United States case law define contempt as *sui generis,* neither a statutory misdemeanor nor felony.

17 mm 815

**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA**                         **CIVIL ACTION**

| | |
|---|---|
| Huminski, Scott<br>  Plaintiff<br>vs<br>Town of Gilbert AZ et al<br>  Defendant | **Case No: 17-CA-000421**<br>Date: **June 29, 2017**<br>Judge: **Elizabeth V Krier**<br>Deputy Clerk: **Brenda Horton**<br>Court Reporter: |

## MINUTES

| | | |
|---|---|---|
| Attorney for Plaintiff: | **Kevin Sarlo** | ☑ Present ☐ Not Present |
| Attorney for Defendant: | **Anthony Kunasck** | ☑ Present ☐ Not Present |

**Hearing Information:**

### SHOW CAUSE / ARRAIGNMENT PROCEEDING:

-Plea of Not Guilty Entered

-CMC scheduled on 8/15/17 at 1:00 for 10 minutes

-CMC is set to review how the State is proceeding with the case and at that
  Point we can schedule future hearings. Also to be discussed transfer case
  From civil to criminal

-Pretrial release without bond / Conditions: Mr. Huminski is to check in with
  Pretrial officer every 2 weeks, along with the condition to not violate anymore
  Orders. Only Mr. Huminski's PD or licensed attorney may contact the courts.
  He must not contact the courts or Sheriff's Department by email

Whoever hand-wrote "17-MM-815" on this order and on a forged show cause order filed on 6/30/2017,

**CIVIL CASE CAPTION**

**SCOTT HUMINSKI,**
    **Plaintiff**                    Civil Case No.: **17CA421**

**v.**
**TOWN OF Gilbert, AZ, et al**

                               Criminal Case No. 17-MM-000815

and filed it engaged in felony forgery/official misconduct by modifying a Circuit Court order of 6/5/2017 and filing the modified order in a completely different court. Guilty or "not guilty" pleas are not entered in *sui generis* common law cases, nor is pre-trial supervision, nor is an arraignment. Arraignments apply only in statutory felony or misdemeanor cases. Upon information and belief, identifying the handwriting "17 mm 815" and in the 2 above true and record correct excerpts is a minor and routine law enforcement inquiry and such an inquiry will lead to the persons involved in the forgery along with the late prosecutor Mr.

7

Kunasek. DeSantis was intimately familiar with the above court order forgeries set forth in State Court cases in 2021 and 2022 whereby he was a defendant.

14. The caption in the prior paragraph minute excerpt is absolutely true and correct and lawful, *Huminski v. Gilbert*, 17-CV-421. The State of Florida was never a proper party and no court paper exists commencing *State v. Huminski* that suggests otherwise. Three days prior to the so-called arraignment, *Huminski v. Gilbert* was removed to United States Bankruptcy Court (*Huminski v Gilbert*, 2:17-ap-00509-FMD, 6/26/2017) including the contempt allegations therein – not even federal removal can stop the charging rhinoceros of the Florida police state. The Notice of Removal was filed in both the State and U.S. Bankruptcy Court 3 days prior to the so-called "arraignment" and the judge was verbally notified at the hearing and the U.S. Bankruptcy Judge Caryl Delano confirmed her jurisdiction at a later hearing in her Court. The presiding Judge at the "arraignment" outright refused to recognize the jurisdiction of the federal courts over the removed matter. Anything goes when silencing dissent in Florida and federal law including the Supremacy Clause appears to be a nuisance that is meaningless in State courts when the government is seeking to silence dissent and an un-favored speaker.

15. The State filed no paper placing itself in the position of plaintiff in any case involving Huminski. The initiation of *State v. Huminski* was fraudulent, corrupt, absent a criminal statute and absent a State's charging document listing the State as a Plaintiff and this scenario was advanced and supported by DeSantis and Ashley Moody in 2021 and 2022 to further obstruction of service in multiple State and Federal court matters including the instant matter.

16. Mr. DeSantis did engage in conduct in 2021 and 2022 attempting to legitimize and cover-up the aforementioned crimes and prosecutorial misconduct and to breathe life into a hopelessly *void ab initio* criminal judgment that silenced core protected political expression – for life – and failed to remove the State's Attorney engaging in the content herein. Mr. DeSantis also failed to remove the supervising Chief Assistant State's Attorney in charge of *State v. Huminski*, Amira Fox, Esq.. Amira Fox is now the 20th Circuit State's Attorney and can be prosecuted for felony official misconduct to this day for her involvement, guidance and supervision in *State v. Huminski*, a continuing criminal offense and an offense that can be prosecuted for up to 2 years after Ms. Fox leaves

8

employment with the State.

17. The motivations of Ronald DeSantis related to Huminski's set of facts boils down to the silencing of dissent and core protected political expression that is protected at an elevated level and to provide a favor to a crony, State's Attorney Amira Fox. The perpetual speech prohibitions foisted upon Huminski are absolute as far as speech directed to the government of the State of Florida as ordered by the County Court in *State v. Huminski* at judgment/conviction and embraced by DeSantis. The speech prohibitions foisted upon the Plaintiff are similar without the formal issuance of a final injunctive court gag order as in Huminski's scenario.

18. Mr. DeSantis chose to retaliate against a State prosecutor Andrew Warren for engaging in core protected political expression while at the same time he was endeavoring to protect prosecutors involved in forgery of court orders and First Amendment deprivations in *State v. Huminski* and cover-up the crimes and torts of these rogue prosecutors instead of removing them from office. Mr. Warren is known as a progressive prosecutor while the prosecutor's involved in the forgery of a County Court order, used to initiate *State v. Huminski,* are politically affiliated with Mr. DeSantis. Upon information and belief, Mr. DeSantis conducts himself based solely upon political affiliations concerning whether he removes a prosecutor or covers-up the crimes and civil right violations of a political ally/prosecutor.

19. Mr. DeSantis is a graduate of Yale and Harvard law and knows that *State v. Huminski* was initiated with a forged commencement document which was central to the 2021 and 2022 State court matters mentioned above whereby he was a defendant. The nature of the forgery was sworn to in the two State Court matters and is sworn to in this paper. Yet, Mr. DeSantis has taken no adverse action against the far right Republican prosecutors involved, to the contrary, he has endeavored to support the misconduct in State Court actions and cover-up the official crime of State prosecutors – as opposed to removing the prosecutors for on-the-job felonies.

20. Mr. DeSantis accepts advice, counsel and recommendations from his crony State Attorney Amira Fox who engaged in the forgery of the "charging document" in *State v. Huminski*, https://www.flgov.com/wp-content/uploads/orders/2019/EO_19-69.pdf and

Ms. Fox opined in favor of removal of Mr. Warren from office, https://www.winknews.com/2022/08/04/desantis-suspends-state-attorney-andrew-warren-says-hes-not-enforcing-law/ and Ms. Fox is otherwise connected to/or supportive of Mr. DeSantis, https://www.fortmyersbeachtalk.com/2021/06/16/desantis-sending-police-to-mexican-border/ , https://www.naplesnews.com/story/news/crime/2020/07/01/state-attorney-requests-complaint-against-candidate-reassigned/5355223002/ , https://criminaldefenseattorneytampa.com/track-your-case/state-attorneys-offices-in-florida/ , https://www.democraticunderground.com/10142957259 . As far as the forgery of a Court order supervised by Amira Fox, Mr. DeSantis has been reciprocally supportive of Amira Fox in the 2 aforementioned State Court proceedings and instead of removing her for her crimes against the justice system, he and his attorney took no action concerning Amira Fox's crimes and misconduct and supported the Gag Order. The crimes targeting the Federal and State courts embodied in the Gag Order continue with the full knowledge of Governor DeSantis.

21. Mr. DeSantis assigned a perjury case against his 2019 appointed sheriff of Broward County, Gregory Tony, to his trusted ally Amira Fox who then assigned it to Anthony Kunasek. Mr. Kunasek is the actual person who engaged in the forgery in *State v. Huminski* under the guidance and supervision of Ms. Fox which eventually led to Mr. Kunasek committing suicide in spring of 2022. These 3 individuals (DeSantis, Fox, Kunasek) seem to work well in concert and cooperation with each other when an appointee of Mr. DeSantis is investigated for perjury. Of Course, the Governor's appointee was let off the hook. It seems only right for the Governor to re-pay the favor and not remove Amira Fox from office concerning the felony forgery/official misconduct in *State v. Huminski*. Political favors need to be repaid. https://www.floridabulldog.org/2022/04/state-attorneys-perjury-report-broward-sheriff-tony-omitted-key-facts/ , https://www.miamiherald.com/news/local/crime/article257905813.html , https://www.local10.com/news/local/2022/09/14/florida-ethics-commission-finds-probable-cause-that-broward-sheriff-tony-lied-misused-position/ , https://www.nbcmiami.com/news/local/ethics-commission-finds-broward-sheriff-gregory-tony-gave-false-info-misused-position/2858217/ , https://www.sun-sentinel.com/opinion/commentary/fl-op-col-bousquet-sheriff-tony-outrage-700-words-20220916-zn6ibkqbhrdhbalvcucxclpgom-story.html ,

10

https://www.pressreader.com/usa/south-florida-sun-sentinel-palm-beach-sunday/
20220918/281762748111519 .

22. A ***quid pro quo*** existed concerning the DeSantis appointed Broward Sheriff's perjury
outcome from Amira Fox/Mr. Kunasek and the forgery/official misconduct in *State v.*
*Huminski* and Mr. DeSantis' non-removal of Amira Fox for on-the-job felonies.  Amira
Fox and Mr. Kunasek saved a DeSantis appointee from criminal prosecution and, in
return, Mr. DeSantis has not removed Amira Fox from office for her felonies targeting
the justice system.  Good old-fashioned corruption by team DeSantis – Fox – Kunasek.

23. Mr. DeSantis hand-selected Sheriff Tony and he hand-selected Amira Fox to cover-up
the crimes/improprieties of his appointee.  In 2021 and 2022,  Mr. DeSantis paid back
Ms. Fox for the favor and did not remove her from office for felony misconduct despite
his knowledge of the crimes set forth in sworn court papers.  Upon information and
belief, the guilt of Sheriff Tony was obvious, as obvious as the felony forgery and felony
official misconduct of Amira Fox similarly protected by Mr. DeSantis to pay back a
favor.  Sheriff Tony also failed to disclose his homicide arrest in the Philadelphia area.

24. Upon information and belief, in 2019, the newly elected and narrowly elected new
Governor of Florida could not have an early and major appointee, the Broward County
Sheriff, being prosecuted for felony perjury and the "fix" was in by the freshman
Governor … a favor he repaid to Amira Fox with not removing her from office for
forgery of a County Court order in *State v. Huminski* and felony official misconduct and
for requesting the perpetual prior restraint gag order issued upon Huminski at the request
of Amira Fox.

25. DeSantis has intimate knowledge of the forgeries involved in the initiation of *State v.*
*Huminski* located at pages 401-422 in the record from the 11th Judicial Circuit whereby
he was a defendant truly and correctly memorialized at,
https://edca.3dca.flcourts.org/DcaDocs/2021/1920/2021-
1920_Brief_251952_RC09202D20Record20on20Appeal.pdf

26. DeSantis has intimate knowledge of the full record in *State v. Huminski* including the
forgeries and prior restraint gag orders located at Docket Entries 41-48 in the 11th Judicial
Circuit, Huminski v. DeSantis, et al (primary defendant State of Florida), whereby
DeSantis was a defendant.

11

## **Memorandum of Law**

Intervention in circuit court proceedings should be "liberally allowed." Nat'l Wildlife Fed'n, Inc. v. Glisson, 531 So. 2d 996, 998 (Fla. 1st DCA 1988) (citing Miracle House Corp. v. Haige, 96 So. 2d 417, 418 (Fla. 1957)). Florida Rule of Civil Procedure 1.230 provides that "[a]nyone claiming an interest in pending litigation may at any time be permitted to assert a right by intervention.".

No party will be prejudiced by intervention in this proceeding. Nor will the proceeding be delayed. Indeed, this proceeding has only just begun—Plaintiff's complaint was filed a week ago. The existing respondents have not filed responsive pleadings. The motion to intervene is timely and should be granted without restriction. Cf. Nat'l Wildlife Fed'n, 531 So. 2d at 998 (permitting intervention when "[d]iscovery was still underway and the pleadings had not yet closed").

### Huminski has a Substantial Legal Interest in this Litigation

For an applicant's interest in the subject matter of the litigation to be cognizable under Federal Rule 24(a)(2), it must be "direct, substantial and legally protectable." *U.S. Army Corps of Eng'rs*, 302 F.3d at 1249; *see also Chiles v. Thornberg*, 865 F.2d at 1212-13 (noting that the focus of a Rule 24 inquiry is "whether the intervenor has a legally protectable interest in the litigation."). The inquiry on this issue "is 'a flexible one, which focuses on the particular facts and circumstances surrounding each [motion for intervention].'" *Chiles*, 865 F.2d at 1214 (quoting United States *v. Perry Cnty. Bd. of Educ.*, 567 F.2d 277, 279 (5th Cir. 1978)).

Huminski has a legally protectable interest in this litigation as a party impacted as greatly, or more so, by the State of Florida's retaliatory zeal to silence speech based upon discriminatory or viewpoint based criteria inconsistent with views of the current administration. Huminski's speech, critical of government, is core protected political expression – dissent, afforded the highest level of First Amendment protection.

The Court orders issued in *State v. Huminski* have the same chilling effect upon Huminski's speech that the speech prohibitions foisted upon the Plaintiff have – retaliation and silencing of speech that the government disagrees with or finds distasteful and not consistent with views of DeSantis. Huminski's speech prohibition will linger in perpetuity. Plaintiff's success in this matter, or lack thereof, will create *stare decisis* that will impact Huminski's

redress concerning his similar retaliatory constitutional deprivations which includes the threat of incarceration for contempt if he merely communicates with any State of Florida government entity in perpetuity. More concisely, just service of this paper runs afoul of the Gag Order.

## The Disposition of the Instant Litigation May Impair Huminski's Ability to Protect his Interest

Huminski's ability to protect his substantial legal interest would be impaired absent intervention. Federal decisions interpreting and applying the provisions of the First Amendment, Due Process and Equal Protection are an important enforcement tool related to the Plaintiff and Huminski's claims concerning the discriminatory and retaliatory silencing of speech and content-related silencing of speakers, i.e. speech critical of government. Huminski's interests in this appeal align with the interests of Plaintiff.

The outcome of this case, including the potential for further appeals or writs by existing parties or proceedings below after a remand, implicates *stare decisis* concerns that warrant Huminski's intervention. *See Stone v. First Union Corp.*, 371 F. 3d 1305, 1309-10 (11th Cir. 2004) (recognizing that potential for a negative *stare decisis* effect "may supply that practical disadvantage which warrants intervention of right") (citing *Chiles*, 865 F.2d at 1214); *see also United States v. City of Los Angeles*, 288 F.3d 391, 400 (9th Cir. 2002) (holding that amicus curiae status may be insufficient to protect the rights of an applicant for intervention "because such status does not allow [the applicant] to raise issues or arguments formally and gives it no right of appeal"). While the existing parties to the litigation will not be prejudiced by Huminski's intervention, Huminski will be prejudiced if his request for intervention is denied.

## The Existing Parties Do Not Adequately Represent Huminski's Interests

Intervention is favored because of inadequate representation of the proposed intervenor's interest by existing parties to the litigation because the background facts present a slightly different approach to the same legal issue – out of control governmental censorship and retaliation for core protected political expression. This element is satisfied if the proposed intervenor "shows that representation of his interest 'may be' inadequate." *Chiles*, 865 F.2d at 1214 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972)). The burden on the proposed intervenor to show that existing parties cannot adequately represent its interest is "minimal." *Stone*, 371 F.3d 1311;*U.S. Army Corps of Eng'rs*, 302 F.3d at 1259 (citing *Trbovich*,404 U.S. at 538 n.10). Any doubt concerning the propriety of allowing

13

intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action. *Loyd v. Ala. Dep't of Corr.*, 176 F.3d 1336, 1341 (11th Cir. 1999); *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993). Certainly the Plaintiff does not face prosecution or incarceration that Huminski faces bolstering Huminski's request for relief and intervention because liberty interests are at stake and Huminski has already been incarcerated for his "speech crimes" in *State v. Huminski*.

Huminski's interest is in the enforcement of the First Amendment, Due Process and Equal Protection and to advance the public interest in eliminating speech discrimination and prohibitions in the context of a court order unlike the claims of the Plaintiff that do not involve the perpetual speech prohibition being set forth in a Court order that can lead to incarceration pursuant to common law contempt. Huminski's First Amendment chilling and deprivation is slightly more despotic and egregious as his prospective speech can result in contempt and incarceration in perpetuity if he dares communicate with the entire government of Florida or merely serve a court paper on a governmental entity. This matter creates a First Amendment Free Zone akin to *Huminski v. Corsones*, 396 F3d 53, 90 (2nd Cir 2005) concerning any and all communication with the government of Florida – incarceration. The mechanism used in *Corsones* was a Notice Against Trespass for State Court lands very similar to the service prohibition of the Gag Order. Manipulation and obstruction of the operation of the justice system is the common theme.

This case mirrors the "First-Amendment-free-zone" spoken of in *Corsones*. id. At 93,

> "*The Notices Against Trespass in effect prohibit indefinitely any and all expressive activity in which Huminski might want to engage in and around Rutland state courthouses. These notices are thus pervasive enough to be viewed as creating a "First-Amendment-Free Zone" for Huminski alone in and around the Rutland courts. The defendants' singling out of Huminski for exclusion, thereby permitting all others to engage in similar activity in and around the courts, suggests to us that the trespass notices are not reasonable. Such broad restrictions are generally frowned upon      ' even in nonpublic forums. Cf. Bd. of Airport Comm'rs v. Jews for Jesus, Inc., 482 U.S. 569, 575, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987) ("We think it obvious that ... a ban [on First Amendment activities at an airport] cannot be justified even if [the airport] were a nonpublic forum because no conceivable governmental interest would justify such an absolute prohibition of speech.").*"

Huminski, now faces a slightly different zone of speech exclusion – any and all speech directed to the entire government of the State of his residence or any State of Florida governmental entity therein.

14

The Eleventh Circuit has established a two-part test to guide the Court's discretion as to whether a party may intervene pursuant to Rule 24(b)(2): the applicant must show that "(1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common." *Chiles*, 865 F.2d at 1213 (citing *Sellers v. United States*, 709 F.2d 1469, 1471 (11th Cir. 1983)).

As discussed above, Huminski's application for intervention in this litigation is timely and Huminski's participation would neither unduly delay the proceedings nor prejudice the adjudication of the rights of the original parties. Huminski's participation will be more akin to an amicus participant. Additionally, Huminski's claims against the defendant share common questions of law with Plaintiff's claims, and rest upon common questions of law related to censorship and constitutional issues flowing from content-based censorship and retaliation causing a chilling effect. Plaintiff's claims differ slightly because Huminski suffers the threat of punishment for engaging in expression with contempt, a looming threat of prosecution and incarceration for contempt chills Huminski's speech and outlaws service of this paper upon State of Florida entities. Huminski's First Amendment peril and associated punishment is perpetual imposing a lifelong chilling effect upon speech/expression.

By avoiding multiple lawsuits/appeals and coordinating discovery, intervention will lend efficiency to further proceedings.

Huminski understands all too well why the United States has the highest incarceration rate in the world. Government officials are willing to engage in felonies to silence and attack targeted persons, create false crimes with felonies like forgery/official misconduct perpetrated by Amira Fox, Esq. and then the felonies are supported by high ranking executives such as Governor DeSantis related to his conduct in 2021-2022.

## EX PARTE TEMPORARY RESTRAINING ORDER

The federal Rules mandate service of this paper upon the various parties. The Gag Order undermines and obstructs the Rules governing conduct before this Court with regard to service and constitute criminal intervention/obstruction with the orderly operation and functioning of the federal (and State) Courts. The Gag Order is contempt concerning the Rules and procedures adopted by the Federal Courts. It also embodies a continuing offense, civil and criminal.

Very little else needs to be mentioned concerning the obstruction of these proceedings by State edicts/orders, however, the prior restraint Gag Order prior restraint is the epitome of governmental butchering of the First Amendment. Because the Gag Order obstructs and over-rules

the Federal Rules of Civil Procedure related to service of Court papers, it should be enjoined as a deliberate method to interfere and obstruct the Federal courts and it is *per se* contempt of this Court.

The U.S. Supreme Court ruled on a prior restraint issue in Near v.Minnesota, 283 U.S. 697 (1931). In that case the Court held prior restraints to be unconstitutional, except in extremely limited circumstances such as national security issues. The State of Florida has not specified what legitimate governmental interest supports the lifetime Gag Order preventing Huminski from serving this paper in this litigation to State of Florida entities/attorneys.

The perpetual Gag Order is not narrowly tailored to a legitimate governmental interest that would support obstruction of justice concerning service in this matter and the over-breadth of the Gag Order is stunning and would shock the consciousness of an ordinary person. It is the very incarnation of evil police state tactics intending to silence any and all core protected political expression and dissent. In historical context, one can think of many oppressive governments that have adopted such positions against speech critical of government.

Concerning the governmental regulation of speech, "the method and extent of such regulation must be reasonable, that is, it must be the least intrusive upon the freedom of expression as is reasonably necessary to achieve a legitimate purpose of the regulation." *United States* v. *O'Brien*, 391 U. S. 367, 377 (1968)). The issue here is what is the "legitimate purpose" of the State of Florida concerning the Gag Order and DeSantis' zeal to protect the Gag Order.

Restrictions on protected speech are allowed, provided the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Clark* v. *Community for Creative Non-Violence*, 468 U. S. 288, 293 (1984); see *Heffron* v. *International Society for Krishna Consciousness, Inc.*, 452 U. S. 640, 648 (1981) (quoting *Virginia Pharmacy Bd.* v. *Virginia Citizens Consumer Council, Inc.*, 425 U. S. 748, 771 (1976)). Huminski has no other "channel" to serve (i.e. communicate with) the various State of Florida entities party to this case and the Gag Order has zero tailoring to a "significant governmental interest". The gag order is the raw abuse of police state powers intending to chill dissent.

Huminski adopts the authorities cited in Plaintiff's Complaint counts Four and Five with the same force and effect as if more fully set forth herein. A true and correct Gag Order excerpt,

## CONCLUSION/RELIEF REQUESTED

For the foregoing reasons, the Court should grant the Motion to Intervene (i) as a matter of

right pursuant to Rule 24(a)(2), or, in the alternative, (ii) permissively pursuant to Rule 24 (b) and issue a Temporary Restraining Order that would allow service of this paper absent the threat of prosecution and potential incarceration for contempt of the Gag Order prior restraint targeting service in this matter.

The various State of Florida entities-parties to this matter currently have a duty to report violations of the Gag Order to law enforcement, particularly State's Attorney Amira Fox, the architect of the Gag Order and forgeries used to initiate *State v. Huminski*.

This Court should consider invoking it's contempt powers to preserve the integrity of court matters and to discourage obstruction of justice related to the Gag Order prior restraint prohibiting service on some of the parties to this matter.

Dated at Flagler County, Florida this 1st day of May, 2023.

_____
Scott Huminski, pro se
P.O. Box 353820
Palm Coast, FL  32135
(239) 300-6656
S_Huminski@live.com

SWORN AND SUBSCRIBED to before me this 1st Day of May, 2023 in Flagler County, Florida.



ELENA VUSCAN
Notary Public - State of Florida
Commission # GG 956220
My Comm. Expires Feb 6, 2024
Bonded through National Notary Assn.

5. 1. 2023

_____                _____
Notary                                                                          Exp.

<u>Certificate of Service</u>

Copies of this document and any attachment(s) was served upon the parties via the U.S. Mails and/or email and/or the e-filing system in this case.  Service upon parties prohibited by Gag Order **have not been served** because of the looming threats of prosecution and incarceration embodied in the Gag Order.

Dated this 1st day of May, 2023

_____
Scott Huminski

# EXHIBIT "A"

ORDER / COMMITMENT FORM                                    COUNTY COURT, LEE COUNTY, FLORIDA

**17-MM-000815**    State of Florida vs Huminski, Scott A

_____ Previously FTA for assigned Judge _____
_____ Felony Reduction _____ Juvenile

**1 CONTEMPT OF COURT CIRCUIT OR COUNTY No Charge - No Level §900.04**

| Citation | Issuing Agency OTH | | Court Date 03/16/2018 | Court Clerk |
|---|---|---|---|---|

Eench

Attorney:    AT Huminski, Scott A

| APPEARANCE | PLEA | ADJUDICATION | VERDICT | DISPOSITION |
|---|---|---|---|---|
| _____ Failed to Appear | _____ Guilty | _____ Withheld by Judge | ✓ Guilty by Judge | _____ Acquitted |
| ✓ Present w/o Attorney | ✓ Not Guilty | ✓ Adjudicated Guilty | _____ Not Guilty by Judge | _____ Nolle Pros |
| _____ Present w/ Attorney | _____ Nolo Contender | _____ Withheld by Clerk | _____ Guilty by Jury | _____ No Information |
| _____ Present by Attorney | _____ Lesser Offense | | _____ Not Guilty by Jury | _____ Dismissed |
| _____ Present w/ Interpreter | | | _____ Mistrial | _____ Adm.Dismissed |
| _____ Interpreter Services Requested | Degree _____ | | | _____ Merge & Dismiss |
| Language _____ | Statute _____ | | | |
| _____ Victim/Other _____ | | | | |

**SENTENCE**

✓ Probation (Reporting) ____6____ DD/MM/YY
_____ Consecutive/Concurrent with _____
_____ One Time Cost $_____ Waive COS $_____
✓ Report to Probation Today or Upon Release Within _____
_____ Probation may terminate early when conditions are met
_____ May Transfer Probation to _____
_____ May Report to Probation and/or Instruct by Mail
_____ Ignition Interlock Device _____ DD/MM/YY
_____ Impound Vehicle for _____ days as a condition of
   probation unless statutory conditions are met
_____ Statutory Exception to Vehicle Impound
   _____ Does Not Own Vehicle _____ Shared Vehicle
   _____ Other_____
_____ Random _____ Alcohol _____ Drug Screenings & Urinalysis
   at own expense - No positive/diluted samples
_____ No Possession or Consumption of Alcohol or Illicit Substances
_____ DUI School - Follow recommendations/Phase _____ I _____ II
   _____ School to Determine which Phase
   _____ Sign up w/in _____ days
_____ Traffic School  4 Hr / 8Hr / 12 Hr
_____ Attend and Complete Lee Memorial High Risk
   Driver's Course or _____ Victim Impact Panel
_____ Psychiatric Evaluation _____ Evaluate for
   Alcohol/Substance Abuse/Anger Mgmt and follow
   recommendations of...
_____ Sign up for Batterer's Intervention Program w/in 30 Days
_____ Attend & Complete _____ Anti-Theft _____ Mile Post Program
_____ Attend & Complete Program_____
_____ DNA Testing Collected _____ in Court _____ at LCJ
_____ Other Testing _____ HIV _____ STD _____
_____ Defendant Advised of Habitual and/or Felony Status

✓ Jail Time __45__ (DD/MM/YY
_____ Consecutive/Concurrent with _____
_____ Weekend Time Fri 6pm to Sun 6pm
_____ Beginning _____
_____ Day Work Program* _____ Days
   _____ Minimum ___ day(s) a week ___ consecutive weeks
_____ Credit Time Served _____ DD/MM/YY
_____ Credit Time Served Applied to ___ Straight Time
   _____ Weekends ___ Day Work Program
_____ Defendant Remanded ✓ Sentence Suspended -45 DAYS
_____ DL Suspended/Revoked _____ DD/MM/YY
_____ Spec. Conditions - Drive for Work/Business purposes
_____ Show Valid Driver's License within _____
_____ Produced Valid Driver's License in Court
_____ Community Service _____ Hours and/or Pay $_____
_____ Must complete _____ hours of community service
   before buyout
_____ Show Proof of Com. Service to Clerk w/in _____
_____ Stay Away from arrest location _____
_____ No Contact with victim _____
_____ State Orally Amends Charge in Open Court
_____ Formal Filing of Information is Waived
_____ Information Filed in Open Court
_____ Successfully Completed Pretrial Diversion Program
_____ Judicial Warning
_____ Defendant Accepted DV Diversion
_____ Defendant to be Released ROR on this Charge Only

**MANDATORY COURT APPEARANCE**

**CONTINUANCES**
Date Continued to _____

| For _____ | AR _____ | DS _____ | TR _____ | DA _____ | DD _____ | DT _____ | RH _____ |
|---|---|---|---|---|---|---|---|

Time _____ AM / PM    Court Room _____                    _____ Speedy Trial Waived    _____ Speedy Trial Tolled
(BZA) _____ HAS _____ MEG _____ ZMG _____ DSG _____ JMG _____ TPP _____ ABH _____
_____ Report to PTS/Screen for Public Defender

Defendant/Attorney _____ Date _____
Failure to comply with any part of this order shall result in a bench warrant being issued for your arrest and/or suspension of your driver's license privilege

**If you are a person with a disability who needs any accommodation in order to participate in
this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.
Please contact Brooke Dean, Operations Division Manager, whose office is located at Lee
County Justice Center, 1700 Monroe Street, Fort Myers, Florida 33901, and whose telephone
number is (239) 533-1771, at least 7 days before your scheduled court appearance, or
immediately upon receiving this notification if the time before the scheduled appearance is
less than 7 days; if you are hearing or voice impaired, call 711.**

Rev. 05/05/2016

ORDER / COMMITMENT FORM

COUNTY COURT, LEE COUNTY, FLORIDA

**17-MM-000815**   State of Florida vs Huminski, Scott A

_____ Previously FTA for assigned Judge _____
_____ Felony Reduction   _____ Juvenile

**1 CONTEMPT OF COURT CIRCUIT OR COUNTY  No Charge - No Level §900.04**

| Citation | Issuing Agency | | |
| --- | --- | --- | --- |
| | OTH | **Court Date** | **Court Clerk** |
| | | 03/16/2018 | |

**FINE ASSESSMENTS** (statutes indicated)

✓ Fine $ ___900___ (775.083)
✓ 5% Surcharge $ ___25___ (938.04)

**MANDATORY ASSESSMENTS**

✓ Court Costs (Include Crime Stoppers & Crime Prevention)
(318.18 / 775.083 / 938.01 / 938.03 / 938.05 / 938.06 / 939.185)
✓ $220.00 ___ Other $_____
If Ordered Under - Reason:
_____

_____ $33.00 Certain Traffic Offense Court Cost (318.17 / 318.18)
_____ $135.00 DUI Court Costs (938.07)
_____ $70.00 Reckless Driving Court Costs (318.18 / 316.192)
_____ $65.00 Racing Court Costs (318.18)
_____ $5.00 Leaving the Scene Court Costs (316.061)
_____ $195.00 BUI Court Costs (938.07 / 327.35)
_____ $201.00 Domestic Violence Trust Fund (938.08)
_____ $151.00 Rape Crisis Trust Fund (938.085)
_____ $151.00 Crimes Against Minors (938.10)
_____ $5000.00 Civil Penalty (796.07)
_____ $40.00 Contested By Nonprevailing Party Fee (34.045)

**DISCRETIONARY ASSESSMENTS**

_____ $100.00 FDLE Trust Fund/Statewide Crime Lab (938.25)
_____ Investigative Fee $_____ to
to ___ FDLE ___ FMP ___ LCSO ___ Statewide Pros.
___ Other _____ (938.27)
_____ Worthless Check Diversion Fee $_____ (832.08)
_____ Diversion Cost of Supervision $_____ (948.09)
Pay Within ___5___ DD/MM/YY
_____
_____ Upon release from In-Custody

**MOTION HEARINGS**

_____ Revoke Bond   _____ Reinstate Bond
_____ Set/Reduce/Increase Bond to _____
_____ Suppress ____ Dismiss ____ Continue
_____ Expunge/Seal (All outstanding monetary obligations must be paid to the Clerk's office before the case is officially expunged/sealed.)
_____ Withdraw Plea
_____ Withdraw as Counsel
_____ Modify No Contact Order _____ Lift No Contact Order
_____ Other _____
Motion Result (Circle One): Granted  Denied  Reserves Ruling

_____ State & Defense Stipulate to Suppress the Breath Test Results
_____ State Amends Information from BAL of .15 or Above to .08
_____ Clerk to Update Case w/ Defendants Information Listed

DEFENSE MOTION FOR MISTRIAL-DENIED ' MOTION TO DISMISS-DENIED ' ANY FUTURE FILINGS ARE TO BE w/ THE SIGNATURE OF A LICENSED ATTORNEY; N. COMMUNICATION w/TH THE PARTIES IN THE CIVIL RC. CRIMINAL CASE
Pre-Sentence Investigation/Sentencing _____ Full/Partial

**ATTORNEY FEES & SURCHARGES**

✓ $50.00 Cost of Prosecution (938.27)
_____ $50.00 Public Def Application Fee (27.52)
_____ Additional Application Fees $_____
(Must be addressed on the record)
_____ Defense Attorney Costs at Conviction (938.29)
_____ $50.00 ___ Other $_____

**RESTITUTION**

_____ Minimum Payment of $_____ per Month
to _____
___ As a Condition of Probation
_____ Restitution Ordered $_____ to _____
_____ Restitution Reduced to Judgment
_____ Court Orders Restitution - Reserves on Amount

**DISPOSITION OF MONETARY OBLIGATIONS**

✓ May Convert (Fine Cost) _____ All or In Part to Community Service at $10 per Hour
___ Defendant Advised of Notary Requirement for Community Service (For Non-Probationary Sentences)
_____ Credit Time Served for Fines/Costs/Fees _____
_____ Monetary Obligations Referred to Clerk of Court Collections
_____ Monetary Obligations Reduced to Judgment ___ Previous Only
_____ Monetary Obligations (VOP) ___ Carried Forward
_____ Defendant to sign up for Payment Plan
_____ First Payment Due within 30 Days
_____ Waive all Additional Mandatory Costs

**WARRANTS/BONDS**

_____ BW/D6 Ordered Balance $_____
_____ Issue Bench Warrant _____ MM/DD/YYYY
_____ Bond Estreature $_____
_____ Non-Compliance/Non-Appearance $_____
_____ Set Aside BW/D6 $_____
_____ Set Aside Estreature $_____
_____ Cash Bond to pay Fine/Cost including _____
_____ Return Cash Bond to Depositor
_____ Conflicting Appearance Date Addressed in Court

**REVOCATION HEARINGS**

_____ Defendant Pleas Guilty/Admits Allegations
_____ Defendant Pleas Not Guilty/Denies Allegations
_____ Adjudicated Guilty _____ Adjudication Withheld
_____ Probation Reinstated _____
_____ Probation Modified _____
_____ Same Terms and Conditions to Apply
_____ Probation Revoked & Terminated _____ Probation Terminated
_____ COS Fees Due & Owing in the amount $_____

If probation has not been imposed, you must pay your financial obligation within the time allowed by the Judge or sign up for the payment plan option offered by the Clerk of Court. If sentenced to Probation, you must adhere to standards as directed.
Failure to comply with any part of this order may result in a suspension of your driver license privilege and/or warrant being issued for your arrest (322.245).
Unpaid financial obligations still remaining 90 days after payment due date will be referred to the Clerk of Court to a collection agency and an additional fee of up to 40% of the outstanding balance owed will be added at that time (28.246).
Mandatory assessments are imposed and shall be included in the judgment without regard to whether the assessment was announced in open court.

Asst. State Attorney ___H. Honor /A. Kuminger___   Bar No. ___100787/ 26999___   Date _____

Judge James R Adams ___Adams___   Date _____

Rev 05/05/2017   20

# EXHIBIT "B"

11

**Criminal complaint:**

DeSantis, a <u>Yale and Harvard law graduate and Guantanamo "JAG"</u> may have engaged in Obstruction of Justice or accessory after-the-fact concerning a lifetime threat prohibiting the service of court documents to the entire State of Florida government.

The communication prohibition was set forth to DeSantis in State court litigation in 2021 and 2022 whereby DeSantis was a defendant,

- <u>Huminski v. DeSantis, Et al</u>., Florida 11th Circuit Court, 21-CA-18435 (lead defendant State of Florida)

- <u>Huminski v. DeSantis, Et al.</u>, Florida 3rd District Court of Appeal, 3d21-1920

The Complaint in 21-CA-18435 contains the following text from a Florida Supreme Court filing along with *per se* evidence of <u>prosecutorial forgery</u> (pages 22-35 in link) of a court order used to initiate a contempt case (*State v. Huminski*) ,

Certificate of Service

Copies of this document and any attachment(s) were **NOT** served upon the State of Florida because gag orders of Judge Adams in 17-mm-815 prohibit communication with the State of Florida under penalty of further incarceration and prosecution.

Dated this 8th day of June, 2020.

-/s/- Scott Huminski

_____

Scott Huminski

This excerpt is grounded upon the following excerpt from a court order in *State v. Huminski*, 17-MM-815, forbidding communication, including service of court papers upon Florida Attorney General Ashley Moody which is part of the record in the aforementioned 2021-2022 State Court cases against DeSantis,



This perpetual threat memorialized in the above <u>court order prohibiting any communication with the entire State of Florida</u> government (pages 63-64 in link) - FOR LIFE - is what DeSantis obsessively defended and sought to make permanent in 2021 and 2022.

DeSantis also defended the forgery by State's Attorney Amira Fox in his 2021-2022 defense filings that ultimately maintained the perpetual gag order protecting the entire State of Florida government from communication and service of court papers and perpetuated the fruits of the <u>prosecutorial forgery of a court order</u> enriching the State of Florida treasury.

During this time period, notable is <u>DeSantis' removal of State's Attorney Andrew Warren</u> for his positions on LGBTQ and abortion issues while the governor was concurrently supporting the forgery of a Court order by G.O.P. State's Attorney Amira Fox that she used to initiate contempt case *State v. Huminski* and ultimately secured a lifetime speech prohibition gag order intending to obstruct the service of process upon Florida government attorneys including herself and the Florida Attorney General.


The cases that were obstructed by DeSantis' support, defense and cover-up of the lifetime speech prohibition intending to foil service upon Florida Attorney General, Amira Fox and government attorneys are,

1. The aforementioned 2021-2022 cases, *Huminski v. DeSantis* (lead defendant - State of Florida)
2. *Andrew Warren v. DeSantis*, Florida Supreme Court, SC23-247
3. *Andrew Warren v. DeSantis*, U.S. 11th Circuit Court of Appeals, 23-10459, Atlanta, GA
4. *Equality Florida v. DeSantis*, U.S. District Court (Northern District of Florida), 4:22-cv-00134-AW-MJF
5. *Thomas Kennedy v. DeSantis*, U.S. Distict Court (Souther District of Florida), 1:22-cv-21827-KMW
6. *Andrew Warren v. DeSantis*, U.S. District Court (Northern District of Florida), 4:22-cv-00302-RH-MAF

As a proximate result of the above gag order prohibiting speech with the entire government of Florida supported wholeheartedly by DeSantis and Florida Attorney General Ashley Moody (DeSantis' attorney on the cases) in 2021-2022, service of court papers in the above listed 7 State and Federal court cases were obstructed in this conspiracy to violate rights and obstruct justice between DeSantis and his attorney general.  Serious official felonies under Federal and State law.  The impact upon the federal case in Georgia brings in an interstate element to the crimes.

Where was DeSantis' ivy-league law education in 2021-2022 concerning the crimes of forgery, Obstruction of Justice and the obvious and implicit threat of prosecution and incarceration for contempt of a court order if the perpetual speech prohibition is violated?

In a light most favorable to DeSantis, perhaps the above content does not set forth an accessory after-the-fact concerning felony Obstruction of Justice or forgery. The inquiry then becomes why did DeSantis remove a progressive prosecutor, Andrew Warren, for his positions on LGBTQ and abortion issues while, at the same time, appointing Amira Fox to positions after her forgery of a Court order and *per se* Obstruction of Justice related to Federal and State court matters that pleased the Governor?

A strong quid pro quo exists between DeSantis and his favorite GOP prosecutor, Amira Fox, who protected DeSantis' first major law enforcement appointee, Broward Sheriff Tony, from perjury charges. Much more than party affiliation is behind DeSantis' motivations related to the forgery of a court order by Amira Fox and the gag order that was a product of the forgery. A fruit of a very poisonous tree.

Amira Fox's assistant in charge of the forgery and gag order request committed suicide 30 days after this corruption was detailed in federal court in *Equality Florida v. DeSantis*. Amira Fox has admitted full responsibility for these official crimes in her own words here and here. Not coincidentally, Fox's deceased assistant who obeyed her order to forge court orders was also the prosecutor who let DeSantis' appointee, Broward Sheriff Tony, off the hook for obvious perjury.

24



USPS FIRST-CLASS MAIL ®

U.S. POSTAGE
$5.35
FCM
32137
Date of sale
05/01/23
02  6W  SSK
9813350504

9701305011103545

SCOTT HUMINSKI
PO BOX 363820
PALM COAST FL 32135-3820

6.20 oz

RDC 29

SHIP
TO:

CLERK
U.S. DISTRICT COURT
1 NORTH PALAFOX STREET
PENSACOLA FL 32502

USPS TRACKING® NUMBER

9516 4066 9811 3121 6095 83

