EXHIBIT A

Case 4:23-cv-00163-AW-MJF   Document 51-2   Filed 06/26/23   Page 2 of 189

IN THE CIRCUIT COURT OF THE 9TH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

**CENTRAL FLORIDA TOURISM OVERSIGHT
DISTRICT,**

**Plaintiff,**

      **v.**                          **CASE NO.:  2023-CA-011818-O**

**WALT DISNEY PARKS AND RESORTS
U.S., INC.,**

**Defendant.**

_____

### CORRECTED[1] COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

    Plaintiff Central Florida Tourism Oversight District (the "District") alleges in support of

its Complaint for Declaratory and Injunctive Relief as follows:

#### Introduction

    1.   For 55 years, Walt Disney Parks & Resorts U.S., Inc. ("Disney"), its

predecessors, and its affiliates, ran their own private government on 25,000 acres in Central

Florida.  Within its fiefdom, Disney wrote the laws that governed itself, chose whether and how

to enforce those laws against itself, and set its own tax rate.  No other Florida business, large or

small, enjoyed those benefits.

    2.   There is no question that much good came from the special status that the Florida

Legislature granted Disney in 1967.  But over time Disney used its influence to obtain what must

have seemed like permanent exemptions from the democratic checks and balances that apply to

all other Florida businesses.  For example, like other businesses in Florida, Disney is subject to

building and fire codes that are supposed to protect the lives and safety of its employees and

---

[1] Corrected signature block.

1

guests. But unlike other businesses in Florida, Disney did not have to worry that these safety rules would be enforced against it. That is because the Disney-controlled District board never adopted any mechanism for the enforcement of those codes.

3.  Earlier this year, however, the Florida Legislature took steps to restore the people's sovereignty and established an independent Board to govern the District.  In an effort to stymie Florida's elected representatives, Disney covertly cobbled together a series of eleventh-hour deals with its soon-to-be-replaced puppet government.  Disney hoped to tie the hands of the new, independent Board and to preserve Disney's special status as its own government in the District for at least the next thirty years.  These agreements reek of a backroom deal    drafted by Disney with the acquiescence a lawyer who represented both Disney and the District, set for hearing without proper notice, and hustled through a compliant Disney-controlled Board that Disney knew would not dwell long on the issue.  But perhaps out of haste or arrogance, Disney's deals violate basic principles of Florida constitutional, statutory, and common law.  As a result, they are null and void    not even worth the paper they were printed on.

4.  The new Board has already taken action to bring accountability, transparency, and normalized, even-handed administration to the government Disney used to run.  It has adopted rules governing Board conduct, hired an outside financial advisor to ensure financial transparency, and retained new, independent outside general counsel who are experienced in local government law and who, unlike the District's former general counsel, are not also Disney's lawyers.  The new Board has authorized the drafting of fire and building code enforcement provisions    one of the most basic safety protocols that the prior, Disney-controlled Board never bothered to require.  And the new Board also has authorized the hiring of an urban

planner to make recommendations to the Florida Legislature about strategies to make the District more prosperous for those who live and work in and near it.

5.    When the new Board took office, it expressed to Disney its desire to work together to achieve a win-win solution that would protect Disney's economic investment in the District while at the same time usher in a new era of accountability, transparency, and cooperation with the District's other occupants and neighbors.  Disney would have none of that. Instead, despite the obvious deficiencies in the one-sided deals Disney drafted for its former Board members to rubber stamp, Disney continues to insist that they are valid and enforceable against the District.  The District therefore seeks a judicial declaration regarding their invalidity.

### Parties, Jurisdiction and Venue

6.    Plaintiff Central Florida Tourism Oversight District is a special district established by the Florida Legislature in 1967 pursuant to H.B. 486, Chapter 67-764.  The District exercises local government authority, as authorized by the Florida Legislature, over approximately 25,000 acres of land located in Orange and Osceola Counties.  Prior to February 27, 2023, the District was known as the Reedy Creek Improvement District ("RCID").  For ease of reference, this Complaint generally uses the term "RCID" when discussing actions taken by the District prior to February 27, 2023, the date governance of the District was statutorily transferred to the new board    including the adoption and execution of the development agreement and declaration of restrictive covenants at the heart of this action for declaratory relief.

7.    Defendant Walt Disney Parks & Resorts U.S., Inc. ("Disney") is a Florida corporation with its principal place of business in Orange County, Florida.  Disney owns and operates the Walt Disney World Resort located within the District's boundaries.

8.      This Court has jurisdiction over Disney because it is a Florida corporation with its principal place of business in Florida and is engaged in substantial and not isolated activity with the State of Florida.  This Court also has jurisdiction over Disney because the causes of action for declaratory relief in this Complaint arise out of Disney operating, conducting, engaging in, or carrying out a business in Florida.

9.      The Court has jurisdiction over the subject matter of this action because the amount in controversy exceeds $50,000, exclusive of interest, court costs, and attorneys' fees, and because, pursuant to chapter 86, Florida Statutes, this Court has jurisdiction to declare rights, status, and other legal or equitable relations.

10.     Venue is proper because Disney has an office for transaction of its customary business in Orange County, Florida, the cause of action accrued in Orange County, Florida, and property subject to the development agreement and declaration of restrictive covenants is located in Orange County, Florida.

**Factual Allegations**

**A.  Disney's Control Over the Reedy Creek Improvement District**

11.     In 1967, the Florida Legislature created the Reedy Creek Improvement District pursuant to H.B. 486, Chapter 67-764.  The Walt Disney Company owned the majority of land within the boundaries of the RCID, and the Florida Legislature hoped that creating the RCID would assist the Walt Disney Company in its plans to develop this area of Central Florida.

12.     Those plans not only included a theme park along the lines of Disneyland in California, but also the construction of a planned community that Walt Disney called the "Experimental Prototype Community of Tomorrow." The Magic Kingdom them park opened in 1971 and has been a financial success for Disney.  Walt Disney's planned community within the

RCID, however, never materialized, although Disney later coopted its name for its EPCOT theme park within the RCID.

13.     On its face, the RCID appeared similar to other special districts periodically established by the Florida Legislature.  Like other special districts, the RCID was authorized to exercise many of the traditional powers of local government, such as regulation of zoning and development matters, capital improvements, building code enforcement, and fire and safety matters.  The Legislature also gave the RCID the power to levy ad valorem taxes.

14.     The RCID was governed by a five-member Board of Supervisors, whose only qualification for office was that they own at least one acre of land within the RCID.  Election to the Board of Supervisors required a majority vote of the RCID's electors, who had to own at least one acre of land within the RCID and who cast one vote for every acre owned.

15.     But behind this democratic façade, Disney's rule was absolute.  No individual owned one or more acres of property within the RCID, which meant that no one could qualify to sit on the RCID's Board of Supervisors.  Indeed, Disney sought to limit residents in the District altogether, turning EPCOT into a theme park instead of a residential community and de-annexing the town of Celebration so the town's inhabitants could not dilute Disney's control.  In order to constitute the Board, Disney would identify a suitable individual, deed him or her a parcel of land within the RCID on a temporary basis, and then nominate that individual for election to the Board.  Because Disney owned almost all of the land within the RCID, Disney's chosen candidate won election to the Board every time.  Of course, Disney's gift to its hand-picked Board members came with strings attached.  On information and belief, Disney retained the ability to force a Board member to return the deeded land    and thus vacate their seat on the Board of Governors    at any time.  And when a Board member left his or her seat voluntarily,

they were similarly obligated to transfer the deeded land back to Disney. Under this governance system, Disney controlled who got elected to the Board and could remove any member at any time for any reason.

16.     Through its control over the RCID, Disney operated its own government within the RCID, establishing its own zoning and development laws and regulations, deciding how and when to enforce the building and fire safety codes against itself, and even controlling law enforcement's access to its property.  It was, in short, both the governed and the government.  No other private business in the State of Florida enjoyed the advantages Disney had through its control of the RCID.

### B. The Florida Legislature Brings Public Accountability to the District and Brings Disney to Parity With Other Florida Businesses.

17.     Initially, the deal struck between Florida's elected representatives and Disney was mutually beneficial.  Disney clearly benefited from it, and so did Orange and Osceola Counties, whose tax bases in the 1960s were lackluster.  But over time, Disney exercised its outsized political influence to extract additional exceptions and exemptions from the rules that applied to all other Florida businesses.  What began as an interesting and innovative experiment in privatization devolved into a depressing example of crony capitalism:  Disney used its special status to arrogate to itself an unprecedented authority to decide what the rules would be and whether they'd be enforced against Disney, setting Disney apart from every other business in the State as a law unto itself.

18.     Florida's elected representatives decided that it was time to reform the RCID and to put Disney on the same footing as every other Florida business.  On April 22, 2022, Senate Bill 4-C became effective and thereby required the dissolution of the RCID on June 1, 2023.

Disney, like all of the other successful tourism venues in the area, would be subject, at least in part, to regulation by Orange and Osceola Counties.

19.     The Florida Legislature ultimately decided to reform, rather than abolish, the RCID.  On February 6, 2023, HB 9B was filed in the Florida Legislature.  It passed the Legislature on February 10, 2023, and became law on February 27, 2023.  HB 9B amended the special act that had established the RCID in 1967.  Among other things, HB 9B reformed the RCID's governance structure.  Membership on the Board of Supervisors would no longer be based on land ownership within the District and thereby controlled by Disney.  Instead, the members of the Board of Supervisors are nominated by the Governor and confirmed by the Florida Senate.  Signaling a further break from the past, HB 9B also changed the District's name from the "Reedy Creek Improvement District" to the "Central Florida Tourism Oversight District."

### C.  Disney Gets the RCID to Rubber Stamp Illegal Agreements to Perpetuate Its Reign Over the District.

20.     In response to these various legislative reforms, Disney engaged in a concerted effort to perpetuate its stranglehold over the District, using its control over the RCID and the two municipalities that exist within the boundaries of the District:  the City of Lake Buena Vista and the City of Bay Lake.  In the same way that the RCID was a "company district," Lake Buena Vista and Bay Lake are "company towns."  Disney selects who can live in the mobile home communities located on Disney's property in each municipality, and thereby controls who can stand for election to the respective city councils.  Disney's 11th-hour rush to insulate itself from the authority of the new Board, however, produced agreements that are riddled with procedural and substantive flaws.

21.    Earlier, in November 2018, the RCID, Lake Buena Vista, and Bay Lake held first readings on proposed amendments to their joint comprehensive plan, which established development guidelines for development projects within the District's boundaries.  In May 2022, after passage of Senate Bill 4-C, the RCID, Lake Buena Vista, and Bay Lake purported to hold second readings on their proposed amendments.  But the amendments considered at the second readings were significantly different from the amendments considered during the first readings in 2018.  Among other things, they purported to change the permitted uses within the RCID's boundaries, significantly increase the permitted densities and intensities of development within the RCID's boundaries, and call for construction of significant public facilities projects financed by issuance of new general obligation bonds.  Despite these significant differences, the three Disney-controlled local governments purported to adopt these new amendments in May 2022.

22.    Then, on February 8, 2023, two days after the filing of HB 9 signaled that Disney's absolute rule over the District would soon come to an end, Disney quietly contrived with its puppet Board to extend Disney's governmental powers by contract. The RCID approved and adopted a 30-year, Disney-designed development agreement (the "Development Agreement") and a declaration of restrictive covenants (the "Restrictive Covenants") between itself and Disney.  In their haste to seek to insulate Disney from meaningful government regulation, Disney and the RCID failed to comply with basic statutory notice requirements. And the RCID lacked authority to enter into *any* development agreement because it had not enacted an ordinance governing the process for doing so, as is required by Florida law. Copies of the Development Agreement and the Restrictive Covenants are attached to the Complaint as Exhibits 1 and 2, respectively.  Neither the Development Agreement nor the Restrictive Covenants were previously presented to RCID planning staff for their input or consideration.

23.     Both the Development Agreement and the Restrictive Covenants purport to assign to Disney much of the District's governmental authority.  For example, the Development Agreement mandates, on a prospective basis, development within the District's boundaries at the maximum levels, including the maximum densities and intensities, that are described in the amendments to the joint comprehensive plan purportedly adopted in 2022.  Moreover, the Development Agreement gives all the development rights within the District's boundaries to Disney, which, pursuant to the Development Agreement, now owns and controls such development rights.  Thus, any other property owner who proposes development within the District that would require the use of these development rights must first obtain prior written approval for the proposed development from Disney, and it is left to Disney's discretion whether or not to assign any development rights to other property owners in the District.  Under the terms of Development Agreement, the height of any building constructed by any property owner within the District is controlled by and must be approved by Disney.  And under the Development Agreement, the District is now required to issue new general obligation bonds financed by ad valorem taxes collected from all of the District's taxpayers in order to fund infrastructure projects.

24.     Similarly, under the Restrictive Covenants, Disney restricts the District to using its own property solely for those uses existing on February 8, 2023, or as contemplated by the amendments to the joint comprehensive plan purportedly adopted in May 2022.  The Restrictive Covenants allow Disney to censor the District's speech on its own property.  And the Restrictive Covenants prohibit the District from altering its own property without Disney's review and consent.

**D.  The District Responds to Disney's Illegal Agreements.**

25.     The Development Agreement and Restrictive Covenants are riddled with procedural and substantive defects.  They not only violate the plain and unambiguous statutory mandates governing the RCID's adoption of these agreements, but they also violate well settled principles of Florida constitutional and common law.  Each of these defects separately renders the Development Agreement and the Restrictive Covenants null and void.

26.     After presentation from its outside counsel, the District's Board of Supervisors adopted legislative findings regarding the various defects in the Development Agreement and Restrictive Covenants.  In its findings, the District concludes that the Development Agreement and the Restrictive Covenants are void *ab initio*.

**E.  The Need for Declaratory Relief Pursuant to Chapter 86, Florida Statutes.**

27.     Disney continues to assert that the agreements are valid and enforceable, including filing a lawsuit based on claims purportedly arising under federal law that seeks to revive and assert rights under the Development Agreement and the Restrictive Covenants.

28.     Based on the facts alleged above, there is a bona fide, actual, present, practical need for a declaration that the Declaration Agreement and Restrictive Covenants are void, unenforceable, and/or invalid.

29.     The declaration sought deals with a present, ascertained, or ascertainable state of facts or a present controversy as to a state of facts.

30.     An immunity, power, privilege, or right of the District, namely the District's ability to conduct its affairs and to govern free from the illegal obligations and restraints imposed upon it by the Development Agreement and Restrictive Covenants, stands to be affected by the actions of Disney.

31.     Disney has engaged in acts demonstrating an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law, by asserting the validity of the agreements.  Indeed, Disney has already taken actions impacting the District's rights by filing a lawsuit seeking to revive and claim rights under the void agreements.

32.     Disney's actions have created insecurity and uncertainty with respect to the District's rights, status, and other equitable and legal relations.

33.     The antagonistic and adverse legal interests of the parties are all before the court by proper process and warrant a declaratory judgment.

34.     The relief sought in this Complaint is neither merely advisory nor the answer to questions propounded from curiosity.  Indeed, the Florida Land Development Agreement Act, which governs the Development Agreement, provides that any party to a development agreement can seek injunctive relief to challenge compliance of a development agreement with any of the Act's requirements.  § 163.3243, Fla. Stat.

**Count I**
**Failure to Provide Notice of Public Hearing**

35.     Paragraphs 1-34 are incorporated herein by reference.

36.     The Development Agreement was entered into pursuant to and is subject to the provisions of the Florida Local Government Development Agreement Act, §§ 163.3220-163.3243, Fla. Stat.

37.     The Florida Local Government Development Agreement Act contains an express, mandatory notice provision, which provides in relevant part:

**Public hearings.**
(1)   Before entering into, amending, or revoking a development agreement, a local government shall conduct at least two public hearings. At the option of the governing body, one of the public hearings may be held by the local planning agency.

(2)(a)   Notice of intent to consider a development agreement shall be advertised approximately 7 days before each public hearing in a newspaper of general circulation and readership in the county where the local government is located. ***Notice of intent to consider a development agreement shall also be mailed to all affected property owners before the first public hearing.*** The day, time, and place at which the second public hearing will be held shall be announced at the first public hearing.

§ 163.3225, Fla. Stat. (emphasis supplied).

38.    Disney is not the sole property owner in the District.  In addition to land owned by District itself, other property owners within the District include private entities not affiliated with Disney and governmental entities.

39.    The Development Agreement affects these other property owners.

40.    Prior to entering into this Development Agreement, the RCID held two public hearings.  The first hearing was held on January 25, 2023, during a Board of Supervisors meeting.  Approximately six minutes of the Board's time was devoted to the first hearing on the Development Agreement.  The second hearing was held on February 8, 2023, during a Board of Supervisors meeting.  Approximately one minute of the Board's time was devoted to this second hearing on the Development Agreement, after which the Board approved the agreement.

41.    Prior to the January 25 and February 8 Board meetings, the RCID published notices of intent to consider a development agreement in the *Orlando Sentinel*.  The notices were published on January 18 and 27, respectively.  The *Orlando Sentinel* is a newspaper of general circulation and readership in both Orange and Osceola Counties.  Such notices published in the newspaper did not fully inform the public or other property owners of the purposes or contents of the Development Agreement and how other property owners and the taxpayers of the District were affected by such proposed agreement.

42.    Prior to the January 25 and February 8 Board meetings, the RCID did not post a copy of its agenda packages on its website.  The RCID did not upload agenda packages for the

January 25 and February 8, 2023, meetings onto its website until early March 2023 after the new Board of Supervisors appointed by the Governor took office.  Copies of the proposed Development Agreement and Restrictive Covenants were not posted on the RCID's website in advance of the January 25 and February 8 Board meetings.

43.     Prior to the January 25 meeting, the RCID did not mail notice of intent to consider a development agreement to all property owners affected by the Development Agreement.

44.     The failure to mail a notice of intent before the January 25 meeting violated the mandatory notice requirements of § 163.3225(2)(a).

45.     The RCID approved and adopted the Restrictive Covenants as depending on the Development Agreement.

46.     The District is entitled to a declaration that: (1) the Development Agreement is void, unenforceable, and/or invalid, and (2) because the Restrictive Covenants depend upon the Development Agreement, the Restrictive Covenants are void, unenforceable, and/or invalid.  The District is further entitled to an order enjoining Disney from enforcing the Development Agreement and the Restrictive Covenants.

**Count II**
***Ultra Vires* Act in Violation of § 163.3223, Florida Statutes**

47.     Paragraphs 1   34 are incorporated herein by reference.

48.      In 1986, the Florida Legislature empowered local governments to enter bilateral development agreements by passing the Local Government Development Agreement Act, §§ 163.3220-163.3243, Fla. Stat.

49.     This Act provides that "[a]ny local government may, *by ordinance*, establish procedures and requirements … to consider and enter into a development agreement." § 163.3223, Fla. Stat. (emphasis added).

50.     Absent the enactment of such an ordinance, a local government is not authorized to enter a development agreement.  *See* § 163.3220(4) (legislative finding that legislative intent to improve development planning process "is effected by authorizing local governments to enter into development agreements with developers, subject to the procedures and requirements of ss. 163.3220-163.3243.").  Indeed, such statutorily mandated procedures and requirements are necessary to avoid precisely what happened here:  a board of yes men and women approving a consequential deal with no established process or deliberation.

51.     The RCID failed to satisfy this condition precedent before entering the Development Agreement.  The RCID did not pass any law or adopt any regulations to "establish procedures and requirements … to consider and enter into a development agreement," as § 163.3223 requires.

52.     Because the RCID did not pass the statutorily-mandated enabling rules and procedures, the RCID lacked authority to enter the Development Agreement.  The RCID's approval and adoption of the Development Agreement was an *ultra vires* act.

53.     The RCID approved and adopted the Restrictive Covenants as depending on the Development Agreement.

54.     The District is entitled to a declaration that: (1) the Development Agreement is void, unenforceable, and/or invalid, and (2) because the Restrictive Covenants depend upon the Development Agreement, the Restrictive Covenants are void, unenforceable, and/or invalid.  The District is further entitled to an order enjoining Disney from enforcing the Development Agreement and the Restrictive Covenants.

### Count III
### District Lacked Authority and Jurisdiction to Enter into Development Agreement

55.     Paragraphs 1   34 are incorporated herein by reference.

56.     Under the terms of the Development Agreement, any local government laws and policies governing development that were in effect on the Development Agreement's effective date (February 8, 2023), govern development under the Development Agreement for the duration of the Development Agreement.

57.     Prior to February 27, 2023, Bay Lake and Lake Buena Vista had exclusive authority over comprehensive planning, land development regulations, development orders, and building permitting within their municipal boundaries, while the RCID had exclusive authority over those matters for lands in the RCID outside the municipal boundaries.  Thus, as of the Development Agreement's effective date, the RCID had no authority or jurisdiction to approve or regulate development-related activities on property located within the municipalities' boundaries, including, but not limited to, issuing development orders, building permits, or enforcing the joint comprehensive plan and the RCID's land development regulations.

58.     The Development Agreement applies to property that is located inside the boundaries of Bay Lake and Lake Buena Vista and to property that is located outside those municipalities' boundaries.

59.     The only signatories to the Development Agreement are the RCID and Disney. Bay Lake and Lake Buena Vista did not sign the Development Agreement, and the RCID did not purport to sign the agreement on behalf of either municipality.  Bay Lake and Lake Buena Vista did not conduct public hearings on or approve the Development Agreement.

60.     Under the Development Agreement, the District assigns to Disney all of the development rights within the District, regardless of whether such rights, at the time the Development Agreement was executed, were held or regulated by Bay Lake or Lake Buena Vista.  In addition, under the Development Agreement, all proposed development, whether

15

within or outside the municipalities' boundaries, will be subject to the RCID's land development regulations, including reviewing and approving development applications, issuing development orders and building permits, and enforcing other aspects of its land development regulations.

61.     Because the RCID had no authority or jurisdiction on February 8, 2023, to approve or regulate this activity and because Bay Lake and Lake Buena Vista did not conduct public hearings on, approve, or join as parties to the Development Agreement, the RCID lacked the authority and jurisdiction to enter into the Development Agreement.  The RCID's approval and adoption of the Development Agreement was an *ultra vires* act.

62.     The RCID approved and adopted the Restrictive Covenants as depending on the Development Agreement.

63.     The District is entitled to a declaration that: (1) the Development Agreement is void, unenforceable, and/or invalid, and (2) because the Restrictive Covenants depend upon the Development Agreement, the Restrictive Covenants are void, unenforceable, and/or invalid.  The District is further entitled to an order enjoining Disney from enforcing the Development Agreement and the Restrictive Covenants.

**Count IV**

**Violation of Article VII, Section 12 of the Florida Constitution**

64.     Paragraphs 1    34 are incorporated by reference herein.

65.     The Development Agreement requires the District to levy and collect ad valorem taxes from the District's taxpayers in order to finance new general obligation bonds to fund certain road and utility capital improvement projects.

66.     The Development Agreement constitutes a general obligation debt of the District for capital improvement projects exceeding a twelve-month period.

67.     Article VII, section 12 of the Florida Constitution provides that the District:

may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only:

   (a)   to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or

   (b)   to refund outstanding bonds and interest and redemption premium thereon at a lower net average interest cost rate.

68.     The RCID did not comply with article VII, section 12 of the Florida Constitution when it approved and adopted the Development Agreement because it was not also "approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation." The Development Agreement is therefore unconstitutional.

69.     The RCID approved and adopted the Restrictive Covenants as depending on the Development Agreement.

70.     The District is entitled to a declaration that: (1) the Development Agreement is void, unenforceable, and/or invalid, and (2) because the Restrictive Covenants depend upon the Development Agreement, the Restrictive Covenants are void, unenforceable, and/or invalid. The District is further entitled to an order enjoining Disney from enforcing the Development Agreement and the Restrictive Covenants.

**Count V**

**Failures to Comply with §166.041 and § 163.321, Florida Statutes**

71.     Paragraphs 1   34 are incorporated by reference herein.

72.     Prior to February 27, 2023, Bay Lake and Lake Buena Vista had exclusive authority over comprehensive planning, land development regulations, and development order and building permit authority within their municipal boundaries, while the RCID had exclusive authority over those matters for lands within the RCID outside the municipal boundaries. Thus, establishing uniform guidelines and regulations for development within the entirety of the

RCID's boundaries required all three local governments    the RCID, Bay Lake, and Lake Buena Vista    to adopt a joint comprehensive plan and identical land development regulations.

73.     In or around 1991, the RCID, Bay Lake, and Lake Buena Vista adopted a joint comprehensive plan, which was amended from time to time.

74.     On November 14, 2018, Bay Lake, Lake Buena Vista, and the RCID each conducted a first reading and public hearing on their respective resolutions/ordinances to adopt amendments to their joint comprehensive plan.  The hearings were held at 8:30, 9:00, and 9:30 a.m. respectively.

75.     Attached to each proposed resolution/ordinance was an Exhibit A that set out the text of the proposed amendments.  The proposed amendments primarily addressed the deannexation of approximately 100 acres of land within the RCID's boundaries, as well as certain amendments that were required because of changes in the Florida Administrative Code.

76.     The proposed amendments that were the subject of the first public hearings did not revise the densities or intensities of the existing joint comprehensive plan nor did they include a capital improvements program.

77.     Three-and-one-half years later, on May 22, 2022, at 9:30 a.m., the RCID conducted its second reading and public hearing on its proposed resolution/ordinance to adopt amendments to the joint comprehensive plan.

78.     Unlike the first reading and hearing, the RCID's proposed resolution/ordinance did not attach an Exhibit A nor otherwise set out the text of the proposed amendment.  The RCID adopted the resolution/ordinance, and thereby the purported proposed amendments to the joint comprehensive plan, at that hearing.

18

79.     On May 24, 2022, at 8:30 and 9:00 a.m. respectively, Bay Lake and Lake Buena Vista conducted their second readings and public hearings on their proposed ordinances to adopt amendments to the joint comprehensive plan.  Like the RCID, the municipalities' proposed ordinances did not attach an Exhibit A nor otherwise set out the text of the proposed amendments.  Each municipality adopted its respective ordinance, and thereby the purported proposed amendments to the joint comprehensive plan, at those hearings.

80.     The purported proposed amendments to the joint comprehensive plan adopted by the District, Bay Lake, and Lake Buena Vista after their respective second reading and public hearings substantially and materially differ from and serve a new purpose than the proposed amendments that had been set out in full in the exhibits attached to the resolutions/ordinances considered at the first reading and public hearings in November 2018.  For example, the amendments that were purportedly approved at the second public hearings substantially increased the allowed densities and intensities and changed the uses permitted within the RCID and the municipalities.  Additionally, the amendments that were purportedly approved at the second public hearings include a significant capital improvement program.  None of these provisions were included in the text of the amendments noticed and approved at the first public hearings in 2018.  Nor had the text of these provisions been set out in the resolutions/ordinances considered at the second readings and public hearings.

81.     After the purported adoption of the ordinances/resolutions relating to amendments to the joint comprehensive plan in 2022, the RCID, Bay Lake, and Lake Buena Vista adopted, via resolution/ordinance, amendments to their land development regulations.

82.     The RCID held its public hearings on December 14, 2022, and January 25, 2023, at 9:30 a.m.  Bay Lake held its public hearings on January 11, 2023, and February 8, 2023, at

19

8:30 a.m.  Lake Buena Vista held its public hearings on January 11, 2023, and February 8, 2023, at 9:00 a.m.

83.     Neither Bay Lake nor Lake Buena Vista set out, whether by way of exhibit to or in the body of the ordinance, the language of the proposed amendments to their land development regulations.

84.     Bay Lake and Lake Buena had not adopted their ordinances concerning the amendments to their land development regulations prior to the RCID's first public hearing on the Development Agreement.

85.     In advance of their January 25, 2023, and February 8, 2023, meetings, Bay Lake and Lake Buena Vista did not publish advertisements in the newspaper giving any notice of their intent to conduct a public hearing(s) on or adopt ordinances to amend their land development regulations.

86.     The land development regulations purportedly adopted by the District, Bay Lake and Lake Buena Vista in January and February of 2023, changed the list of uses permitted and increased densities and intensities of uses.

87.     When enacting ordinances or resolutions, municipalities like Bay Lake and Lake Buena Vista must comply with the provisions of § 166.041, Fla. Stat.  That statute provides in relevant part:  "No ordinance shall be revised or amended by reference to its title only. Ordinances to revise or amend shall set out in full the revised or amended act or section or subsection or paragraph of a section or subsection."  § 166.041(2), Fla. Stat.

88.     Section 166.041(3)(c), Florida Statutes, requires a particular type of newspaper advertisement to be published for proposed ordinances that change the actual list of permitted, conditional, or prohibited uses or change a zoning map.  All other proposed ordinances of

municipalities must be advertised for a public hearing pursuant to the minimum requirements of Section 166.041(3)(a), Florida Statutes.

89.    At the time that the RCID adopted its resolutions/ordinances regarding the amendments to the joint comprehensive plan and land development regulations, the RCID was also subject to the same statutory notice requirements that applied to the municipalities.

90.    Because the adopted amendments to the joint comprehensive plan and land development regulations changed intensities, densities, and uses of land within the RCID and the municipalities and modified the future land use map, they qualified as changes in the "list of permitted, conditional, or prohibited uses within a zoning category" or changes in the "zoning map designation of a parcel or parcels of land involving 10 contiguous acres or more."  The RCID and the municipalities thus were required to hold at least one of the public hearings after 5 p.m.  § 166.041(3)(c)1.a., Fla. Stat., which did not happen.

91.    With respect to the comprehensive plan amendments purportedly adopted in May 2022, the RCID, Bay Lake, and Lake Buena Vista adopted these resolutions/ordinances illegally and in violation of § 166.041, Fla. Stat., and Florida law, and they are void, unenforceable, and/or invalid because:

(a) the RCID, Bay Lake, and Lake Buena Vista failed to set out in full the amendments to the joint comprehensive plan that were adopted at the second public hearings;

(b) the RCID, Bay Lake, and Lake Buena Vista failed to hold at least one public hearing on the amendments to the joint comprehensive plan after 5 p.m.;

(c) the RCID, Bay Lake, and Lake Buena Vista failed to start anew and have two advertised readings and public hearings on the materially and substantially modified comprehensive plan amendment that had a different purpose than the original purpose of the

EAR-based comprehensive plan amendments considered and approved by each in November 2018.

92.     With respect to the land development regulation amendments purportedly adopted in January 2023 by the RCID via ordinance/resolution, such ordinance/resolution is void, unenforceable, and/or invalid because:

(a) the official executed ordinance/resolution failed to set out in full the amendments to the RCID's land development regulations that were adopted;

(b) the RCID failed to hold at least one public hearing on the amendments to its land development regulations after 5 p.m.;

(c)  the RCID had no authority to adopt land development regulations inconsistent with the joint comprehensive plan in effect at the time the ordinance/resolution was passed; and

(d)  the RCID had no authority to adopt land development regulations within the jurisdictional limits of Lake Buena Vista and Bay Lake, and such cities failed to properly adopt land development regulation amendments in tandem with the RCID's proposed land development regulations.

93.     With respect to the land development regulations amendments purportedly adopted in February 2023 by Bay Lake and Lake Buena Vista, the ordinances adopting those regulations are void, unenforceable, and/or invalid because:

(a) Bay Lake and Lake Buena Vista failed to set out in full the amendments to their land development regulations that were adopted at their February 8, 2023, Council meetings;

(b) Bay Lake, and Lake Buena Vista failed to hold at least one public hearing on the amendments to their land development regulations after 5 p.m.;

(c) Bay Lake and Lake Buena Vista failed to advertise these ordinances prior as required by Section 166.041, Florida Statutes.

(d)  these land development regulation amendments are not consistent with the joint comprehensive plan in effect at the time the ordinances were passed.

94.     Each of these is a separate violation of the mandatory requirements of § 166.041, Fla. Stat.

95.     Each of the violations of § 166.041, Fla. Stat., renders the amendments to the joint comprehensive plan and the land development regulations void, unenforceable, and/or invalid.

96.     Because the amendments to the joint comprehensive plan purportedly adopted in 2022 are void, the prior version of the joint comprehensive plan remains in effect pursuant to § 163.3197, Fla. Stat.

97.     Because the land development regulations purportedly adopted in January and February 2023 by the RCID, Buena Vista, and Bay Lake are void, the prior versions of their respective land development regulations remain in effect.

98.     The Florida Local Development Agreement Act provides that a development agreement "shall be consistent with the local government's comprehensive plan and land development regulations." § 163.3231, Fla. Stat.

99.     The maximum development program identified in Table 1, the densities and intensities identified in Table 2, and the capital improvement element identified in Exhibit 3 of the Development Agreement are inconsistent with the joint comprehensive plan and land development regulations currently in effect.

100.    Because the Development Agreement violates the consistency mandate of § 163.3231, Fla. Stat., it is void, unenforceable, and/or invalid.

101.     Additionally, even if the 2022 amendments to the joint comprehensive plan were effective, the Development Agreement converts the joint comprehensive plan into a mandate and removes the District's statutory ability, and in some cases its statutory obligation, to evaluate and amend the joint comprehensive plan.

102.     Shackling the District in this way violates the consistency mandate of § 163.3231, Fla. Stat., and renders the Development Agreement void, unenforceable, and/or invalid.

103.     The RCID approved and adopted the Restrictive Covenants as depending on the Development Agreement.

104.     The District is entitled to a declaration that: (1) the Development Agreement is void, unenforceable, and/or invalid; and (2) because the Restrictive Covenants depend upon the Development Agreement, the Restrictive Covenants are void, unenforceable, and/or invalid.  The District is further entitled to an order enjoining Disney from enforcing the Development Agreement and the Restrictive Covenants.

**Count VI**
**Unlawful Delegation of Governmental Authority to Private Entity**

105.     Paragraphs 1    34 are incorporated herein by reference.

106.     Florida law prohibits a local government from contracting away its discretionary legislative power.

107.     The Development Agreement contracts away the District's discretionary legislative power in multiple ways.

108.     The Development Agreement provides that it shall prevail if there is any conflict between itself and the joint comprehensive plan or the District's land development regulations. That provision elevates a private contractual agreement above the binding legislative acts of the RCID and is therefore invalid and unenforceable. Additionally, it violates the statutory mandate

24

that any development agreement must be "consistent with the local government's comprehensive plan and land development regulations." § 163.3227(1)(g), Fla. Stat.

109.    The Development Agreement also gives Disney the authority to set maximum building heights throughout the District and assigns "all of the development rights and entitlements" in the District to Disney. The Florida Legislature, however, explicitly empowered the District to perform these functions.

110.    The Development Agreement obligates the District to "fund[], design[] and construct[]" public facilities to accommodate Disney's future growth, but without allowing for periodic reassessment of currently planned projects, including as encouraged or required by law. *See* Fla. Stat. § 163.3191 (requiring local government to "evaluate its comprehensive plan to determine if plan amendments are necessary to reflect changes in state requirements" "[a]t least once every 7 years," and "encourag[ing]" local governments "to comprehensively evaluate and, as necessary, update comprehensive plans to reflect changes in local conditions"). This is an additional way in which the Development Agreement invalidly delegates governmental authority to a private entity.

111.    Each of these delegations of governmental power by the RCID to a private entity is unlawful.

112.    The Development Agreement is unenforceable because of its multiple unlawful delegations of governmental power to Disney.

113.    Because the Restrictive Covenants depend on the Development Agreement by their own terms, the Restrictive Covenants are also void, unenforceable, and/or invalid.

114.    The Restrictive Covenants are also independently void because, like the Development Agreement, the Restrictive Covenants unlawfully delegate governmental authority to Disney in several ways.

115.    Section 2.1 of the Restrictive Covenants restrict the District to using its property solely for those uses existing on February 8, 2023, or as contemplated by the amendments to the joint comprehensive plan purportedly adopted in May 2022.

116.    Section 2.2 effectively enables Disney to censor the District, banning the District from speech on its own property about anything other than the District.

117.    Section 3 prohibits the District from altering its own property without Disney's review and consent.

118.    Each of these delegations of governmental power by the RCID to a private entity is unlawful.

119.    The Restrictive Covenants are therefore independently unenforceable because of their multiple unlawful delegations of governmental power to Disney.

120.    The District is entitled to a declaration that: (1) the Development Agreement is void, unenforceable, and/or invalid, and (2) the Restrictive Covenants are void, unenforceable, and/or invalid.  The District is further entitled to an order enjoining Disney from enforcing the Development Agreement and the Restrictive Covenants.

## Count VII
### Void as Against Public Policy

121.    Paragraphs 1    34 are incorporated herein by reference.

122.    Agreements that contravene the Legislature's intent are void as against public policy.

123.    The Florida Legislature established the policies that govern the District through House Bill ("H.B.") 9-B, codified at ch. 2023-5, Laws of Fla.

124.    Among other things, this law replaces the District's prior landowner-elected board with a Board appointed by the Governor, subject to Senate confirmation, and subject to limitations that ensure members' independence from any "theme park or entertainment complex." H.B. 9-B § 4(2)(c).

125.    The law also maintains the District's authority to adopt planning, zoning, and other regulations while explicitly providing that any regulations "relating to safety, health, sanitation, or building safety shall prescribe standards at least equivalent to the minimum standards in applicable statewide regulations" such as the Florida Building Code and Florida Fire Prevention Code. *Id*. §§ 23(4)(b), (10). In short, H.B. 9-B provides public oversight for the District and ensures that the same laws apply in the District as apply throughout the State of Florida.

126.    Although H.B. 9-B was still under legislative consideration on February 8, 2023, when the Development Agreement and Restrictive Covenants were approved and adopted by the RCID, the public policies that the law advances   public oversight and accountability   preexist this particular law. Indeed, H.B. 9-B came in the wake of Senate Bill ("S.B.") 4-C, codified at ch. 2022-266, Laws of Fla., which had abolished any special district established by special act before the ratification of the Florida Constitution in 1968 and not reestablished afterwards. Moreover, H.B. 9-B has now been enacted and thus constitutes the public policy against which any attempted enforcement of the Development Agreement would be judged.

127.    The Development Agreement contravenes H.B. 9-B in multiple ways.

128.    In contravention of the District's authority to "[r]egulate, restrict, and determine the … height … of buildings," H.B. 9-B § 23(9)(a), and of the District's explicit obligation to do so

according to the standards of the Florida Building Code, *see id.* §§ 23(4)(b), (10), the Development Agreement gives Disney exclusive control over building heights in the covered property, which are otherwise controlled only by "the Federal Aviation Administration (FAA) height standards."

129.    In contravention of the District's authority to "[r]egulate, restrict, and determine … the density of population" and "the percentage and portion of lots and land that may be occupied or built on," H.B. 9-B § 23(9)(a); *see also id.* § 23(7)(a), the Development Agreement grants to Disney  and to the exclusion of other District landowners  all development rights and entitlements in the District.

130.    Under the Development Agreement, Disney may also obligate the District to construct public facilities (*e.g.*, roads), and even to purchase from Disney any lands that Disney owns and that are needed for such facilities. The Development Agreement restricts the District from reassessing the relative costs and benefits of any such facilities, in contravention not only of the District's authority over the construction of roads and other public facilities, *see* H.B. 9-B § 8, but also of statutes encouraging or requiring such reassessment, *see* Fla. Stat. §§ 163.3191, .3177(3)(b).

131.    The Legislature enacted H.B. 9-B to create a Board that would exercise meaningful public authority over the District, including over land development. But the Development Agreement removes that authority by exempting a large swath of land from District regulation and transferring zoning authority over that land to a single private developer. The Development Agreement thereby contravenes H.B. 9-B. It is therefore void as against public policy and unenforceable.

132.    Because the Restrictive Covenants depend on the existence of the Development Agreement, they are void as against public policy along with the Development Agreement.

133.    The Restrictive Covenants are also independently void as against public policy.

134.    Like the Development Agreement, the Restrictive Covenants contravene the authorities granted to the District by H.B. 9-B, and the public policy embodied by that law, in several ways.

135.    Section 2.1 of the Restrictive Covenants restrict the District to using its property solely for those uses existing on February 8, 2023, or as contemplated by the amendments to the joint comprehensive plan purportedly adopted in May 2022.

136.    Section 2.2 effectively enables Disney to censor the District, banning the District from speech on its own property about anything other than the District.

137.    Section 3 prohibits the District from altering its own property without Disney's review and consent.

138.    Accordingly, the Restrictive Covenants are unenforceable as well.

139.    The District is entitled to a declaration that: (1) the Development Agreement is void, unenforceable, and/or invalid, and (2) the Restrictive Covenants are void, unenforceable, and/or invalid.  The District is further entitled to an order enjoining Disney from enforcing the Development Agreement and the Restrictive Covenants.

## Count VIII
## Void as Unconscionable

140.    Paragraphs 1    34 are incorporated herein by reference.

141.    A contract contrary to a strong public policy against a particular practice is unconscionable and unenforceable.

142.    Because the Development Agreement and the Restrictive Covenants each violate the public policies embodied in H.B. 9-B, they are also unconscionable and therefore unenforceable.

143.    Independent of H.B. 9-B, however, the Development Agreement is both procedurally and substantively unconscionable.

144.    Indicators of procedural unconscionability include evidence of self-dealing and a lack of independent counsel for both parties.

145.    Under the prior manner of electing Board members, where each District landowner was allowed one vote per acre of land owned in the District, Disney's ownership of almost all such land ensured its absolute control over Board membership.  Based upon information and belief, in at least some cases, Disney transferred parcels of land to members of the RCID's Board members for minimal consideration in order to satisfy the prior requirement that all Board members be District landowners. Based on information and belief, Disney retained the right to demand the return of this land from a Board member and thereby the right to remove any Board member who did not acquiesce to Disney's demands from the District.  This pattern of self-dealing resulted in the substantively one-sided provisions of the Development Agreement discussed herein.

146.    The District lacked independent counsel when entering the Development Agreement.  The District's general counsel at that time also represented Disney in real estate and other matters at the time of his engagement in 2019, and his communications with Disney's counsel relating to the Development Agreement indicate a desire to maintain business with Disney.

147.    Communications between the District's general counsel and Disney's counsel also indicate that Disney drafted the Development Agreement but attempted to obscure this fact by naming the District's general counsel as the drafter.

148.    These communications further show that Disney's counsel edited the text of the agenda item for the RCID's January 25, 2023, meeting during which the RCID held its first hearing on the Development Agreement.

149.    This evidence reflects a procedurally unconscionable attempt by Disney to arrogate authority to itself on the eve of H.B. 9-B's enactment.

150.    Substantive unconscionability focuses on whether the terms of the contract itself are unreasonably favorable to the other party. Indicators of substantive unconscionability include the length of the benefit conferred on a party, and the gross disparity in the values exchanged.  That last factor may be sufficient by itself for a finding of unconscionability.

151.    The benefits of the Development Agreement are entirely one-sided.  The Development Agreement entitles Disney to the exclusive use of future development rights in the District, delegates District zoning powers to Disney, allows Disney to obligate the District to construct private facilities in aid of Disney's development projects, and allows Disney to obligate the District's ad valorem taxing authority in order to construct those development projects.

152.    The District receives nothing in return. The only theoretical benefit to the District in the text of the Development Agreement is that, when Disney obligates the District to construct public facilities that require land that Disney owns, Disney will not "request payment for the land in excess of fair market value."

153.    This purported benefit is illusory because the District has the power of eminent domain, meaning that it may take private property for public use and for just compensation. Because payment of fair market value by the District meets the just-compensation requirement when the District exercises its power of eminent domain, the Development Agreement does not provide the District any rights beyond what the District already has and would have in the normal course.

154.    These one-sided benefits are long-term. The Development Agreement lasts for 30 years, the maximum amount of time permitted under the Florida Local Development Agreement

Act.  This length of time extends for twenty years beyond the joint comprehensive plan purportedly adopted in May 2022 and was entered just before the Florida Legislature passed H.B. 9-B to increase public oversight for the District through a newly appointed Board. In this context, the Development Agreement's duration exacerbates the substantive unconscionability of its one-sided terms.

155.    Because the Development Agreement is both procedurally and substantively unconscionable, it is void, unenforceable, and/or invalid.

156.    Because the Restrictive Covenants depend on the existence of the Development Agreement, they are void as unconscionable along with the Development Agreement.

157.    The Restrictive Covenants are also independently unconscionable.

158.    The Restrictive Covenants are the product of the same self-dealing and absence of independent counsel, and thus bear the same indicia of procedural unconscionability, as the Development Agreement.

159.    Drafting records also show that, as with the Development Agreement, Disney's counsel initially drafted the Restrictive Covenants but attempted to obscure that fact by listing the District's general counsel as the drafter.

160.    As with the Development Agreement, the benefits of the Restrictive Covenants are entirely one-sided.  Disney receives the authority to limit the District's use of and speech on the District's own property, while the District receives no consideration in return. Just as these provisions violate public policy, they are substantively unconscionable.

161.    Accordingly, the Restrictive Covenants are likewise procedurally and substantively unconscionable, void, and unenforceable.

162.    The District is entitled to a declaration that: (1) the Development Agreement is void, unenforceable, and/or invalid, and (2) the Restrictive Covenants are void, unenforceable, and/or invalid.  The District is further entitled to an order enjoining Disney from enforcing the Development Agreement and the Restrictive Covenants.

**Count IX**
**Lack of Consideration**

163.    Paragraphs 1    34 are incorporated herein by reference.

164.    All contracts require consideration.

165.    Consideration must be something more than what a party was already legally obliged to do.

166.    The only purported consideration that Disney provided through the Development Agreement was its agreement to demand no more than fair market value for Disney-owned lands that the District might need for any public-facilities projects that Disney may obligate the District to undertake pursuant to the Development Agreement. But the District already had the power to take private lands for public projects and to pay only fair market value for those lands.

167.    Because the Development Agreement lacks valid consideration, it is void, unenforceable, and/or invalid.

168.    Because the Restrictive Covenants depend on the existence of the Development Agreement, they are void on this ground along with the Development Agreement.

169.    The Restrictive Covenants also independently lack consideration.

170.    The Restrictive Covenants constitute a distinct agreement, yet they do not even purport to have their own consideration. Rather, they simply refer to "the commitments made by [Disney] and its Affiliates under the Development Agreement."

171.    Because those commitments did not constitute valid consideration for the Development Agreement, the Restrictive Covenants likewise lack valid consideration.

172.    Moreover, the Development Agreement had not been executed or approved at the time that the former Board voted to approve the Restrictive Covenants. A non-existent agreement could not constitute consideration for the Restrictive Covenants.

173.    Even if there were valid consideration for the Development Agreement, the Restrictive Covenants do not even purport to provide any additional, independent consideration to the District.

174.    Because the Restrictive Covenants lack valid consideration, they are therefore void, unenforceable, and/or invalid.

175.    The District is entitled to a declaration that: (1) the Development Agreement is void, unenforceable, and/or invalid, and (2) the Restrictive Covenants are void, unenforceable, and/or invalid.  The District is further entitled to an order enjoining Disney from enforcing the Development Agreement and the Restrictive Covenants.

**Prayer for Relief**

The District respectfully requests that this Court grant the following relief:

A.   Declare that the Development Agreement is void, unenforceable, and/or invalid;

B.   Declare that the Restrictive Covenants are void, unenforceable, and/or invalid;

C.   Issue an order enjoining Disney from enforcing the Development Agreement and the Restrictive Covenants; and

D.   Grant such other relief that this Court may deem just and proper.

Dated: May 9, 2023                          Respectfully Submitted,

                                            /s/ Alan Lawson

DAVID THOMPSON*                             ALAN LAWSON (FBN: 709591)
PETE PATTERSON*                             PAUL C. HUCK JR. (FBN: 968358)
JOE MASTERMAN (FBN: 1004179)                JASON GONZALEZ (FBN: 146854)
MEGAN WOLD*                                 **LAWSON HUCK GONZALEZ, PLLC**
**COOPER & KIRK**                           215 S. Monroe Street, Suite 320
1523 New Hampshire Ave., N.W.,              Tallahassee, Fl 32301
Washington, D.C. 20036                      850-825-4334
202-220-9600                                alan@lawsonhuckgonzalez.com
dthompson@cooperkirk.com                    paul@lawsonhuckgonzalez.com
ppatterson@cooperkirk.com                   jason@lawsonhuckgonzalez.com
jmasterman@cooperkirk.com
mwold@cooperkirk.com

*pro hac vice forthcoming


Counsel for Central Florida Tourism Oversight District

EXHIBIT 1

DOC# 20230074249
02/09/2023 08:13 AM  Page 1 of 75
Rec Fee: $639.00
Deed Doc Tax: $0.00
Mortgage Doc Tax: $0.00
Intangible Tax: $0.00
Phil Diamond, Comptroller
Orange County, FL
Ret To: SIMPLIFILE LC

Prepared by/Record and Return to:
Edward G. Milgrim
Milgrim Law Group
3216 Corrine Drive
Orlando, FL 32803

# WALT DISNEY WORLD
## CHAPTER 163 DEVELOPMENT AGREEMENT

This Development Agreement (this "**Agreement**") is made this **8th** day of February, 2023, by and between **Walt Disney Parks and Resorts U.S., Inc.**, a Florida corporation, on behalf of itself and its affiliated and subsidiary entities (hereinafter referred to as "**Master Developer**"), whose mailing address is 1375 Buena Vista Drive, Lake Buena Vista, Florida 32830, and **Reedy Creek Improvement District**, a public corporation and public body corporate and politic of the State of Florida, whose mailing address is 1900 Hotel Plaza Blvd., Lake Buena Vista, Florida 32830 (hereinafter referred to as "**RCID**"). RCID and Master Developer may sometimes be referred to collectively herein as the "**Parties**".

## WITNESSETH

**WHEREAS**, in 1967 the Florida Legislature created the Reedy Creek Improvement District (RCID) in order to create a governmental structure as stated in the RCID Charter with the governmental powers, and for the objectives and purposes, stated in the RCID Charter; and

**WHEREAS**, since 1967 RCID has served as the governing agency to approve long-term plans within its jurisdictional boundary including comprehensive plans and land development regulations, and has approved development applications and issued building permits in accordance with the above; and

**WHEREAS**, the Board of Supervisors of RCID has the power and authority to administer the comprehensive plan and supporting land development regulations in respect to all lands located within the jurisdictional boundary of RCID (hereinafter referred to as the "**RCID Jurisdictional Lands**"); and

**WHEREAS**, this Agreement governs a portion of the RCID Jurisdictional Lands (hereinafter referred to as the "**Property**") as defined by a legal description attached as **EXHIBIT 1** and a location map attached as **EXHIBIT 2**; and

**WHEREAS**, Master Developer owns, either directly or through one or more subsidiary entities, the vast majority of the Property, although, in the future, portions of the Property or any other land that Master Developer may acquire within the RCID Jurisdictional Lands, may be transferred or leased to another entity or subdivided and sold or expanded; and

**WHEREAS**, Master Developer has developed portions of the Property into the *Walt Disney World®* Resort ("**Walt Disney World**"), a world renowned resort with multiple theme parks, entertainment venues, resort hotels, commercial and other land uses along with monorails and transit service to support Walt Disney World, and plans to continue to develop Walt Disney World onto additional portions of the Property (Walt Disney World as further developed and expanded hereinafter referred to as the "**Project**"); and

**WHEREAS**, RCID also owns land comprising a portion of the Property which may be developed as part of the Project in the future; and

**WHEREAS**, RCID has adopted a comprehensive plan (hereinafter referred to as the "**Comprehensive Plan**") that has been reviewed and approved by the State Land Planning Agency, as required by Chapter 163, Florida Statutes; and

**WHEREAS**, RCID has adopted land development regulations ("**RCID LDRs**"), as required by Chapter 163, Florida Statutes; and

**WHEREAS**, as required by State growth management law, in June 2022 the Comprehensive Plan was amended and updated to extend the planning timeframe through 2032 and to adopt updates to the future land use map and maximum development program within the RCID Jurisdictional Lands for the timeframe 2022-2032; and

**WHEREAS**, this Agreement is needed to establish and vest in Master Developer certain development rights and entitlements for the Project that Master Developer will be able to rely on for the life of this Agreement; and

**WHEREAS**, Sections 163.3220-163.3243, Florida Statutes (the "**Florida Local Government Development Agreement Act**"), authorize local governments and developers to enter into certain types of development agreements, with an initial duration of up to thirty (30) years, to provide certainty to both parties in terms of current and future processes and entitlements; and

**WHEREAS**, development agreements pursuant to the Florida Local Government Development Agreement Act are a common tool for developers and local governments in the State of Florida, especially with respect to long-term, multi-phase projects like Walt Disney World; and

**WHEREAS**, in accordance with Section 163.3229 of the Florida Local Government Development Agreement Act, the Parties have agreed on a period of thirty (30) years to allow development on the Property of the maximum development program as defined below in **TABLE 1** (hereinafter referred to as the "**Maximum Development Program**"); and

**NOW, THEREFORE**, in consideration of the mutual terms, covenants and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, it is mutually agreed as follows:

## I.   PURPOSE AND AUTHORITY

(A)   <u>Recitals</u>.  The recitals set forth above are true and correct and are incorporated into this Agreement by reference.

2

(B)  Purpose.  The purpose of this Agreement is three-fold:

1)  It will provide a binding written agreement between the Parties for the long-term development of the Property and Project in order to vest the Maximum Development Program and to provide certainty to Master Developer; and

2)  It will stipulate the provision of necessary public facilities by RCID that will be in place concurrent with the demand of the Maximum Development Program as it is constructed; and

3)  It will provide clarification for how the Comprehensive Plan and RCID LDRs will apply to the Project, both now and in the future.

(C)  Authority for Agreement.  This Agreement is entered into pursuant to the authority of the Florida Local Government Development Agreement Act, which consists of Sections 163.3220-163.3243, Florida Statutes. The authority under those sections is supplemental and additional to the powers conferred upon local governments by other laws and it encourages sound capital improvement planning and financing and a commitment to long-term comprehensive planning.

## II.  APPROVED LAND USE AND DEVELOPMENT RIGHTS

(A)  Land Use and Project Entitlements.  The RCID Jurisdictional Lands consist of land uses as set forth in and consistent with the Future Land Use Map (defined below) and are approved for the Maximum Development Program identified in **TABLE 1** below. The densities and intensities of the Project are identified and described in **TABLE 2** below.

(B)  Maximum Building Heights.  Building heights are to be controlled and approved by Master Developer in order to protect the immersive nature and aesthetic character of the theme parks and attractions either currently existing or to be built on the Property. Absent specific Master Developer approval, the maximum building heights on the Property are controlled by the Federal Aviation Administration (FAA) height standards and any waiver or variance from said standards as approved by the FAA.

(C)  Provision of Necessary Public Facilities.  In order to facilitate the implementation of and provide adequate levels of service for the Maximum Development Program, certain public infrastructure systems will require new facilities and/or expansions of existing facilities (hereinafter referred to as the **"Public Facilities"**). The Public Facilities are listed in the Capital Improvement Element of the Comprehensive Plan a copy of which is attached hereto and incorporated herein as **EXHIBIT 3**, and will be funded, designed and constructed or caused to be constructed by RCID.  Any land required for the Public Facilities that is owned by Master Developer shall be dedicated to RCID, or other public entity, as required. Compensation for said land dedication shall be negotiated between parties at the time of transfer but in no event shall Master Developer request payment for the land in excess of fair market value as determined by a Member of the Appraisal Institute (MAI) real estate appraiser, jointly selected by the Parties.

**TABLE 1** –Maximum Development Program
(RCID Comprehensive Plan, FLUE Table 2-1 – Additional Approved Development Through 2032)

| Uses | Comp Plan Future Land Use Where Permitted | 2020 Base Condition (Existing)[1] | Add'l Approved Through 2032 | Total Existing & Approved |
|---|---|---|---|---|
| Hotels/Resorts | Mixed Use Hotel/Resort Commercial Entertainment | 39,232 Keys | 14,000 Keys | 53,232 Keys |
| Office | Mixed Use Commercial | 1,004,521 SF | 150,000 SF | 1,154,521 SF |
| Retail/Restaurant | Mixed Use Commercial | 1,463,222 SF | 1,000,000 SF | 2,463,222 SF |
| Major Theme Parks | Mixed Use Entertainment | 4 Parks | 1 Park | 5 Parks |
| Minor Theme Parks | Mixed Use Entertainment | 3 Parks | 2 Parks | 5 Parks |

(1) Does not include 2020 Base Condition Uses stricken in 2022 CPA (e.g., 81 Holes of Golf)

**TABLE 2** – Average Land Use Densities and Intensities for Existing Development
(RCID Comprehensive Plan, FLUE Table 2-5)

| Land Use | | Developed Acreage | Units | Density / Intensity |
|---|---|---|---|---|
| Residential | | 20 | 17 DU | 1.18 DU/Acre |
| Commercial | | | | |
| | Office/Retail/ Restaurant | 303 | 2,683,907 SF | 0.20 FAR |
| Hotel/Resort | | | | |
| | Hotels and Resorts | 2,559 | 39,232 | 15.3 Keys/Acre |
| | Golf Courses | 816 | 81 | 10.1 Holes/Acre |
| Entertainment | | | | |
| | Major Theme Park | 1,916 | 4 parks | 479 Acres/Park |
| | Minor Theme Park | 446 | 3 parks | 149 Acres/Park |

*Note: DU = Dwelling Units / FAR = Floor Area Ratio*

**Table 2** depicts the existing density of development in RCID. As the supply of undeveloped land becomes smaller, new development is projected to occur at somewhat higher densities or on somewhat smaller sites. Infill development within existing activity areas will also tend to increase the overall density of developed areas. While there will be exceptions to this assumption, the overall trend is expected to be towards more dense development.

(D)     Master Development Program Changes and Master Developer Rights.

1)     The allowed land uses within the RCID Jurisdictional Lands are determined by the Future Land Use Map in the Comprehensive Plan (the "**Future Land Use Map**") and Chapter 2-20 of the RCID LDRs.

2)     Master Developer is the master developer for the Project. The Parties agree that all of the development rights and entitlements, including, without limitation, those applicable to all additional approved development through 2032, as established by the Master Development Program identified in **TABLE 1** (collectively, the "**Master Development Rights and Entitlements**") are vested in Master Developer and that Master Developer owns and controls such Master Development Rights and Entitlements.  Master Developer may assign portions of the Master Development Rights and Entitlements to other landowners and/or ground lessees within the RCID Jurisdictional Lands. Any proposed development that utilizes any of the Master Development Rights and Entitlements requires the prior written approval of Master Developer. Master Developer shall be responsible for maintaining an accounting of the Master Development Rights and Entitlements that have been used and the Master Development Rights and Entitlements that are unused and available for use.

(E)     Environmental Long Term Permits Mitigation Credits. In order to facilitate environmentally protective and sustainable development, the Parties previously collaborated in the procurement of federal and state level environmental permits entitling RCID Jurisdictional Lands and RCID's extra-jurisdictional boundaries (EJB) with unique and beneficial development rights and privileges (collectively referred to as the "**Long Term Permits**")[1].  Specifically, Master Developer sought and received, all at Master Developer's cost but benefiting the entire RCID Jurisdictional Lands, approvals from U.S. Fish and Wildlife Service and Florida Fish and Wildlife Conservation Commission governing the protection and relocation of threatened and endangered species and requisite mitigation for same.  Master Developer similarly pursued and received approval of a comprehensive and forward-looking federal dredge and fill entitlement framework through the U.S. Army Corps of Engineers and U.S. Environmental Protection Agency, creating a site-specific wetland credit mitigation bank via the acquisition, restoration and perpetual management of what is now known as Disney's Wilderness Preserve and Mira Lago. Master Developer and RCID collaboratively pursued approvals from South Florida Water Management District (SFWMD) for a MSSW (Management and Storage of Surface Waters) and ultimately an ERP Conceptual Permit entitling the RCID Jurisdictional Lands and EJB.  The SFWMD Permit (as defined in footnote 1) utilizes the same mitigation credit bank referenced above, as developed and managed by Master Developer. The mitigation credits obtained and maintained through the Long Term Permits are collectively referred to herein as the "**LTP Mitigation Credits**".

---

[1] The Long Term Permits specifically include, without limitation, the following: South Florida Water Management District (SFWMD) Permit: #48-00714-S, dated September 10, 1992 (the "**SFWMD Permit**"); Army Corps of Engineers Permit: #199101901 (IP-GS), dated December 21, 1992; and State of Florida Game and Fresh Water Fish Commission Permit No. OSC-4, dated November 12, 1992, Permit No. OSC-SSC-1, dated July 19, 1994 and Permit No. OSC-TSR-1, dated August 9, 1994, issued under the authority of the Wildlife Code of the State of Florida (Chapter 39, Florida Administrative Code).

1)      Given the above, the Parties agree that the LTP Mitigation Credits, including, without limitation, those LTP Mitigation Credits created through South Florida Water Management District Environmental Resource Permits Nos. 48-00714-S and 48-00714-S-22 are vested in Master Developer and that Master Developer is solely entitled to utilize the same. No other entity may use the LTP Mitigation Credits without prior written authorization from Master Developer RCID shall request and must receive written approval from Master Developer to allow for the use of any threatened or endangered species mitigation and/or any use of wetland impacts or LTP Mitigation Credits prior to filing any application for modifications of said permits that seek to impact wetlands affected by these Long Term Permits. As and when Master Developer seeks to use any of the LTP Mitigation Credits, RCID shall promptly cooperate as necessary to allow Master Developer's use of the LTP Mitigation Credits consistent with the Master Development Program, including, without limitation, executing and submitting the appropriate permit applications and any other necessary documentation to allow for such use of LTP Mitigation Credits. RCID shall neither prohibit nor impede the use of the LTP Mitigation Credits by Master Developer for development in accordance with the Maximum Development Plan nor require any additional mitigation.

## III.   DEVELOPMENT REVIEW, UTILITIES AND REQUIRED PERMITS

(A)     Development Review.  Any proposed development utilizing the Maximum Development Program (see **TABLE 1**) must follow the development review and approval process as defined in the RCID LDRs.

(B)     Public Facilities.  Public Facilities that serve the Project, including, but not limited to, potable water, sanitary sewer, and solid waste management, are provided by RCID.  Public Facilities will be addressed consistent with **EXHIBIT 3** for the Public Facilities identified in such Exhibit.

(C)     Development Permits Required.  Attached as **EXHIBIT 4** is a list of local development permits required to develop the Property and the Project.  The failure of this Agreement to address a particular permit, condition, term, or restriction shall not relieve Master Developer of the necessity of complying, and Master Developer agrees to comply, with the laws, ordinances and regulations governing said permitting requirements, conditions, term or restrictions.

## IV.    GOVERNING LAWS AND POLICIES.

This Agreement establishes the standards that apply to the Property and the Project and if there is any conflict between the Agreement and the Comprehensive Plan or RCID LDRs this Agreement shall prevail.   Furthermore, for Comprehensive Plan goals, objectives and policies and RCID LDRs not in conflict with this Agreement, the version of the Comprehensive Plan, RCID LDRs and other local government laws and policies governing the development of the Property in effect at the time of execution of this Agreement shall govern the development of the Property and the Project for the duration of this Agreement. RCID may apply subsequently adopted laws and policies to the development subject to this Agreement, only if RCID has followed the procedures set forth in Chapter 163.3233, Florida Statutes.

## V.     MORATORIA.

No moratorium, ordinance, resolution or other land development regulation or limitation on the rate, timing or sequencing of the development of the Project shall

7

apply to or govern the development of the Project in accordance with the Master Development Program during the term hereof, whether affecting building permits, occupancy permits, or other entitlements to be issued by RCID. In the event of any such action, Master Developer shall continue to be entitled to apply for an receive development approvals in accordance with the RCID LDRs and other local government laws and policies governing the development of the Property and the Project in effect at the time of execution of this Agreement and the terms of this Agreement.

**VI.   COMPREHENSIVE PLAN.**  Pursuant to the terms and conditions of this Agreement, RCID finds that the Project, as proposed in this Agreement, is consistent with the Comprehensive Plan and RCID LDRs.  Master Developer agrees that any development proposals utilizing development rights from this Agreement will be reviewed for consistency with the Comprehensive Plan and RCID LDRs in effect at the time of this Agreement unless amended per Section IV.

**VII.   NO LIEN OR ENCUMBRANCE.**  Nothing herein shall be construed as creating a lien or other encumbrance on or with respect to title to the Property (or any portion thereof).

**VIII.   DURATION.**  The duration of this Agreement shall be thirty (30) years from its effective date but may be extended by mutual consent of RCID and Master Developer and subject to a public hearing pursuant to Chapter 163.3229, Florida Statutes, or through extensions filed pursuant to Chapter 252.363, Florida Statutes.

**IX.   BINDING EFFECT.**  The burdens of this Agreement shall be binding upon, and the benefits of this Agreement shall inure to, all successors and assigns of each party.

**X.   GOVERNING LAW.**  This Agreement, and the rights and obligations of the Parties hereunder, shall be governed by, construed under and enforced in accordance with the laws of the State of Florida. Preparation of this Agreement has been a joint effort of the Parties and the resulting document shall not, solely as a matter of judicial construction, be construed more severely against a party to the Agreement.

**XI.   SEVERABILITY.**  If any provision of this Agreement, or the application thereof to any person or circumstances, shall to any extent be held invalid or unenforceable by a court (or other government body) of competent jurisdiction, then the remainder of this Agreement shall be valid and enforceable to the fullest extent permitted by law. Any provision(s) held wholly or partly invalid or unenforceable shall be deemed amended, and the court or other government body is authorized to reform the provision(s) to the minimum extent necessary to render them valid and enforceable in conformity with the Parties' intent as manifested herein.

**XII.   MODIFICATION OR CANCELLATION.**  Modification or cancellation of all or any portion of this Agreement without either the express written consent of Master Developer or in accordance with Section 163.3235, Florida Statutes, shall be considered per se a modification or cancellation of the allowable uses and entitlements to Master Developer's legal and equitable interest in the Property.

**XIII.   EXHIBITS.**  Unless otherwise provided in this Agreement, all exhibits are incorporated herein by reference.

**XIV.   CAPTIONS FOR PARAGRAPH HEADINGS.**  Captions and paragraph headings

contained in this Agreement are for convenience and reference only, and in no way define, describe, extend or limit the scope or intent of this Agreement, nor the intent of any provision hereof.

**XV.   COUNTERPARTS.** This Agreement may be executed in several counterparts, each constituting a duplicate original, but all such counterparts constituting one and the same instrument.

**XVI.  ASSIGNABILITY.** This Agreement may be wholly or partially assigned by Master Developer to one or more third parties.

**XVII. EFFECTIVE DATE.** This Agreement is effective on the date that a fully-executed copy is filed in the Official Records of the Orange County Comptroller and the Official Records of the Osceola County Comptroller.

**XVIII. TERMINATION.** This Agreement shall terminate in thirty (30) years from its effective date, unless extended which includes, without limitation, extensions filed pursuant to Section 252.363, Florida Statutes, or may be terminated by mutual consent of the Parties.

**XIX.  AMENDMENTS.** This Agreement may be amended by mutual consent of the Parties or by their successors in interest so long as amendments meet the requirements of Section 163.3237, Florida Statutes. All amendments to this Agreement will be adopted as an amended and restated version and when an amendment goes into effect then all prior versions of this Agreement shall be null and void.

**XX.   NO THIRD PARTY CONSENT REQUIRED.** No one other than the Parties or their successors in interest may seek an amendment to this Agreement and no consent of any other parties shall be required.

**XXI. EFFECT ON EXISTING DEVELOPMENT.** Nothing in this Agreement terminates, rescinds, cancels, or modifies allowable uses or entitlements vested with any other property owners subject to the jurisdiction of RCID.

**XXII. FURTHER ASSURANCES.** Each of the Parties hereto agrees to do, execute, acknowledge and deliver, or cause to be done, executed, acknowledged and delivered, all such further acts and assurances as shall be reasonably requested by the other party in order to carry out the intent of this Agreement and give effect thereto. Without in any manner limiting the specific rights and obligations set forth in this Agreement, the Parties hereby declare their intention to cooperate with each other in effecting the terms of this Agreement, and to coordinate the performance of their respective obligations under the terms of this Agreement.

**XXIII.  NOTICES.** Any notices or reports required by this Agreement shall be sent to the following:

For the Reedy Creek Improvement District:

Reedy Creek Improvement District
Attention: District Administrator
1900 Hotel Plaza Blvd.
Lake Buena Vista, Florida 32830

With a copy to:

Milgrim Law Group
Attention: Edward G. Milgrim
3216 Corrine Drive
Orlando, Florida 32803

For Master Developer:

Walt Disney Parks and Resort U.S., Inc.
c/o Walt Disney Imagineering
Attention: Site Portfolio Executive – WDW
WDI EPCOT Main Building, Floor 1
1365 Avenue of the Stars
Lake Buena Vista, Florida 32830

With a copy to:

Walt Disney Parks and Resorts U.S., Inc.
c/o Walt Disney World – Legal Department
Attention: Chief Counsel
Team Disney, 4th Floor North
1375 Lake Buena Vista Drive
Lake Buena Vista, Florida 32830

**XXIV. PUBLIC HEARINGS.**   This Agreement was approved by the Reedy Creek Improvement District Board of Supervisors after two properly noticed public hearings before the Board on January 25, 2023 and February 8, 2023.

**[THE BALANCE OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]**

**[SIGNATURES ON FOLLOWING PAGES.]**

**IN WITNESS WHEREOF,** the Parties hereto, through their duly authorized representatives, have executed this Agreement as of the date set forth below.

WITNESSES:

**WALT DISNEY PARKS AND RESORTS U.S., INC.,** a Florida corporation

_Jennifer Opitz_
(Witness Signature)

_Jennifer Opitz_
(Witness Printed Name)

By: _John McGowan_

Print Name: _John McGowan_

Title: _Vice President_

Date: _February 8, 2023_

_Kimberly Sez_
(Witness Signature)

_Kimberly Sanchez_
(Witness Printed Name)

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing instrument was acknowledged before me by means of ✓ physical presence or _____ online notarization this _8th_ day of _Feb._, 2023 by _John McGowan_ as _Vice President_ of Walt Disney Parks and Resorts U.S., Inc., a Florida corporation, who is ✓ personally known to me or _____ who has produced _____ as identification.

[Notary Seal:
Notary Public State of Florida
Jennifer I Opitz
My Commission GG 982408
Expires 05/29/2024]

_Jennifer I Opitz_
Notary Public

_____
Name (typed, printed or stamped)

11

**REEDY CREEK IMPROVEMENT DISTRICT**,
a public corporation and public body corporate and
politic of the State of Florida
By: Board of Supervisors

By: _____

Print Name: _John H. Classe, Jr_

Title: _District Administrator_

Date: _2|8|23_

ATTEST:

_____     Date: _2|8|23_
DISTRICT CLERK

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing instrument was acknowledged before me by means of ☑ physical presence
or ___ online notarization this 8th day of February, 2023 by John H. Classe, Jr.
as District Administrator of Reedy Creek Improvement District, a public corporation
and public body corporate and politic of the State of Florida, who is ☑ personally known to me
or ___ who has produced _____ as identification.

_Ilana Perras_
Notary Public
_Ilana Perras_
Name (typed, printed or stamped)

ILANA PERRAS
MY COMMISSION # HH 289477
EXPIRES: November 18, 2026

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing instrument was acknowledged before me by means of ☑ physical presence
or ___ online notarization this 8th day of February, 2023 by Tina Graham
as District Clerk of Reedy Creek Improvement District, a public corporation and public body
corporate and politic of the State of Florida, who is ☑ personally known to me or ___ who has
produced _____ as identification.

_Ilana Perras_
Notary Public
_Ilana Perras_
Name (typed, printed or stamped)

ILANA PERRAS
MY COMMISSION # HH 289477
EXPIRES: November 18, 2026

12

## LIST OF EXHIBITS

**Exhibit 1**     **Legal Description**

**Exhibit 2**     **Location Map**

**Exhibit 3**     **Capital Improvements Schedule**

**Exhibit 4**     **List of Required Local Development Permits**

# EXHIBIT 1
## LEGAL DESCRIPTION

The Property is defined as the following property less and except any portions of the following property that are, as of the Effective Date of this Agreement, owned in fee simple by a party other than RCID or Master Developer. If, during the Term of this Agreement, Master Developer obtains ownership of any portions of the following property that are owned in fee simple by a party other than RCID or Master Developer as of the Effective Date of this Agreement, such property shall be deemed to be and treated as part of the Project.

**(See attached 56 page legal description)**

DESCRIPTION OF
DEVELOPERS' AGREEMENT
IN ORANGE COUNTY, FLORIDA

A parcel of land lying in Sections 1 through 3, 8 through 17, 19 through 28, 33 through 36 Township 24 South, Range 27 East, and Sections 6 through 8, 17 through 22, 27 through 31, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Begin at the Southwest corner of the Northwest 1/4 of the Southwest 1/4 of Section 6, Township 24 South, Range 28 East run N 00°00'22" E, 1327.43 feet along the West line of Section 6 to the Northwest corner of the Southwest 1/4 of said Section 6; thence N 89°27'45" E, 1997.50 feet along the North line of the South half of Section 6, to the Southwest corner of the East 1/2 of the Southeast 1/4 of the Northwest 1/4 of Section 6, thence N 00°20'35" W, 1154.75 feet along the West line of the East 1/2 of the Southeast 1/4 of the Northwest 1/4 of Section 6; thence N 89°38'50" E, 663.64 feet along a line that is 165.00 feet South of and parallel to the North line of the Southeast 1/4 of the Northwest 1/4 of Section 6; thence N 89°11'34" E, 148.62 feet +/- along a line parallel to and 165.00 feet South of the North line of the Southwest 1/4 of the Northeast 1/4 of Section 6 to a point on the Westerly shore line of Lake Mable; thence meander the shore line of Lake Mable in a Southerly direction, to a point on the South line of Section 6 and the North line of Section 7, Township 24 South, Range 28 East, said point being S 16°20'10" W, 3981.97 feet more or less from the previously described point, and also lying N 89°31'17" E, 1683.05 feet from the Southwest corner of Section 6; thence continue along the shore line of Lake Mable in a Southeasterly and Northeasterly direction across the North 1/4 of Section 7, to the North line of Section 7 and the South line of Section 6, Township 24 South, Range 28 East, said point being N 89°31'17" E, along the North section line of Section 7, 1381.64 feet from the previously described point and lying S 89°31'17" W, 2304.35 feet from the Northeast corner of Section 7; thence continue to meander the shore line of Lake Mable in a Northeasterly direction across the Southeast 1/4 of Section 6, Township 24 South, Range 28 East to a point on said shoreline which is intersected by the North line of the South half of the Southeast 1/4 of Section 6, said point being N 25°14'10" E, 1475.82 feet from the previously described point; thence N 89°29'30" E, along said North line of the South half of the Southeast 1/4 of Section 6, 1679.89 feet to the East section line thereof; thence S 00°12'20" W, 1330.62 feet along the East line of Section 6 to the Southeast corner of Section 6 and the Northwest corner of Section 8, Township 24 South, Range 28 East; thence N 89°21'03" E along the North line of Section 8, 191.58 feet more or less to a point on the West shore line of South Lake; thence meander the shore line of South Lake in a Southwesterly, Southeasterly and Northeasterly direction to a point where the shore line of South Lake intersects the East line of the West half of the West half of Section 8; said point being S 25°17'13" E, 2679.01 feet more or less from the previously described point; thence S 00°13'59" W, 221.07 feet to the Northeast corner of the Northwest 1/4 of the Southwest 1/4 of Section 8; thence S 00°06'21" E along the East line of the West half of the Southwest 1/4 of Section 8, 1334.85 feet to the Southeast corner of the Northwest 1/4 of the Southwest 1/4 of Section 8; thence S 88°48'04" W, 1111.09 feet to a point of curvature of a curve concave Southeasterly having a radius of 545.08 feet, and a central angle of 81°15'08"; thence run Southwesterly along the arc of said curve, 772.99 feet; to a point of reverse curvature of a curve concave Northerly having a radius of 80.00 feet, and a central angle of 128°43'50"; thence run Westerly along the arc of said curve, 179.74 feet; thence S 43°40'59" E, 16.92 feet; thence S 34°38'41" E, 8.13 feet; thence S 25°16'40" E, 86.79 feet; thence S 28°57'56" E, 106.03 feet; thence S 58°01'53" E, 87.73 feet; thence N 85°59'29" E, 134.58 feet to a point of curvature of a curve concave Southerly having a radius of 425.00 feet, and a central angle of 23°29'59"; thence run Easterly along the arc of said curve, 174.31 feet; to a point of compound curvature of a curve concave Southwesterly having a radius of 15.00 feet, and a central angle of 46°20'48"; thence run Southeasterly along the arc of said curve, 12.13 feet; to a point of compound curvature of a curve concave

Westerly having a radius of 425.00 feet, and a central angle of 16°33'54"; thence run Southerly along the arc of said curve, 122.87 feet; to a point of compound curvature of a curve concave Westerly having a radius of 25.00 feet, and a central angle of 51°32'25"; thence run Southerly along the arc of said curve, 22.49 feet; thence S 43°56'36" W, 91.06 feet; thence S 64°40'37" W, 105.25 feet; thence S 40°45'32" W, 117.42 feet; thence S 13°26'04" W, 97.39 feet; thence S 42°14'20" W, 133.97 feet; thence S 68°59'11" W, 89.71 feet; thence S 28°50'44" W, 77.77 feet; thence S 14°52'47" W, 88.32 feet; thence S 01°59'29" E, 106.28 feet; thence S 24°42'46" W, 241.59 feet; thence S 36°55'50" W, 126.64 feet; thence S 24°03'44" W, 71.01 feet to a point of curvature of a curve concave Northwesterly having a radius of 25.00 feet, and a central angle of 40°55'45"; thence run Southwesterly along the arc of said curve, 17.86 feet; thence S 64°59'30" W, 91.68 feet to a point of curvature of a curve concave Northerly having a radius of 25.00 feet, and a central angle of 46°29'32"; thence run Westerly along the arc of said curve, 20.29 feet; thence N 68°30'58" W, 131.37 feet; thence N 34°57'28" W, 145.43 feet; thence N 10°44'04" W, 144.09 feet; thence N 10°34'18" E, 129.55 feet; thence N 44°03'35" E, 129.67 feet; thence N 86°35'32" E, 100.03 feet; thence N 62°48'18" E, 100.08 feet; thence N 58°16'14" E, 95.99 feet; thence N 15°01'47" E, 86.03 feet; thence N 14°30'32" W, 104.94 feet; thence N 03°06'23" W, 111.09 feet; thence N 07°32'42" E, 68.01 feet; thence N 15°14'13" W, 80.67 feet; thence N 87°12'48" W, 40.11 feet; thence S 77°42'57" W, 84.88 feet; thence S 74°44'47" W, 66.79 feet; thence S 35°20'27" W, 90.33 feet; thence S 22°58'13" W, 87.94 feet; thence S 20°05'22" W, 168.18 feet; thence S 65°39'23" W, 108.46 feet; thence N 79°02'16" W, 146.86 feet; thence S 44°41'24" W, 85.24 feet; thence S 66°58'59" W, 80.82 feet; thence N 89°03'00" W, 96.88 feet; thence S 84°18'13" W, 51.79 feet; thence S 77°56'53" W, 116.91 feet; thence S 70°14'00" W, 84.26 feet; thence N 63°52'48" W, 163.26 feet; thence N 71°49'57" W, 91.32 feet; thence N 56°38'48" W, 106.72 feet; thence N 37°38'37" W, 96.72 feet; thence N 69°48'38" W, 85.22 feet; thence N 85°15'14" W, 95.72 feet; thence N 76°56'11" W, 104.56 feet; thence S 28°55'14" W, 152.44 feet; thence S 13°45'44" E, 47.73 feet to a point of curvature of a curve concave Westerly having a radius of 75.00 feet, and a central angle of 30°06'13"; thence run Southerly along the arc of said curve, 39.41 feet; to a point of reverse curvature of a curve concave Northeasterly having a radius of 45.00 feet, and a central angle of 99°54'55"; thence run Southeasterly along the arc of said curve, 78.47 feet; to a point of reverse curvature of a curve concave Southwesterly having a radius of 250.00 feet, and a central angle of 55°31'16"; thence run Southeasterly along the arc of said curve, 242.26 feet; thence S 28°03'11" E, 95.35 feet to a point of curvature of a curve concave Westerly having a radius of 125.00 feet, and a central angle of 59°41'01"; thence run Southerly along the arc of said curve, 130.21 feet; thence S 31°37'50" W, 165.37 feet; thence S 51°01'41" E, 83.54 feet to a point on a non-tangent curve concave Southeasterly having a radius of 676.49 feet, and a central angle of 29°43'07"; thence from a tangent bearing of N 50°17'44" E run Northeasterly along the arc of said curve, 350.89 feet; thence S 35°59'30" E, 246.14 feet; thence S 55°37'13" E, 316.45 feet; thence S 68°44'46" E, 336.44 feet to a point on a non-tangent curve concave Southerly having a radius of 399.38 feet, and a central angle of 09°53'41"; thence from a tangent bearing of N 79°13'56" E run Easterly along the arc of said curve, 68.97 feet; to a point of reverse curvature of a curve concave Northerly having a radius of 137.63 feet, and a central angle of 14°21'49"; thence run Easterly along the arc of said curve, 34.50 feet; thence S 03°57'40" W, 60.74 feet to a point on a non-tangent curve concave Southerly having a radius of 344.38 feet, and a central angle of 04°15'11"; thence from a tangent bearing of S 86°02'20" E run Easterly along the arc of said curve, 25.56 feet; to a point of compound curvature of a curve concave Southerly having a radius of 132.00 feet, and a central angle of 26°04'01"; thence run Easterly along the arc of said curve, 60.05 feet; to a point on a non-tangent curve concave Southwesterly having a radius of 184.37 feet, and a central angle of 31°44'00"; thence from a tangent bearing of S 49°44'21" E run Southeasterly along the arc of said curve, 102.11 feet; to a point of compound curvature of a curve concave Westerly having a radius of 679.36 feet, and a central angle of 08°51'48"; thence run Southerly along the arc of said curve, 105.09 feet; to a point of reverse curvature of a curve concave Easterly having a radius of 437.18 feet, and a central angle of 18°37'07"; thence run Southerly along the arc of said curve,

142.06 feet; to a point of compound curvature of a curve concave Northeasterly having a radius of 395.25 feet, and a central angle of 18°13'39"; thence run Southeasterly along the arc of said curve, 125.74 feet; to a point of reverse curvature of a curve concave Southwesterly having a radius of 645.09 feet, and a central angle of 03°21'33"; thence run Southeasterly along the arc of said curve, 37.82 feet; thence N 82°18'14" W, 71.09 feet; thence N 51°44'44" W, 65.78 feet; thence N 80°24'25" W, 90.39 feet; thence S 48°32'46" W, 80.93 feet; thence S 22°55'38" W, 113.12 feet; thence S 27°19'16" E, 55.45 feet; thence S 18°40'56" W, 159.75 feet; thence S 10°48'30" W, 160.42 feet to a point of curvature of a curve concave Easterly having a radius of 223.65 feet, and a central angle of 59°02'33"; thence run Southerly along the arc of said curve, 230.47 feet; to a point on the Northerly and Easterly boundary of Tract R, Golden Oak Phase 1B according to the Plat thereof recorded in Plat Book 75, Pages 3 through 15 of the Public Records of Orange County, a non-tangent curve concave Northerly having a radius of 25.00 feet, and a central angle of 64°13'48"; thence from a tangent bearing S 49°58'05" E run Easterly along the arc of said curve, 28.17 feet; thence N 65°28'07" E, 122.36 feet; thence N 76°27'23" E, 76.59 feet to a point of curvature of a curve concave Northwesterly having a radius of 25.00 feet, and a central angle of 25°14'16"; thence run Northeasterly along the arc of said curve, 11.01 feet; thence S 78°11'38" E, 85.68 feet to a point on a non-tangent curve concave Easterly having a radius of 1010.00 feet, and a central angle of 07°58'42"; thence from a tangent bearing S 11°48'22" W run Southerly along the arc of said curve, 140.64 feet; to a point on a non-tangent curve concave Southwesterly having a radius of 25.00 feet, and a central angle of 87°13'52"; thence from a tangent bearing of N 03°49'41" E run Northwesterly along the arc of said curve, 38.06 feet; thence N 83°24'11" W, 42.54 feet to a point of curvature of a curve concave Southerly having a radius of 221.37 feet, and a central angle of 29°07'38"; thence run Westerly along the arc of said curve, 112.54 feet; to a point of reverse curvature of a curve concave Northerly having a radius of 132.76 feet, and a central angle of 48°16'12"; thence run Westerly along the arc of said curve, 111.85 feet; to a point on a non-tangent curve concave Northeasterly having a radius of 234.18 feet, and a central angle of 14°51'36"; thence from a tangent bearing N 64°15'37" W run Northwesterly along the arc of said curve, 60.74 feet; thence S 24°23'32" E, 34.06 feet; thence S 18°04'39" E, 78.70 feet to a point on a non-tangent curve concave Northwesterly having a radius of 25.00 feet, and a central angle of 115°40'49"; thence from a tangent bearing of S 17°50'29" E run Southwesterly along the arc of said curve, 50.48 feet; thence N 82°09'40" W, 26.47 feet; thence S 26°43'01" W, 107.99 feet; thence S 13°53'13" W, 84.71 feet; thence S 20°06'37" W, 86.21 feet; thence S 22°42'17" W, 90.27 feet; thence S 48°33'38" W, 93.96 feet; thence S 51°48'05" W, 58.47 feet; thence S 70°41'52" W, 98.39 feet; thence S 75°48'30" W, 82.70 feet; thence N 82°22'12" W, 18.57 feet; thence S 59°48'12" W, 61.99 feet; thence S 23°48'42" W, 31.41 feet; thence S 21°34'58" E, 112.96 feet; thence S 25°04'56" E, 80.36 feet; thence S 06°58'19" E, 51.79 feet to a point of curvature of a curve concave Westerly having a radius of 25.00 feet, and a central angle of 54°17'13"; thence run Southerly along the arc of said curve, 23.69 feet; thence S 47°18'54" W, 37.10 feet; thence S 03°48'45" E, 24.29 feet to a point of curvature of a curve concave Northwesterly having a radius of 25.00 feet, and a central angle of 79°16'52"; thence run Southwesterly along the arc of said curve, 34.59 feet; thence S 75°28'07" W, 70.19 feet to a point of curvature of a curve concave Northerly having a radius of 25.00 feet, and a central angle of 41°16'24"; thence run Westerly along the arc of said curve, 18.01 feet; thence N 63°15'30" W, 63.09 feet to a point on the Easterly right-of-way of RCID canal L-105 as described in Official Records Book 1896, Page 232 of the Public Records of Orange County Florida, and a non-tangent curve concave Easterly having a radius of 1505.50 feet, and a central angle of 37°08'46"; thence from a tangent bearing of S 03°51'20" E run Southerly along the arc of said curve and right-of-way, 976.05 feet; thence continue along said right-of-way S 41°00'06" E, 193.39 feet; thence S 48°59'54" W, 100.00 feet to a point on the westerly right-of-way of said Canal; thence departing said Canal run, N 87°15'41" W, 130.57 feet; thence N 63°21'34" W, 33.90 feet; thence N 81°08'52" W, 154.09 feet; thence N 39°33'00" W, 38.53 feet; thence N 28°54'14" W, 86.79 feet; thence N 28°30'43" W, 101.63 feet; thence N 32°36'46" W, 77.00 feet; thence N 39°30'36" W, 98.30 feet to a point of curvature of a curve concave Easterly having a radius

of 25.00 feet, and a central angle of 37°14'40"; thence run Northerly along the arc of said curve, 16.25 feet; thence N 02°15'56" W, 56.50 feet; thence N 39°36'59" W, 135.27 feet; thence N 85°04'00" W, 67.65 feet to a point of curvature of a curve concave Northeasterly having a radius of 25.00 feet, and a central angle of 46°40'29"; thence run Northwesterly along the arc of said curve, 20.37 feet; thence N 38°23'30" W, 64.62 feet; thence N 64°16'04" W, 16.33 feet to a point of curvature of a curve concave Northeasterly having a radius of 25.00 feet, and a central angle of 58°38'45"; thence run Northwesterly along the arc of said curve, 25.59 feet; thence N 05°37'20" W, 20.54 feet; thence N 44°31'28" W, 62.56 feet; thence S 23°42'54" W, 95.95 feet to a point of curvature of a curve concave Northwesterly having a radius of 25.00 feet, and a central angle of 84°46'10"; thence run Southwesterly along the arc of said curve, 36.99 feet; thence N 71°30'56" W, 65.59 feet; thence N 67°45'46" W, 71.42 feet; thence N 47°09'12" W, 129.61 feet; thence N 28°09'10" W, 67.04 feet to a point of curvature of a curve concave Easterly having a radius of 25.00 feet, and a central angle of 58°17'03"; thence run Northerly along the arc of said curve, 25.43 feet; thence N 30°07'52" E, 66.18 feet; thence N 41°27'39" E, 82.62 feet; thence N 28°03'16" E, 61.53 feet; thence N 21°03'09" W, 47.93 feet; thence N 17°13'11" W, 99.26 feet; thence N 00°32'57" E, 48.45 feet; thence N 12°21'10" E, 151.79 feet; thence N 23°46'35" E, 109.94 feet; thence N 39°26'51" E, 91.52 feet; thence N 17°00'45" E, 45.16 feet; thence N 34°56'26" W, 27.03 feet; thence N 26°29'23" W, 104.81 feet; thence S 48°40'54" W, 30.14 feet to a point on a non-tangent curve concave Southerly having a radius of 7.86 feet, and a central angle of 78°20'37"; thence from a tangent bearing of N 28°56'03" W run Westerly along the arc of said curve, 10.75 feet; to a point of compound curvature of a curve concave Southeasterly having a radius of 19.64 feet, and a central angle of 36°52'37"; thence run Southwesterly along the arc of said curve, 12.64 feet; to a point of compound curvature of a curve concave Easterly having a radius of 3.95 feet, and a central angle of 74°25'35"; thence run Southerly along the arc of said curve, 5.13 feet; thence S 38°34'51" E, 13.88 feet; thence S 51°58'30" W, 145.54 feet; thence N 37°57'09" W, 16.70 feet to a point on a non-tangent curve concave Northeasterly having a radius of 1080.42 feet, and a central angle of 20°21'16"; thence from a tangent bearing of N 48°06'54" W run Northwesterly along the arc of said curve, 383.82 feet; thence N 37°56'18" W, 17.87 feet; thence N 30°54'21" W, 193.79 feet to a point on a non-tangent curve concave Southeasterly having a radius of 762.70 feet, and a central angle of 08°52'54"; thence from a tangent bearing of S 63°58'49" W run Southwesterly along the arc of said curve, 118.23 feet; thence S 55°05'55" W, 58.77 feet to a point of curvature of a curve concave Southeasterly having a radius of 160.82 feet, and a central angle of 19°16'01"; thence run Southwesterly along the arc of said curve, 54.08 feet; to a point of reverse curvature of a curve concave Northwesterly having a radius of 159.35 feet, and a central angle of 36°15'00"; thence run Southwesterly along the arc of said curve, 100.82 feet; thence S 72°04'54" W, 26.78 feet to a point of curvature of a curve concave Southeasterly having a radius of 158.03 feet, and a central angle of 21°54'44"; thence run Southwesterly along the arc of said curve, 60.44 feet; to a point on a non-tangent curve concave Northeasterly having a radius of 52.89 feet, and a central angle of 104°26'29"; thence from a tangent bearing of S 75°27'00" W run Northwesterly along the arc of said curve, 96.41 feet; thence N 00°06'31" W, 54.31 feet; thence N 74°49'42" W, 43.41 feet; thence S 44°47'41" W, 145.43 feet; thence S 45°05'06" E, 18.68 feet; thence S 03°14'02" W, 84.66 feet; thence S 05°12'38" E, 58.35 feet to a point of curvature of a curve concave Easterly having a radius of 1125.00 feet, and a central angle of 27°57'29"; thence run Southerly along the arc of said curve, 548.95 feet; thence S 33°10'07" E, 163.59 feet to a point of curvature of a curve concave Westerly having a radius of 492.00 feet, and a central angle of 26°59'13"; thence run Southerly along the arc of said curve, 231.74 feet; thence N 86°26'26" E, 126.87 feet; thence N 76°15'46" E, 63.89 feet; thence N 64°36'17" E, 118.17 feet; thence S 52°36'40" E, 63.05 feet; thence S 45°16'16" E, 127.88 feet to a point of curvature of a curve concave Southwesterly having a radius of 25.00 feet, and a central angle of 35°13'41"; thence run Southeasterly along the arc of said curve, 15.37 feet; thence S 10°02'35" E, 93.01 feet to a point of curvature of a curve concave Westerly having a radius of 25.00 feet, and a central angle of 46°18'35"; thence run Southerly along the arc of said curve, 20.21 feet; thence S 36°16'00" W, 28.53 feet; thence S

20°23'46" W, 184.90 feet; thence S 25°05'40" W, 31.33 feet to a point on a non-tangent curve concave Northwesterly having a radius of 25.00 feet, and a central angle of 33°58'13"; thence from a tangent bearing of S 21°14'14" W run Southwesterly along the arc of said curve, 14.82 feet; thence S 55°12'27" W, 19.76 feet; thence S 18°42'59" W, 22.23 feet to a point on a non-tangent curve concave Southwesterly having a radius of 1908.34 feet, and a central angle of 22°05'51"; thence from a tangent bearing of S 75°17'36" E run Southeasterly along the arc of said curve, 736.00 feet; thence S 53°11'44" E, 1498.58 feet to a point of curvature of a curve concave Northeasterly having a radius of 950.92 feet, and a central angle of 14°29'06"; thence run Southeasterly along the arc of said curve, 240.40 feet; to a point of compound curvature of a curve concave Northerly having a radius of 513.39 feet, and a central angle of 13°13'42"; thence run Easterly along the arc of said curve, 118.53 feet; thence S 80°54'32" E, 34.76 feet to a point of curvature of a curve concave Northerly having a radius of 1109.03 feet, and a central angle of 07°17'21"; thence run Easterly along the arc of said curve, 141.09 feet; thence S 88°11'54" E, 77.05 feet; thence S 89°29'03" E, 140.11 feet; thence S 89°29'03" E, 433.68 feet; thence N 89°58'59" E, 1465.17 feet; thence N 00°00'00" E, 131.18 feet; thence N 45°00'00" W, 71.68 feet; thence N 00°00'00" E, 633.08 feet; thence N 89°59'00" W, 445.76 feet; thence N 00°27'46" E, 673.19 feet; thence S 89°58'17" E, 398.81 feet; thence N 00°00'00" E, 753.74 feet; thence N 90°00'00" W, 362.43 feet; thence N 05°16'59" W, 106.23 feet; thence N 26°33'54" W, 135.35 feet; thence N 47°32'44" E, 146.69 feet; thence N 11°28'34" E, 24.04 feet to a point of curvature of a curve concave Westerly having a radius of 15.00 feet, and a central angle of 52°09'22"; thence run Northerly along the arc of said curve, 13.65 feet; thence N 40°40'48" W, 82.81 feet; thence N 90°00'00" W, 73.87 feet to a point on a non-tangent curve concave Westerly having a radius of 1396.50 feet, and a central angle of 06°53'10"; thence from a tangent bearing of N 07°09'56" E run Northerly along the arc of said curve, 167.84 feet; thence N 00°16'47" E, 0.50 feet to the Northwest corner of the Northeast 1/4 of the Southwest 1/4 of Section 17 Township 24 South Range 28 East; thence S 89°56'53" E, 3992.90 feet along the North line of the South half of Section 17, to the East 1/4 corner of Section 17; thence S 00°24'52" W, 2682.68 feet along the East section line of Section 17 to the Southeast corner of Section 17 and the Northeast corner of Section 20, Township 24 South, Range 28 East; thence S 00°01'36" E, 1333.66 feet along the East section line of Section 20 to the Southeast corner of the Northeast 1/4 of the Northeast 1/4 of Section 20 and the Southwest corner of the Northwest 1/4 of the Northwest 1/4 of Section 21, Township 24 South, Range 28 East; thence N 89°57'37" E, 670.11 feet to the Northwest corner of the Northeast 1/4 of the Southwest 1/4 of the Northwest 1/4 of Section 21; thence S 00°08'32" E, 668.06 feet to the Southwest corner thereof; thence S 89°55'30" E, 671.45 feet to the Northeast corner of the Southeast 1/4 of the Southwest 1/4 of the Northwest 1/4 of Section 21; thence S 00°15'27" E, 669.41 feet to the Northwest corner of the Northeast 1/4 of the Southwest 1/4 of Section 21; thence S 00°44'42" E, 656.38 feet to the Northwest corner of Lot 85, Munger and Company Subdivision of Section 21, according to the Plat recorded in Plat Book E Page 22 of the Public Records of Orange County Florida; thence S 89°51'01" E, 335.66 feet to the Northeast corner of said Lot 85; thence S 00°40'49" E, 656.31 feet to the Southeast corner of Lot 85; thence S 89°53'15" E, 1004.75 feet along the North line of the Southeast 1/4 of the Southwest 1/4 of Section 21 to the Northeast corner thereof; thence S 00°29'10" E, 655.63 feet along the West line of the Northwest 1/4, Southwest 1/4 of the Southeast 1/4 of Section 21 to the Southwest corner thereof; thence N 89°20'56" E, 666.99 feet along the South line of the Northwest 1/4, Southwest 1/4 of the Southeast 1/4 of Section 21 to the Southeast corner thereof; thence N 00°21'22" W, 652.39 feet along the West line of the Northeast 1/4, Southwest 1/4 of the Southeast 1/4 of Section 21 to the Northwest corner thereof; thence N 89°37'38" E, 2005.42 feet along the North line of the South half of the Southeast 1/4 of Section 21 to the Northeast corner thereof, said point also being the Southwest corner of the Northwest 1/4 of the Southwest 1/4 of Section 22, Township 24 South, Range 28 East; thence N 00°02'32" E, 1285.39 feet along the West line of Section 22 to the West 1/4 corner of Section 22; thence N 89°50'49" E, 714.94 feet along the North line of the South half of Section 22 to the Easterly right of way line of State Road 535 as shown in map section 75280-2465 and dated 2/22/1993; thence S 10°07'11" E,

1214.10 feet run along said right-of-way; thence run along a deed described in document number 20190036003 in the Public Records of Orange County Florida the flowing four courses; N 89°37'24" E, 749.86 feet; N 38°29'47" E, 22.59 feet; N 38°29'47" E, 576.34 feet; thence S 51°31'36" E, 50.00 feet to a point on the Westerly right-of-way of State Road 400 as shown in map section 75280-2465 and dated 2/22/1993; thence run along said right-of-way, S 38°29'47" W, 6175.37 feet to a point on the Westerly right-of-way line of State Road 536 as shown in map section 75000-2520 and dated 3/05/1998; thence departing State Road 400 run along State Road 536 the following courses; S 43°35'47" W, 1571.44 feet to a point on a non-tangent curve concave Northwesterly having a radius of 1809.88 feet, and a central angle of 37°23'38"; thence from a tangent bearing of S 42°29'48" W run Southwesterly along the arc of said curve, 1185.59 feet; thence S 79°52'51" W, 1492.49 feet to a point on the West line of Section 28, and on the East line of Section 29, Township 24 South, Range 28 East, said point lying N 00°00'07" W, 387.61 feet from the Southwest corner of Section 28; thence S 79°52'53" W, 95.47 feet to a point of curvature of a curve concave Northerly having a radius of 2191.83 feet and a central angle of 32°28'09"; thence run Westerly along the arc of said curve, 1242.10 feet; thence N 69°59'50" W, 311.61 feet; thence run S 23°29'47" W, 304.91 feet to a point on a non-tangent curve concave Southwesterly, having a radius of 11402.16 feet and a central angle of 00°29'43"; thence from a tangent bearing of S 65°33'17" E, run Southeasterly along the arc of said curve, 98.56 feet; thence S 58°56'26" E, 509.41 feet to a point on a non-tangent curve concave Southwesterly, having a radius of 900.00 feet and a central angle of 02°31'40"; thence run Southeasterly along the arc of said curve 39.70 feet to a point on the South line the Southeast 1/4 of Section 29, said point lying N 89°50'43" W, 1167.48 feet from the Southeast corner of Section 29; thence leaving said right-of-way, run N 89°50'43" W along the South line of the Southeast 1/4 of Section 29, 1496.10 feet, to the South Quarter corner thereof; thence N 89°50'42" W, 2152.59 feet along the South line of the Southwest 1/4 of Section 29 to a point on the right-of-way of Chelonia Parkway as shown on the Plat of Bonnet Creek Resort recorded in Plat Book 56, Page 41 of the Public Records of Orange County Florida; thence run along said right-of-way the following courses; due North 163.29 feet to the point of curvature of a curve concave Southeasterly, having a radius of 675.00 feet and a central angle of 45°40'47"; thence run Northeasterly along the arc of said curve 538.15 feet to a point of reverse curvature of a curve concave Westerly, having a radius of 825.00 feet and a central angle of 98°34'08"; thence run Northeasterly and Northwesterly along the arc of said curve 1419.29 feet to a point of reverse curvature of a curve concave Northeasterly having a radius of 500.84 feet and a central angle of 22°53'21"; thence run Northwesterly and Northerly along the arc of said curve 200.08 feet; thence N 30°00'00" W, 326.45 feet to a point on a Deed described in Official Records Book 5208, Page 3884 of the Public Records of Orange County Florida; thence departing said Plat run along said Deed, N 30°00'00" W, 245.14 feet, to a point on a Deed described in document number 202000359979 of the Public Records of Orange County Florida; thence run along said Deed the following four courses; N 74°50'28" E, 100.11 feet; N 87°20'49" W, 74.69 feet; N 27°09'24" W, 47.56 feet; S 63°22'25" W, 20.69 feet, to a point on a Deed described in document number 202000360380 of the Public Records of Orange County Florida; thence run along said Deed the following courses; S 00°00'00" E, 20.42 feet; N 90°00'00" W, 30.04 feet to a point on a non-tangent curve concave Easterly having a radius of 48.00 feet, and a central angle of 47°40'00"; from a tangent bearing of N 29°07'51" W run Northerly along the arc of said curve, 39.93 feet; S 79°56'22" W, 74.35 feet; N 30°03'16" W, 21.84 feet; S 59°56'44" W, 12.14 feet; S 30°03'16" E, 17.42 feet; S 79°56'22" W, 34.35 feet; N 69°28'35" W, 49.22 feet; S 74°41'50" W, 40.22 feet; thence departing said Deed run along aforesaid Deed recorded in Official Records Book 5208, Page 3884 the following five courses; S 57°06'40" E, 133.74 feet; S 57°06'40" E, 167.71 feet; S 30°00'00" E, 180.00 feet; S 06°15'02" E, 54.63 feet; S 30°00'00" E, 408.17 feet to a point of curvature of a curve concave Northeasterly, having a radius of 650.84 feet and a central angle of 22°53'21"; run Southeasterly along the arc of said curve 260.00 feet to a point on aforesaid Plat; and  a point of reverse curvature of a curve concave Westerly, having a radius of 675.00 feet and a central angle of 98°34'08"; thence run Southeasterly and Southwesterly along the arc of said

curve and Plat, 1161.24 feet to a point of reverse curvature of a curve concave Southeasterly, having a radius of 825.00 feet and a central angle of 45°40'47"; thence run Southwesterly along the arc of said curve and Plat, 657.74 feet; thence run along and Plat due South, 162.89 feet to the South line of the Southwest 1/4 of Section 29; thence departing said Plat and the right-of-way line of Chelonia Parkway run N 89°50'42" W along the South line of the Southwest 1/4 of Section 29, 360.99 feet to the Southwest corner of Section 29 and the Northeast corner of Section 31, Township 24 South, Range 28 East; thence S 00°40'50" E, 2749.41 feet along the East line of the Northeast 1/4 of Section 31 to the Southeast corner thereof; thence S 00°27'13" W, 2643.90 feet along the East line of the Southeast 1/4 of Section 31 to the Southeast corner of Section 31; thence N 89°36'01" W, 2646.94 feet along the South line of the Southeast 1/4 of Section 31 to the Southwest corner thereof; thence N 89°56'54" W, 2748.82 feet along the South line of the Southwest 1/4 of Section 31 to the Southwest corner thereof and the Southeast corner of Section 36, Township 24 South Range 27 East; thence S 89°50'04" W, 2658.48 feet along the South line of the Southeast 1/4 of Section 36 to the Southwest corner thereof; thence S 89°46'36" W, 2656.21 feet along the South line of the Southwest 1/4 of Section 36 to the Southwest corner thereof and the Southeast corner of Section 35, Township 24 South Range 27 East; thence S 89°48'35" W, 2652.59 feet along the South line of the Southeast 1/4 of Section 35 to the Southwest corner thereof; thence S 89°44'07" W, 2661.05 feet along the South line of the Southwest 1/4 of Section 35 to the Southwest corner of said Section and the Southeast corner of Section 34, Township 24 South Range 27 East; thence S 89°46'46" W, 3438.73 feet along the South line of Section 34 to a point on the boundary of Black Lake Village according to the Plat thereof recorded in Plat Book 75, Page 149 of the Public Records of Orange County Florida; thence leaving the South line of Section 34, run along the Easterly and Northerly boundary of said Plat following courses; N 00°13'59" W, 29.01 feet; N 14°42'28" W, 114.62 feet; N 06°53'49" W, 123.97 feet to a point of curvature of a curve concave Easterly having a radius of 25.00 feet, and a central angle of 16°36'26"; run Northerly along the arc of said curve, 7.25 feet; N 09°42'37" E, 104.21 feet to a point of curvature of a curve concave Southeasterly having a radius of 25.00 feet, and a central angle of 51°24'11"; run Northeasterly along the arc of said curve, 22.43 feet; N 61°06'48" E, 53.88 feet; N 71°34'02" E, 17.56 feet; N 18°25'51" W, 18.21 feet to a point on a non-tangent curve concave Northeasterly having a radius of 50.00 feet, and a central angle of 106°48'50"; from a tangent bearing of N 80°45'36" W run Northwesterly along the arc of said curve, 93.21 feet; N 31°47'40" W, 44.69 feet to a point on a non-tangent curve concave Northwesterly having a radius of 436.00 feet, and a central angle of 15°56'47"; from a tangent bearing of S 58°12'21" W run Southwesterly along the arc of said curve, 121.35 feet; S 74°09'08" W, 308.68 feet to a point of curvature of a curve concave Southeasterly having a radius of 514.00 feet, and a central angle of 20°05'00"; run Southwesterly along the arc of said curve, 180.17 feet; S 54°04'10" W, 67.69 feet to a point of curvature of a curve concave Northerly having a radius of 315.00 feet, and a central angle of 35°55'53"; run Westerly along the arc of said curve, 197.54 feet; N 89°59'58" W, 83.84 feet to a point of curvature of a curve concave Northerly having a radius of 381.00 feet, and a central angle of 34°07'58"; run Westerly along the arc of said curve, 226.97 feet; to a point of reverse curvature of a curve concave Southerly having a radius of 384.88 feet, and a central angle of 34°00'28"; run Westerly along the arc of said curve, 228.44 feet; to a point of reverse curvature of a curve concave Northerly having a radius of 185.00 feet, and a central angle of 35°39'45"; run Westerly along the arc of said curve, 115.15 feet; to a point of compound curvature of a curve concave Easterly having a radius of 47.00 feet, and a central angle of 130°32'06"; run Northerly along the arc of said curve, 107.08 feet; N 76°19'21" E, 28.14 feet; S 89°22'47" E, 9.24 feet; N 75°08'23" E, 42.15 feet; N 66°44'45" E, 45.92 feet; N 58°10'56" E, 7.13 feet; N 40°00'00" E, 8.68 feet; N 28°21'12" E, 21.50 feet; N 19°11'06" E, 7.97 feet; N 05°44'49" E, 22.07 feet; N 09°37'03" E, 18.85 feet; N 28°18'59" E, 25.32 feet; N 39°33'24" E, 18.56 feet; N 51°48'12" E, 17.01 feet; N 53°20'03" E, 12.93 feet; N 67°23'56" E, 18.89 feet; N 61°31'34" E, 16.11 feet; N 85°31'20" E, 16.65 feet; S 84°27'04" E, 14.79 feet; S 66°07'30" E, 25.25 feet; S 70°01'08" E, 21.22 feet; S 76°11'40" E, 28.29 feet; S 81°04'45" E, 15.99 feet; S 63°15'14" E, 32.58 feet; S 71°35'23" E, 7.28 feet; S

83°45'15" E, 20.77 feet; N 86°06'18" E, 21.64 feet; S 75°49'09" E, 17.31 feet; S 87°55'16" E, 10.48 feet; N 72°43'50" E, 26.75 feet; N 60°42'21" E, 36.44 feet; N 77°16'53" E, 19.62 feet; N 68°37'24" E, 7.52 feet; N 57°06'15" E, 21.62 feet; N 48°30'29" E, 7.40 feet; N 29°59'26" E, 8.68 feet; N 13°42'55" E, 39.82 feet; N 10°06'24" E, 32.03 feet; N 01°43'31" W, 29.22 feet; N 05°37'39" W, 26.82 feet; N 12°01'53" W, 42.36 feet; N 21°06'43" W, 7.72 feet; N 36°50'10" W, 37.65 feet; N 47°37'33" W, 25.00 feet; N 56°19'26" W, 44.83 feet; N 49°30'53" W, 55.06 feet; N 59°47'57" W, 8.89 feet; N 72°21'36" W, 36.00 feet; N 82°08'10" W, 65.71 feet; S 89°42'01" W, 51.60 feet; N 80°08'53" W, 56.11 feet; N 89°26'00" W, 8.09 feet; S 81°14'14" W, 46.34 feet; S 78°42'25" W, 40.49 feet; S 77°43'02" W, 63.74 feet; S 79°09'43" W, 47.65 feet; S 72°48'44" W, 44.03 feet; S 63°14'34" W, 42.60 feet; S 57°48'39" W, 28.70 feet; S 64°21'00" W, 20.44 feet; S 67°06'48" W, 29.21 feet; S 83°28'20" W, 29.99 feet; S 83°04'31" W, 27.06 feet; S 84°19'19" W, 42.81 feet to a point of curvature of a curve concave Northeasterly having a radius of 50.00 feet, and a central angle of 83°36'01"; run Northwesterly along the arc of said curve, 72.95 feet; to a point of compound curvature of a curve concave Easterly having a radius of 188.00 feet, and a central angle of 27°45'45"; run Northerly along the arc of said curve, 91.10 feet; S 89°52'10" W, 174.16 feet; thence departing said Plat run along the West line of the Southwest 1/4 of Section 34, N 00°00'19" E, 313.89 feet to the Northwest corner of the Southwest 1/4 of the Southwest 1/4 of Section 34 and the Northeast corner of the Southeast 1/4 of the Southeast 1/4 of Section 33, Township 24 South, Range 27 East; thence continue N 00°00'19" E 498.35 feet to the Southeast corner of the North 5/8 of the Northeast 1/4 of the Southeast 1/4 of Section 33; thence run along the South line of the North 5/8 of the Northeast 1/4 of the Southeast 1/4 of Section 33, N 89°47'57" W, 1326.58 feet to the Southwest corner thereof; thence run along the West line of the North 5/8 of the Northeast 1/4, of the Southeast 1/4 of Section 33, N 00°00'31" E, 835.26 feet to the Northwest corner thereof; thence run along the West line of the Southeast 1/4 of the Northeast 1/4 of Section 33, N 00°00'25" E, 1321.43 feet to the Northwest corner thereof; thence run along the North line of the Southeast 1/4 of the Northeast 1/4 of Section 33, S 89°55'44" E, 1326.40 feet; to the Northeast corner thereof; thence run along the West line of the Northwest 1/4 of Section 34 Township 24 South Range 27 East, N 00°00'06" E, 1329.09 feet to the Northwest corner thereof; thence N 89°53'53" E, 2679.47 feet along the North line of the Northwest 1/4 of Section 34 to the Northeast corner thereof and the Southwest corner of the Southeast 1/4 of Section 27, Township 24 South, Range 27 East; thence N 00°01'11" W, 3964.69 feet along the West line of the East 1/2 of Section 27 to the Southeast corner of the Northeast 1/4 of the Northwest 1/4 of Section 27; thence S 89°37'54" W, 1332.15 feet along the South line of the Northeast 1/4 of the Northwest 1/4 of Section 27 to the Southwest corner thereof; thence N 00°08'12" E, 1330.97 feet along the West line of the Northeast 1/4 of the Northwest 1/4 of Section 27 to the Northwest corner thereof,; thence S 89°46'29" W, 1328.51 feet along the North line of the Northwest 1/4 of Section 27 to the Northwest corner of Section 27 and the Northeast corner of Section 28, Township 24 South, Range 27 East; thence S 89°48'06" W, 1331.20 feet along the North line of the Northeast 1/4 of the Northeast 1/4 of Section 28, to the Northeast corner of the West 1/2 of the Northeast 1/4 of Section 28; thence S 00°12'18" W, 882.69 feet along the East line of the West 1/2 and the Northeast 1/4 of Section 28, Township 24 South, Range 27 East to a point on the Westerly right of way line of State Road 429 as described in Official Records Book 7070, Page 2553 and Book 7106, Page 2802 of the Public Records of Orange County Florida also being a point on Flamingo Crossings East according to the Plat thereof and recorded in Plat Book 97, Page 95 of the Public Records of Orange County Florida and a point on a non-tangent curve concave Southwesterly having a radius of 2204.09 feet, and a central angle of 07°27'37"; thence from a tangent bearing N 29°38'58" W run Northwesterly along the arc of said curve, right of way line and Plat, 286.99 feet; thence continue along said right of way line and Plat the following two courses; N 37°06'36" W, 690.17 feet to a point on a non-tangent curve concave Northeasterly having a radius of 808.57 feet, and a central angle of 09°35'40"; from a tangent bearing N 38°37'50" W run Northwesterly along the arc of said curve, 135.40 feet; thence departing said right of way line continue along said Plat; N 88°48'31" W, 555.60 feet to a point on the right of way line of Hartzog Road as described

in Official Records Book 9782, page 7172, Book 10170, Page 4303, Book 10173, page 8868 and Book 10815, Page 4619 of the Public Records of Orange County Florida and a point on a non-tangent curve concave Westerly having a radius of 1010.00 feet, and a central angle of 02°00'23"; from a tangent bearing of S 05°42'00" E run Southerly along the arc of said curve, Plat and right of way line, 35.37 feet; thence run along said Plat and right of way line the following courses; S 00°27'57" W, 105.56 feet to a point of curvature of a curve concave Westerly having a radius of 899.35 feet, and a central angle of 05°39'43"; run Southerly along the arc of said curve, 88.87 feet; S 06°07'41" W, 311.81 feet to a point of curvature of a curve concave Easterly having a radius of 2004.50 feet, and a central angle of 06°19'57"; run Southerly along the arc of said curve, 221.54 feet; S 00°12'16" E, 702.26 feet; S 23°02'00" E, 19.33 feet; S 00°12'16" E, 198.27 feet; S 14°29'10" W, 29.80 feet to a point on a non-tangent curve concave Westerly having a radius of 2162.49 feet, and a central angle of 07°53'08"; from a tangent bearing of S 00°12'49" W run Southerly along the arc of said curve, 297.62 feet; S 08°05'57" W, 46.90 feet; N 81°54'04" W, 10.00 feet; S 08°05'57" W, 154.78 feet; S 81°54'04" E, 5.50 feet to a point on a non-tangent curve concave Westerly having a radius of 1175.00 feet, and a central angle of 07°00'25"; from a tangent bearing of S 08°05'57" W run Southerly along the arc of said curve, 143.70 feet; S 00°07'03" W, 13.59 feet; thence departing said Plat continue along said right of way line, the following courses; N 89°54'54" W, 160.89 feet to a point on a non-tangent curve concave Westerly having a radius of 1025.00 feet, and a central angle of 10°07'39"; from a tangent bearing of N 18°13'36" E run Northerly along the arc of said curve, 181.18 feet; S 81°54'03" E, 5.50 feet; N 08°05'57" E, 201.68 feet to a point of curvature of a curve concave Westerly having a radius of 2013.49 feet, and a central angle of 08°18'12"; run Northerly along the arc of said curve, 291.80 feet; N 00°12'16" W, 931.40 feet to a point of curvature of a curve concave Easterly having a radius of 2153.50 feet, and a central angle of 06°19'57"; run Northerly along the arc of said curve, 238.01 feet; N 06°07'41" E, 291.80 feet; N 00°07'03" E, 196.68 feet to a point on the South line of the Southwest 1/4 of Section 21, Township 24 South, Range 27 East; thence departing said right of way line, S 89°49'36" W, 453.70 feet along the South line of the Southwest 1/4 of Section 21, Township 24 South, Range 27 East to a point on Flamingo Crossings West according to the Plat thereof and recorded in Plat Book 100, Page 37 of the Public Records of Orange County Florida; thence run along said Plat the following three courses; N 40°17'32" W, 323.52 feet; N 32°21'38" W, 271.63 feet; N 34°30'31" W, 120.76 feet; thence N 46°26'37" W, 108.80 feet along said Plat and its Northwesterly extension; thence S 89°49'14" W, 28.71 feet to a point of curvature of a curve concave Southerly having a radius of 934.00 feet, and a central angle of 01°05'30"; thence run Westerly along the arc of said curve, 17.79 feet; thence S 00°10'31" E, 11.26 feet; thence S 89°49'29" W, 28.35 feet; thence S 04°02'58" E, 4.66 feet; thence S 86°05'06" W, 22.85 feet; thence N 03°54'54" W, 6.14 feet; thence S 89°49'29" W, 173.97 feet to a point of curvature of a curve concave Northerly having a radius of 2158.53 feet, and a central angle of 24°05'38"; thence run Westerly along the arc of said curve, 907.70 feet; thence N 66°04'53" W, 548.81 feet to a point on the West line of the Southwest 1/4 of Section 21, Township 24 South, Range 27 East; thence run along said line, S 00°35'44" W, 1052.90 feet to the Southwest corner thereof; thence entering Section 20, Township 24 South, Range 27 East run S 89°18'37" W, 2676.09 feet along the South line of the Southeast 1/4 of said Section 20, to the Southwest corner thereof; thence N 89°32'00" W, 2636.90 feet run along the South line of the Southwest 1/4 of said Section 20, to the Southwest corner thereof; thence N 00°12'29" E, 1187.50 feet along the West line of the Southwest 1/4 of said Section 20; thence entering Section 19, Township 24 South, Range 27 East run, S 89°00'18" W, 988.08 feet along the South line of the North 150.00 feet of the Southeast 1/4 of the Southeast 1/4 of said Section 19, to a point on the Easterly right of way line of Avalon Boulevard as described in Deed Book 402, Page 312, Deed Book 402, Page 353 and Deed Book 357 of the Public Records of Orange County Florida; thence run along said right of way line the following two courses; N 19°17'43" E, 1348.72 feet to a point on a non-tangent curve concave Easterly having a radius of 2832.01 feet, and a central angle of 04°49'44"; from a tangent bearing of N 19°16'05" E run Northerly along the arc of said curve, 238.69 feet to a point on the North line of the Northeast 1/4 of the Northeast 1/4 of the Southeast

1/4 of said Section 19; thence N 88°44'55" E, 459.61 feet along said line to the Northeast corner of the Southeast 1/4 of said Section 19; thence entering Section 20, Township 24 South, Range 27 East run N 00°13'41" E, 708.14 feet along the West line of the Northwest 1/4 of said Section 20 to a point on the aforesaid Avalon Road right of way line and a point on a non-tangent curve concave Southeasterly having a radius of 2829.41 feet, and a central angle of 01°55'19"; thence from a tangent bearing of N 41°26'37" E run Northeasterly along the arc of said curve and right of way line, 94.91 feet; thence N 43°21'56" E, 753.57 feet along said right of way line to a point on the North line of the South 1/2 of the Northwest 1/4 of said Section 20; thence N 89°50'32" E, 2068.41 feet along said line to the Southeast corner of the Northeast 1/4 of the Northwest 1/4 of said Section 20; thence N 00°21'49" E, 1334.18 feet along the West line of the Northwest 1/4 of the Northeast 1/4 of said Section 20 to the Northwest corner of the Northeast 1/4; thence S 89°45'19" E, 2697.33 feet along the North line of the Northeast 1/4 of said Section 20 to the Northeast corner of said Section 20 and the Southeast corner of Section 17, Township 24 South, Range 27 East; thence entering said Section 17 N 00°02'13" E, 2669.40 feet along the East line of the Southeast 1/4 of Section 17 to the Northeast corner thereof; thence S 89°43'49" W, 1347.90 feet along the South line of the East 1/2 of the Northeast 1/4 of Section 17, to the Southwest corner thereof; thence N 00°18'18" W, 2652.68 feet along the West line of the East 1/2 of the Northeast 1/4 of Section 17 to the Northwest corner thereof; thence S 89°39'31" W, 2661.03 feet along the North line of Section 17 to the Northwest corner of the Northeast 1/4 of the Northwest 1/4 of Section 17 and the Southwest corner of the Southeast 1/4 of the Southwest 1/4 of Section 8, Township 24 South, Range 27 East; thence N 00°24'44" E, 242.11 feet along the West line of the Southeast 1/4 of the Southwest 1/4 of Section 8 to a point on the Easterly right-of-way line of County Road 545 as described in Deed Book 402, Page 355 of the Public Records of Orange County Florida; said point being a point on a non-tangent curve concave Westerly, having a radius of 2826.01 feet, and a central angle of 19°14'15"; thence from a tangent bearing of N 18°34'50" E, run Northerly along the arc of said curve and right-of-way, 948.86 feet; thence continue along said right-of-way, N 00°39'25" W, 141.86 feet; thence N 89°41'27" E, 1188.92 feet along the North line of the Southeast 1/4 of the Southwest 1/4 of Section 8 to the Northeast corner thereof; thence N 00°15'09" E, 1315.34 feet along the West line of the Northwest 1/4 of the Southeast 1/4 of Section 8 to the Northwest corner thereof; thence N 00°14'57" E, 50.00 feet along the West line of the Northeast 1/4 of Section 8 to a point on the Northerly right-of-way line of Hartzog Road as described in Official Records Book 9782, Page 7172 of the Public Records of Orange County Florida; thence run along said right-of-way line the following three courses; N 89°43'25" E, 671.30 feet; N 23°57'49" E, 158.82 feet to a point on a non-tangent curve concave Southwesterly having a radius of 2750.09 feet, and a central angle of 04°43'07"; from a tangent bearing of S 33°16'29" E run Southeasterly along the arc of said curve, 226.49 feet; thence N 89°43'24" E, 1038.21 feet along the North line of the Southeast 1/4 of Section 8; to a point on Deed recorded in Official Records Book 7121, Page 2952 of the Public Records of Orange County Florida; and a point on a non-tangent curve concave Southerly having a radius of 2894.93 feet, and a central angle of 08°15'21"; thence Entering Section 9, Township 24 South, Range 27 East, from a tangent bearing of N 82°01'15" W run Westerly along the arc of said curve and Deed, 417.14 feet; thence S 89°43'24" W, 258.73 feet along said Deed to a point on the Easterly right of way line of State Road 429 as recorded in Official Records Book 7106, Page 7802 of the Public Records of Orange County Florida; thence run along said right of way line the following two courses; N 21°29'36" W, 110.97 feet; N 20°48'24" W, 1048.03 feet; thence N 00°08'24" E, 211.55 feet along the West line of the East 530.00 feet of the Southwest 1/4 of the Northeast 1/4 of said Section 8; thence S 89°41'25" W, 797.83 feet along the South line of the North 1/2 of the Northeast 1/4 of said Section 8; thence S 89°34'56" W, 1230.74 feet along the South line of the Northeast 1/4 of the Northwest 1/4 of said Section 8 to a point on the Easterly right of way line of Avalon Boulevard as described in Deed Book 402, Page 355 of the Public Records of Orange County Florida; thence run along said right of way line the following three courses; N 00°39'25" W, 853.44 feet to a point on a non-tangent curve concave Easterly having a radius of 3241.05 feet, and a central angle of 05°37'30"; from a tangent bearing of N

00°36'59" W run Northerly along the arc of said curve, 318.19 feet; N 05°00'31" E, 152.48 feet; thence N 89°26'29" E, 1220.84 feet along the North line of the Northwest 1/4 of said Section 8 to the Northeast corner thereof; thence N 89°39'25" E, 2650.62 feet along the North line of the Northeast 1/4 of said Section 8 to the Northeast corner thereof; thence entering Section 9, Township 24 South, Range 27 East run, N 89°46'07" E, 1608.33 feet along the North line of the Northwest 1/4 of said Section 9; to a point on Southerly right of way line of Seidel Road as described in Deed Book 789, Page 243 and Deed Book 892, Page 552 of the Public Records of Orange County Florida and a non-tangent curve concave Northerly having a radius of 357.62 feet, and a central angle of 23°38'08"; thence from a tangent bearing of S 66°08'04" W run Westerly along the arc of said curve and right of way line, 147.53 feet; thence run along said right of way line the following three courses; S 89°46'01" W, 139.26 feet; S 89°46'07" W, 1325.83 feet; S 89°39'24" W, 554.03 feet; thence run along a right of way line described in Official Records Book 7070, Page 2553 of the Public Records of Orange County Florida the following twelve courses; S 00°20'32" E, 20.00 feet; S 89°39'28" W, 363.61 feet; S 84°38'15" W, 372.03 feet; S 00°20'32" E, 14.94 feet; S 89°40'22" W, 138.87 feet; S 42°20'36" W, 55.11 feet; S 00°03'00" W, 857.17 feet to a point of curvature of a curve concave Northeasterly having a radius of 250.01 feet, and a central angle of 90°21'35"; run Southeasterly along the arc of said curve, 394.28 feet; N 89°41'19" E, 364.69 feet; S 00°18'35" E, 80.00 feet; S 89°41'25" W, 481.37 feet to a point on a non-tangent curve concave Northeasterly having a radius of 350.02 feet, and a central angle of 72°08'18"; from a tangent bearing of N 70°50'15" W run Northwesterly along the arc of said curve, 440.69 feet; thence S 89°41'15" W, 483.83 feet along a right of way line described in Official Records Book 7106, Page 2802 of the Public Records of Orange County Florida to a point that is 10.00 feet Easterly of when measure perpendicular to the Easterly right of way line of aforesaid State Road 429; and a point on a non-tangent curve concave Easterly having a radius of 3721.85 feet, and a central angle of 03°53'37"; thence from a tangent bearing of S 16°54'47" E run Southerly along the arc of said curve and a line that is 10.00 feet Easterly of and parallel with said right of way line, 252.93 feet; thence S 20°48'24" E, 96.16 feet along said parallel to its intersection with a line that is 10.00 feet North of and parallel with the South line of the Northwest 1/4 of the Northeast 1/4 of said Section 8; thence N 89°41'25" E, 83.88 feet along said line that is 10.00 feet North of and parallel with the South line of the Northwest 1/4 of the Northeast 1/4 of said Section 8, to its intersection with the West line of the East 520.00 feet of the Southwest 1/4 of the Northeast 1/4 of said Section 8; thence S 00°08'24" W, 219.78 feet along the West line of the East 520.00 feet of the Southwest 1/4 of the Northeast 1/4 of said Section 8, to its intersection with a line that is 10.00 feet East of when measure perpendicular to the Easterly right of way line of aforesaid State Road 429; thence S 20°48'24" E, 836.45 feet along said parallel line to a point on a Deed described in Official Records Book 9324, Page 367 of the Public Records of Orange County Florida; thence run along said Deed the following six courses; S 87°25'27" E, 291.32 feet; thence N 88°48'53" E, 166.97 feet; N 86°44'00" E, 142.45 feet; N 06°27'19" W, 91.16 feet; N 28°52'42" E, 302.51 feet; N 69°30'43" E, 659.82 feet to a point on a deed described in Official Records Book 10810, Page 147 of the Public Records of Orange County Florida; thence run along said Deed the following four courses; N 84°17'43" E, 306.52 feet; N 55°03'52" E, 1274.60 feet; N 33°11'17" E, 877.94 feet; N 08°37'23" E, 258.89 feet; thence N 89°46'07" E, 980.18 feet along the North line of the Northwest 1/4 of said Section 9 to the Northeast corner thereof; thence S 00°03'05" W, 2653.53 feet along the East line of the Northwest 1/4 of said Section 9 to the Southeast corner thereof; thence S 89°44'05" W, 1325.36 feet along the South line of the Southeast 1/4 of the Northwest 1/4 of Section 9 to the Southwest corner thereof; thence S 00°08'51" W, 1314.23 feet along the East line of the Northwest 1/4 of the Southwest 1/4 of Section 9 to the Southeast corner thereof; thence N 89°45'10" E, 1327.55 feet along the North line of the Southeast 1/4 of the Southwest 1/4 of Section 9 to the Northeast corner thereof; thence S 00°03'05" W, 1314.64 feet along the East line of the Southeast 1/4 of the Southwest 1/4 of Section 9 to the Southeast corner of the Southwest 1/4 of Section 9; thence N 89°53'46" E, 2633.36 feet along the South line of the Southeast 1/4 of Section 9 to the Southeast corner thereof and the Southwest corner of Section 10, Township 24

South, Range 27 East; thence N 00°15'35" E, 5286.81 feet along the West section line of Section 10 to the Northwest corner thereof and the Southwest corner of Section 3, Township 24 South, Range 27 East; thence N 00°11'50" W, 2661.64 feet along the West line of the Southwest 1/4, Section 3 to the Northwest corner thereof; thence N 89°39'50" E, 3976.31 feet along the North line of the South half of Section 3 to the Northeast corner of the Northwest 1/4 of the Southeast 1/4 of Section 3; thence S 00°04'39" E, 1326.78 feet along the East line of the Northwest 1/4 of the Southeast 1/4 of Section 3 to the Northwest corner of the Southeast 1/4 of the Southeast 1/4 of Section 3; thence N 89°37'16" E, 1328.99 feet along the North line of the Southeast 1/4 of the Southeast 1/4 of Section 3 to the Northeast corner thereof and the Northwest corner of the Southwest 1/4 of the Southwest 1/4 of Section 2, Township 24 South, Range 27 East; thence N 00°07'50" W, 1325.78 feet along the West line of Northwest 1/4, of the Southwest 1/4, of Section 2 to the Northwest corner thereof; thence N 00°07'43" W, 400.13 feet along the West line of the Northwest 1/4, of Section 2; thence run along the Northerly boundary of a deed recorded in Official Records Book 1457, Page 934 of the Public Records of Orange County Florida the following three courses; N 86°46'13" E, 1024.87 feet; N 77°37'23" E, 1103.42 feet; N 53°18'38" E, 1872.82 feet to a point on the Southerly right-of-way line of Reams Road as shown on Plat book 3, Page 85 of the Public Records of Orange County Florida; thence run along said right-of-way line the following three courses; S 43°40'10" E, 1382.92 feet to the beginning of a curve concave to the Northeast, having a radius of 546.86 feet and a central angle of 46°21'00"; thence run Southeasterly along the arc of said curve 442.39 feet; thence N 89°58'50" E, 341.61 feet; thence leaving said right-of-way, run S 00°19'24" E, 603.75 feet along the East line of the Northeast 1/4 of Section 2, to the Southeast corner thereof, and the Northwest corner of the Northwest 1/4 of the Southwest 1/4 of Section 1, Township 24 South, Range 27 East; thence N 89°43'47" E, along the North line of the Northwest 1/4 of the Southwest 1/4 of Section 1, 1297.19 feet to a point 25 feet West of the Northeast corner of the Northwest 1/4 of the Southwest 1/4 of Section 1; thence N 00°12'21" W, 598.76 feet along a line that is 25.00 feet West of and parallel to the West line of the Southeast 1/4 of the Northwest 1/4 of Section 1 to the Southerly right-of-way line of aforesaid Reams Road; thence N 89°56'46" E, 100.00 feet along said Southerly right-of-way of Reams Road; thence run along the Easterly and Northerly boundary of a deed recorded in Official Records Book 1465, Page 307 of the Public Records of Orange County Florida the following five courses; S 02°04'12" E, 523.43 feet; N 89°43'40" E, 52.00 feet; S 00°12'21" E, 49.00 feet; N 89°43'41" E, 229.00 feet; S 00°12'25" E, 26.23 feet; thence N 89°43'47" E, 1039.16 feet along the North line of the South half of Section 1 to a point 90.00 feet East of the Northeast corner of the Southwest 1/4 of Section 1; thence S 05°34'33" W, 911.86 feet; thence S 00°05'18" E, 420.00 feet along the East line of the Northeast 1/4 of the Southwest 1/4 of Section 1 to the Southeast corner thereof; thence N 89°44'10" E, 2649.93 feet along the North line of the South half of the Southeast 1/4 of Section 1 to the Point of Beginning.

Less the following recorded parcels in the Public Records of Orange County Florida:

Book 2688, Page 1702                        Instrument 20050766353
Book 6194, Page 4392                        Instrument 20160090446
Book 9745, Page 8716                        Instrument 20160316309
Book 10275, Page 7457                       Instrument 20160316310
Book 10304, Page 8949                       Instrument 20160344785
Book 10681, Page 7447                       Instrument 20210271782
Book 10681, Page 7453                       Instrument 20220000060
Book 10681, Page 7458                       Instrument 20220073431
Book 10778, Page 5071                       Instrument 20220542316
Book 10987, Page 8396
Instrument 20050679647

DESCRIPTION OF
DEVELOPERS' AGREEMENT
IN OSCEOLA COUNTY, FLORIDA

A parcel of land lying in Sections 1, 2, 11 through 14, 23 through 26, Township 25 South, Range 27 East, and Sections 5 through 9, 16 through 20, 30 and 31, Township 25 South, Range 28 East, Osceola County, Florida, and being more particularly described as follows:

Begin at the Northwest corner of said Section 6, run along the North line of the Northwest 1/4 of Section 6, Township 25 South, Range 28 East run, S 89°56'54" E, 2748.82 feet to the Northeast corner thereof; thence S 89°36'01" E, 2646.94 feet along the North line of the Northeast 1/4 of said Section 6 to the Northeast corner thereof; thence entering Section 5, Township 25 South, Range 28 East run N 89°42'15" E, 2600.72 feet along the North line of the Northwest 1/4 of said Section 5 to the Northeast corner there of; thence S 89°17'26" E, 153.63 feet along the North line of the Northeast 1/4 of said Section 5 to a point on the State Road 400 right of way line shown on Map Section 92130-2401 and dated August 28, 1969; thence run along said right of way line the following three courses; S 38°30'29" W, 248.14 feet to a point of curvature of a curve concave Northwesterly having a radius of 85794.19 feet, and a central angle of 01°26'58"; run Southwesterly along the arc of said curve, 2170.39 feet; S 39°57'27" W, 2021.20 feet; thence S 01°12'07" W, 1838.47 feet along the West line of the Southwest 1/4 of said Section 5 to the Southwest corner thereof; thence entering Section 8, Township 25 South, Range 28 East run N 89°47'15" E, 2643.05 feet along the North line of the Northwest 1/4 of said Section 8 to the Northeast corner thereof; thence N 89°44'15" E, 2642.73 feet along the North line of the Northeast 1/4 of said Section 8 to the Northeast corner thereof; thence entering Section 9, Township 25 South, Range 28 East run N 89°47'42" E, 1315.60 feet along the North line of the West 1/2 of the  Northwest 1/4 of said Section 9 to the Northeast corner thereof; thence S 00°04'39" E, 2645.23 feet along the East line of the West 1/2 of the Northwest 1/4 of said Section 9; thence S 00°03'27" E, 1320.49 feet along the East line of the Northwest 1/4 of the Southwest 1/4 of said Section 9; thence N 89°46'36" E, 1311.24 feet along the North line of the Southeast 1/4 of the Southwest 1/4 of said Section 9; thence N 89°54'53" E, 1343.01 feet along the North line of the Southwest 1/4 of the Southeast 1/4 of said Section 9; thence S 00°00'12" E, 1320.26 feet along the East line of the Southwest 1/4 of the Southeast 1/4 of said Section 9; thence S 89°58'40" W, 1342.90 feet along the South line of the Southwest 1/4 of the Southeast 1/4 of said Section 9; thence S 89°42'06" W, 1310.10 feet along the South line of the Southeast 1/4 of the Southwest 1/4 of said Section 9; thence entering Section 16, Township 25 South, Range 28 East run S 00°42'14" E, 1335.79 feet along the East line of the Northwest 1/4 of the Northwest 1/4 of said Section 16; thence S 89°44'25" W, 1319.70 feet along the South line of the Northwest 1/4 of the Northwest 1/4 of said Section 16; thence S 00°17'31" E, 1334.87 feet along the West line of the Southwest 1/4 of the Northwest 1/4 of said Section 16; thence N 89°46'42" E, 2658.61 feet along the North line of the Southwest 1/4 of said Section 16; thence S 01°06'54" E, 1338.43 feet along the East line of the Northeast 1/4 of the Southwest 1/4 of said Section 16; thence S 89°51'04" W, 2677.84 feet along the South line of the North 1/2, of the Southwest 1/4 of said Section 16; thence S 00°17'31" E, 1334.87 feet West line of the Southwest 1/4 of the Southwest 1/4 of said Section 16 to the Southwest corner of said Section 16; thence entering Section 20, Township 25 South, Range 28 East run S 00°20'44" E, 5339.36 feet along the East line of said Section 20 to the Southeast corner thereof; thence S 89°31'09" W, 5313.04 feet along the South line of said Section 20 to the Southwest corner thereof; thence entering Section 30, Township 25 South, Range 28 East run S 00°24'07" W, 5287.28 feet along the East line of said Section 30 to the Southeast corner thereof; thence entering Section 31, Township 25 South, Range 28 East run S 00°25'58" W, 2630.53 feet along the East line of the Northeast 1/4 of said Section 31 to the Southeast corner thereof; thence S 00°26'32" W, 1339.91 feet along the East line of the Northeast 1/4 of the Southeast 1/4 of said Section 31; thence S 89°38'07" W, 1325.49 feet along the South line of the Northeast 1/4 of

the Southeast 1/4 of said Section 31; thence N 00°21'55" E, 1337.78 feet along the West line of the Northeast 1/4 of the Southeast 1/4 of said Section 31; thence S 89°32'39" W, 663.66 feet along the South line of the East 1/2 of the West 1/2 of the Northeast 1/4 of said Section 31; thence N 00°19'27" E, 2635.75 feet along the West line of the East 1/2 of the West 1/2 of the Northeast 1/4 of said Section 31; thence entering Section 30,Township 25 South, Range 28 East run S 89°41'46" W, 665.30 feet along the South line of the Southeast 1/4 of said Section 30; thence S 89°41'31" W, 2661.88 feet along the South line of the Southwest 1/4 of said Section 30 to the Southwest corner thereof; thence entering Section 25,Township 25 South, Range 27 East run S 89°54'33" W, 2658.96 feet run along the South line of the Southeast 1/4 of said Section 25 to the Southwest corner thereof; thence S 89°52'03" W, 2644.80 feet along the South line of the Southwest 1/4 of said Section 25 to the Southwest corner thereof; thence entering Section 26,Township 25 South, Range 27 East run S 89°49'42" W, 1327.07 feet along the South line of the Southeast 1/4 of the Southeast 1/4 of said Section 26; thence N 00°03'44" W, 1330.70 feet along West line of the Southeast 1/4 of the Southeast 1/4 of said Section 26; thence S 89°52'21" W, 1326.94 feet along South line of the Northwest 1/4 of the Southeast 1/4 of said Section 26; thence N 00°03'24" W, 1331.72 feet along West line of the Northwest 1/4 of the Southeast 1/4 of said Section 26; thence S 89°55'00" W, 1666.58 feet along the South line of the Northwest 1/4 of said Section 26; thence N 00°00'25" W, 1930.44 feet along the West line of the East 5/8 of the Northwest 1/4 of said Section 26, to a point on the Easterly right of way line of State Road 400 as described in Official Records Book 2326, Page 701 of the Public Records of Osceola County Florida and a non-tangent curve concave Southeasterly having a radius of 3921.00 feet, and a central angle of 14°53'09"; thence from a tangent bearing of N 25°02'25" E run Northeasterly along the arc of said curve and right of way line, 1018.71 feet; thence continue along said right of way line the following two courses; N 39°57'15" E, 901.93 feet; N 50°02'45" W, 9.00 feet; thence N 39°57'15" E, 654.77 feet along the State Road 400 right of way line shown on Map Section 92130-2401 and dated August 28, 1969; thence N 89°45'55" E, 128.02 feet along the North line of the Southeast 1/4 of the Southwest 1/4 Section 23,Township 25 South, Range 27 East; thence N 00°05'36" E, 3974.79 feet along the West line of the East 1/2 of said Section 23; thence entering Section 14,Township 25 South, Range 27 East run N 00°01'48" W, 1338.67 feet along West line of the Southwest 1/4 of the Southeast 1/4 of said Section 14; thence S 89°58'43" W, 431.70 feet along South line of the Northeast 1/4 of the Southwest 1/4 of said Section 14; thence N 00°04'30" W, 1337.83 feet along the East line of the West 235.00 feet of the East 1/2 of the Northeast 1/4 of the Southwest 1/4 of said Section 14; thence S 89°52'00" W, 235.00 feet along the South line of the Northwest 1/4 of said Section 14; thence N 00°04'30" W, 1328.24 feet along the West line of East 1/2 of the Southeast 1/4 of the Northwest 1/4 of said Section 14; thence S 89°49'34" W, 334.40 feet along the South line of the East 1/2 of the West 1/2 of the Northeast 1/4 of the Northwest 1/4 of said Section 14; thence N 00°05'51" W, 1328.00 feet along the West line of the East 1/2 of the West 1/2 of the Northeast 1/4 of the Northwest 1/4 of said Section 14; thence entering Section 11,Township 25 South, Range 27 East run S 89°47'08" W, 1004.74 feet along the Southwest 1/4 of said Section 11; thence N 00°10'06" E, 666.14 feet along the West line of the Southeast 1/4 of the Southwest 1/4 of the Southwest 1/4 of said Section 11; thence S 89°53'39" W, 419.88 feet along the South line of the Northwest 1/4 of the Southwest 1/4 of the Southwest 1/4 of said Section 11; thence N 00°16'32" E, 208.71 feet along a line that is 208.71 feet East of and parallel with the East right of way line of County Road 545 as shown on Map Section 9257-150 dated June 21, 1955; thence S 89°53'43" W, 208.71 feet along a line that is 208.71 feet North of and parallel with South line of the Southwest 1/4 of said Section 11; thence N 00°16'32" E, 458.63 feet along the aforesaid East right of way line of County Road 545; thence S 89°59'41" E, 293.67 feet along the North line of the Northwest 1/4 of the Southwest 1/4 of the Southwest 1/4 of said Section 11; thence N 00°13'21" E, 666.77 feet along the West line of the East 1/2 of the Southwest 1/4 of the Northwest 1/4 of the Southwest 1/4 of said Section 11; thence S 89°53'03" E, 666.11 feet along the North line of the South 1/2 of the Northwest 1/4 of the Southwest 1/4 of said Section 11; thence N 00°06'58" E, 615.49

feet along the West line of the East 1/2 of the Northeast 1/4 of the Northwest 1/4 of the Southwest 1/4 of said Section 11; thence S 89°46'25" E, 332.34 feet along a line 50.00 feet South of and parallel with the North line of the Southwest 1/4 of said Section 11; thence N 00°13'26" E, 50.00 feet West line of the Northeast 1/4 of the Southwest 1/4 of said Section 11; thence S 89°46'24" E, 332.44 feet along the South line of the West 1/2 of the Southwest 1/4 of the Southeast 1/4 of the Northwest 1/4 of said Section 11; thence N 00°00'19" W, 663.86 feet along the West line of the East 1/2 of the Southwest 1/4 of the Southeast 1/4 of the Northwest 1/4 of said Section 11; thence S 89°51'37" E, 331.87 feet along the North line of the East 1/2 of the Southwest 1/4 of the Southeast 1/4 of the Northwest 1/4 of said Section 11; thence N 00°03'15" W, 1328.72 feet along the West line of the East 1/4 of the Northwest 1/4 of said Section 11; thence N 89°57'56" E, 661.47 feet along the North line of the Southeast 1/4 of the Northeast 1/4 of the Northwest 1/4 of Section 11; thence N 00°09'07" W, 665.37 feet along the West line of the Northeast 1/4 of said Section 11 to the Northwest corner of the Northeast 1/4 of said Section 11; thence entering Section 2,Township 25 South, Range 27 East run N 00°22'03" E, 5290.72 feet along the West line of the East 1/2 of said Section 2; thence S 89°44'07" W, 495.03 feet along a line 10.00 feet South of and parallel with the North line of the Northwest 1/4 of said Section 2; thence S 00°22'03" W, 1390.09 feet along a line 495.00 feet West of and parallel with the West line of the East 1/2 of said Section 2; thence S 89°44'07" W, 2110.14 feet along a line 1400.00 feet South of and parallel with the North line of the Northwest 1/4 of said Section 2 to a point on the Easterly boundary of de-annexation Resolution No. 442 on record at Reedy Creek Improvement District; thence run along said boundary the following courses; N 02°17'23" E, 40.72 feet; N 18°56'28" E, 11.18 feet; N 00°08'32" E, 14.20 feet; N 45°08'32" E, 35.36 feet; S 89°51'28" E, 4.49 feet; N 00°08'32" E, 60.00 feet; N 44°51'28" W, 35.36 feet; N 00°08'32" E, 10.44 feet; N 44°51'28" W, 4.24 feet; N 00°08'32" E, 346.14 feet; N 01°09'08" W, 176.69 feet; N 44°51'28" W, 39.61 feet; N 00°08'32" E, 660.14 feet to a point on the North line of the Northwest 1/4 of said Section 2 and being 25.00 feet East of the Northwest corner of said Section 2; thence N 89°44'07" E, 2636.05 feet along the North line of the Northwest 1/4 of said Section 2 to the Northeast corner thereof; thence N 89°48'35" E, 2652.59 feet along the North line of the Northeast 1/4 of said Section 2 to the Northeast corner thereof; thence entering Section 1,Township 25 South, Range 27 East run N 89°46'36" E, 2656.21 feet along the North line of the Northwest 1/4 of said Section 1 to the Northeast corner thereof; thence N 89°50'04" E, 2658.48 feet along the North line of the Northeast 1/4 of said Section 1 to the Northeast corner thereof to the Point of Beginning, containing 11063.93, acres more or less.

Less and except the following:

A parcel of land lying in Sections 11 through 14, Township 25 South, Range 27 East, Osceola County, Florida, and being more particularly described as follows:
Commence at the Northwest corner of the Northeast 1/4 of said Section 11, run along the West line of the Northeast 1/4 of said Section 11, S 00°09'07" E, 132.00 feet; thence N 89°52'08" E, 1175.60 feet along a line that is 132.00 feet South of and parallel with the North line of the Northeast 1/4 of said Section 11 to a point on the boundary of de-annexation Resolution No. 291 as described in Official Records Book 1235, Page 1769 of the Public Records of Osceola County, Florida, and the Point of Beginning; thence continue along aforesaid parallel line, N 89°52'11" E, 240.29 feet to a point on a deed recorded in Official Records Book 1563, Page 2410 of the Public Records of Osceola County Florida; thence run along said line following two courses; S 79°55'37" W, 62.09 feet; N 89°52'08" E, 193.48 feet to a point on a deed recorded in Official Records Book 1674, Page 2470 of the Public Records of Osceola County Florida; thence run along said deed the following five courses; S 00°07'52" E, 207.00 feet; S 89°52'08" W, 350.00 feet; S 00°07'52" E, 500.00 feet; N 89°52'08" E, 400.00 feet; N 00°07'52" W, 707.00 feet to a point on the aforementioned deed recorded in Official Records Book 1563, Page 2410; thence run along said deed the following courses; N 89°52'09" E, 2.14 feet; S 45°03'23" E, 42.36 feet; S 00°00'00"

E, 174.79 feet to a point of curvature of a curve concave Easterly having a radius of 1597.84 feet, and a central angle of 09°05'25"; run Southerly along the arc of said curve, 253.51 feet; S 09°05'25" E, 282.87 feet to a point of curvature of a curve concave Westerly having a radius of 1457.85 feet, and a central angle of 26°10'31"; run Southerly along the arc of said curve, 666.01 feet; S 17°05'06" W, 544.65 feet to a point of curvature of a curve concave Northeasterly having a radius of 1597.85 feet, and a central angle of 102°07'51"; run Southeasterly along the arc of said curve, 2848.19 feet to a point on a deed recorded in Official Records Book 1280, Page 1782 of the Public Records of Osceola County Florida; thence departing deed recorded in Official Records Book 1674, Page 2470 following the deed recorded in Official Records Book 1280, Page 1782 following courses; said point being  a point of compound curvature of a curve concave Northerly having a radius of 1597.89 feet, and a central angle of 07°30'00"; run Easterly along the arc of said curve, 209.16 feet; S 54°40'11" E, 66.55 feet; S 12°49'30" E, 117.68 feet to a point on a non-tangent curve concave Easterly having a radius of 2009.86 feet, and a central angle of 24°18'27"; from a tangent bearing of S 10°48'36" W run Southerly along the arc of said curve, 852.67 feet; S 13°29'51" E, 341.79 feet; S 13°29'51" E, 408.71 feet to a point of curvature of a curve concave Westerly having a radius of 1809.86 feet, and a central angle of 11°41'10"; run Southerly along the arc of said curve, 369.14 feet; to a point of compound curvature of a curve concave Westerly having a radius of 1809.86 feet, and a central angle of 17°06'44"; thence run Southerly along the arc of said curve, 540.54 feet; S 15°17'58" W, 294.15 feet; thence departing said deed run along the Westerly right of way line of State Road 400 and World Drive Interchange as described in Official Records Book 1659, Page 1492 of the Public Records of Osceola County Florida the following courses; S 15°15'17" W, 300.03 feet; N 74°44'43" W, 45.00 feet; S 17°31'41" W, 302.54 feet; thence S 15°15'11" W, 177.35 feet to a point on a non-tangent curve concave Easterly having a radius of 4501.37 feet, and a central angle of 06°46'34"; from a tangent bearing of S 15°15'19" W run Southerly along the arc of said curve, 532.35 feet; S 08°28'42" W, 421.43 feet; S 81°31'15" E, 26.00 feet; S 08°28'45" W, 543.00 feet; N 81°31'15" W, 26.00 feet; S 08°28'44" W, 1288.75 feet to a point of curvature of a curve concave Northwesterly having a radius of 1051.92 feet, and a central angle of 30°21'09"; run Southwesterly along the arc of said curve, 557.26 feet; S 38°49'53" W, 892.32 feet to a point on the aforesaid Reedy Creek Improvement District de-annexation Resolution No. 291; thence run along said de-annexation boundary the following courses; N 34°24'01" W, 342.34 feet; thence N 41°10'58" E, 504.10 feet; N 56°53'24" W, 1046.80 feet; N 00°00'05" W, 182.99 feet; N 00°00'05" W, 262.45 feet; N 00°00'05" W, 604.56 feet; N 20°22'32" E, 1354.78 feet; N 39°36'34" E, 1142.27 feet; N 89°59'55" E, 550.00 feet; N 00°00'05" W, 1600.00 feet; N 53°58'26" W, 680.07 feet; N 11°08'10" W, 1105.17 feet; N 44°36'19" W, 1268.50 feet; N 61°15'45" W, 889.74 feet; N 18°33'37" W, 469.54 feet; thence N 00°00'05" W, 391.70 feet; N 89°59'55" E, 48.91 feet; N 06°11'23" E, 746.77 feet; thence N 13°51'33" E, 679.15 feet; N 45°31'55" E, 264.41 feet; N 89°59'55" E, 356.15 feet; thence N 00°00'05" W, 317.21 feet to the Point of Beginning, containing 263.49 acres, more or less.


AND

      A parcel of land lying in Sections 11 through 14, Township 25 South, Range 27 East, Osceola County, Florida, and being more particularly described as follows:

      Commence at the Northwest corner of the Northeast 1/4 of said Section 11, run along the West line of the Northeast 1/4 of said Section 11, S 00°09'07" E, 132.00 feet; thence N 89°52'08" E, 1922.52 feet along a line that is 132.00 feet South of and parallel with the North line of the Northeast 1/4 of said Section 11 to a point on Southerly right of way line of State Road 530 and a point on the boundary of de-annexation Resolution No. 291 as described in Official Records Book 1235, Page 1769 of the Public Records of Osceola County, Florida, and the Point of Beginning; thence run along said boundaries the following five courses; N 89°52'07" E, 728.48 feet; N 89°52'44" E, 1251.91 feet; N 89°50'43" E, 190.56 feet to a point on a non-tangent curve concave Northeasterly having a radius of 814.00 feet, and a central

angle of 20°35'33"; from a tangent bearing of S 19°06'55" E run Southeasterly along the arc of said curve, 292.56 feet; to a point on a non-tangent curve concave Northeasterly having a radius of 1073.93 feet, and a central angle of 17°34'32"; from a tangent bearing of S 36°35'41" E run Southeasterly along the arc of said curve, 329.43 feet; thence departing said right of way line continue along the aforesaid de-annexation boundary the following courses; S 00°08'00" E, 455.76 feet;  N 89°52'00" E, 20.00 feet;  S 00°08'00" E, 488.84 feet to a point on a non-tangent curve concave Westerly having a radius of 1759.86 feet, and a central angle of 33°38'13";  from a tangent bearing of S 00°08'08" E run Southerly along the arc of said curve, 1033.17 feet;  S 33°30'09" W, 1183.50 feet to a point of curvature of a curve concave Southeasterly having a radius of 2059.86 feet, and a central angle of 14°13'45"; run Southwesterly along the arc of said curve, 511.56 feet; to a point on a non-tangent curve concave Northerly having a radius of 1457.89 feet, and a central angle of 12°05'33"; from a tangent bearing of S 82°51'48" W run Westerly along the arc of said curve, 307.69 feet; to a point of compound curvature of a curve concave Northerly having a radius of 1457.79 feet, and a central angle of 29°15'05";  run Westerly along the arc of said curve, 744.25 feet;  N 34°12'14" E, 149.99 feet;  N 38°16'56" W, 139.49 feet;  N 20°31'56" W, 110.01 feet;  N 70°14'49" W, 129.46 feet;  N 45°48'22" W, 132.54 feet;  S 89°14'11" W, 181.70 feet to a point on a non-tangent curve concave Easterly having a radius of 1457.85 feet, and a central angle of 47°22'50"; from a tangent bearing of N 30°17'44" W run Northerly along the arc of said curve, 1205.56 feet;  N 17°05'06" E, 386.62 feet;  S 72°54'50" E, 290.44 feet;  N 10°23'11" E, 320.40 feet;  N 04°30'12" E, 320.81 feet;  N 87°47'48" W, 244.99 feet to a point on a non-tangent curve concave Westerly having a radius of 1597.84 feet, and a central angle of 11°17'38";  from a tangent bearing of N 02°12'13" E run Northerly along the arc of said curve, 314.96 feet;  N 09°05'25" W, 282.87 feet to a point of curvature of a curve concave Easterly having a radius of 1457.85 feet, and a central angle of 09°05'25";  run Northerly along the arc of said curve, 231.30 feet;  N 00°00'00" E, 186.09 feet;  N 44°56'12" E, 42.49 feet to the Point of Beginning, containing 191.436 Acres, more or less.

AND

A parcel of land lying in Sections 12 and 13, Township 25 South, Range 27 East and Section 7, Township 25 South, Range 28 East, Osceola County, Florida, and being more particularly described as follows:

Commence at the Northwest corner of said Section 7, run along the West line of the Northwest 1/4 of said Section 7, S 00°16'52" W, 182.00 feet, to a point on Southerly right of way line of State Road 530 and a point on the boundary of de-annexation Resolution No. 291 as described in Official Records Book 1235, Page 1769 of the Public Records of Osceola County, Florida, and the Point of Beginning; thence run along said de-annexation boundary the following courses; N 89°36'48" E, 1370.16 feet to a point on a non-tangent curve concave Southerly having a radius of 2774.79 feet, and a central angle of 14°35'33"; from a tangent bearing of S 87°18'45" E run Easterly along the arc of said curve, 706.70 feet;  S 72°43'12" E, 120.32 feet;  S 68°43'12" E, 476.40 feet to a point of curvature of a curve concave Southwesterly having a radius of 310.00 feet, and a central angle of 64°11'44"; run Southeasterly along the arc of said curve, 347.33 feet; to a point of compound curvature of a curve concave Westerly having a radius of 710.00 feet, and a central angle of 43°41'01";  run Southerly along the arc of said curve, 541.32 feet;  S 39°09'33" W, 593.50 feet;  S 39°49'53" W, 428.75 feet to a point on a non-tangent curve concave Northwesterly having a radius of 17038.73 feet, and a central angle of 00°07'01";  from a tangent bearing of S 39°57'15" W run Southwesterly along the arc of said curve, 34.76 feet; to a point of compound curvature of a curve concave Northwesterly having a radius of 17038.73 feet, and a central angle of 00°07'00";  run Southwesterly along the arc of said curve, 34.73 feet; to a point of compound curvature of a curve concave Northwesterly having a radius of 17038.73 feet, and a central angle of 05°07'15"; run Southwesterly along the arc of said curve, 1522.83 feet; to a point of reverse curvature

of a curve concave Southeasterly having a radius of 17338.73 feet, and a central angle of 07°18'35"; run Southwesterly along the arc of said curve, 2212.08 feet; to a point of compound curvature of a curve concave Southeasterly having a radius of 17338.73 feet, and a central angle of 03°23'57"; run Southwesterly along the arc of said curve, 1028.62 feet; to a point of reverse curvature of a curve concave Northwesterly having a radius of 17038.73 feet, and a central angle of 05°03'27"; run Southwesterly along the arc of said curve, 1503.98 feet; S 44°18'34" W, 2356.77 feet to a point on a non-tangent curve concave Northerly having a radius of 451.67 feet, and a central angle of 120°17'51"; from a tangent bearing of S 44°19'15" W run Westerly along the arc of said curve, 948.32 feet; to a point of compound curvature of a curve concave Easterly having a radius of 1767.86 feet, and a central angle of 30°38'14"; run Northerly along the arc of said curve, 945.31 feet; N 15°15'17" E, 57.43 feet; N 74°44'43" W, 42.00 feet; N 10°06'45" E, 301.24 feet; N 15°17'20" E, 293.98 feet to a point on a non-tangent curve concave Westerly having a radius of 2009.86 feet, and a central angle of 28°47'54"; from a tangent bearing of N 15°18'05" E run Northerly along the arc of said curve, 1010.21 feet; N 13°29'49" W, 750.50 feet to a point of curvature of a curve concave Easterly having a radius of 1809.86 feet, and a central angle of 30°18'27"; run Northerly along the arc of said curve, 957.35 feet; N 46°27'10" E, 105.97 feet; to a point on a non-tangent curve concave Southeasterly having a radius of 1759.86 feet, and a central angle of 13°41'33"; from a tangent bearing of N 19°48'38" E run Northeasterly along the arc of said curve, 420.57 feet; N 33°30'11" E, 1183.50 feet to a point of curvature of a curve concave Westerly having a radius of 2059.86 feet, and a central angle of 33°23'10"; run Northerly along the arc of said curve, 1200.27 feet; N 05°42'05" E, 369.98 feet to a point of curvature of a curve concave Southeasterly having a radius of 426.87 feet, and a central angle of 56°29'55"; run Northeasterly along the arc of said curve, 420.93 feet; N 62°12'02" E, 1022.85 feet to a point of curvature of a curve concave Southerly having a radius of 1789.72 feet, and a central angle of 15°19'53"; run Easterly along the arc of said curve, 478.90 feet; to a point on a non-tangent curve concave Southerly having a radius of 1791.86 feet, and a central angle of 03°26'13"; from a tangent bearing of N 78°45'37" E run Easterly along the arc of said curve, 107.49 feet; to a point of compound curvature of a curve concave Southerly having a radius of 2181.28 feet, and a central angle of 06°37'08"; run Easterly along the arc of said curve, 251.98 feet; N 88°49'08" E, 659.02 feet; N 89°50'46" E, 591.75 feet to the Point of Beginning, containing 744.473 acres, more or less.

AND

A parcel of land lying in Sections 12, 13, 23 and 24, Township 25 South, Range 27 East and Sections 7,8,9, 17 through 20 and 30, Township 25 South, Range 28 East, Osceola County, Florida, and being more particularly described as follows:

Commence at the Northwest corner of said Section 9, run along the West line of the Northwest 1/4 of said Section 9, S 00°08'49" E, 132.00 feet, to a point on Southerly right of way line of State Road 530 and a point on the boundary of de-annexation Resolution No. 291 as described in Official Records Book 1235, Page 1769 of the Public Records of Osceola County, Florida, and the Point of Beginning; thence run along said de-annexation boundary the following courses; N 89°47'42" E, 622.99 feet to a point on a non-tangent curve concave Northeasterly having a radius of 450.00 feet, and a central angle of 59°52'20"; from a tangent bearing of S 00°12'18" E run Southeasterly along the arc of said curve, 470.24 feet; S 60°04'38" E, 118.30 feet to a point of curvature of a curve concave Southwesterly having a radius of 150.00 feet, and a central angle of 60°00'00"; run Southeasterly along the arc of said curve, 157.08 feet; N 89°55'21" E, 40.00 feet; S 00°04'25" E, 2369.91 feet; N 89°56'33" E, 50.00 feet; S 00°03'27" E, 512.31 feet; S 00°03'27" E, 358.24 feet; S 47°23'03" W, 1794.78 feet; N 75°57'54" W, 2061.55 feet; S 53°52'46" W, 4747.05 feet; S 13°19'33" E, 1235.00 feet; S 57°29'14" E, 837.20 feet; S 26°03'58" E, 3172.66 feet; S 45°00'05" E, 707.11 feet; S 09°55'30" W, 2030.39 feet; N 65°37'30" W,

1163.91 feet; N 44°47'06" W, 1831.04 feet; S 48°53'12" W, 715.92 feet; N 65°37'30" W, 341.01 feet; N 26°33'59" W, 2124.26 feet; S 68°44'53" W, 965.66 feet; S 16°54'23" E, 5330.34 feet; S 50°31'34" W, 1101.14 feet; N 41°38'06" W, 4214.56 feet; N 18°02'08" W, 2261.08 feet; S 89°59'55" W, 1650.00 feet; S 00°00'05" E, 1224.24 feet; S 35°39'14" W, 1200.88 feet; S 89°59'55" W, 1800.00 feet; N 34°46'45" W, 1157.70 feet; N 27°43'20" W, 492.90 feet; N 01°09'30" W, 124.30 feet; N 50°54'37" W, 282.74 feet; S 59°21'14" W, 36.00 feet; N 38°52'34" W, 156.01 feet; N 39°57'15" E, 502.67 feet; N 43°58'16" E, 1918.88 feet to a point of curvature of a curve concave Southerly having a radius of 622.20 feet, and a central angle of 73°46'51"; run Easterly along the arc of said curve, 801.22 feet; to a point of compound curvature of a curve concave Southwesterly having a radius of 2405.91 feet, and a central angle of 15°39'49"; run Southeasterly along the arc of said curve, 657.74 feet; to a point on a non-tangent curve concave Southwesterly having a radius of 3677.60 feet, and a central angle of 09°13'43"; from a tangent bearing of S 46°35'06" E run Southeasterly along the arc of said curve, 592.35 feet; S 37°21'28" E, 61.64 feet; N 52°38'37" E, 295.00 feet; N 37°21'24" W, 236.29 feet; N 33°58'59" W, 295.13 feet to a point of curvature of a curve concave Easterly having a radius of 724.53 feet, and a central angle of 32°07'27"; run Northerly along the arc of said curve, 406.22 feet; N 01°51'30" W, 914.66 feet to a point of curvature of a curve concave Easterly having a radius of 1433.91 feet, and a central angle of 30°54'26"; run Northerly along the arc of said curve, 773.50 feet; N 31°08'21" E, 714.41 feet; N 32°17'07" E, 68.88 feet to a point of curvature of a curve concave Southeasterly having a radius of 4489.66 feet, and a central angle of 06°27'44"; run Northeasterly along the arc of said curve, 506.37 feet; N 38°44'50" E, 91.15 feet; N 51°13'07" W, 15.63 feet; N 39°57'15" E, 399.78 feet to a point of curvature of a curve concave Southeasterly having a radius of 17028.73 feet, and a central angle of 05°21'16"; run Northeasterly along the arc of said curve, 1591.38 feet; to a point of reverse curvature of a curve concave Northwesterly having a radius of 17348.73 feet, and a central angle of 00°22'04"; run Northeasterly along the arc of said curve, 111.39 feet; N 45°03'33" W, 10.00 feet to a point on a non-tangent curve concave Northwesterly having a radius of 17341.08 feet, and a central angle of 04°36'46"; from a tangent bearing of N 44°56'25" E run Northeasterly along the arc of said curve, 1396.13 feet; to a point of compound curvature of a curve concave Northwesterly having a radius of 17338.73 feet, and a central angle of 05°43'39"; run Northeasterly along the arc of said curve, 1733.24 feet; to a point of reverse curvature of a curve concave Southeasterly having a radius of 17038.73 feet, and a central angle of 05°21'16"; run Northeasterly along the arc of said curve, 1592.32 feet; N 39°57'15" E, 942.63 feet; N 44°36'59" E, 348.99 feet to a point on a non-tangent curve concave Southeasterly having a radius of 1342.44 feet, and a central angle of 24°30'00"; from a tangent bearing of N 44°44'08" E run Northeasterly along the arc of said curve, 574.04 feet; N 69°14'08" E, 1832.61 feet; S 47°43'15" E, 1148.63 feet; S 37°11'45" E, 2082.95 feet; N 52°48'15" E, 150.00 feet; N 37°11'45" W, 2096.77 feet; N 47°43'15" W, 1086.16 feet; N 69°14'08" E, 104.92 feet to a point of curvature of a curve concave Southerly having a radius of 1342.40 feet, and a central angle of 19°21'25"; run Easterly along the arc of said curve, 453.52 feet; N 88°35'33" E, 600.08 feet; N 83°15'36" E, 300.22 feet; thence N 89°45'45" E, 3676.81 feet to the Point of Beginning, containing 2908.288 acres, more or less.

AND

A parcel of land lying in Sections 23 through 26, Township 25 South, Range 27 East, and Section 30, Township 25 South, Range 28 East Osceola County, Florida, and being more particularly described as follows:

Commence at the Southeast corner of said Section 26, run along the East line of the Southeast 1/4 of said Section 26, N 00°04'03" W, 120.00 feet, to a point on the boundary of de-annexation Resolution No. 291 as described in Official Records Book 1235, Page 1769 of the Public Records of Osceola County, Florida, and the Point of Beginning; thence run along said de-annexation boundary the

following courses;  S 89°49'18" W, 678.98 feet; S 89°56'16" W,41.46 feet;  S 89°50'14" W,  486.92 feet;
N 00°07'57" W, 333.91 feet;  N 00°07'57" W, 177.25 feet; N 00°01'07" W, 178.96 feet; N 00°03'44" W,
631.66 feet;  S 89°52'13" W, 494.06 feet;  S 89°55'05" W, 828.90 feet; N 90°00'00" W, 5.12 feet;  N
00°08'06" W, 251.46 feet; N 00°08'09" W, 394.13 feet;  N 00°08'11" W, 655.92 feet;  N 00°13'25" W,
23.67 feet;  S 89°55'00" W, 128.49 feet; N 89°31'49" W, 397.18 feet;  N 89°31'34" W, 122.10 feet; N
89°32'10" W, 47.99 feet; N 89°31'47" W, 361.14 feet; N 89°31'38" W, 68.77 feet; N 89°32'02" W, 98.33
feet;  N 89°31'40" W, 203.89 feet; N 09°35'39" W, 23.58 feet; N 34°30'31" E, 3.49 feet; N 89°39'50" W,
46.97 feet; S 89°55'09" W, 105.90 feet;  N 00°00'26" W, 1997.80 feet; N 39°37'22" E, 1530.02 feet; N
39°37'22" E, 3105.08 feet;  S 25°35'45" E, 1405.42 feet;  S 48°02'51" W, 2129.92 feet;  S 27°09'04" E,
2191.46 feet;  N 89°59'55" E, 429.40 feet;  N 42°34'45" E, 61.38 feet;  N 77°28'31" E, 6.16 feet;  S
80°50'28" E, 42.95 feet;  S 76°40'19" E, 50.95 feet;  N 78°08'48" E, 34.33 feet;  S 30°04'17" E, 4.22 feet;
S 76°06'37" E, 130.56 feet;  N 89°59'55" E, 618.64 feet;  N 00°00'05" W, 1750.00 feet;  S 85°45'54" E,
2707.40 feet;  S 38°39'40" E, 320.15 feet;  S 01°48'36" E, 382.26 feet;  S 54°54'10" W, 2031.38 feet;  S
34°49'33" E, 1400.89 feet;  N 66°34'12" E, 2012.03 feet;  N 89°59'55" E, 1596.15 feet;  S 41°29'52" E,
1068.10 feet;  S 16°30'11" W, 1408.01 feet;  S 60°01'01" W, 808.14 feet;  N 44°46'55" W, 709.83 feet; N
00°00'05" W, 700.00 feet;  S 89°59'55" W, 1100.00 feet;  S 15°22'30" W, 829.70 feet;  S 89°59'55" W,
620.00 feet;  S 00°00'05" E, 250.00 feet;  N 89°45'12" E, 331.16 feet;  N 22°25'57" E, 47.85 feet;  N
32°49'38" W, 99.62 feet;  N 06°38'41" W, 20.86 feet;  N 67°06'55" E, 58.35 feet;  N 80°46'35" E, 124.29
feet;  N 59°15'21" E, 74.38 feet;  N 76°39'34" E, 72.66 feet;  S 59°47'48" E, 57.26 feet;  S 54°56'34" E,
123.34 feet;  S 58°10'29" E, 79.63 feet;  S 30°10'31" E, 44.20 feet;  S 06°24'36" E, 107.82 feet;  S 11°28'54"
W, 73.24 feet;  S 17°38'04" W, 10.26 feet;  S 67°56'29" E, 225.59 feet;  N 45°25'09" E, 16.32 feet;  S
61°51'19" E, 58.22 feet;  S 30°56'12" E, 14.64 feet;  S 67°56'29" E, 748.10 feet;  S 89°54'33" W, 2032.92
feet; S 89°51'55" W, 2644.56 feet;  S 00°04'03" E, 79.89 feet;  S 89°49'42" W, 1207.06 feet; N 89°49'42"
E, 1207.06 feet to the Point of Beginning, containing 829.134 acres, more or less.

Less the following recorded parcel in the Public Records of Osceola County Florida:

O.R. Book 6074, Page 1234

Containing in aggregate 24,200.76 acres more or less.







GRAPHIC SCALE
SCALE 1" = 400'

ABBREVIATIONS
D.B.=DEED BOOK
O.R.=OFFICIAL RECORDS
S.R.=STATE ROAD
R/W=RIGHT OF WAY
P.B.=PLAT BOOK
PSM=PROFESSIONAL SURVEYOR
AND MAPPER
L.B.=LICENSED BUSINESS
SEC=SECTION
TWN=TOWNSHIP
RNG=RANGE
POB=POINT OF BEGINNING
POC=POINT OF COMMENCEMENT

Less O.R. 20210271782

Less O.R. 10304/8949

Northerly and Easterly boundary of
Tract R, Golden Oak Phase 1B,
Plat Book 75, Pages 3-15

| FILING AREA | DATE: |
| OVERALL | 12/7/22 |
| PROJECT NAME | SCALE |
| DEVELOPERS' AGREEMENT IN ORANGE COUNTY | 1" = 400' |
| SURVEY TYPE | DRAWN BY: |
| SKETCH OF DESCRIPTION | JLG |
| COMMENTS | FILENAME: |
| SHEET 3 OF 20 SHEETS | 10JG22053 |

ACES
P.O.B. 10000
LAKE BUENA VISTA
FL 32830-1000
PHONE 407-824-5855











GRAPHIC SCALE
SCALE 1 = 1000'
1000

RANGE 27 EAST

RANGE 28 EAST

36

ORANGE     COUNTY
TOWNSHIP 24 SOUTH

South line, SW 1/4,
Sec. 36-24-27

South line, SE 1/4, Sec. 36-24-27

South line, SW 1/4, Sec. 31-24-28

S 89 46'36" W  2656.21'

S 89 50'04" W  2658.48'

N 89 56'54" W  2748.82'

SW corner, SE 1/4,
Sec. 36-24-27

SW corner, Sec. 31-24-28
SE corner, Sec. 36-24-27

SW corner, SE 1/4,
Sec. 31-24-28

TOWNSHIP 25 SOUTH
OSCEOLA     COUNTY

ABBREVIATIONS
D.B.=DEED BOOK
O.R.=OFFICIAL RECORDS
S.R.=STATE ROAD
R/W=RIGHT OF WAY
P.B.=PLAT BOOK
PSM=PROFESSIONAL SURVEYOR
   AND MAPPER
LB=LICENSED BUSINESS
SEC=SECTION
TWN=TOWNSHIP
RNG=RANGE
POB=POINT OF BEGINNING
POC=POINT OF COMMENCEMENT

1

RCES
P.O.B. 10000
LAKE BUENA VISTA
FL. 32830-1000
PHONE 407-824-5855

| FILING AREA | DATE: |
| OVERALL | 12/7/22 |
| PROJECT NAME | SCALE |
| DEVELOPERS' AGREEMENT IN ORANGE COUNTY | 1" = 1000' |
| SURVEY TYPE | DRAWN BY: |
| SKETCH OF DESCRIPTION | JLG |
| COMMENTS | FILENAME: |
| SHEET 8 OF 20 SHEETS | 10JG22053 |



GRAPHIC SCALE
SCALE 1" = 1000'

35

*ORANGE      COUNTY*
*TOWNSHIP 24 SOUTH*

South line, SW 1/4, Sec. 35-24-27

South line, SE 1/4, Sec. 35-24-27

South line, SW 1/4,
Sec. 36-24-27

L249    S 89°44'07" W  2638.05'        S 89°48'35" W  2652.59'        S 89°46'36" W  2656.21'

SW corner, Sec. 35-24-27
SE corner, Sec. 34-24-27

SW corner, SE 1/4,
Sec. 35-24-27

*TOWNSHIP 25   SOUTH*

SW corner, Sec. 36-24-27
SE corner, Sec. 35-24-27

*OSCEOLA      COUNTY*

ABBREVIATIONS
D.B.=DEED BOOK
O.R.=OFFICIAL RECORDS
S.R.=STATE ROAD
R/W=RIGHT OF WAY
P.B.=PLAT BOOK
PSM=PROFESSIONAL SURVEYOR
     AND MAPPER
L.B.=LICENSED BUSINESS
SEC=SECTION
TN=TOWNSHIP
RNG=RANGE
POB=POINT OF BEGINNING
POC=POINT OF COMMENCEMENT

2

| | | |
|---|---|---|
| ACES | P.O.B. 10000<br>LAKE BUENA VISTA<br>FL. 32830-1000<br>PHONE 407-824-5855 | FILING AREA<br>*OVERALL* | DATE:<br>12/7/22 |

| | |
|---|---|
| PROJECT NAME<br>*DEVELOPERS' AGREEMENT IN ORANGE COUNTY* | SCALE<br>1" = 1000' |
| SURVEY TYPE<br>*SKETCH OF DESCRIPTION* | DRAWN BY:<br>JLG |
| COMMENTS<br>*SHEET 9 OF 20 SHEETS* | FILENAME:<br>10JG22053 |



SEE SHEET 11
FOR THIS AREA

ABBREVIATIONS
D.B.=DEED BOOK
O.R.=OFFICIAL RECORDS
S.R.=STATE ROAD
R/W=RIGHT OF WAY
P.B.=PLAT BOOK
PSM=PROFESSIONAL SURVEYOR
        AND MAPPER
L.B.=LICENSED BUSINESS
SEC=SECTION
TN.=TOWNSHIP
RNG=RANGE
POB=POINT OF BEGINNING
POC=POINT OF COMMENCEMENT

| FILING AREA | DATE: |
| *OVERALL* | 12/7/22 |
| PROJECT NAME | SCALE |
| *DEVELOPERS' AGREEMENT IN ORANGE COUNTY* | 1" = 1000' |
| SURVEY TYPE | DRAWN BY: |
| *SKETCH OF DESCRIPTION* | JLG |
| COMMENTS | FILENAME: |
| *SHEET 10 OF 20 SHEETS* | 10JG22053 |

ACES
UNIVERSAL ENERGY SERVICES

P.O.B. 10000
LAKE BUENA VISTA
FL. 32830-1000
PHONE 407-824-5855



ORANGE      COUNTY
TOWNSHIP 24 SOUTH

TOWNSHIP 25   SOUTH
OSCEOLA      COUNTY

ABBREVIATIONS
D.B.=DEED BOOK
O.R.=OFFICIAL RECORDS
S.R.=STATE ROAD
R/W=RIGHT OF WAY
P.B.=PLAT BOOK
PSM=PROFESSIONAL SURVEYOR
    AND MAPPER
L.B.=LICENSED BUSINESS
SEC=SECTION
TWN=TOWNSHIP
RNG=RANGE
POB=POINT OF BEGINNING
POC=POINT OF COMMENCEMENT

| | | | |
|---|---|---|---|
| P.O.B. 10000 LAKE BUENA VISTA FL. 32830-1000 PHONE 407-824-5856 | FILING AREA **OVERALL** | DATE: 12/7/22 |
| | PROJECT NAME *DEVELOPERS' AGREEMENT IN ORANGE COUNTY* | SCALE 1" = 300' |
| | SURVEY TYPE *SKETCH OF DESCRIPTION* | DRAWN BY: JLG |
| | COMMENTS *SHEET 11 OF 20 SHEETS* | FILENAME: 10JG22053 |



SHEET 12 OF 20 SHEETS









TOWNSHIP 24 SOUTH

DEVELOPERS' AGREEMENT IN ORANGE COUNTY
SKETCH OF DESCRIPTION
SHEET 16 OF 20 SHEETS

OVERALL

DATE: 12/7/22
SCALE: 1" = 1000'
DRAWN BY: JLG
FILENAME: 10JG22053



TOWNSHIP 24 SOUTH

*P.O.B.*
18508,513 Acres±

RANGE 27 EAST

RANGE 28 EAST

ABBREVIATIONS:
D.B.=DEED BOOK
O.R.=OFFICIAL RECORDS
S.R.=STATE ROAD
R/W=RIGHT OF WAY
P.B.=PLAT BOOK
PSM=PROFESSIONAL SURVEYOR
    AND MAPPER
LGB.=LICENSED BUSINESS
SEC=SECTION
TWN.=TOWNSHIP
RNG=RANGE
POB=POINT OF BEGINNING
POC=POINT OF COMMENCEMENT

FILING AREA
*OVERALL*
PROJECT NAME
*DEVELOPERS' AGREEMENT IN ORANGE COUNTY*
SURVEY TYPE
*SKETCH OF DESCRIPTION*
*SHEET 17 OF 20 SHEETS*

DATE: 12/07/22
SCALE: 1" = 1000'
DRAWN BY: JLG
FILENAME: 10JG22053

P.O.B. 10000
LAKE BUENA VISTA
FL 32830-1000
PHONE 407-824-5855

TANGENT TABLE

| LINE# | BEARING | DIST. | LINE# | BEARING | DIST. | LINE# | BEARING | DIST. |
|---|---|---|---|---|---|---|---|---|
| L1 | N 89°38'50" E | 663.64 | L67 | N 82°18'14" W | 71.09 | L133 | N 26°29'23" W | 104.81 |
| L2 | N 89°11'34" E | 148.62 | L68 | N 51°44'44" W | 65.78 | L134 | S 49°40'54" W | 30.14 |
| L3 | N 89°21'03" E | 191.58 | L69 | N 80°24'25" W | 90.39 | L135 | S 38°34'51" E | 13.88 |
| L4 | S 00°13'59" W | 221.07 | L70 | S 48°32'46" W | 80.93 | L136 | S 51°58'30" W | 145.54 |
| L5 | S 43°40'59" E | 16.92 | L71 | S 22°55'38" W | 113.12 | L137 | N 37°57'09" W | 16.70 |
| L6 | S 34°38'41" E | 8.13 | L72 | S 27°19'16" E | 55.45 | L138 | N 37°56'18" W | 17.87 |
| L7 | S 25°16'40" E | 86.79 | L73 | S 18°40'56" W | 159.75 | L139 | N 30°54'21" W | 193.79 |
| L8 | S 28°57'56" E | 106.03 | L74 | S 10°48'30" W | 160.42 | L140 | S 55°05'55" W | 58.77 |
| L9 | S 58°01'53" E | 87.73 | L75 | N 65°28'07" E | 122.36 | L141 | S 72°04'54" W | 26.78 |
| L10 | N 85°59'29" E | 134.58 | L76 | N 76°27'23" E | 76.59 | L142 | N 00°06'31" W | 54.31 |
| L11 | S 43°56'36" W | 91.06 | L77 | S 78°11'38" E | 85.68 | L143 | N 74°49'42" W | 43.41 |
| L12 | S 64°40'37" W | 105.25 | L78 | N 83°24'11" W | 42.54 | L144 | S 44°47'41" W | 145.43 |
| L13 | S 40°45'32" W | 117.42 | L79 | S 24°23'32" E | 34.06 | L145 | S 45°05'06" E | 18.68 |
| L14 | S 13°26'04" W | 97.39 | L80 | S 18°04'39" E | 78.70 | L146 | S 03°14'02" W | 84.66 |
| L15 | S 42°14'20" W | 133.97 | L81 | N 82°09'40" W | 26.47 | L147 | S 05°12'38" E | 58.35 |
| L16 | S 68°59'11" W | 89.71 | L82 | N 26°43'01" W | 107.99 | L148 | S 33°10'07" E | 163.59 |
| L17 | S 28°50'44" W | 77.77 | L83 | S 13°53'13" W | 84.71 | L149 | N 86°26'26" E | 126.87 |
| L18 | S 14°52'47" W | 88.32 | L84 | N 20°06'37" W | 86.21 | L150 | N 76°15'46" E | 63.89 |
| L19 | S 01°59'29" E | 106.28 | L85 | S 22°42'17" W | 90.27 | L151 | S 64°36'17" E | 118.17 |
| L20 | S 24°42'46" W | 241.59 | L86 | N 48°33'38" W | 93.96 | L152 | S 52°36'40" E | 63.05 |
| L21 | S 36°55'50" W | 126.64 | L87 | S 51°48'05" W | 58.47 | L153 | S 45°16'16" E | 127.88 |
| L22 | S 24°03'44" W | 71.01 | L88 | S 70°41'52" W | 98.39 | L154 | S 10°02'35" E | 93.01 |
| L23 | S 64°59'30" W | 91.68 | L89 | S 75°48'30" W | 82.70 | L155 | S 36°16'00" W | 28.53 |
| L24 | N 68°30'58" W | 131.37 | L90 | N 82°22'12" W | 18.57 | L156 | S 20°23'46" W | 184.90 |
| L25 | N 34°57'28" W | 145.43 | L91 | S 59°48'12" E | 61.99 | L157 | S 25°05'40" W | 31.33 |
| L26 | N 10°44'04" W | 144.09 | L92 | S 23°48'42" W | 31.41 | L158 | S 55°12'27" W | 19.76 |
| L27 | N 10°34'18" E | 129.55 | L93 | S 21°34'58" E | 112.96 | L159 | S 18°42'59" W | 22.23 |
| L28 | N 44°03'35" E | 129.67 | L94 | S 25°04'56" E | 80.36 | L160 | S 80°54'32" E | 34.76 |
| L29 | N 86°35'32" E | 100.03 | L95 | S 06°58'19" E | 51.79 | L161 | S 88°11'54" E | 77.05 |
| L30 | N 62°48'18" E | 100.08 | L96 | S 47°18'54" W | 37.10 | L162 | S 89°29'03" E | 140.11 |
| L31 | N 58°16'14" E | 95.99 | L97 | S 03°48'45" E | 24.29 | L163 | S 89°29'03" E | 433.68 |
| L32 | N 15°01'47" E | 86.03 | L98 | S 73°28'07" W | 70.19 | L164 | N 00°00'00" E | 131.18 |
| L33 | N 14°30'32" W | 104.94 | L99 | N 63°15'30" W | 63.09 | L165 | N 45°00'00" W | 71.68 |
| L34 | N 03°06'23" W | 111.09 | L100 | S 41°00'06" E | 193.39 | L166 | N 00°00'00" W | 633.08 |
| L35 | N 07°32'42" E | 68.01 | L101 | S 48°59'54" W | 100.00 | L167 | N 89°59'00" W | 445.76 |
| L36 | N 15°14'13" W | 80.67 | L102 | N 87°15'41" W | 130.57 | L168 | N 00°27'46" E | 673.19 |
| L37 | N 87°12'48" W | 40.11 | L103 | N 63°21'34" W | 33.90 | L169 | S 89°58'17" E | 398.81 |
| L38 | S 77°42'57" W | 84.88 | L104 | N 81°08'52" W | 154.09 | L170 | N 00°00'00" E | 753.74 |
| L39 | S 74°44'47" W | 66.79 | L105 | N 39°33'00" W | 38.53 | L171 | N 90°00'00" W | 362.43 |
| L40 | S 35°20'27" W | 90.33 | L106 | N 28°54'14" W | 86.79 | L172 | N 05°16'59" W | 106.23 |
| L41 | S 22°58'13" W | 87.94 | L107 | N 28°30'43" W | 101.63 | L173 | N 26°33'54" W | 135.35 |
| L42 | S 20°05'22" W | 168.18 | L108 | N 32°36'46" W | 77.00 | L174 | N 47°32'44" E | 146.69 |
| L43 | S 65°39'23" W | 108.46 | L109 | N 39°30'36" W | 98.30 | L175 | N 11°28'34" E | 24.04 |
| L44 | N 79°02'16" W | 146.86 | L110 | N 02°15'56" W | 56.50 | L176 | N 40°40'48" W | 82.81 |
| L45 | S 44°41'24" W | 85.24 | L111 | N 39°36'59" W | 135.27 | L177 | N 90°00'00" W | 73.87 |
| L46 | S 66°58'59" W | 80.82 | L112 | N 85°04'00" W | 67.65 | L178 | N 00°16'44" E | 0.50 |
| L47 | N 89°03'00" W | 96.88 | L113 | N 38°23'30" W | 64.62 | L179 | N 89°57'37" E | 670.11 |
| L48 | S 84°18'13" W | 51.79 | L114 | N 64°16'04" W | 16.33 | L180 | S 00°08'32" E | 668.06 |
| L49 | S 77°56'53" W | 116.91 | L115 | N 05°37'20" W | 20.54 | L181 | S 89°55'30" E | 671.45 |
| L50 | S 70°14'00" W | 84.26 | L116 | N 44°31'28" W | 62.56 | L182 | S 00°15'27" E | 669.41 |
| L51 | N 63°52'49" W | 163.26 | L117 | S 23°42'54" W | 95.95 | L183 | S 00°44'42" E | 656.38 |
| L52 | N 71°49'57" W | 91.32 | L118 | N 71°30'56" W | 65.59 | L184 | S 89°51'01" E | 335.66 |
| L53 | N 56°38'48" W | 106.72 | L119 | N 67°45'46" W | 71.42 | L185 | S 00°40'49" E | 656.31 |
| L54 | N 37°38'37" W | 96.72 | L120 | N 47°09'12" W | 129.61 | L186 | S 00°29'10" E | 655.63 |
| L55 | N 69°48'38" W | 85.24 | L121 | N 28°09'10" W | 67.04 | L187 | N 28°20'56" E | 666.99 |
| L56 | N 85°15'14" W | 95.72 | L122 | N 30°07'52" E | 66.18 | L188 | N 00°21'22" E | 652.39 |
| L57 | N 76°56'11" W | 104.56 | L123 | N 41°27'39" E | 82.62 | L189 | N 89°50'49" E | 714.94 |
| L58 | S 28°55'14" W | 152.44 | L124 | N 28°03'16" E | 61.53 | L190 | N 89°37'24" E | 749.86 |
| L59 | S 13°45'44" E | 47.73 | L125 | N 21°03'09" W | 47.93 | L191 | N 38°29'47" E | 22.59 |
| L60 | S 28°03'11" E | 95.35 | L126 | N 17°13'11" W | 99.26 | L192 | N 38°29'47" E | 576.34 |
| L61 | S 31°37'50" W | 165.37 | L127 | N 00°32'57" E | 48.45 | L193 | S 51°31'36" E | 50.00 |
| L62 | S 51°01'41" E | 83.54 | L128 | N 12°21'10" E | 151.79 | L194 | S 79°52'53" W | 95.47 |
| L63 | S 35°59'30" E | 246.14 | L129 | N 23°46'35" E | 109.94 | L195 | N 69°59'50" W | 311.61 |
| L64 | S 55°37'13" E | 316.45 | L130 | N 39°26'51" E | 91.52 | L196 | S 23°29'47" W | 304.91 |
| L65 | S 68°44'46" E | 336.44 | L131 | N 17°00'45" E | 45.16 | L197 | S 58°56'26" E | 509.41 |
| L66 | S 03°57'40" W | 60.74 | L132 | N 34°56'26" W | 27.03 | L198 | N 00°00'00" E | 163.29 |



ACES

P.O.B. 10000
LAKE BUENA VISTA
FL 32830-1000
PHONE 407-824-5856

| FILING AREA | DATE: |
|---|---|
| OVERALL | 12/7/22 |
| PROJECT NAME | SCALE |
| DEVELOPERS' AGREEMENT IN ORANGE COUNTY | |
| SURVEY TYPE | DRAWN BY: |
| SKETCH OF DESCRIPTION | JLG |
| COMMENTS | FILENAME: |
| SHEET 18  OF 20 SHEETS | 10JG22053 |

TANGENT TABLE

| LINE# | BEARING | DIST. |
|---|---|---|
| L199 | N 30°00'00" W | 326.45 |
| L200 | N 74°50'28" E | 100.11 |
| L201 | N 87°20'49" W | 74.69 |
| L202 | N 27°09'24" W | 47.56 |
| L203 | S 63°22'25" W | 20.69 |
| L204 | S 00°00'00" E | 20.42 |
| L205 | N 90°00'00" W | 30.04 |
| L206 | S 79°56'22" W | 74.35 |
| L207 | N 30°03'16" W | 21.84 |
| L208 | S 59°56'44" W | 12.14 |
| L209 | S 30°03'16" E | 17.42 |
| L210 | S 79°56'22" W | 34.35 |
| L211 | N 69°28'35" W | 49.22 |
| L212 | S 74°41'50" W | 40.22 |
| L213 | S 57°06'40" E | 133.74 |
| L214 | S 30°00'00" E | 180.00 |
| L215 | S 06°15'02" E | 54.63 |
| L216 | S 30°00'00" E | 408.17 |
| L217 | S 00°00'00" E | 162.89 |
| L218 | N 89°50'42" W | 360.99 |
| L219 | S 89°44'07" W | 25.00 |
| L220 | N 00°13'59" W | 29.01 |
| L221 | N 14°42'28" W | 11.68 |
| L222 | S 06°53'49" W | 123.97 |
| L223 | N 09°42'37" E | 104.21 |
| L224 | N 61°06'48" E | 53.88 |
| L225 | N 71°34'02" E | 17.56 |
| L226 | N 18°25'51" W | 18.21 |
| L227 | N 31°47'40" W | 44.69 |
| L228 | N 74°09'08" W | 308.68 |
| L229 | S 54°04'10" W | 67.69 |
| L230 | N 89°59'58" W | 83.84 |
| L231 | N 76°19'21" E | 28.14 |
| L232 | S 89°22'47" E | 9.24 |
| L233 | N 75°08'23" E | 42.15 |
| L234 | N 66°44'45" E | 45.92 |
| L235 | N 58°10'56" E | 7.13 |
| L236 | N 40°00'00" E | 8.68 |
| L237 | N 28°21'12" E | 21.50 |
| L238 | N 19°11'06" E | 7.97 |
| L239 | N 05°44'49" E | 22.07 |
| L240 | N 09°37'03" E | 18.85 |
| L241 | N 28°18'59" E | 25.32 |
| L242 | N 39°33'24" E | 18.56 |
| L243 | N 51°48'12" E | 17.10 |
| L244 | N 53°20'03" E | 18.93 |
| L245 | N 67°23'56" E | 18.89 |
| L246 | N 61°31'34" E | 16.11 |
| L247 | N 85°31'20" E | 16.65 |
| L248 | S 84°27'04" E | 14.79 |
| L249 | S 66°07'30" E | 25.25 |
| L250 | S 70°01'08" E | 21.22 |
| L251 | S 76°11'40" E | 28.29 |
| L252 | S 81°04'45" E | 15.99 |
| L253 | S 63°15'14" E | 32.58 |
| L254 | S 71°35'23" E | 7.28 |
| L255 | S 83°45'15" E | 20.77 |
| L256 | N 86°06'18" E | 21.64 |
| L257 | S 75°49'09" E | 17.31 |
| L258 | S 87°55'16" E | 10.48 |
| L259 | N 72°43'50" E | 26.75 |
| L260 | N 60°42'21" E | 36.44 |
| L261 | N 77°16'53" E | 19.62 |
| L262 | N 68°37'24" E | 7.52 |
| L263 | N 57°06'15" E | 21.62 |
| L264 | N 48°30'29" E | 7.40 |
| L265 | N 29°59'26" E | 8.68 |
| L266 | N 13°42'55" E | 39.82 |
| L267 | N 10°06'24" E | 32.03 |
| L268 | N 01°43'31" W | 29.22 |
| L269 | N 05°37'39" W | 26.82 |
| L270 | N 12°01'53" W | 42.36 |
| L271 | N 21°06'43" W | 7.72 |
| L272 | N 36°50'10" W | 37.65 |
| L273 | N 47°37'33" W | 25.00 |
| L274 | N 56°19'26" W | 44.83 |
| L275 | N 49°00'53" W | 55.06 |
| L276 | N 59°47'57" W | 8.89 |
| L277 | N 72°21'36" W | 36.00 |
| L278 | N 82°08'10" W | 65.71 |
| L279 | S 89°42'01" W | 51.60 |
| L280 | N 80°08'53" W | 56.11 |
| L281 | N 89°26'00" W | 8.09 |
| L282 | S 81°14'14" W | 46.34 |
| L283 | S 78°42'25" W | 40.49 |
| L284 | S 77°43'02" W | 63.74 |
| L285 | S 79°09'43" W | 47.65 |
| L286 | S 72°48'44" W | 44.03 |
| L287 | S 63°14'34" W | 42.60 |
| L288 | S 57°48'39" W | 28.70 |
| L289 | S 64°21'00" W | 20.44 |
| L290 | S 67°06'48" W | 29.21 |
| L291 | S 83°28'20" W | 29.99 |
| L292 | S 83°04'31" W | 27.06 |
| L293 | S 84°19'19" W | 42.81 |
| L294 | S 89°52'10" W | 174.16 |
| L295 | N 00°00'19" E | 313.89 |
| L296 | N 00°00'19" E | 498.35 |
| L297 | N 00°00'31" E | 63.74 |
| L298 | N 37°06'36" W | 690.17 |
| L299 | N 88°48'31" W | 595.60 |
| L300 | S 00°27'57" W | 105.56 |
| L301 | S 06°07'41" W | 311.81 |
| L302 | S 00°12'16" E | 702.26 |
| L303 | S 23°02'00" E | 19.33 |
| L304 | S 00°12'16" E | 198.27 |
| L305 | S 14°29'10" W | 29.80 |
| L306 | S 08°05'57" W | 46.90 |
| L307 | N 81°54'04" W | 10.00 |
| L308 | S 08°05'57" W | 154.78 |
| L309 | S 81°54'04" E | 5.50 |
| L310 | S 00°07'03" W | 13.59 |
| L311 | N 89°54'54" W | 160.89 |
| L312 | S 81°54'03" E | 5.50 |
| L313 | S 08°05'57" E | 201.68 |
| L314 | N 06°07'41" E | 291.80 |
| L315 | N 00°07'03" E | 196.68 |
| L316 | S 89°49'36" W | 453.70 |
| L317 | N 40°17'32" W | 323.52 |
| L318 | N 32°21'38" W | 271.63 |
| L319 | N 34°30'31" W | 120.76 |
| L320 | N 46°26'37" W | 108.80 |
| L321 | S 89°49'14" W | 28.71 |
| L322 | S 00°10'31" E | 11.26 |
| L323 | S 89°49'29" W | 28.35 |
| L324 | S 04°02'58" E | 4.66 |
| L325 | S 86°05'06" W | 22.85 |
| L326 | N 03°54'54" W | 6.14 |
| L327 | S 89°49'29" W | 173.97 |
| L328 | N 66°04'53" W | 548.81 |
| L329 | N 88°44'55" E | 459.61 |
| L330 | N 00°13'41" E | 708.14 |
| L331 | N 43°21'56" E | 753.57 |
| L332 | N 00°24'44" E | 242.11 |
| L333 | N 00°39'25" W | 141.86 |
| L334 | N 00°14'57" E | 50.00 |
| L335 | N 89°43'25" E | 671.30 |
| L336 | N 23°57'49" E | 158.82 |
| L337 | S 89°43'24" W | 258.73 |
| L338 | N 21°29'36" W | 110.97 |
| L339 | N 00°08'24" E | 211.55 |
| L340 | S 89°41'25" W | 797.83 |
| L343 | N 00°39'25" W | 853.44 |
| L344 | N 05°00'31" E | 152.48 |
| L345 | S 89°46'01" W | 139.26 |
| L346 | S 89°39'24" W | 554.03 |
| L347 | S 00°20'32" E | 20.00 |
| L348 | S 89°39'28" W | 363.61 |
| L349 | S 84°38'15" W | 372.03 |
| L350 | S 00°20'32" E | 14.94 |
| L351 | S 89°40'22" W | 138.87 |
| L352 | S 42°20'36" W | 55.12 |
| L353 | S 00°03'00" W | 857.17 |
| L354 | N 89°41'17" E | 364.69 |
| L355 | S 00°18'35" E | 80.00 |
| L356 | S 89°41'25" W | 481.37 |
| L357 | S 89°41'15" W | 483.83 |
| L358 | S 20°48'24" E | 96.16 |
| L359 | N 89°41'25" E | 83.88 |
| L360 | S 00°08'24" W | 219.78 |
| L361 | S 20°48'24" E | 836.45 |
| L362 | S 87°25'27" E | 291.32 |
| L363 | N 88°48'53" E | 166.97 |
| L364 | N 86°44'00" E | 142.43 |
| L365 | N 06°27'19" W | 91.16 |
| L366 | N 28°52'42" E | 302.51 |
| L367 | N 69°30'43" E | 659.82 |
| L368 | N 84°17'43" E | 306.52 |
| L369 | N 08°37'23" E | 258.89 |
| L370 | N 00°07'43" W | 400.13 |
| L371 | N 89°58'50" E | 341.61 |
| L372 | S 00°19'24" E | 603.75 |
| L373 | N 00°12'21" W | 598.76 |
| L374 | N 89°56'46" E | 100.00 |
| L375 | S 00°04'12" E | 523.43 |
| L376 | N 89°43'40" E | 52.00 |
| L377 | S 00°12'21" E | 49.00 |
| L378 | N 89°43'41" E | 229.00 |
| L379 | S 00°12'25" E | 26.23 |
| L380 | S 00°05'18" E | 420.00 |



ACES

P.O.B. 10000
LAKE BUENA VISTA
FL. 32830-1000
PHONE 407-824-5856

| FILING AREA | OVERALL | DATE: 12/7/22 |
|---|---|---|
| PROJECT NAME | DEVELOPERS' AGREEMENT IN ORANGE COUNTY | SCALE |
| SURVEY TYPE | SKETCH OF DESCRIPTION | DRAWN BY: JLG |
| COMMENTS | SHEET 19 OF 20 SHEETS | FILENAME: 10JG22053 |

CURVE TABLE

| CURVE | RADIUS | DELTA | LENGTH | TANG. BRG. | CURVE | RADIUS | DELTA | LENGTH | TANG. BRG. |
|---|---|---|---|---|---|---|---|---|---|
| C1 | 545.08 | 81°15'08" | 772.99 | | C57 | 513.39 | 13°13'42" | 118.53 | |
| C2 | 80.00 | 128°43'50" | 179.74 | | C58 | 1109.03 | 07°17'21" | 141.09 | |
| C3 | 425.00 | 23°29'59" | 174.31 | | C59 | 15.00 | 52°09'22" | 13.65 | |
| C4 | 15.00 | 46°20'48" | 12.13 | | C60 | 1396.50 | 06°53'10" | 167.84 | N 07°09'56" |
| C5 | 425.00 | 16°33'54" | 122.87 | | C61 | 1809.88 | 37°37'38" | 1188.59 | S 42°29'48" |
| C6 | 25.00 | 51°32'25" | 22.49 | | C62 | 2191.83 | 32°28'09" | 1242.10 | |
| C7 | 25.00 | 40°55'45" | 17.86 | | C63 | 11402.16 | 00°29'43" | 98.56 | S 65°33'17" |
| C8 | 25.00 | 46°29'32" | 20.29 | | C64 | 900.00 | 02°31'40" | 39.70 | |
| C9 | 75.00 | 30°06'13" | 39.41 | | C65 | 675.00 | 45°40'47" | 538.15 | |
| C10 | 45.00 | 99°54'55" | 78.47 | | C66 | 825.00 | 98°34'08" | 1419.29 | |
| C11 | 250.00 | 55°31'14" | 242.26 | | C67 | 500.84 | 22°53'21" | 200.08 | |
| C12 | 125.00 | 59°41'01" | 130.21 | | C68 | 48.00 | 47°40'00" | 39.93 | N 29°07'51" |
| C13 | 676.49 | 29°43'07" | 350.89 | N 50°17'44" | C69 | 650.84 | 22°53'21" | 260.00 | |
| C14 | 399.38 | 09°53'41" | 68.97 | N 79°13'56" | C70 | 675.00 | 98°34'08" | 1161.24 | |
| C15 | 137.63 | 14°21'49" | 34.50 | | C71 | 825.00 | 45°40'47" | 657.74 | |
| C16 | 344.38 | 04°15'11" | 25.56 | S 86°02'20" | C72 | 25.00 | 16°36'26" | 7.25 | |
| C17 | 132.00 | 26°04'01" | 60.05 | | C73 | 25.00 | 51°24'11" | 22.43 | |
| C18 | 184.37 | 31°44'00" | 102.11 | S 49°44'21" | C74 | 50.00 | 106°48'50" | 93.21 | N 80°45'36" |
| C19 | 679.36 | 08°51'48" | 105.09 | | C75 | 436.00 | 15°56'47" | 121.35 | S 58°12'21" |
| C20 | 437.18 | 18°37'07" | 142.06 | | C76 | 514.00 | 20°05'00" | 180.17 | |
| C21 | 395.25 | 18°13'39" | 125.74 | | C77 | 315.00 | 35°55'53" | 197.54 | |
| C22 | 645.09 | 03°21'37" | 37.82 | | C78 | 381.00 | 34°07'58" | 226.97 | |
| C23 | 223.65 | 59°02'33" | 230.47 | | C79 | 384.88 | 34°00'28" | 228.44 | |
| C24 | 25.00 | 64°33'48" | 28.17 | S 49°58'05" | C80 | 185.00 | 35°39'45" | 115.15 | |
| C25 | 25.00 | 25°14'16" | 11.01 | | C81 | 47.00 | 130°32'06" | 107.08 | |
| C26 | 1010.00 | 07°58'42" | 140.64 | S 11°48'22" | C82 | 50.00 | 83°36'01" | 72.95 | |
| C27 | 25.00 | 87°13'52" | 38.06 | N 03°49'41" | C83 | 188.00 | 27°45'45" | 91.10 | |
| C28 | 221.37 | 29°07'38" | 112.54 | | C84 | 2204.09 | 07°27'37" | 286.99 | N 29°38'58" |
| C29 | 132.76 | 48°16'12" | 111.85 | | C85 | 808.57 | 09°35'40" | 135.40 | N 38°37'50" |
| C30 | 234.18 | 14°51'36" | 60.74 | N 64°15'37" | C86 | 1010.00 | 02°00'23" | 35.37 | S 05°42'00" |
| C31 | 25.00 | 115°40'49" | 50.48 | S 17°50'29" | C87 | 899.35 | 05°39'43" | 88.87 | |
| C32 | 25.00 | 54°17'13" | 23.69 | | C88 | 2004.50 | 06°19'57" | 221.54 | |
| C33 | 25.00 | 79°16'52" | 34.59 | | C89 | 2162.49 | 07°53'08" | 297.62 | S 00°12'49" |
| C34 | 25.00 | 41°16'24" | 18.01 | | C90 | 1175.00 | 07°00'25" | 143.70 | S 08°05'57" |
| C35 | 1505.50 | 37°08'46" | 976.05 | S 03°51'20" | C91 | 1025.00 | 10°07'39" | 181.18 | N 18°13'36" |
| C36 | 25.00 | 37°14'40" | 16.25 | | C92 | 2013.49 | 08°18'12" | 291.80 | |
| C37 | 25.00 | 46°40'29" | 20.37 | | C93 | 2153.50 | 06°19'57" | 238.01 | |
| C38 | 25.00 | 58°38'45" | 25.59 | | C94 | 934.00 | 01°05'30" | 17.79 | |
| C39 | 25.00 | 84°46'10" | 36.99 | | C95 | 2158.53 | 24°05'38" | 394.28 | |
| C40 | 25.00 | 58°17'03" | 25.43 | | C96 | 2832.01 | 04°49'44" | 238.69 | N 19°16'05" |
| C41 | 7.86 | 78°20'37" | 10.75 | N 28°56'03" | C97 | 2829.41 | 01°55'19" | 94.91 | N 41°26'37" |
| C42 | 19.64 | 36°52'37" | 12.64 | | C98 | 2826.01 | 19°14'15" | 948.86 | N 18°34'50" |
| C43 | 3.95 | 72°45'35" | 5.13 | | C99 | 2750.09 | 04°43'07" | 226.49 | S 33°16'29" |
| C44 | 1080.42 | 20°21'16" | 383.82 | N 48°06'54" | C100 | 2894.93 | 08°15'21" | 417.14 | N 82°01'15" |
| C45 | 762.70 | 08°52'54" | 118.23 | S 63°58'49" | C101 | 3241.05 | 05°37'30" | 318.19 | N 00°36'59" |
| C46 | 160.82 | 19°16'01" | 54.08 | | C102 | 357.62 | 23°38'08" | 147.53 | S 66°08'04" |
| C47 | 159.35 | 36°15'00" | 100.82 | | C103 | 250.01 | 90°21'35" | 394.28 | |
| C48 | 158.03 | 21°54'44" | 60.44 | | C104 | 350.02 | 72°08'18" | 440.69 | N 70°50'15" |
| C49 | 52.89 | 104°26'29" | 96.41 | S 75°27'00" | C105 | 3721.85 | 03°53'37" | 252.93 | S 16°54'47" |
| C50 | 1125.00 | 27°57'29" | 548.95 | | C106 | 546.86 | 46°21'00" | 442.39 | |
| C51 | 492.00 | 26°59'13" | 231.74 | | | | | | |
| C52 | 25.00 | 33°13'41" | 15.37 | | | | | | |
| C53 | 25.00 | 46°18'35" | 20.21 | | | | | | |
| C54 | 25.00 | 33°58'13" | 14.82 | S 21°14'14" | | | | | |
| C55 | 1908.34 | 22°05'51" | 736.00 | S 75°17'36" | | | | | |
| C56 | 950.92 | 14°29'06" | 240.40 | | | | | | |

| | |
|---|---|
| **ACES** | **FILING AREA:** OVERALL |
| P.O.B. 10000 | **PROJECT NAME:** DEVELOPERS' AGREEMENT IN ORANGE COUNTY |
| LAKE BUENA VISTA | **SURVEY TYPE:** SKETCH OF DESCRIPTION |
| FL. 32830-1000 | **COMMENTS:** SHEET 20 OF 20 SHEETS |
| PHONE 407-824-5856 | **DATE:** 12/7/22  **SCALE:**  **DRAWN BY:** JLG  **FILENAME:** 10JG22053 |







BEARINGS ARE BASED ON THE
W. LINE, NW 1/4, SEC. 9-25S-28E
AS BEING S 00°08'49" E

Southern Connector Extension

| | | |
|---|---|---|
| **FILING AREA** | **OVERALL** | **DATE:** 12/7/22 |
| **PROJECT NAME** | **DEVELOPERS' AGREEMENT IN OSCEOLA COUNTY** | **SCALE** 1" = 1000' |
| **SURVEY TYPE** | **SKETCH OF DESCRIPTION** | **DRAWN BY:** JLG |
| **COMMENTS** | **SHEET 3 OF 16 SHEETS** | **FILENAME:** 10JG22054 |

P.O.B. 10000
LAKE BUENA VISTA
FL. 32830-1000
PHONE 407-824-5855







SHEET 6 OF 16 SHEETS





BEARINGS ARE BASED ON THE
E. LINE, SE 1/4, SEC. 26-25S-27E
AS BEING N 00°04'03" W

ABBREVIATIONS
D.B.=DEED BOOK
O.R.=OFFICIAL RECORDS
S.R.=STATE ROAD
R/W=RIGHT OF WAY
P.=SKETCH OF DESCRIPTION
      PAGE NUMBER
P.B.=PLAT BOOK
PSM=PROFESSIONAL SURVEYOR
      AND MAPPER
L.B.=LICENSED BUSINESS
SEC=SECTION
TWN=TOWNSHIP
RNG=RANGE
POB=POINT OF BEGINNING
POC=POINT OF COMMENCEMENT

| | |
|---|---|
| FILING AREA | OVERALL |
| PROJECT TYPE | DEVELOPERS' AGREEMENT IN OSCEOLA COUNTY |
| SURVEY TYPE | SKETCH OF DESCRIPTION |
| COMMENTS | SHEET 8 OF 16 SHEETS |

P.O.B. 10000
LAKE BUENA VISTA
FL 32830-1000
PHONE 407-824-5855

DATE: 12/7/22
SCALE 1" = 1000'
DRAWN BY: JLG
FILENAME: 10JG22054



| FILING AREA | | DATE: |
| --- | --- | --- |
| OVERALL | | 12/7/22 |
| PROJECT NAME | | SCALE |
| DEVELOPERS' AGREEMENT IN OSCEOLA COUNTY | | 1" = 1000' |
| SURVEY TYPE | | DRAWN BY: |
| SKETCH OF DESCRIPTION | | JLG |
| COMMENTS | | FILENAME: |
| SHEET 9 OF 16 SHEETS | | 10JG22054 |

P.O.B. 10000
LAKE BUENA VISTA
FL. 32830-1000
PHONE 407-824-5856

ABBREVIATIONS
D.B.=DEED BOOK
O.R.=OFFICIAL RECORDS
S.R.=STATE ROAD
R/W=RIGHT OF WAY
P.=SKETCH OF DESCRIPTION
    PAGE NUMBER
P.B.=PLAT BOOK
PSM=PROFESSIONAL SURVEYOR
    AND MAPPER
L.B.=LICENSED BUSINESS
SEC=SECTION
TWN=TOWNSHIP
RNG=RANGE
POB=POINT OF BEGINNING
POC=POINT OF COMMENCEMENT





GRAPHIC SCALE
SCALE 1" = 300'

NW corner, Sec. 2-25-27

N. line, NW 1/4,
Sec. 2-25-27

N 89°44'07" E   2636.05'

25.00'

10.00'

OSCEOLA COUNTY
TOWNSHIP 25 SOUTH

N 00°08'32" E
660.14'

S 00°22'03" W
1390.05'

1400.00'

Easterly boundary of Res. 442

L33

L32

Sherberth Road

L31
L30
L29  L28
L26  L27
      L25
      L24
L23

S 89°44'07" W   2116.14'

ABBREVIATIONS
D.B.=DEED BOOK
O.R.=OFFICIAL RECORDS
S.R.=STATE ROAD
R/W=RIGHT OF WAY
P.=SKETCH OF DESCRIPTION
      PAGE NUMBER
P.B.=PLAT BOOK
PSM=PROFESSIONAL SURVEYOR
      AND MAPPER
L.B.=LICENSED BUSINESS
SEC=SECTION
TWN=TOWNSHIP
RNG=RANGE
POB=POINT OF BEGINNING
POC=POINT OF COMMENCEMENT

ACES
ALTER ENERGY SERVICES

P.O.B. 10000
LAKE BUENA VISTA
FL 32830-1000
PHONE 407-824-5855

| FILING AREA | | DATE: |
|---|---|---|
| OVERALL | | 12/7/22 |
| PROJECT NAME | | SCALE |
| DEVELOPERS' AGREEMENT IN OSCEOLA COUNTY | | 1" = 300' |
| SURVEY TYPE | | DRAWN BY: |
| SKETCH OF DESCRIPTION | | JLG |
| COMMENTS | | FILENAME: |
| SHEET 11 OF 16 SHEETS | | 10JG22054 |







Less Out
RCID de-annexation 291
2908.288 Acres±

GRAPHIC SCALE
SCALE 1"= 1000'

N 75°57'54" W  2061.55'

L113

N 89°46'36

S 41°23'03" W 1794.78'

S 89°42'0

S 00°42'14" E  1335.79'

E.

S 53°52'45" W  4747.09'

RES. 291

S 89°44'25" W  1319.70'

S. line, NW

W. line, SW 1/4, NW 1/4 Sec. 1

N. line SW 1/4, Sec 16-25-

N 89°46'42" E   2658

17

N 00°17'31" E  1334.87'

S 57°27'14" E  1235.00'
837.20'

S 26°03'56" E  312.86'

S 45°00'25" W  707.11'

S 89°51'04" W   26

S. line, N 1/2, SW 1/

W. line, SW 1/4, SW 1/4 Sec. 1

SW corner Sec. 16-25-28

N 00°17'31" E  1334.87'

S 00

ABBREVIATIONS
D.B.=DEED BOOK
O.R.=OFFICIAL RECORDS
S.R.=STATE ROAD
R/W=RIGHT OF WAY
P.=SKETCH OF DESCRIPTION
    PAGE NUMBER
P.B.=PLAT BOOK
PSM=PROFESSIONAL SURVEYOR
    AND MAPPER
L.B.=LICENSED BUSINESS
SEC=SECTION
TWN=TOWNSHIP
RNG=RANGE
POB=POINT OF BEGINNING
POC=POINT OF COMMENCEMENT

ACES
REEDY CREEK ENERGY SERVICES

P.O.B. 10000
LAKE BUENA VISTA
FL. 32830-1000
PHONE 407-824-5856

| FILING AREA OVERALL | DATE: 12/7/22 |
| PROJECT NAME DEVELOPERS' AGREEMENT IN OSCEOLA COUNTY | SCALE 1" = 1000' |
| SURVEY TYPE SKETCH OF DESCRIPTION | DRAWN BY: JLG |
| COMMENTS SHEET 14 OF 16 SHEETS | FILENAME: 10JG22054 |

TANGENT TABLE

| LINE# | BEARING | DIST. |
|---|---|---|
| L1 | S 89°17'26" E | 153.63 |
| L2 | S 38°30'29" W | 248.14 |
| L3 | N 50°02'45" W | 9.00 |
| L4 | N 89°45'55" E | 128.02 |
| L6 | S 89°58'43" W | 431.70 |
| L7 | S 89°52'00" W | 235.00 |
| L8 | S 89°49'34" W | 334.40 |
| L9 | S 89°53'39" W | 419.88 |
| L10 | N 00°16'32" E | 208.71 |
| L11 | S 89°53'43" W | 208.71 |
| L12 | N 00°16'32" E | 458.63 |
| L13 | S 89°59'41" E | 293.67 |
| L14 | N 00°06'58" E | 615.49 |
| L15 | S 89°46'25" E | 332.34 |
| L16 | N 00°13'26" E | 50.00 |
| L17 | S 89°46'24" E | 332.44 |
| L18 | S 89°51'37" E | 331.87 |
| L20 | S 89°09'07" W | 665.37 |
| L22 | S 89°44'07" W | 495.03 |
| L23 | N 02°17'23" E | 40.72 |
| L24 | N 18°56'28" E | 11.18 |
| L25 | N 00°08'32" E | 14.20 |
| L26 | N 45°08'32" E | 35.36 |
| L27 | S 89°51'28" E | 4.49 |
| L28 | N 00°08'32" E | 60.00 |
| L29 | N 44°51'28" W | 35.36 |
| L30 | N 00°08'32" E | 10.44 |
| L31 | N 44°51'28" W | 4.24 |
| L32 | N 00°08'32" E | 346.14 |
| L33 | N 01°09'08" W | 176.69 |
| L34 | N 44°51'28" W | 39.61 |
| L35 | S 00°09'07" E | 132.00 |
| L36 | N 89°52'11" E | 240.29 |
| L38 | S 79°55'37" E | 62.09 |
| L39 | N 89°52'08" E | 193.48 |
| L40 | S 00°07'52" E | 207.00 |
| L41 | S 89°52'08" W | 350.00 |
| L42 | S 00°07'52" E | 500.00 |
| L44 | N 89°52'08" E | 400.00 |
| L45 | N 89°52'09" E | 2.14 |
| L46 | S 45°03'23" E | 42.36 |
| L47 | S 00°00'00" E | 174.79 |
| L48 | S 09°05'25" E | 282.87 |
| L49 | S 17°05'06" W | 544.65 |
| L50 | S 54°40'11" E | 66.55 |
| L51 | S 12°49'30" E | 117.68 |
| L52 | S 13°29'51" E | 341.79 |
| L53 | S 13°29'51" E | 408.71 |
| L54 | S 15°17'58" W | 294.15 |
| L55 | S 15°15'17" W | 300.03 |
| L56 | N 74°44'43" W | 45.00 |
| L57 | S 17°31'41" W | 302.54 |
| L58 | S 15°15'11" W | 177.35 |
| L59 | S 08°28'42" W | 421.43 |
| L60 | S 81°31'15" E | 26.00 |
| L61 | S 08°28'45" W | 543.00 |
| L62 | N 81°31'15" W | 26.00 |
| L63 | N 34°24'01" W | 342.34 |
| L64 | N 41°10'58" E | 504.10 |
| L65 | N 00°00'05" W | 182.99 |
| L66 | N 00°00'05" W | 262.45 |
| L67 | N 00°00'05" W | 604.56 |
| L68 | N 89°59'55" E | 550.00 |
| L69 | N 18°33'37" W | 469.54 |
| L70 | N 00°00'05" W | 391.70 |
| L71 | N 89°59'55" E | 48.91 |

| LINE# | BEARING | DIST. |
|---|---|---|
| L72 | N 45°31'55" E | 264.41 |
| L73 | N 89°59'55" E | 356.15 |
| L74 | N 00°00'05" W | 317.21 |
| L77 | N 89°50'43" E | 190.56 |
| L78 | S 00°08'00" E | 455.76 |
| L79 | N 89°52'00" E | 20.00 |
| L80 | S 00°08'00" E | 488.84 |
| L81 | N 34°12'14" E | 149.99 |
| L82 | N 38°16'56" W | 139.49 |
| L83 | N 20°31'56" W | 110.01 |
| L84 | N 70°14'49" W | 129.46 |
| L85 | N 45°48'22" W | 132.54 |
| L86 | S 89°14'11" W | 181.70 |
| L87 | N 17°05'06" E | 386.62 |
| L88 | S 72°54'50" E | 290.44 |
| L89 | N 10°23'11" E | 320.40 |
| L90 | N 04°30'12" E | 320.81 |
| L91 | N 87°47'48" W | 244.99 |
| L92 | N 09°05'25" W | 282.87 |
| L93 | N 00°00'00" E | 186.09 |
| L94 | N 44°56'12" E | 42.49 |
| L95 | S 00°16'52" W | 182.00 |
| L96 | S 72°43'12" E | 120.32 |
| L97 | S 68°43'12" E | 476.40 |
| L98 | S 39°09'33" W | 593.50 |
| L99 | S 39°49'53" W | 428.75 |
| L100 | N 15°15'17" E | 57.43 |
| L101 | N 74°44'43" W | 42.00 |
| L102 | N 10°06'45" E | 301.24 |
| L103 | N 15°17'20" E | 293.98 |
| L104 | N 46°27'10" E | 105.97 |
| L105 | N 05°42'05" E | 369.98 |
| L106 | N 89°50'46" E | 591.75 |
| L107 | S 00°08'49" E | 132.00 |
| L108 | N 89°47'42" E | 622.99 |
| L109 | S 60°04'38" E | 118.30 |
| L110 | N 89°55'21" E | 40.00 |
| L111 | N 89°56'33" E | 50.00 |
| L112 | S 00°03'27" E | 512.31 |
| L113 | S 00°03'27" E | 358.24 |
| L114 | N 65°37'30" W | 341.01 |
| L115 | N 27°43'20" W | 492.90 |
| L116 | N 01°09'30" W | 124.30 |
| L117 | N 50°54'37" W | 282.74 |
| L118 | S 59°21'14" W | 36.00 |
| L119 | N 38°52'34" W | 156.01 |
| L120 | N 39°57'15" E | 502.67 |
| L121 | S 37°21'28" E | 61.64 |
| L122 | N 52°38'37" E | 295.00 |
| L123 | N 37°21'24" W | 236.29 |
| L124 | N 33°58'59" W | 295.13 |
| L125 | N 32°17'07" E | 68.88 |
| L126 | N 38°44'50" E | 91.15 |
| L127 | N 51°13'07" W | 15.63 |
| L128 | N 50°54'37" E | 399.78 |
| L129 | N 45°03'33" W | 10.00 |
| L130 | N 44°36'59" E | 348.99 |
| L131 | N 52°48'15" E | 150.00 |
| L132 | N 69°14'08" E | 104.92 |
| L133 | N 88°35'33" E | 600.08 |
| L134 | N 83°15'36" E | 300.22 |
| L135 | N 00°04'03" W | 120.00 |
| L136 | S 89°56'16" W | 41.46 |
| L137 | N 00°07'57" W | 333.91 |
| L138 | N 00°07'43" W | 177.25 |
| L139 | N 00°01'07" E | 178.96 |

| LINE# | BEARING | DIST. |
|---|---|---|
| L140 | N 00°03'44" W | 631.66 |
| L141 | S 89°52'13" W | 494.06 |
| L142 | N 90°00'00" W | 5.12 |
| L143 | N 00°08'04" W | 183.39 |
| L144 | N 00°08'11" W | 68.07 |
| L145 | N 00°13'25" W | 23.67 |
| L146 | S 89°55'00" W | 128.49 |
| L147 | N 89°31'49" W | 397.18 |
| L148 | N 89°31'34" W | 122.10 |
| L149 | N 89°32'10" W | 47.99 |
| L150 | N 89°31'47" W | 361.14 |
| L151 | N 89°31'38" W | 68.77 |
| L152 | N 89°32'02" W | 98.33 |
| L153 | N 89°31'40" W | 203.89 |
| L154 | N 09°35'39" W | 23.58 |
| L155 | N 34°30'31" E | 3.49 |
| L156 | N 89°39'50" W | 46.97 |
| L157 | S 89°55'09" W | 105.90 |
| L158 | N 89°59'55" E | 429.40 |
| L159 | N 42°34'45" E | 61.38 |
| L160 | N 77°28'31" E | 6.16 |
| L161 | S 80°50'28" E | 42.95 |
| L162 | S 76°40'19" E | 50.95 |
| L163 | N 78°08'48" E | 34.33 |
| L164 | S 30°04'17" E | 4.22 |
| L165 | S 76°06'37" E | 130.56 |
| L166 | N 89°59'55" E | 618.64 |
| L167 | S 38°39'40" E | 320.15 |
| L168 | S 01°48'36" E | 382.26 |
| L169 | S 89°59'55" W | 620.00 |
| L170 | S 00°00'05" E | 250.00 |
| L171 | N 89°45'12" E | 331.16 |
| L172 | N 22°25'57" E | 47.86 |
| L173 | N 32°49'38" W | 99.62 |
| L174 | N 06°38'41" W | 20.86 |
| L175 | N 67°06'55" E | 58.35 |
| L176 | N 80°46'35" E | 124.29 |
| L177 | N 59°15'21" E | 74.38 |
| L178 | N 76°39'34" E | 72.66 |
| L184 | S 11°28'54" W | 73.24 |
| L185 | S 17°38'04" W | 10.26 |
| L186 | S 67°56'29" E | 225.59 |
| L187 | N 45°25'09" E | 16.32 |
| L188 | S 61°51'19" E | 58.22 |
| L189 | S 30°56'12" E | 14.64 |
| L190 | S 00°04'03" E | 79.89 |



ACES

P.O.B. 10000
LAKE BUENA VISTA
FL. 32830-1000
PHONE 407-824-5856

FILING AREA: OVERALL
PROJECT NAME: DEVELOPERS' AGREEMENT IN OSCEOLA COUNTY
SURVEY TYPE: SKETCH OF DESCRIPTION
COMMENTS: SHEET 15 OF 16 SHEETS

DATE: 12/7/22
SCALE:
DRAWN BY: JLG
FILENAME: 10JG22054

CURVE TABLE

| CURVE | RADIUS | DELTA | LENGTH | TANG. BRG. |
|---|---|---|---|---|
| C1 | 85794.19 | 01°26'58" | 2170.39 | |
| C2 | 3921.00 | 14°53'09" | 1018.71 | N 25°02'25" E |
| C3 | 1597.84 | 09°05'25" | 253.51 | |
| C4 | 1457.85 | 26°10'31" | 666.01 | |
| C5 | 1597.85 | 102°07'51" | 2848.19 | |
| C6 | 1597.89 | 07°30'00" | 209.16 | |
| C7 | 2009.86 | 24°18'27" | 852.67 | S 10°48'36" W |
| C8 | 1809.86 | 11°41'10" | 369.14 | |
| C9 | 1809.86 | 17°06'44" | 540.54 | |
| C10 | 4501.37 | 06°46'34" | 532.35 | S 15°15'19" W |
| C11 | 1051.92 | 30°21'09" | 557.26 | |
| C12 | 814.00 | 20°35'33" | 292.56 | S 19°06'55" E |
| C13 | 1073.93 | 17°34'32" | 329.43 | S 36°35'41" E |
| C14 | 1759.86 | 33°38'13" | 1033.17 | S 00°08'08" E |
| C15 | 2059.86 | 14°13'45" | 511.56 | |
| C16 | 1457.89 | 12°05'33" | 307.69 | S 82°51'48" W |
| C17 | 1457.79 | 29°15'05" | 744.25 | |
| C18 | 1457.85 | 47°22'50" | 1205.56 | N 30°17'44" W |
| C19 | 1597.84 | 11°17'38" | 314.96 | N 02°12'13" E |
| C20 | 1457.85 | 09°05'25" | 231.30 | |
| C21 | 2774.79 | 14°35'33" | 706.70 | S 87°18'45" E |
| C22 | 310.00 | 64°11'44" | 347.33 | |
| C23 | 710.00 | 43°41'01" | 541.32 | |
| C24 | 17038.73 | 00°07'01" | 34.76 | S 39°57'15" W |
| C25 | 17038.73 | 00°07'00" | 34.73 | |
| C26 | 17038.73 | 05°07'15" | 1522.83 | |
| C27 | 17338.73 | 07°18'35" | 2212.08 | |
| C28 | 17338.73 | 03°23'57" | 1028.62 | |
| C29 | 17038.73 | 05°03'27" | 1503.98 | |
| C30 | 451.67 | 120°17'51" | 948.32 | S 44°19'15" W |
| C31 | 1767.86 | 30°38'14" | 945.31 | |
| C32 | 2009.86 | 28°47'54" | 1010.21 | N 15°18'05" E |
| C33 | 1809.86 | 30°18'27" | 957.35 | |
| C34 | 1759.86 | 13°41'33" | 420.57 | N 19°48'38" E |
| C35 | 2059.86 | 33°23'10" | 1200.27 | |
| C36 | 426.87 | 56°29'55" | 420.93 | |
| C37 | 1789.72 | 15°19'53" | 478.90 | |
| C38 | 1791.86 | 03°26'13" | 107.49 | N 78°45'37" E |
| C39 | 2181.28 | 06°37'08" | 251.98 | |
| C40 | 450.00 | 59°52'20" | 470.24 | S 00°12'18" E |
| C41 | 150.00 | 60°00'00" | 157.08 | |
| C42 | 622.20 | 73°46'51" | 801.22 | |
| C43 | 2405.91 | 15°39'49" | 657.74 | |
| C44 | 3677.60 | 09°13'43" | 592.35 | S 46°35'06" E |
| C45 | 724.53 | 32°07'27" | 406.22 | |
| C46 | 1433.91 | 30°54'26" | 773.50 | |
| C47 | 4489.66 | 06°27'44" | 506.37 | |
| C48 | 17028.73 | 05°21'16" | 1591.36 | |
| C49 | 17348.73 | 00°22'04" | 111.39 | |
| C50 | 1794.08 | 04°36'46" | 1396.13 | N 44°56'25" E |
| C51 | 17338.73 | 05°43'39" | 1733.24 | |
| C52 | 17038.73 | 05°21'16" | 1592.32 | |
| C53 | 1342.44 | 24°30'00" | 574.04 | N 44°44'08" E |
| C54 | 1342.40 | 19°21'25" | 453.52 | |

**ACES**

ACCURATE ENERGY SERVICES

P.O.B. 10000
LAKE BUENA VISTA
FL 32830-1000
PHONE 407-824-5856

| | |
|---|---|
| FILING AREA *OVERALL* | DATE: 12/7/22 |
| PROJECT AREA *DEVELOPERS' AGREEMENT IN OSCEOLA COUNTY* | SCALE |
| SURVEY TYPE *SKETCH OF DESCRIPTION* | DRAWN BY: JLG |
| COMMENTS *SHEET 16 OF 16 SHEETS* | FILENAME: 10JG22054 |

## EXHIBIT 2

## LOCATION MAP





**EXHIBIT 3**

**CAPITAL IMPROVEMENTS SCHEDULE**

**See below Tables 9-6 through 9-11 of the**

**Capital Improvement Element of the Comprehensive Plan**

**Table 9-6:  Summary Five Year Schedule of Capital Improvements (in thousands)**

|  | FY 2022 | FY 2023 | FY 2024 | FY 2025 | FY 2026 | FY 2027 | TOTAL |
|---|---|---|---|---|---|---|---|
| Roads (RCID) | $32,000 | $19,160 | $32,500 | $58,000 | $144,500 | $168,000 | $454,160 |
| Potable & Reuse Water | $708 | $2,400 | $1,650 | $1,800 | $7,850 | $4,850 | $19,258 |
| Sanitary Sewer | $2,350 | $7,000 | $13,000 | $6,000 | $4,500 | $6,000 | $38,850 |
| Solid Waste | $120 | $230 | $2,500 | $0 | $1,000 | $10,100 | $13,950 |
| Drainage | $800 | $0 | $0 | $0 | $0 | $0 | $800 |
| **TOTAL RCID** | **$35,978** | **$28,790** | **$49,650** | **$65,800** | **$157,850** | **$188,950** | **$527,018** |
| **Roads (County/State/Federal)** | **$260,026** | **$115,594** | **$7,395** | **$1,050** | **$0** | **$0** | **$384,065** |

**Table 9-7: Five Year Schedule of Capital Improvements for Roads (in thousands)**

| Figure 9-1 Project # | Project Description | Funding Source | FY 2022 | FY 2023 | FY 2024 | FY 2025 | FY 2026 | FY 2027 | Total |
|---|---|---|---|---|---|---|---|---|---|
| 1 | **World Drive North Phase 2** Construction of approx. 3.2 miles of roadways, ramps, bridges, MSE retaining walls, utility relocations; drainage and the creation of a regional stormwater pond,landscaping and irrigation, etc. | Bond Funds (On Hand) | $25,000 | $1,660 | | | $0 | $0 | $26,660 |
| 2 | **Intersection Improvements at Buena Vista Drive/Western Way** Interim intersection improvements to relieve PM peak delays. | Bond Funds (On Hand) | $2,000 | | | | $0 | $0 | $2,000 |
| 3 | **World Drive North Phase 3** Construction of 4 lane divided rural roadway extending WDN Phase 2 to Floridian Place. Project incluces utility relocations; drainage, landscaping and irrigation, etc. | Bond Funds (On Hand & New) | $5,000 | $17,500 | $32,500 | $35,000 | $31,500 | | $121,500 |
| 4 | **Western Way and Buena Vista Drive** Widening from 4 lane urban and rural divided road to 6 lanes from BVD to East of SR 429 including intersection improvements at Western Way and BVD (flyover). (Total Projected Cost $250,000,000/FY 25-29) | Bond Funds (New) | | | | $20,000 | $75,000 | $75,000 | $170,000 |
| 5 | **Realign Vista Way to Connect to Buena Vista Drive** Realign Vista Way where it curves northward toward CR 535 to extend straight across to Buena Vista Drive south of the warehouses. (Total Projected Cost $34,000,000 / FY25-28) | Bond Funds (New) | | | | $1,000 | $8,000 | $15,000 | $24,000 |
| 6 | **Buena Vista Drive Intersection 5 (Disney Springs Corridor)** Intersection improvements to reduce congestion during nighttime closing. | Bond Funds (New) | | | | $2,000 | $30,000 | $28,000 | $60,000 |
| 7 | **Buena Vista Drive Dedicated Bus Lanes** Construct additional bus lanes from Bonnet Creek Parkway to World Drive. (Total Projected Cost $200,000,000/ FY27-30) | Bond Funds (New) | | | | | | $50,000 | $50,000 |
| | **Total RCID Roads** | | $32,000 | $19,160 | $32,500 | $58,000 | $144,500 | $168,000 | $454,160 |

**Table 9-8: Five Year Schedule of Capital Improvements for Potable/Reuse Water (in thousands)**

| Figure 9-2 Project # | Project Description | Funding Source | FY 2022 | FY 2023 | FY 2024 | FY 2025 | FY 2026 | FY2027 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Not Shown | Indirect Potable/Reuse Project | Bond Funds Non Taxable | | 500 | 1,000 | 1,000 | 1,000 | 1,000 | 4,500 |
| Not Shown | Well Rehabilitation Program | Bond Funds Non Taxable | 300 | 300 | 300 | 330 | 300 | 300 | 1,800 |
| Not Shown | Well #2 Construction | Bond Funds Non Taxable | | | | 200 | 2,500 | | 2,700 |
| 1 | Contemporary Reclaimed Water Conversions | Bond Funds Non Taxable | | | 350 | | | | 350 |
| 2 | Epcot Reuse Water Conversions | Bond Funds Non Taxable | 200 | 1,600 | | | 150 | 3,550 | 5,500 |
| Not Shown | Golf Course Booster Pump Station Rehab (4 Total) | Bond Funds Non Taxable | | | | 100 | 400 | | 500 |
| 3 | Reuse Water Extension Along World Drive to Service DHS | Bond Funds Non Taxable | 208 | | | | | | 208 |
| Not Shown | Remote Reuse Water Storage and Re-pump SRF | Bond Funds Non Taxable | | | | 200 | 3,500 | | 3,700 |
| **Total Potable and Reuse Water** | | | $708 | $2,400 | $1,650 | $1,800 | $7,850 | $4,850 | $19,258 |

**Table 9-9: Five Year Schedule of Capital Improvements for Sanitary Sewer (in thousands)**

| Figure 9-3 Project # | Project Description | Funding Source | FY 2022 | FY 2023 | FY 2024 | FY 2025 | FY 2026 | FY 2027 | Total |
|---|---|---|---|---|---|---|---|---|---|
| Not Shown | Lift Stations Rehabs and Upgrades: #7 & #60 Master Lift Stations, and Duplex Lift Station Program | Bond Funds Non Taxable | 600 | 3,000 | 5,000 | 3,000 | 2,500 | 4,000 | 18,100 |
| Not Shown | Rehabilitation of Collection System | Bond Funds Non Taxable | 750 | | | 2,000 | 2,000 | 2,000 | 6,750 |
| WWTP | WWTP Dewatering Facility / Food Waste Transfer Station | Bond Funds Non Taxable | 1,000 | 4,000 | 8,000 | 1,000 | | | 14,000 |
| **Total Sanitary Sewer** | | | $2,350 | $7,000 | $13,000 | $6,000 | $4,500 | $6,000 | $38,850 |

**Table 9-10: Five Year Schedule of Capital Improvements for Solid Waste (in thousands)**

| Figure 9-4 Project # | Project Description | Funding Source | FY 2022 | FY 2023 | FY 2024 | FY 2025 | FY 2026 | FY 2027 | Total |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Tipping Floor Resurface and Drain System Rehab | Bond Funds Taxable | | | | | | $100 | $100 |
| 1 | Transfer Station Expansion | Bond Funds Taxable | $120 | $230 | $2,500 | | $1,000 | $10,000 | $13,850 |
| **Total Solid Waste** | | | $120 | $230 | $2,500 | $0 | $1,000 | $10,100 | $13,950 |

**Table 9-11: Five Year Schedule of Capital Improvements for Drainage (in thousands)**

| Figure 9-5 Project # | Project Description | Funding Source | FY 2022 | FY 2023 | FY 2024 | FY 2025 | FY 2026 | FY 2027 | Total |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Major Rehabilitation: S-14 | Outside Drainage Fees On Hand | $800 | $0 | $0 | $0 | $0 | $0 | $800 |
| **TOTAL DRAINAGE** | | | $800 | $0 | $0 | $0 | $0 | $10 | $800 |

**EXHIBIT 4**

**LIST OF REQUIRED LOCAL DEVELOPMENT PERMITS**

| Permitting Agency | Permit Type |
|---|---|
| Florida Fish and Wildlife Commission (FFWC) | Listed Species Survey |
| | Gopher Tortoise Relocation |
| | Indigo Snake Monitoring |
| US Army Corps of Engineers (ACOE) | Construction Commencement Notification |
| | Long Term Permit Notification (Wetland Impact) |
| Reedy Creek Energy Services (RCES) / Walt Disney World Environmental Affairs (WDWEA) | "In House" Utility Permit (for)      Potable Water/Wastewater/Reclaimed Water |
| | Fire Line Dedication Letter |
| | Grease Trap/Holding Tanks (see UP above) |
| | A/C Condensate/Dry Well/Portable toilets (see UP above) |
| | Utility Service Request (USR) |
| Reedy Creek Improvement District (RCID) Planning and Engineering Department (P&E) | Planning Consistency Review |
| | South Florida Water Management District (SFWMD) - ERP Modification |
| | RCID Dewatering - Pull From Ground |
| | SFWMD Dewatering - Pull From Ground |
| | Planning Concurrency Review |
| | Planning Site Plan Review |
| | Storm Water Pollution Prevention Plan (SWPPP) |
| | Turbidity Control Plan Permit |
| | Site Civil Construction Plan Review |
| | Right of Way Use / Haul Permit |
| | Right of Way Permit |
| | Maintenance of Traffic |
| Florida Department of Environmental Protection (FDEP) | Notice of Intent to use General Permit |
| | Dewatering - Discharge to Surface |
| | Air Construction Permit |
| | NPDES Generic Stormwater Permit |
| | Utility Construction Notification |
| | Large Storage Tanks |

EXHIBIT 2

DOC # 20230074250
02/09/2023 08:13 AM  Page 1 of 76
Rec Fee: $647.50
Deed Doc Tax: $0.00
Mortgage Doc Tax: $0.00
Intangible Tax: $0.00
Phil Diamond, Comptroller
Orange County, FL
Ret To: SIMPLIFILE LC

**Prepared by/Record and Return to:**
Edward G. Milgrim
Milgrim Law Group
3216 Corrine Drive
Orlando, FL 32803

_____ **THIS SPACE FOR RECORDER'S USE** _____

### DECLARATION OF RESTRICTIVE COVENANTS

   **THIS DECLARATION OF RESTRICTIVE COVENANTS** (this **"Declaration"**) is made as of February **8**, 2023 (the **"Effective Date"**) by **REEDY CREEK IMPROVEMENT DISTRICT**, a public corporation and public body corporate and politic of the State of Florida, whose mailing address is Post Office Box 10170, Lake Buena Vista, Florida 32830-0170 (**"RCID"**) in favor of **WALT DISNEY PARKS AND RESORTS U.S., INC.**, a Florida corporation whose mailing address is Post Office Box 10000, 1375 Buena Vista Drive, 4th Floor – North, Lake Buena Vista, Florida 32830 (**"WDPR"**).

W I T N E S S E T H:

   **WHEREAS**, as required by State growth management law, in June 2022, RCID's existing comprehensive plan was amended and updated by the "Reedy Creek Improvement District, City of Bay Lake and City of Lake Buena Vista, RCID Comprehensive Plan 2032" (the "**Comprehensive Plan**") governing all lands located within the jurisdictional boundary of RCID (hereinafter referred to as the "**RCID Jurisdictional Lands**"); and

   **WHEREAS**, RCID is the owner of those certain parcels of land, located in Orange County, Florida, and being a portion of the RCID Jurisdictional Lands, more particularly described on Exhibits A-1 through A-23 attached hereto and made a part hereof (each a "**RCID Property**" and collectively, the "**RCID Properties**"); and

   **WHEREAS**, WDPR and/or its Affiliates (as defined in the Glossary of Terms attached as an Appendix) is/are the owner of certain parcels of land, located adjacent and/or near the RCID Properties, and also being a portion of the RCID Jurisdictional Lands, more particularly described on Exhibit B attached hereto and made a part hereof (each a "**WDPR Property**" and collectively, the "**WDPR Properties**"); and

   **WHEREAS**, the WDPR Properties represent the vast majority of the RCID Jurisdictional Lands and WDPR and/or its Affiliates have developed, and plan to continue to develop, the WDPR Properties into the _Walt Disney World_® Resort (the _Walt Disney World_® Resort as further developed and expanded is referred to as the "**Project**");

   **WHEREAS**, RCID owns, maintains and operates public infrastructure systems (collectively, the "**Facilities**") which serve and will continue to serve the Project and, in order to facilitate the implementation of and provide adequate levels of service for the Project as it expands, new Facilities and/or expansion of existing Facilities will be required; and

**WHEREAS,** RCID and WDPR have entered into that certain Walt Disney World Chapter 163 Development Agreement, dated February 8, 2023 (the "**Development Agreement**"), to provide certainty to both RCID and WDPR (and WDPR's Affiliates) in terms of current and future development; and

**WHEREAS,** pursuant to the Development Agreement, among other things, RCID has agreed that the Facilities for the Project for the ten (10) year period ending December 31, 2032, will be funded, designed and constructed and/or caused to be constructed by RCID in accordance with the Comprehensive Plan; and

**WHEREAS,** pursuant to the Development Agreement, among other things, WDPR and its Affiliates have agreed that any land required for the Facilities that is owned by WDPR and/or its Affiliates shall be dedicated to RCID, or another public entity, as required, and that compensation for said land dedication shall be negotiated between parties but in no event shall WDPR and/or its Affiliates request payment for the land in excess of fair market value as determined by a Member of the Appraisal Institute (MAI) real estate appraiser, jointly selected by the parties, thereby guaranteeing RCID the land that it needs (to the extent owned by WDPR and/or its Affiliates) and allowing RCID to avoid the condemnation process and the costs and uncertainty associated therewith; and

**WHEREAS,** as stated in RCID's Charter, the Legislature found and declared the powers accorded to RCID's Board of Supervisors (the "**Board**") under the Charter with respect to, among other things, planning, are essential to guide and accomplish the coordinated, balanced and harmonious development of the RCID Jurisdictional Lands in accordance with existing and future needs, to promote the health, safety, morals and general welfare of RCID and its inhabitants and property owners, to establish, maintain and preserve aesthetic values and preserve and foster the development and display of the natural beauty and attractiveness of the RCID Jurisdictional Lands and of roadsides within RCID, to prevent overcrowding and congestion, to regulate traffic, to secure safety, and to conserve and provide adequate light and air and to avoid undue concentration of population; and

**WHEREAS,** the Board has determined that, in furtherance of the Comprehensive Plan and the Development Agreement, in accordance with the powers granted to the Board under the Charter, and in consideration of the commitments made by WDPR and its Affiliates under the Development Agreement, it is in the mutual best interest of RCID and WDPR (and WDPR's Affiliates and each of their respective successors and assigns) to provide for the orderly use, development, and operation of the RCID Properties by subjecting the RCID Properties to this Declaration and that subjecting the RCID Properties to this Declaration is reasonably necessary to protect the legitimate business interest or interests of WDPR, WDPR's Affiliates (as applicable) and each of their respective successors and assigns.

**NOW THEREFORE,** for and in consideration of the foregoing premises and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged by RCID, to the fullest extent permitted by Law, RCID hereby declares that the RCID Properties shall be, and are hereby, made subject to this Declaration and the provisions, covenants, conditions, restrictions, easements and obligations set forth herein, which Declaration, provisions, covenants, conditions, restrictions, easements and obligations shall run with title to the RCID Properties, in each case for the benefit of the WDPR Properties, WDPR, WDPR's Affiliates (as applicable) and

2

each of their respective successors and assigns owning any portion of the WDPR Properties.

1.     **RECITALS; DEFINED TERMS.**

The foregoing recitals are hereby incorporated herein by reference and made part of this Declaration as if fully set forth herein. Capitalized terms not defined in the body of this Declaration shall have the meaning assigned to such terms in the Glossary of Terms attached as an Appendix hereto, unless the context requires otherwise.

2.     **USE.**

2.1.     **Permitted Uses.** The RCID Properties shall be used only for their respective Permitted Uses and no other purpose whatsoever. As used herein, the **"Permitted Uses"** as to any particular RCID Property (or portion thereof) shall mean that such property shall be used: (i) only for such public and governmental purposes that such RCID Property is or are being used as of the Effective Date or are otherwise contemplated to be used by the Comprehensive Plan; and (ii) in accordance with the standards of workmanship, materials, quality, architectural features, design features, engineering standards, utility standards, and general aesthetic appearance as they are so maintained as of the Effective Date.

2.2.     **Prohibited Uses.** Notwithstanding anything to the contrary contained in this Declaration, and without prejudice to the applicability of the Permitted Uses to the RCID Properties described in Section 3.1 above, RCID shall not use or occupy the RCID Properties (or any portion thereof), or permit or suffer the RCID Properties (or any portion thereof), to be used or occupied, for any of the Prohibited Uses. As used herein, the **"Prohibited Uses"** shall collectively mean (1) except as required by applicable Laws, any advertising, publicizing, promoting or marketing (including, without limitation, the installation of any signage, or the placement or dissemination of any brochure, magazine, book, information sheet, admission media, flyer, sign, card, video cassette, compact disc, laser disc, digital versatile disc (DVD), visual and/or audio projection, or any other printed, visual, audio, electronic or other media or materials, of any kind or nature whatsoever, whether or not now technologically existent) of any business other than RCID, and (2) any purpose which violates the prohibited uses identified on Exhibit C attached hereto and incorporated herein by reference.

2.3.     **Restrictions on Occupancy of RCID Properties by Tenants.** RCID shall ensure that all leases with Tenants do not violate the terms of this Declaration.

3.     **DESIGN REVIEW OF IMPROVEMENTS AND ALTERATIONS.**

Other than Improvements existing on the RCID Properties as of the Effective Date, no Improvements (including, without limitation, Alterations) shall be located, constructed, installed or placed on, or attached or affixed to, or made to the RCID Properties, or any portion thereof, including, without limitation, the structure, usage or exterior appearance and/or aesthetics of any Improvements (including, without limitation, Alterations), which would cause the RCID Properties or any portion thereof to be in violation of the Permitted Use or any other provision of this Declaration. To ensure consistency with the overall design and theming of the WDPR Properties, the exterior design, appearance and exterior aesthetic qualities of any Improvements (including, without limitation, Alterations) to any portion of the RCID Properties are subject to WDPR's prior review and comment, which shall not be unreasonably withheld, conditioned or

delayed. RCID shall maintain the RCID Properties in good condition during any construction and Alteration activities, including, without limitation, screening, landscaping and fencing.

4. **GENGERAL MAINTENANCE STANDARD**.

The services and facilities constructed and provided on the RCID Properties, and the manner of providing or offering of such, will at all times be accordance with applicable Laws, consistent with the Permitted Use and in keeping with the standards of workmanship, materials, quality, architectural features, design features, engineering standards, utility standards, and general aesthetic appearance as they are so maintained as of the Effective Date.

5. **PROHIBITION ON USE OF DISNEY NAME**. RCID shall not have the right to do any of the following in relation to any of the RCID Properties:

5.1. Use (or grant the right to any other Person to use) the names "Disney," or any other name or other Identifying Symbol from time to time associated or identified with WDPR or any of WDPR's Affiliates, or any of the WDPR Properties, or any variation or derivative of any of the same, either alone or in conjunction with, or as a part of, any other word, mark, name, title or symbol, without the express prior written approval of WDPR, which approval may be granted, conditioned, delayed or withheld in WDPR's discretion.

5.2. Use (or grant the right to any other Person to use) any of the fanciful characters (such as Mickey Mouse), designs, symbols, representations, figures, drawings, ideas or other intellectual property owned, developed or created by WDPR or any of WDPR's Affiliates in any manner whatsoever.

5.3. Sell or distribute (or grant the right to any other Person to sell or distribute) any literature, merchandise, souvenirs or other items which refer to or depict (i) any of the WDPR Properties or any other property, real or personal, owned, operated or managed by WDPR or any of WDPR's Affiliates, except for the incidental inclusion thereof in materials distributed by RCID in connection with its ordinary business purposes, or (ii) the "WALT DISNEY WORLD" mark, name or symbol, or any logo, trademark or service mark owned, used or controlled by WDPR or any of WDPR's Affiliates.

5.4. Use, reproduce, sell, distribute, display or exploit (or grant the right to any other Person to use, reproduce, sell, distribute, display or exploit) the WALT DISNEY WORLD® mark, name or symbol or the copyrighted works of the Walt Disney Company, Disney Enterprises, Inc., WDPR or any of WDPR's Affiliates.

6. **BINDING EFFECT; ENFORCEMENT.**

6.1. **Covenants Running With RCID Properties and Benefits Running With the WDPR Properties**. The covenants, conditions, and restrictions contained in this Declaration are intended by both parties to, and shall, run with title to the RCID Properties and all portions thereof and shall be binding on RCID, its Tenants, and any successor owner of the RCID Properties or portions thereof. The benefits of this Declaration and the covenants, conditions, and restrictions hereof shall run with title to the WDPR Properties and all portions thereof and benefit only the WDPR Properties, WDPR and its Affiliates and each of their respective successors and assigns owning any portion of the WDPR Properties. There shall be no other beneficiaries of such

provisions. Only WDPR and WDPR's Affiliates and each of their respective successors and assigns, by virtue of their ownership of any portion of the WDPR Properties, shall have the continuing right to enforce this Declaration and the provisions, covenants, conditions, and restrictions set forth in this Declaration. This Declaration cannot be modified, amended, terminated or canceled without the express written consent of WDPR. WDPR (or its Affiliate, as applicable) may, at its sole option, elect to terminate the benefit of this Declaration as it applies to any WDPR Property.

6.2. **Enforcement**. If RCID shall violate or breach (or attempt to violate or breach) any of the provisions, covenants, conditions, restrictions and/or obligations set forth in this Declaration, and such breach or violation is not cured within thirty (30) days after receipt of written notice (or if such breach requires more than thirty (30) days to cure such longer time as reasonably necessary to complete such cure so long as RCID commences the cure of such default within such thirty (30) day period in good faith and thereafter diligently prosecutes all measures necessary or appropriate to cure such default not to exceed one hundred eighty (180) days in the aggregate), then WDPR (and/or its Affiliate(s) or Designee, as applicable) shall be entitled to any of the following remedies, which remedies may be elected without excluding any other available remedies: (i) institute and prosecute proceedings for the recovery of actual damages against RCID for such violation or breach; (ii) institute and prosecute proceedings for the purpose of preventing or enjoining any or all such violations or attempted violations or breaches or attempted breaches of the provisions, covenants, conditions, restrictions and/or obligations set forth in this Declaration; and/or (iii) bring a suit for specific performance of the same. Except as otherwise provided in this Declaration, such remedies shall be cumulative of and with any and all other remedies expressly provided in this Declaration or which otherwise may now or hereafter be available at law or in equity, separately, concurrently or in any combination. The failure of WDPR (or its Affiliate(s) or Designee, as applicable) to enforce any of the provisions, covenants, conditions, easements, restrictions, and/or obligations set forth in this Declaration, however long continued, shall in no event be deemed to be or constitute a waiver of the right to thereafter enforce the same as to any continuing or subsequent violation or breach or attempted violation or breach of the same provision, covenant, condition, easement, restriction and/or obligation, whether occurring prior or subsequent thereto. Anything contained in this Declaration to the contrary notwithstanding, WDPR (and/or its Affiliate(s) or Designee, as applicable) may enforce this Declaration and the terms, provisions, covenants and conditions herein by injunctive relief, and, in addition, may seek damages and all other rights and remedies available to WDPR (and/or its Affiliate(s) or Designee, as applicable), at law or in equity.

7. **TERM; ASSIGNMENT BY WDPR.**

7.1. **Term**. This Declaration shall be deemed effective as of the Effective Date and continue to be effective in perpetuity unless all or certain portions of the provisions of this Declaration are expressly terminated as provided elsewhere herein; provided, however, that if the perpetual term of this Declaration is deemed to violate the "Rule Against Perpetuities," or any similar law or rule, this Declaration shall continue in effect until twenty one (21) years after the death of the last survivor of the descendants of King Charles III, King of England living as of the date of this Declaration. Notwithstanding the foregoing or anything to the contrary herein, this Declaration will terminate as of the date that none of WDPR or any of its Affiliates (or their respective successor entities) owns any real property within ten (10) miles of the RCID Properties.

7.2. **Termination of Declaration Upon Transfer to WDPR or its Affiliates or Designee.** Upon the vesting of title to any of the RCID Properties or portion thereof in WDPR (or its Affiliates or their respective Designee, as applicable) this Declaration and all the terms and conditions contained herein shall terminate and be of no further force or effect as to such RCID Property or portion thereof without the need for any further documentation or amendment to this Declaration. If WDPR (or its Affiliates or their respective Designee, as applicable) shall ever become a Tenant of a RCID Property, then this Declaration shall be of no force or effect as to the activities by such Tenant or the use of the respective RCID Property by such Tenant for the duration that such entity remains a Tenant, all without the need for any further documentation or amendment to this Declaration.

7.3. **Assignment by WDPR.** WDPR has the right to assign all of its rights to, under and in this Declaration to any Affiliates of WDPR or to any Designee. WDPR shall promptly notify RCID, in writing, of any such assignment and the instrument by which such assignment is made.

8. **MISCELLANEOUS.**

8.1. **Rights Cumulative.** Except as is expressly provided herein, all rights, remedies, powers and privileges conferred by and under this Declaration shall be cumulative of and in addition to, but not restrictive of or in lieu of, those conferred at law or in equity.

8.2. **Notices.**

8.2.1. Each notice or communication under this Declaration shall be deemed delivered and received if in writing and either: (i) personally delivered; (ii) delivered by reliable overnight air courier service; or (iii) deposited with the United States Postal Service or any official successor thereto, certified or registered mail, return receipt requested, with adequate postage prepaid, delivered or addressed to the entity entitled or required to receive the same, WDPR or RCID, as appropriate. Rejection or other refusal by the addressee to accept the notice, and inability to deliver the notice because of a change of address of the party of which no notice was given, shall be deemed to be the receipt of the notice on the third day following the date postmarked by the United States Postal Service or on the second day following the date accepted by the courier service.

8.2.2. The addresses of the parties to which notices are to initially be sent pursuant to this Declaration are as follows:

If to WDPR:     Walt Disney Parks and Resorts U.S., Inc.
                P.O. Box 10000
                1375 Buena Vista Drive
                4th Floor - North
                Lake Buena Vista, Florida 32830-1000
                Attention: Real Estate/Legal Department

                With duplicate copy (which shall not constitute notice or service or process) to:

Walt Disney Parks and Resorts U.S., Inc.
c/o Walt Disney World Resort Operating Participants Department
1825 Live Oak Lane
Lake Buena Vista, Florida 32830
Attention: Vice President, Real Estate

If to RCID:          Reedy Creek Improvement District
1900 Hotel Plaza Boulevard, P.O. Box 10170
Lake Buena Vista, Florida 32830-0170
Attn: District Administrator

With duplicate copy (which shall not constitute notice or service or
process) to:

Milgrim Law Group
3216 Corrine Drive
Orlando, Florida 32803
Attn: Edward G. Milgrim, Esq.

Notwithstanding the foregoing, if any notice or other communication has not been sent in
compliance with this Section but has in fact actually been received by its intended recipient, then
such notice or communication shall be deemed to have been duly given and received effective as
of the date of actual receipt. Any entity may designate a different address or recipient for receiving
notices by written notice to the other entities to receive notice, such notice to be given in
accordance with this Section.

8.3.    **Entire Declaration**. This Declaration may only be modified by a written
instrument executed by WDPR. Notwithstanding the foregoing or anything to the contrary herein,
RCID may unilaterally amend or terminate this Declaration at such time as no real property within
ten (10) miles of the RCID Properties is owned by WDPR or any of its Affiliates.

8.4.    **Severability**. If any clause or provision of this Declaration is illegal, invalid or
unenforceable under applicable present or future Laws, the remainder of this Declaration shall not
be affected and shall continue in full force and effect.  In lieu of each clause or provision of this
Declaration which is illegal, invalid or unenforceable, there shall be added as a part of this
Declaration a clause or provision as nearly identical as may be possible and as may be legal, valid
and enforceable.

8.5.    **Governing Law**. This Declaration shall be governed by, construed under and
interpreted and enforced in accordance with the laws of the State of Florida, and, where applicable,
the laws of the United States of America.

8.6.    **Headings**. The use of headings, captions and numbers in this Declaration is solely
for the convenience of identifying and indexing the various sections and shall in no event be
considered in construing or interpreting any provision in this Declaration.

8.7.    **Use of Pronouns, Words and Phrases**. Use of pronouns, words and phrases which
are used in the singular in this Declaration shall include the plural and vice versa, and nouns and

pronouns in this Declaration which are used in any particular gender shall be deemed to include any other gender.

8.8. **Consent or Approval of WDPR**. In all instances where WDPR's reasonable consent or approval is required under this Declaration, or in any instance where common law or equity would require WDPR to act reasonably or to not unreasonably withhold its approval or consent, WDPR shall be entitled to take into account, in determining whether or not to grant or withhold approval or consent, the proximity of the RCID Properties to the WALT DISNEY WORLD® Resort and WDPR and WDPR's Affiliates' concerns that the RCID Properties comply with this Declaration and the provisions, covenants, conditions, restrictions and obligations contained herein. Except where expressly stated herein to the contrary, in all instances where WDPR's consent or approval is required hereby, or where WDPR is entitled to use its discretion, WDPR shall be entitled to grant or withhold such consent or approval, and to exercise its discretion, in WDPR's sole and absolute discretion.

8.9. **Interpretation**. If any provision, covenant, condition, restriction or obligation set forth in this Declaration is capable of two (2) interpretations, one (1) of which would render the provision, covenant, condition, restriction or obligation illegal, invalid or unenforceable and the other of which would render the provision, condition, restriction or obligation legal, valid and enforceable, then the provision, covenant, condition, restriction or obligation shall have the meaning which shall render it legal, valid and enforceable. No inference shall be drawn from the addition, deletion or modification of any language contained in any prior draft of this Declaration.

8.10. **FORUM AND VENUE FOR LEGAL PROCEEDINGS/WAIVER OF JURY TRIAL**. ANY LEGAL PROCEEDING OF ANY NATURE BROUGHT TO ENFORCE ANY RIGHT OR OBLIGATION UNDER THIS DECLARATION, OR TO INTERPRET, CONSTRUE OR SEEK ANY DECLARATION WITH RESPECT TO ANY RIGHTS, REMEDIES OR RESPONSIBILITIES HEREUNDER, OR OTHERWISE ARISING OUT OF OR IN CONNECTION WITH ANY MATTER PERTAINING TO THIS DECLARATION, SHALL BE SUBMITTED EXCLUSIVELY FOR TRIAL, WITHOUT A JURY, BEFORE THE CIRCUIT COURT FOR ORANGE COUNTY, FLORIDA; OR IF SUCH COURT SHALL NOT HAVE JURISDICTION, THEN EXCLUSIVELY BEFORE ANY OTHER COURT SITTING IN ORANGE COUNTY, FLORIDA HAVING SUBJECT MATTER JURISDICTION. RCID HEREBY CONSENTS AND SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY SUCH COURT AND AGREES TO ACCEPT SERVICE OF PROCESS IN ANY MATTER TO BE SUBMITTED TO ANY SUCH COURT PURSUANT HERETO, AND EXPRESSLY WAIVES ALL RIGHTS TO TRIAL BY JURY REGARDING ANY SUCH MATTER.

8.11. **Time of the Essence**. Time shall be of the essence with respect to all of the provisions of this Declaration.

8.12. **Recording of this Declaration**. This Declaration shall not be recorded by RCID in the Public Records of the county in which the RCID Properties are located without the written approval of WDPR. WDPR, at its sole cost and expense, shall have the option to record this Declaration in the Public Records of the county in which the RCID Properties are located without the prior consent or approval of RCID.

**--THE BALANCE OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK—**

**IN WITNESS WHEREOF,** RCID has caused this Declaration to be executed and sealed by its duly authorized representative, all effective as of the Effective Date.

WITNESSES

"RCID"

Witness Signature: _____
Name of Witness: __Line Graham__

**REEDY CREEK IMPROVEMENT DISTRICT,** a public corporation and public body corporate and politic of the State of Florida

Witness Signature: _____
Name of Witness: __Edward E. Milgim__

By: _____

John H. Classe, Jr., District Administrator

Date: ___2|8|23___

STATE OF FLORIDA
COUNTY OF ORANGE

The foregoing Declaration was acknowledged before me by means of ☒ physical presence or ☐ online notarization, this __8th__ day of __February__, 2023, by John H. Classe, Jr., as District Administrator of the **REEDY CREEK IMPROVEMENT DISTRICT,** a public corporation and public body corporate and politic of the State of Florida, on behalf thereof, who is ☒ personally known to me or ☐ presented _____ as identification. (Set forth type of identification presented, if applicable).

ILANA PERRAS
MY COMMISSION # HH 289477
EXPIRES: November 18, 2028

Signature of Notary Public-State of Florida
(AFFIX STAMP)

**Exhibit A-1**

DESCRIPTION
OF
PARCEL 1

Ref: Orange County Parcel 282428000000061

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the West Quarter corner of said Section 28, run along the West line of the Southwest 1/4 of said Section 28, S 00°00'07" E, 32.01 feet to a point on the Northerly right-of-way line of Buena Vista Drive as described in Official Records Book 3336, Page 1199 of the Public Records of Orange County; thence run along said right-of-way line S 65°32'52" E, 546.27 feet; thence N 24°27'08" E, 43.78 feet to the Point of Beginning, thence S 68°22'14" E, 825.35 feet; thence N 21°37'46" E, 29.13 feet; thence S 68°22'14" E, 109.67 feet; thence N 21°37'46" E, 360.89 feet; thence N 68°22'14" W, 814.52 feet; thence S 21°37'46" W, 323.89 feet; thence N 68°22'14" W, 120.50 feet; thence S 21°37'46" W, 66.13 feet to the Point of Beginning, containing 7.402 Acres, more or less.



**Exhibit A-2**

DESCRIPTION
OF
GARAGE A1 ENTRANCE

Ref: Orange County Parcel 282428000000071

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the West Quarter corner of said Section 28, run along the West line of the Southwest 1/4 of said Section 28, S 00°00'07" E, 32.70 feet to a point on the Northerly right-of-way line of Buena Vista Drive as described in Official Records Book 3336, Page 1188 of the Public Records of Orange County Florida; thence run along said right-of-way line the following three courses; S 65°32'23" E, 549.09 feet to the Point of Beginning, S 65°32'23" E, 390.82 feet to a point of curvature of a curve concave Northerly having a radius of 1816.86 feet, and a central angle of 25°34'31"; run Easterly along the arc of said curve, 810.99 feet; to a point on a non-tangent curve concave Northeasterly having a radius of 48.00 feet, and a central angle of 59°13'59"; thence from a tangent bearing of N 58°59'29" W run Northwesterly along the arc of said curve, 49.62 feet; thence N 00°14'30" E, 35.39 feet; thence N 03°52'35" W, 69.70 feet; thence N 00°14'40" E, 106.90 feet to a point of curvature of a curve concave Southwesterly having a radius of 89.00 feet, and a central angle of 68°36'25"; thence run Northwesterly along the arc of said curve, 106.57 feet; thence N 68°22'34" W, 45.86 feet; thence run along the boundary of a deed recorded in Official Records Book 10681, Page 1295 of the Public Records of Orange County Florida, S 21°37'46" W, 72.81 feet; thence S 68°22'14" E, 49.39 feet; thence S 21°37'46" W, 112.00 feet; thence N 68°22'15" W, 7.92 feet; thence S 21°39'02" W, 73.53 feet; thence N 68°20'58" W, 27.92 feet; thence S 21°38'37" W, 13.69 feet; thence N 68°22'14" W, 13.53 feet; thence run along aforesaid deed the following courses; S 21°37'46" W, 56.00 feet; N 68°22'14" W, 109.67 feet; S 21°37'46" W, 29.13 feet; N 68°22'14" W, 825.35 feet; S 21°37'46" W, 44.40 feet to the Point of Beginning, containing 2.281 Acres, more or less.



**Exhibit A-3**

DESCRIPTION
OF
GARAGE A1 EAST NODE

Ref: Orange County Parcel 282428000000065

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the West Quarter corner of said Section 28, run along the West line of the Southwest 1/4 of said Section 28, S 00°00'07" E, 143.14 feet; thence N 90°00'00" E, 1507.09 feet to the Point of Beginning, thence N 30°12'01" E, 45.79 feet; thence S 59°47'59" E, 16.25 feet; thence N 30°12'01" E, 44.17 feet; thence S 59°47'59" E, 26.67 feet; thence S 30°12'01" W, 44.17 feet; thence S 59°47'59" E, 29.00 feet; thence S 30°12'01" W, 32.00 feet; thence N 59°47'59" W, 12.75 feet; thence S 30°12'01" W, 13.79 feet; thence N 59°47'59" W, 59.17 feet to the Point of Beginning, containing 4295 square feet, more or less.



**Exhibit A-4**

DESCRIPTION
OF
GARAGE A1 WEST NODE

Ref: Orange County Parcel 282428000000064

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the West Quarter corner of said Section 28, run along the West line of the Northwest 1/4 of said Section 28, N 00°00'15" W, 74.94 feet; thence N 90°00'00" E, 915.15 feet to the Point of Beginning; thence N 22°26'10" E, 24.01 feet to a point on a non-tangent curve concave Southerly having a radius of 179.65 feet, and a central angle of 03°14'25"; thence from a tangent bearing of S 77°04'27" E run Easterly along the arc of said curve, 10.16 feet; thence N 22°32'16" E, 4.78 feet; thence S 67°27'44" E, 1.87 feet; thence S 22°32'17" W, 4.58 feet to a point on a non-tangent curve concave Southerly having a radius of 179.65 feet, and a central angle of 05°28'17"; thence from a tangent bearing of S 73°13'58" E run Easterly along the arc of said curve, 17.16 feet; thence N 22°32'16" E, 4.67 feet; thence S 67°27'44" E, 1.87 feet; thence S 22°32'16" W, 4.67 feet; to a point on a non-tangent curve concave Southwesterly having a radius of 179.65 feet, and a central angle of 05°28'17"; thence from a tangent bearing of S 67°09'48" E run Southeasterly along the arc of said curve, 17.16 feet; thence N 22°32'16" E, 4.58 feet; thence S 67°27'44" E, 1.87 feet; thence S 22°32'16" W, 4.78 feet to a point on a non-tangent curve concave Southwesterly having a radius of 179.65 feet, and a central angle of 03°14'28"; thence from a tangent bearing of S 61°05'26" E run Southeasterly along the arc of said curve, 10.16 feet; thence S 22°43'18" W, 24.00 feet; thence N 67°28'06" W, 59.88 feet to the Point of Beginning, containing 1566 square feet, more or less.



## Exhibit A-5

### DESCRIPTION
### OF
### GARAGE A1 SERVICE AREA

Ref: Orange County Parcel 282428000000066

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the West Quarter corner of said Section 28, run along the West line of the Southwest 1/4 of said Section 28, S 00°00'07" E, 32.70 feet to a point on the Northerly right-of-way line of Buena Vista Drive as described in Official Records Book 3336, Page 1199 of the Public Records of Orange County; thence run along said right-of-way line the following two courses; S 65°32'23" E, 939.91 feet to a point of curvature of a curve concave Northerly having a radius of 1816.86 feet, and a central angle of 17°19'56"; run Easterly along the arc of said curve, 549.61 feet; thence N 21°37'46" E, 37.16 feet to a point on a deed recorded in Official Records Book 10681, Page1295 of the Public records of Orange County; thence run along said line; N 21°37'46" E, 56.00 feet to the Point of Beginning of the aforementioned deed recorded in Official Records Book 10681, Page1295 of the Public records of Orange County, thence continue N 21°37'46" E, 199.21 feet; thence S 68°22'14" E, 49.39 feet; thence S 21°37'46" W, 112.00 feet; thence N 68°22'15" W, 7.92 feet; thence S 21°39'02" W, 73.53 feet; thence N 68°20'58" W, 27.92 feet; thence S 21°38'37" W, 13.69 feet; thence N 68°22'14" W, 13.53 feet to the Point of Beginning, containing 8765 square feet, more or less.



**Exhibit A-6**

DESCRIPTION
OF
PARCEL 13.2

Ref: Orange County Parcel 282428000000075

A parcel of land lying in Sections 28 and 29, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the East Quarter corner of said Section 29, run along the East line of the Southeast 1/4 of said Section 29, S 00°00'07" E, 32.70 feet, to a point on the right of way line of Buena Vista Drive as described in Official Records Book 3336, Page 1199 of the Public Records of Orange County, Florida, and the Point of Beginning; thence run along said right of way line N 65°32'23" W, 160.70 feet; thence N 46°04'50" E, 217.41 feet; thence S 43°55'10" E, 25.50 feet to a point on a non-tangent curve concave Southeasterly having a radius of 195.51 feet, and a central angle of 17°54'22"; thence from a tangent bearing of S 46°04'50" W run Southwesterly along the arc of said curve, 61.10 feet; to a point of compound curvature of a curve concave Easterly having a radius of 45.50 feet, and a central angle of 82°33'52"; thence run Southerly along the arc of said curve, 65.57 feet; to a point of compound curvature of a curve concave Northerly having a radius of 317.03 feet, and a central angle of 29°37'59"; thence run Easterly along the arc of said curve, 163.96 feet; thence S 84°20'09" E, 230.00 feet to a point of curvature of a curve concave Southwesterly having a radius of 83.04 feet, and a central angle of 108°48'30"; thence run Southeasterly along the arc of said curve, 157.70 feet; thence S 24°36'58" W, 8.65 feet; thence S 68°29'06" E, 89.19 feet; thence S 21°37'46" W, 87.65 feet; thence run along said right of way line N 65°32'23" W, 549.09 feet to the Point of Beginning, containing 1.884 Acres, more or less.



**Exhibit A-7**

DESCRIPTION
OF
GARAGE A2

Ref: Orange County Parcel 282428000000069

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the West Quarter corner of said Section 28, run along the West line of the Southwest 1/4 of said Section 28, S 00°00'07" E, 340.38 feet; thence N 90°00'00" E, 2524.29 feet to the a point on the North right-of-way line of Buena Vista Drive as described in Official Records Book 2125, Page 311 and Book 2647, Page 1635 and 3336, Page 1199 Public Records of Orange County Florida and Point of Beginning, thence run along said right-of-way line the following courses; S 64°45'36" E, 24.25 feet to a point of curvature of a curve concave Northwesterly having a radius of 5.00 feet, and a central angle of 110°11'36"; run Northeasterly along the arc of said curve, 9.62 feet; to a point of compound curvature of a curve concave Westerly having a radius of 45.89 feet, and a central angle of 30°56'43"; run Northerly along the arc of said curve, 24.79 feet; to a point on a non-tangent curve concave Northwesterly having a radius of 1816.52 feet, and a central angle of 05°56'52"; from a tangent bearing of N 58°50'22" E run Northeasterly along the arc of said curve, 188.57 feet; to a point of compound curvature of a curve concave Northwesterly having a radius of 2771.99 feet, and a central angle of 07°20'22"; run Northeasterly along the arc of said curve, 355.09 feet; N 45°33'08" E, 410.31 feet; S 43°06'29" E, 14.47 feet; N 45°33'10" E, 113.68 feet; N 45°12'49" W, 14.83 feet to a point on a non-tangent curve concave Northwesterly having a radius of 770.02 feet, and a central angle of 02°20'44"; from a tangent bearing of N 43°48'23" E run Northeasterly along the arc of said curve, 31.52 feet; to a point on a non-tangent curve concave Northerly having a radius of 49.13 feet, and a central angle of 48°03'19"; thence departing said right-of-way line from a tangent bearing of S 81°47'30" W run Westerly along the arc of said curve, 41.20 feet; thence N 44°16'54" W, 23.97 feet; thence N 42°24'23" W, 73.73 feet to a point of curvature of a curve concave Southerly having a radius of 114.00 feet, and a central angle of 65°40'42"; thence run Westerly along the arc of said curve, 130.68 feet; thence N 19°22'23" W, 2.58 feet to a point on a non-tangent curve concave Southeasterly having a radius of 116.77 feet, and a central angle of 26°08'41"; thence from a tangent bearing of S 71°51'47" W run Southwesterly along the arc of said curve, 53.28 feet; thence S 45°43'06" W, 15.75 feet; thence N 44°16'54" W, 7.75 feet; thence S 45°43'06" W, 147.58 feet; thence N 44°16'54" W, 62.74 feet; thence S 45°43'38" W, 540.25 feet to a point of curvature of a curve concave Southeasterly having a radius of 90.84 feet, and a central angle of 05°25'41"; thence run Southwesterly along the arc of said curve, 8.61 feet; thence S 44°16'54" E, 40.08 feet; thence S 45°43'06" W, 37.79 feet to a point of curvature of a curve concave Easterly having a radius of 64.00 feet, and a central angle of 64°49'32"; thence run Southerly along the arc of said curve, 72.41 feet; thence S 19°06'26" E, 162.56 feet; thence S 68°09'50" W, 55.33 feet; thence S 21°50'11" E, 41.82 feet to a point of

curvature of a curve concave Westerly having a radius of 43.00 feet, and a central angle of 80°04'03"; thence run Southerly along the arc of said curve, 60.09 feet to the Point of Beginning, containing 6.63 acres, more or less.



**LINE TANGENT TABLE**

| LINE | BEARING | DIST. |
|------|---------|-------|
| L1 | S 64°45'36" E | 24.25 |
| L2 | S 43°06'29" E | 4.47 |
| L3 | N 45°12'45" W | 14.8 |
| L4 | N 44°16'54" W | 23.97 |
| L5 | N 4°24'23" W | 73.73 |
| L6 | N 19°22'23" W | 7.59 |
| L7 | S 45°43'06" W | |
| L8 | N 44°16'54" W | 7.75 |
| L9 | N 44°16'54" W | 62.0 |
| L10 | N 44°16'54" E | 40 |
| L11 | S 45°43'06" W | 37.79 |
| L12 | S 68°09'50" | 55.3 |
| L13 | S 81°50'41" N | 41.82 |

**CURVE TABLE**

| CURVE | RADIUS | DELTA | LENGTH | TANG. BRG. |
|-------|--------|-------|--------|-----------|
| C1 | 5.00 | 110°11'36" | 9.62 | |
| C2 | 45.89 | 30°56'43" | 24.79 | |
| C3 | 1816.52 | 05°56'52" | 188.57 | N 58°50'22" E |
| C4 | 2771.99 | 07°20'22" | 355.09 | |
| C5 | 770.02 | 02°20'44" | 31.52 | N 43°48'23" E |
| C6 | 49.13 | 48°03'19" | 41.20 | S 81°47'30" W |
| C7 | 114.00 | 65°40'42" | 130.68 | |
| C8 | 116.77 | 26°08'41" | 53.28 | S 71°51'47" W |
| C9 | 90.84 | 05°25'41" | 8.61 | |
| C10 | 64.00 | 64°49'32" | 72.41 | |
| C11 | 43.00 | 80°04'03" | 60.09 | |

**ABBREVIATIONS:**
R=RADIUS
L=LENGTH
Δ=DELTA
TB=TANGENT BEARING
SEC=SECTION
TWN=TOWNSHIP
RNG=RANGE
POB=POINT OF BEGINNING
POC=POINT OF COMMENCEMENT
POT=POINT OF TERMINATION

WEST QUARTER CORNER,
SEC. 28 TWN. 24 S. RNG. 28 E.

6.63 Acres±

BUENA VISTA DRIVE

P.O.C.

P.O.B.
Garage A2

West line of the Southwest 1/4
of Section 28-24-28

SURVEYOR'S NOTE
CHAPTER 5J-17, FLORIDA
ADMINISTRATIVE CODE REQUIRES
THE FOLLOWING STATEMENT:
"THIS IS NOT A BOUNDARY SURVEY"

BEARINGS ARE BASED ON THE
W. LINE, SW 1/4, SEC. 28-24S-28E
AS BEING S 00°00'00" E

| FILING AREA | LAKE BUENA VISTA | SCALE | /2015 |
| PROJECT NAME | GARAGE A2 | DRAWN | 150' |
| SURVEY TYPE | SKETCH OF DESCRIPTION | FILENAME | 09uG01 |
| COMMENTS | | | |

SURVEYING AND
MAPPING DEPARTMENT
P.O.B. 10000
LAKE BUENA VISTA
FL. 32830-1000
PHONE (407)560-7918
FAX (407)560-7888

5109

**Exhibit A-8**

DESCRIPTION
OF
GARAGE A2 NODE

Ref: Orange County Parcel 282428000000070

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the West Quarter corner of said Section 28, run along the West line of the Northwest 1/4 of said Section 28, N 00°00'15" W, 347.12 feet; thence N 90°00'00" E, 2679.62 feet to the Point of Beginning, thence N 45°43'06" E, 45.46 feet; thence S 44°16'54" E, 56.09 feet; thence N 45°43'06" E, 2.19 feet; thence S 44°16'54" E, 35.20 feet; thence S 45°43'06" W, 49.83 feet; thence N 44°16'54" W, 35.20 feet; thence N 45°43'06" E, 2.19 feet; thence N 44°16'54" W, 56.09 feet to the Point of Beginning, containing 4304 square feet, more or less.



**Exhibit A-9**

DESCRIPTION
OF
PARCEL 1

Ref: Orange County Parcel 282428000000080

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the Southwest corner of said Section 28, run along the West line of the Southwest 1/4 of said Section 28, N 00°00'07" W, 498.48 feet; thence N 89°59'53" E, 621.37 feet to a point on the Easterly boundary of a deed recorded in Official Records Book 10852, Page 9478 of the Public records of Orange County Florida and the Point of Beginning, and a point on a non-tangent curve concave Northerly having a radius of 513.14 feet, and a central angle of 14°56'06"; thence from a tangent bearing of N 81°05'24" W run Westerly along the arc of said curve and deed, 133.76 feet; thence N 79°50'07" E, 33.82 feet; thence S 10°04'53" E, 15.00 feet; thence N 79°54'45" E, 1178.57 feet; thence N 00°41'10" E, 279.34 feet to a point on a non-tangent curve concave Southeasterly having a radius of 45.24 feet, and a central angle of 58°01'41"; thence from a tangent bearing of N 02°12'23" W run Northeasterly along the arc of said curve, 45.82 feet; thence N 34°06'25" W, 16.59 feet to a point on a non-tangent curve concave Northwesterly having a radius of 118.00 feet, and a central angle of 19°58'42"; thence from a tangent bearing of N 70°05'35" E run Northeasterly along the arc of said curve, 41.15 feet; thence N 50°06'53" E, 428.47 feet; thence S 40°29'34" E, 13.53 feet to a point on a non-tangent curve concave Southerly having a radius of 45.00 feet, and a central angle of 90°49'13"; thence from a tangent bearing of N 49°30'27" E run Easterly along the arc of said curve, 71.33 feet; thence S 39°40'20" E, 10.22 feet to a point of curvature of a curve concave Northeasterly having a radius of 30.00 feet, and a central angle of 43°31'08"; thence run Southeasterly along the arc of said curve, 22.79 feet; thence S 83°11'29" E, 62.90 feet to a point of curvature of a curve concave Northerly having a radius of 30.00 feet, and a central angle of 46°55'08"; thence run Easterly along the arc of said curve, 24.57 feet; thence N 49°53'23" E, 82.76 feet to a point of curvature of a curve concave Northwesterly having a radius of 30.00 feet, and a central angle of 46°08'21"; thence run Northeasterly along the arc of said curve, 24.16 feet; thence N 03°45'03" E, 83.05 feet to a point of curvature of a curve concave Southeasterly having a radius of 45.00 feet, and a central angle of 65°30'09"; thence run Northeasterly along the arc of said curve, 51.45 feet; thence N 69°15'12" E, 4.72 feet; thence N 18°26'18" W, 23.85 feet to a point on a non-tangent curve concave Northerly having a radius of 514.02 feet, and a central angle of 02°14'31"; thence from a tangent bearing of N 71°33'44" E run Easterly along the arc of said curve, 20.11 feet; thence N 69°19'14" E, 245.96 feet; thence N 69°19'14" E, 11.20 feet to a point of curvature of a curve concave Northwesterly having a radius of 1026.03 feet, and a central angle of 07°59'11"; thence run Northeasterly along the arc of said curve, 143.02 feet; thence N 61°20'02" E, 27.28 feet; thence N 28°39'58" W, 12.04 feet to a point on a non-tangent curve concave Northwesterly having a radius of 402.01 feet, and a central angle of 21°32'12"; thence from a tangent bearing of N 60°31'26" E run Northeasterly along the arc of said curve, 151.11 feet; thence N 38°59'14" E, 5.74 feet; thence N 50°41'01" W, 21.31 feet to a point on a non-tangent curve concave Northwesterly having a radius of 32.00 feet, and a central angle of 38°21'31"; thence from a tangent bearing of N 51°09'53" E run Northeasterly along the arc of said curve, 21.42 feet; to a point of compound curvature of a curve concave Southwesterly having a radius of 76.00 feet, and a central angle of 73°05'53"; thence run Northwesterly along the arc of said curve, 96.96 feet; to a point of reverse curvature of a curve concave Northeasterly having a radius of 124.00 feet, and a central angle of 31°37'33"; thence run Northwesterly along the arc of said curve, 68.45 feet; thence N 28°39'58" W, 43.01 feet; thence S 58°19'47" W, 12.80 feet; thence N 31°40'14" W, 62.42 feet to a point on a non-tangent curve concave Northeasterly having a radius of 41.00 feet, and a central angle of 27°14'25"; thence from a tangent bearing of N 59°45'09" W run Northwesterly along the arc of said curve, 19.49 feet; thence N 32°30'45" W, 113.04 feet to a point on the Southerly right of way line of Buena Vista Drive as described in Official Records Book 3336, Page 1199 of the Public Records of Orange County, Florida; and a point on a non-tangent curve concave Northwesterly having a radius of 2002.86 feet, and a central angle of 04°36'15"; thence from a tangent bearing of N 58°29'08" E run Northeasterly along the arc of said curve and right of way, 160.94 feet; thence run along

the boundary of a deed recorded in instrument number 20160228229 in the Public Records of Orange County, Florida the following courses; S 36°07'07" E, 13.95 feet; thence S 02°10'36" E, 48.59 feet to a point of curvature of a curve concave Northwesterly having a radius of 38.00 feet, and a central angle of 59°32'36"; thence run Southwesterly along the arc of said curve, 39.49 feet; thence S 57°22'00" W, 30.95 feet; thence S 32°38'00" E, 355.99 feet; thence S 47°04'51" W, 73.67 feet to a point on a non-tangent curve concave Northeasterly having a radius of 63.50 feet, and a central angle of 180°00'00"; thence from a tangent bearing of S 43°35'47" W run Southeasterly along the arc of said curve, 199.49 feet; thence departing said deed run along the Westerly limited access right of way line of the I-4 (Disney World) Interchange as show on Florida Department of Transportation right-of-way map section 75000-2520 and dated July 28, 1980, last revised on March 5, 1998, S 43°45'36" W, 160.24 feet; thence N 46°14'24" W, 40.00 feet; thence S 43°45'36" W, 24.00 feet; thence S 46°14'24" E, 40.00 feet to a point on the aforesaid Westerly limited access right of way line; thence run along aforesaid Westerly limited access right of way line, S 43°45'36" W, 79.20 feet to a point on the boundary of a deed recorded in instrument number 20160228229 in the Public Records of Orange County, Florida; and a point on a non-tangent curve concave Southwesterly having a radius of 60.20 feet, and a central angle of 177°25'45"; thence from a tangent bearing of N 43°35'39" E run Northwesterly along the arc of said curve and deed, 186.42 feet; thence continue along said deed the following courses; S 46°09'54" W, 142.91 feet to a point of curvature of a curve concave Northwesterly having a radius of 150.00 feet, and a central angle of 23°09'24"; thence run Southwesterly along the arc of said curve, 60.62 feet; thence S 69°19'18" W, 164.30 feet to a point of curvature of a curve concave Southeasterly having a radius of 150.00 feet, and a central angle of 55°14'06"; thence run Southwesterly along the arc of said curve, 144.61 feet; thence S 14°05'11" W, 108.98 feet to a point of curvature of a curve concave Northwesterly having a radius of 100.00 feet, and a central angle of 35°43'22"; thence run Southwesterly along the arc of said curve, 62.35 feet; thence S 49°48'33" W, 334.77 feet to a point of curvature of a curve concave Northerly having a radius of 300.00 feet, and a central angle of 43°56'06"; thence run Westerly along the arc of said curve, 230.04 feet; to a point of reverse curvature of a curve concave Easterly having a radius of 73.13 feet, and a central angle of 192°46'47"; thence run Southerly along the arc of said curve, 246.07 feet to a point on the aforesaid Westerly limited access right of way line of the I-4 (Disney World) Interchange; and a point on a non-tangent curve concave Northerly having a radius of 1809.91 feet, and a central angle of 10°32'03"; thence departing said deed from a tangent bearing of S 69°20'42" W run Westerly along the arc of said curve limited access right of way, 332.76 feet; thence continue along said  Westerly limited access right of way, S 79°53'09" W, 867.70 feet to the Point of Beginning, containing 7.528 Acres, more or less.

Together with;

PARCEL 2
Ref: A portion of Orange County Parcel 282428000000082

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the West Quarter corner of said Section 28, run along the West line of the Southwest 1/4 of said Section 28, S 00°00'07" E, 188.41 feet; thence N 89°59'53" E, 3028.83 feet to a point on the Southerly right of way line of Buena Vista Drive as described in Official Records Book 3336, Page 1199 of the Public Records of Orange County, Florida, the Point of Beginning, and a point on a non-tangent curve concave Northwesterly having a radius of 2957.79 feet, and a central angle of 01°58'21"; thence from a tangent bearing of N 47°31'58" E run Northeasterly along the arc of said curve and right of way line, 101.83 feet; thence continue along said right of way line the following two courses; N 45°33'36" E, 500.00 feet to a point of curvature of a curve concave Northwesterly having a radius of 956.01 feet, and a central angle of 06°53'49"; thence run Northeasterly along the arc of said curve, 115.08 feet; to a point on a non-tangent curve concave Westerly having a radius of 100.00 feet, and a central angle of 09°26'36"; thence from a tangent bearing of S 01°09'56" E run Southerly along the arc of said curve, 16.48 feet; thence S 08°16'39" W, 5.29 feet; thence N 86°06'48" E, 18.78 feet; thence S 03°53'11" E, 12.04 feet; thence N 86°06'48" E, 23.98 feet; thence S 03°53'12" E, 25.68 feet; thence S 86°06'48" W, 24.01 feet; thence S 03°53'12" E, 11.97 feet; thence S 86°06'48" W, 19.24 feet; thence S 37°38'17" W, 52.85 feet to a point on a non-tangent curve concave Southwesterly having a radius of 170.00 feet, and a central angle of 29°38'18"; thence from a tangent bearing of S 38°35'45" E run Southeasterly along the arc of said curve, 87.94 feet; thence S 09°53'02" E, 43.95 feet to a point on a non-tangent curve concave Northeasterly having a radius of 198.01 feet, and a central angle of

18°54'38"; thence from a tangent bearing of S 15°34'43" E run Southeasterly along the arc of said curve, 65.35 feet; to a point on a non-tangent curve concave Northeasterly having a radius of 287.01 feet, and a central angle of 06°54'13"; thence from a tangent bearing of S 36°00'00" E run Southeasterly along the arc of said curve, 34.58 feet; to a point of reverse curvature of a curve concave Westerly having a radius of 101.00 feet, and a central angle of 46°48'22"; thence run Southerly along the arc of said curve, 82.51 feet; thence S 46°23'57" E, 106.45 feet to a point on the Westerly limited access right of way line of the I-4 (Disney World) Interchange as show on Florida Department of Transportation right-of-way map section 75000-2520 and dated July 28, 1980, last revised on March 5, 1998; thence run along said Westerly limited access right of way the following two courses; S 38°29'39" W, 202.26 feet; S 43°35'39" W, 66.92 feet to a point on the boundary of a deed recorded in instrument number 20160228229 in the Public Records of Orange County, Florida; thence run along said deed the following courses; N 44°46'10" W, 173.16 feet to a point of curvature of a curve concave Southerly having a radius of 75.00 feet, and a central angle of 98°12'34"; thence run Westerly along the arc of said curve, 128.56 feet; thence S 37°01'17" W, 89.88 feet to a point of curvature of a curve concave Northerly having a radius of 40.00 feet, and a central angle of 94°14'24"; thence run Westerly along the arc of said curve, 65.79 feet; thence N 48°44'20" W, 203.92 feet to the Point of Beginning, containing 4.664 Acres, more or less.

Together with;

PARCEL 3
Ref: Orange County Parcel 282428000000083

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the West Quarter corner of said Section 28, run along the West line of the Northwest 1/4 of said Section 28, N 00°00'15" W, 448.20 feet; thence N 89°59'45" E, 3297.68 feet to a point on the boundary of a deed recorded in Official Records Book 10905, Page 9175 of the Public Records of Orange County, Florida and the Point of Beginning, thence N 43°36'48" E, 21.88 feet; thence N 46°23'12" W, 19.75 feet; thence N 43°36'48" E, 2.15 feet; thence N 46°39'01" W, 38.42 feet; thence N 43°36'48" E, 19.88 feet; thence S 46°23'12" E, 38.26 feet; thence N 43°36'48" E, 2.15 feet; thence S 46°23'12" E, 19.92 feet; thence N 43°36'48" E, 11.00 feet; thence S 46°23'12" E, 33.33 feet; thence N 43°36'48" E, 17.24 feet to a point on a non-tangent curve concave Northerly having a radius of 52.00 feet, and a central angle of 66°37'16"; thence from a tangent bearing of S 62°48'14" E run Easterly along the arc of said curve, 60.47 feet; to a point on the Northerly right of way line of Buena Vista Drive as recorded in Official Records Book 2592, Page 1398 of the Public Records of Orange County, Florida and point on a non-tangent curve concave Northwesterly having a radius of 770.01 feet, and a central angle of 07°35'39"; thence from a tangent bearing of S 33°52'29" W run Southwesterly along the arc of said curve and right of way line, 102.06 feet; to a point on the aforementioned deed and a non-tangent curve concave Northerly having a radius of 49.13 feet, and a central angle of 48°03'11"; thence from a tangent bearing of S 81°48'06" W run Westerly along the arc of said curve and deed, 41.20 feet; thence continue along said deed the following courses; N 44°16'26" W, 23.97 feet; thence N 42°23'55" W, 21.52 feet to the Point of Beginning, containing 7095 square feet, more or less.

Together with;

PARCEL 4
Ref: Orange County Parcel 282428000000084

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the West Quarter corner of said Section 28, run along the West line of the Northwest 1/4 of said Section 28, N 00°00'15" W, 515.75 feet; thence N 89°59'45" E, 3129.46 feet to a point on the boundary of a deed recorded in Official Records Book 10905, Page 9175 of the Public Records of Orange County, Florida and the Point

Page 20

of Beginning, thence N 36°58'36" W, 9.54 feet; thence N 53°01'24" E, 83.36 feet; thence S 33°14'37" E, 75.07 feet to a point on the aforementioned deed and a non-tangent curve concave Southerly having a radius of 114.00 feet, and a central angle of 45°53'09"; thence from a tangent bearing of N 62°11'27" W run Westerly along the arc of said curve and deed, 91.30 feet; thence continue along said deed the following courses; N 19°21'55" W, 2.58 feet to a point on a non-tangent curve concave Southerly having a radius of 116.77 feet, and a central angle of 06°38'46"; thence from a tangent bearing of S 71°52'16" W run Westerly along the arc of said curve, 13.55 feet to the Point of Beginning, containing 2776 square feet, more or less.







## CURVE TABLE

| CURVE | RADIUS | DELTA | LENGTH | TANG. BRG. |
|---|---|---|---|---|
| C1 | 513.14 | 14°56'06" | 133.76 | N 81°05'24" W |
| C2 | 45.24 | 58°01'41" | 45.82 | N 02°12'23" W |
| C3 | 118.00 | 19°58'42" | 41.15 | N 70°05'39" E |
| C4 | 45.00 | 90°49'13" | 71.33 | N 49°30'27" E |
| C5 | 30.00 | 43°31'08" | 22.79 | |
| C6 | 30.00 | 46°55'08" | 24.57 | |
| C7 | 30.00 | 46°08'21" | 24.16 | |
| C8 | 45.00 | 65°30'09" | 51.45 | |
| C9 | 514.02 | 02°14'31" | 20.11 | N 71°33'44" E |
| C10 | 1026.03 | 07°59'11" | 143.02 | |
| C11 | 408.01 | 21°12'12" | 151.11 | N 60°31'26" E |
| C12 | 32.00 | 38°21'31" | 21.42 | N 51°09'53" E |
| C13 | 76.00 | 73°05'33" | 96.96 | |
| C14 | 124.00 | 31°37'33" | 68.45 | |
| C15 | 41.00 | 27°14'25" | 19.49 | N 59°45'09" W |
| C16 | 2002.86 | 04°36'15" | 160.94 | N 58°29'08" E |
| C17 | 38.00 | 59°36'36" | 39.49 | |
| C18 | 63.50 | 180°00'00" | 199.49 | S 43°35'47" W |
| C19 | 60.20 | 177°25'45" | 186.42 | N 43°35'39" E |
| C20 | 150.00 | 23°09'24" | 60.62 | |
| C21 | 150.00 | 55°14'06" | 144.61 | |
| C22 | 100.00 | 35°43'22" | 62.35 | |
| C23 | 300.00 | 43°56'06" | 230.04 | |
| C24 | 73.13 | 192°46'47" | 246.07 | |
| C25 | 1809.91 | 10°30'03" | 332.76 | S 65°20'42" W |
| C26 | 2957.79 | 01°58'21" | 101.83 | N 47°31'58" E |
| C27 | 956.01 | 06°53'49" | 115.08 | |
| C28 | 100.00 | 09°26'36" | 16.48 | S 01°09'56" E |
| C29 | 170.00 | 29°38'18" | 87.94 | S 38°35'45" E |
| C30 | 198.01 | 18°54'38" | 65.35 | S 15°34'43" E |
| C31 | 287.01 | 06°54'13" | 34.58 | S 36°00'00" E |
| C32 | 101.00 | 46°48'28" | 82.51 | |
| C33 | 75.00 | 98°12'34" | 128.56 | |
| C34 | 40.00 | 94°14'24" | 65.79 | |
| C35 | 52.00 | 66°37'16" | 60.47 | S 62°48'14" E |
| C36 | 770.01 | 07°35'39" | 102.06 | S 33°52'29" W |
| C37 | 49.13 | 48°03'11" | 41.20 | S 81°48'06" W |
| C38 | 114.00 | 45°53'09" | 91.30 | N 62°11'27" W |
| C39 | 116.77 | 06°38'46" | 13.55 | S 71°52'16" W |

## TANGENT TABLE

| LINE# | BEARING | DIST. | LINE# | BEARING | DIST. |
|---|---|---|---|---|---|
| L1 | N 79°50'07" E | 33.82 | L31 | N 86°06'48" E | 18.78 |
| L2 | S 10°04'53" E | 15.00 | L32 | S 03°53'11" E | 12.04 |
| L3 | N 34°06'23" E | 16.59 | L33 | N 86°06'48" E | 23.98 |
| L4 | N 40°29'34" E | 13.53 | L34 | S 03°53'12" E | 25.68 |
| L5 | S 39°40'20" E | 10.22 | L35 | S 86°06'48" W | 24.01 |
| L6 | S 83°11'29" E | 68.90 | L36 | S 03°53'12" E | 11.97 |
| L7 | N 49°53'23" E | 82.76 | L37 | S 86°06'48" W | 19.24 |
| L8 | N 03°45'03" E | 83.05 | L38 | S 37°38'17" W | 52.85 |
| L9 | N 69°15'12" E | 4.72 | L39 | S 09°53'02" E | 43.95 |
| L10 | N 18°26'18" W | 23.85 | L40 | S 46°23'57" E | 106.45 |
| L11 | N 69°19'14" E | 11.20 | L41 | S 43°35'39" W | 66.92 |
| L12 | N 61°20'02" E | 27.28 | L42 | S 37°01'17" W | 89.88 |
| L13 | N 28°39'59" W | 18.04 | L43 | N 43°36'48" E | 21.88 |
| L14 | N 38°59'19" E | 5.74 | L44 | N 46°23'12" W | 19.75 |
| L15 | N 50°41'01" W | 21.31 | L45 | N 43°36'48" E | 2.15 |
| L16 | N 28°39'58" W | 43.01 | L46 | N 46°39'01" W | 38.42 |
| L17 | S 58°19'47" W | 12.80 | L47 | N 43°36'48" E | 19.88 |
| L18 | N 31°40'41" W | 62.42 | L48 | N 46°23'12" E | 38.26 |
| L19 | N 32°30'45" W | 113.04 | L49 | N 43°36'48" E | 2.15 |
| L20 | S 36°07'07" E | 13.95 | L50 | S 46°23'12" E | 19.92 |
| L21 | S 08°10'36" E | 48.59 | L51 | N 43°36'48" E | 11.00 |
| L22 | S 57°22'00" W | 30.95 | L52 | N 46°23'12" E | 39.33 |
| L23 | S 47°04'51" W | 73.67 | L53 | N 43°36'48" E | 17.24 |
| L24 | N 46°14'24" W | 40.00 | L54 | N 44°16'26" W | 23.97 |
| L25 | S 43°45'36" W | 24.00 | L55 | N 42°23'55" W | 21.52 |
| L26 | N 46°14'24" E | 40.00 | L56 | N 58°29'36" W | 9.34 |
| L27 | N 46°09'54" W | 142.91 | L57 | N 53°01'24" E | 83.36 |
| L28 | S 69°19'18" W | 164.30 | L58 | S 33°14'37" E | 75.07 |
| L29 | S 14°05'11" W | 108.98 | L59 | N 19°21'55" W | 2.58 |
| L30 | S 08°16'39" W | 29 | | | |

RCES
REEDY CREEK ENERGY SERVICES

SURVEYING AND MAPPING DEPARTMENT
P.O.B. 10000
LAKE BUENA VISTA
FL. 32830-1000
PHONE (407)360-7118
FAX (407)360-7889

| FILING AREA | LAKE BUENA VISTA | DATE 11/28/17 |
|---|---|---|
| PROJECT NAME | GARAGE A3 ADDITIONAL LAND | SCALE |
| SURVEY TYPE | SKETCH OF DESCRIPTION | DRAWN BY: JLG |
| COMMENTS | | FILENAME: 09JG17116 |

**Exhibit A-10**

DESCRIPTION
OF
PARCEL 13.1

Ref: A portion of Orange County Parcel 282422000000012

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the West Quarter corner of said Section 28, run along the West line of the Southwest 1/4 of said Section 28, S 00°00'07" E, 339.41 feet; thence N 89°59'53" E, 2520.10 feet to a point on the boundary of a deed recorded in Official Records Book 10905, Page 9175 of the Public Records of Orange County, Florida and the Point of Beginning; thence run along said boundary the following two courses; S 64°45'08" E, 3.36 feet to a point on a non-tangent curve concave Westerly having a radius of 43.00 feet, and a central angle of 80°04'03"; from a tangent bearing of N 58°14'20" E run Northerly along the arc of said curve, 60.09 feet; to a point on a non-tangent curve concave Westerly having a radius of 28.13 feet, and a central angle of 86°37'17"; thence from a tangent bearing of S 21°49'42" E run Southerly along the arc of said curve, 42.53 feet; to a point on the boundary of a deed recorded in Official Records Book 6667, Page 3614 of the Public Records of Orange County, Florida and a non-tangent curve concave Westerly having a radius of 55.06 feet, and a central angle of 17°08'54"; thence from a tangent bearing of S 13°33'19" W run Southerly along the arc of said curve, 16.48 feet;  to the Point of Beginning, containing 260 square feet, more or less.



**TANGENT TABLE**

| LINE# | BEARING | DIST. |
|---|---|---|
| L1 | S 64°45'08" E | 3.36 |

**CURVE TABLE**

| CURVE | RADIUS | DELTA | LENGTH | TANG. BRG. |
|---|---|---|---|---|
| C1 | 43.00 | 80°04'03" | 60.09 | N 58°14'20" E |
| C2 | 28.13 | 86°37'17" | 42.53 | S 21°49'42" E |
| C3 | 55.06 | 17°08'54" | 16.48 | S 13°33'19" W |

ABBREVIATIONS:
R=RADIUS
L=LENGTH
Δ=DELTA
TB=TANGENT BEARING
SEC=SECTION
TWN=TOWNSHIP
RNG=RANGE
POB=POINT OF BEGINNING
POC=POINT OF COMMENCEMENT
POT=POINT OF TERMINATION

SURVEYOR'S NOTE
CHAPTER 5J-17, FLORIDA
ADMINISTRATIVE CODE REQUIRES
THE FOLLOWING STATEMENT.
"THIS IS NOT A BOUNDARY SURVEY"

BEARINGS ARE BASED ON THE
W. LINE, SW 1/4, SEC. 28-24S-28E
AS BEING S 00°00'07" E

**ACES**
SURVEYING AND
MAPPING DEPARTMENT
P.O.B. 10000
LAKE BUENA VISTA
FL 32830-1000
PHONE (407)560-7118
FAX (407)560-7088

| FIELD AREA | LAKE BUENA VISTA | DATE | 3/23/16 |
| PROJECT NAME | PARCEL 13.1 | SCALE | 1" = 30' |
| SURVEY TYPE | SKETCH OF DESCRIPTION | DRAWN BY | JLG |
| COMMENTS | | FILENAME | 09JG16062 |

**Exhibit A-11**

DESCRIPTION
OF
PEDESTRIAN TOWER

Ref: Orange County Parcel 282428000000072

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the West Quarter corner of said Section 28, run along the West line of the Southwest 1/4 of said Section 28, S 00°00'07" E, 32.70 feet to a point on the Northerly right-of-way line of Buena Vista Drive as described in Official Records Book 3336, Page 1188 of the Public Records or Orange County Florida; thence run along said right-of-way line the following two courses; S 65°32'23" E, 939.91 feet to a point of curvature of a curve concave Northerly having a radius of 1816.86 feet, and a central angle of 26°37'19"; run Easterly along the arc of said curve, 844.19 feet to the Point of Beginning; thence N 02°12'49" W, 42.74 feet; thence N 87°47'11" E, 11.97 feet; thence N 02°06'08" W, 42.89 feet; thence N 88°00'24" E, 17.87 feet; thence S 02°12'49" E, 42.82 feet; thence N 87°47'11" E, 11.75 feet; thence S 02°12'49" E, 42.30 feet to a point on the aforesaid right-of-way line and a non-tangent curve concave Northerly having a radius of 1816.86 feet, and a central angle of 01°18'51"; thence from a tangent bearing of S 86°31'27" W run Westerly along the arc of said curve and right-of-way line, 41.67 feet to the Point of Beginning, containing 2542 square feet, more or less.



**TANGENT TABLE**

| LINE# | BEARING | DIST. |
|---|---|---|
| L1 | S 00°00'07" E | 32.70 |
| L2 | N 02°12'49" W | 42.74 |
| L3 | N 87°47'11" E | 11.97 |
| L4 | N 02°06'08" W | 42.89 |
| L5 | N 88°00'24" E | 17.87 |
| L6 | S 02°12'49" E | 42.82 |
| L7 | N 87°47'11" E | 11.75 |
| L8 | S 02°12'49" E | 42.30 |

**P.O.C.**
WEST QUARTER CORNER,
SEC 28, TWN 24 S, RNG 28 E

65°32'23" E   939.91

West line of the Southwest 1/4
of Section 28-24-28

**P.O.B.**
2542 SQ. Feet±

BUENA VISTA DR. O.R. BOOK 3336, PAGE 1188

GRAPHIC SCALE
SCALE 1" = 60'

**ABBREVIATIONS**
SEC=SECTION
TWN=TOWNSHIP
RNG=RANGE
POB=POINT OF BEGINNING
POC=POINT OF COMMENCEMENT

**SURVEYOR'S NOTE**
CHAPTER 5J-17, FLORIDA
ADMINISTRATIVE CODE REQUIRES
THE FOLLOWING STATEMENT.
*"THIS IS NOT A BOUNDARY SURVEY"*

BEARINGS ARE BASED ON THE
W. LINE, SW 1/4, SEC. 28-24-28
AS BEING S 00°00'07" E

SURVEYING AND
MAPPING DEPARTMENT
P.O.B. 10000
LAKE BUENA VISTA
FL 32830-1000
PHONE (407)560-7118
FAX (407)560-7869

| FILING AREA: LAKE BUENA VISTA | DATE: 10/15/1 |
|---|---|
| PROJECT NAME: PEDESTRIAN TOWER | SCALE 1" = 60' |
| SURVEY TYPE: SKETCH OF DESCRIPTION | DRAWN BY: JLG |
| COMMENTS: | FILENAME: 09JG14093 |

**Exhibit A-12**

DESCRIPTION
OF
RELAY FOR LIFE STAGING AREA

Ref: Orange County Parcel 282421000000037

A Parcel Of Land Lying In Section 21, Township 24 South, Range 28 East, Orange County, Florida, And Being More Particularly Described As Follows:

Commence At The Southwest Corner Of Said Section 21, Run Along The West Line Of The Southwest 1/4 Of Said Section 21, N 01°00'10" W, 1311.32 Feet; Thence N 90°00'00" E, 1674.52 Feet To The Point Of Beginning, Said Point Also Being A Point On The North Line Of The Southeast 1/4 Of The Southwest 1/4 Of Said Section 21; Thence S 89°53'15" E, 1004.75 Feet Along Said Line To A Point On The East Line Of The Northeast 1/4 Of The Southeast 1/4 Of The Southwest 1/4 Of Said Section 21; Thence S 00°29'10" E, 25.00 Feet Along Said Line To A Point On Parcel 1 As Recorded In Official Records Book 7435 Page 2858 Of The Public Records Of Orange County, Florida; Thence Run Along Parcel 1 The Following Three Courses N 89°53'08" W, 206.10 Feet; Thence S 00°00'00" E, 295.55 Feet; Thence N 90°00'00" W, 125.94 Feet To A Point On Parcel 2 As Recorded In Official Records Book 7435 Page 2858 Of The Public Records Of Orange County, Florida; Thence Run Along Parcel 2 N 90°00'00" W, 58.57 Feet To A Point On A Parcel As Recorded In Official Records Book 6709 Page 746 Of The Public Records Of Orange County, Florida; Said Point Also Being A Point On A Non-Tangent Curve Concave Southwesterly Having A Radius Of 392.11 Feet, And A Central Angle Of 22°39'33"; Thence From A Tangent Bearing Of N 47°19'41" W Run Northwesterly Along The Arc Of Said Curve And Parcel, 155.07 Feet; Thence Continue Along Said Parcel N 90°00'00" W, 381.78 Feet To A Point On The Easterly Right-Of-Way Line Of Buena Vista Drive As Recorded In Official Records Book 2315 Page 240 Of The Public Records Of Orange County, Florida; Said Point Also Being A Point On A Non-Tangent Curve Concave Southwesterly Having A Radius Of 899.33 Feet, And A Central Angle Of 10°40'35"; Thence From A Tangent Bearing Of N 31°14'06" W Run Northwesterly Along The Arc Of Said Curve And Right-Of-Way Line, 167.58 Feet; Thence Run Along The West Line Of The East 1/2 Of The Northwest 1/4 Of The Southeast 1/4 Of The Southwest 1/4 N 00°40'49" W, 107.60 Feet To The Point Of Beginning. Containing 4.815 Acres, more or less.



**Exhibit A-13**

DESCRIPTION
OF
PARCEL 15.1

Ref: A portion of Orange County Parcel 282428000000082

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the West Quarter corner of said Section 28, run along the West line of the Southwest 1/4 of said Section 28, S 00°00'07" E, 386.09 feet; thence N 89°59'53" E, 2788.44 feet to a point on the right of way line of Buena Vista Drive as described in Official Records Book 3336, Page 1199 of the Public Records of Orange County, Florida and the Point of Beginning; and a point on a non-tangent curve concave Northwesterly having a radius of 2002.86 feet, and a central angle of 00°58'53"; thence from a tangent bearing of N 53°52'53" E run Northeasterly along the arc of said curve and right of way line, 34.31 feet; to a point on said right of way as described in Official Records Book 2647, Page 1635 and a point of compound curvature of a curve concave Northwesterly having a radius of 2957.79 feet, and a central angle of 05°22'03"; thence run Northeasterly along the arc of said curve and right of way line, 277.08 feet; thence S 48°44'20" E, 203.92 feet to a point of curvature of a curve concave Northerly having a radius of 40.00 feet, and a central angle of 94°14'24"; thence run Easterly along the arc of said curve, 65.79 feet; thence N 37°01'17" E, 89.88 feet to a point of curvature of a curve concave Southerly having a radius of 75.00 feet, and a central angle of 98°12'34"; thence run Easterly along the arc of said curve, 128.56 feet; thence S 44°46'10" E, 173.16 feet to a point on the westerly limited access right-of-way line of west bound State Road 400 (I-4) off ramp, (as shown on the right-of-way map section 75000-2520 and dated July 28, 1980, last revised on March 5, 1998); thence run along said westerly limited access right-of-way line, S 43°32'20" W, 790.69 feet to a point on a non-tangent curve concave Northeasterly having a radius of 63.50 feet, and a central angle of 180°00'00"; thence from a tangent bearing of S 43°35'47" W run Northwesterly along the arc of said curve, 199.49 feet; thence N 47°04'51" E, 73.67 feet; thence N 32°38'00" W, 355.99 feet; thence N 57°22'00" E, 30.95 feet to a point of curvature of a curve concave Northwesterly having a radius of 38.00 feet, and a central angle of 59°32'36"; thence run Northeasterly along the arc of said curve, 39.49 feet; thence N 02°10'36" W, 48.59 feet; thence N 36°07'07" W, 13.95 feet to the Point of Beginning, containing 6.845 Acres, more or less.



**Exhibit A-14**

DESCRIPTION
OF
PARCEL 15.2

Ref: Orange County Parcel 282428000000078

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the West Quarter corner of said Section 28, run along the West line of the Southwest 1/4 of said Section 28, S 00°00'07" E, 1123.85 feet; thence N 89°59'53" E, 2802.74 feet to a point on the westerly limited access right-of-way line of west bound State Road 400 (I-4) off ramp, (as shown on the right-of-way map section 75000-2520 and dated July 28, 1980, last revised on March 5, 1998) and the Point of Beginning, thence run along said westerly limited access right-of-way line the following two courses; S 43°35'39" W, 450.49 feet to a point of curvature of a curve concave Northwesterly having a radius of 1968.59 feet, and a central angle of 24°39'03"; run Southwesterly along the arc of said curve, 846.96 feet; to a point on a non-tangent curve concave Easterly having a radius of 73.13 feet, and a central angle of 192°46'47"; thence from a tangent bearing of S 80°57'52" W run Northerly along the arc of said curve, 246.07 feet; to a point of reverse curvature of a curve concave Northerly having a radius of 300.00 feet, and a central angle of 43°56'06"; thence run Easterly along the arc of said curve, 230.04 feet; thence N 49°48'33" E, 334.77 feet to a point of curvature of a curve concave Northwesterly having a radius of 100.00 feet, and a central angle of 35°43'22"; thence run Northeasterly along the arc of said curve, 62.35 feet; thence N 14°05'11" E, 108.98 feet to a point of curvature of a curve concave Southeasterly having a radius of 150.00 feet, and a central angle of 55°14'06"; thence run Northeasterly along the arc of said curve, 144.61 feet; thence N 69°19'18" E, 164.30 feet to a point of curvature of a curve concave Northwesterly having a radius of 150.00 feet, and a central angle of 23°09'24"; thence run Northeasterly along the arc of said curve, 60.62 feet; thence N 46°09'54" E, 142.91 feet to a point of curvature of a curve concave Southwesterly having a radius of 60.20 feet, and a central angle of 177°25'45"; thence run Southeasterly along the arc of said curve, 186.42 feet to the Point of Beginning, containing 4.46 acres, more or less.



| TANGENT TABLE | | |
|---|---|---|
| LINE# | BEARING | DIST. |
| L1 | N 14°05' 1" E | 108.98 |
| L2 | N 69°19'18" E | 164.30 |
| L3 | N 46°09'54" E | 142.91 |

| CURVE TABLE | | | | |
|---|---|---|---|---|
| CURVE | RADIUS | DELTA | LENGTH | TANG. BRG. |
| C1 | 1968.59 | 24°39'03" | 846.96 | |
| C2 | 73.13 | 192°46'47" | 246.07 | S 80°57'52" W |
| C3 | 300.00 | 43°56'06" | 230.04 | |
| C4 | 100.00 | 35°43'22" | 62.35 | |
| C5 | 150.00 | 55°14'06" | 144.61 | |
| C6 | 150.00 | 23°09'24" | 60.62 | |
| | 60.20 | 177°25'45" | 186.42 | |

ABBREVIATIONS
R=RADIUS
L=LENGTH
Δ=DELTA
TB=TANGENT BEARING
SEC=SECTION
TWN=TOWNSHIP
RNG=RANGE
POB=POINT OF BEGINNING
POC=POINT OF COMMENCEMENT
POT=POINT OF TERMINATION

SURVEYOR'S NOTE
CHAPTER 5J-17, FLORIDA
ADMINISTRATIVE CODE REQUIRES
THE FOLLOWING STATEMENT:
"THIS IS NOT A BOUNDARY SURVEY"

BEARINGS ARE BASED ON THE
W. LINE, SW 1/4, SEC. 28-24S-28E
AS BEING S 00°00'07" E

SURVEYING AND
MAPPING DEPARTMENT
P.O.B. 10000
LAKE BUENA VISTA
FL 32830-1000
PHONE (407)560-7118
FAX (407)560-7869

| FILING AREA | DATE |
|---|---|
| LAKE BUENA VISTA | 3/23/16 |
| PROJECT NAME | SCALE |
| PARCEL 15.2 | 200' |
| SURVEY TYPE | |
| SKETCH OF DESCRIPTION | |
| COMMENTS | 09JG16066 |

**Page 35**

**Exhibit A-15**

DESCRIPTION
OF
PARCEL 19

Ref: Orange County Parcel 282428000000079

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the North Quarter corner of said Section 28, run along the North line of the Northeast 1/4 of said Section 28, N 89°04'11" E, 719.48 feet; thence S 00°55'49" E, 1283.00 feet to the Point of Beginning, thence S 34°32'59" E, 35.83 feet; thence S 55°27'01" W, 83.71 feet; thence N 34°32'59" W, 35.83 feet; thence N 55°27'01" E, 83.71 feet to the Point of Beginning, containing 3000 square feet, more or less.



**Exhibit A-16**

DESCRIPTION
OF
RCID ADMINISTRATION BUILDING

Ref: Orange County Parcel 282428000000024

A portion of land described in Official Records Book 5157, Page 2282 of the Public Records of Orange County, Florida. Lying in the Northeast Quarter of Section 28, Township 24 South, Range 28 East, more particularly described as follows:

Commence at the Northeast Corner of said Section 28; Thence, S 89°03'36" W along the north line of said section, 149.35 feet to a point on the Northwesterly right-of-way line of Hotel Plaza Boulevard as described in Official Records Book 2125, Page 8311 of the Public Records of Orange County, Florida; and a point on the arc of a non-tangent curve concave to the northwest having a radius of 854.93 feet(a radial line to said point bears S 53°40'10" E); Thence, southwesterly along the arc of said curve and right of way, through a central angle of 01°58'06", an arc length of 29.37 feet to the point of tangency; Thence continue along said right of way the following four courses, S 38°17'56" W 301.66 feet to  the Point of Beginning; Thence, S 38°17'56" W, 122.73 feet to the point of curvature of a curve concave to the northwest having a radius of 893.94 feet; Thence southwesterly along the arc of said curve through a central angle of 23°34'48", an arc length of 367.90 feet to the point of tangency; Thence, S 61°52'44" W, 129.49 feet; Thence N 22°29'30" W, 79.70 feet to a point on a deed recorded in Official Records Book 5631, Page 4002 of the Public Records of Orange County, Florida, a non-tangent curve concave Westerly having a radius of 51.00 feet, and a central angle of 51°07'37"; thence from a tangent bearing of N 28°38'10" E run Northerly along the arc of said curve and deed, 45.51 feet; thence run along said deed the following five courses; N 22°29'28" W, 65.27 feet; thence N 67°30'32" E, 17.55 feet; thence N 22°29'28" W, 244.58 feet; thence S 67°30'32" W, 16.55 feet; thence N 22°29'28" W, 96.52 feet; thence N 68°49'16" E, 16.44 feet; thence S 69°19'06" E, 24.64 feet; thence S 84°50'03" E, 13.48 feet; thence N 85°17'15" E, 39.68 feet; thence N 70°03'24" E, 39.97 feet; thence N 65°20'46" E, 54.72 feet; thence N 68°17'46" E, 50.51 feet; thence N 74°46'16" E, 49.58 feet; thence N 62°08'28" E, 35.14 feet; thence N 35°11'36" E, 44.07 feet; thence N 32°21'52" E, 26.58 feet; thence S 51°42'04" E, 393.76 feet to the Point of Beginning, containing 4.921 Acres, more or less.



**Exhibit A-17**

DESCRIPTION
OF
RCID LAND

Ref: Orange County Parcel 282428000000063

A portion of land described in Official Records Book 10852, Page 9478 of the Public Records of Orange County, Florida, and lying in Section 28, Township 24 South, Range 28 East, and being more particularly described as follows:

Commence at the Southwest corner of said Section 28, run along the West line of the Southwest 1/4 of said Section 28, N 00°10'16" E, 387.83 feet to a point on the Northerly right-of-way line of State Road 400/State Road 536 Interchange as shown on Florida Department of Transportation right-of-way Map Section 75000-2520 and dated July 28, 1980, last revised on March 5, 1998; thence run along said right-of-way line, N 80°03'33" E, 534.17 feet to a point on aforesaid deed recorded in Official Records Book 10852, Page 9478, and a fee simple right of way line recorded in Official Records Book 10995, Page 2377 of the Public Records of Orange County, Florida, also being a non-tangent curve concave Northerly having a radius of 538.98 feet, and a central angle of 04°03'35"; thence from a tangent bearing of N 76°19'43" W run Westerly along the arc of said curve and right of way, 38.19 feet; thence run continue along said right of way the following courses; N 85°42'49" W, 20.01 feet to a point on a non-tangent curve concave Northerly having a radius of 543.98 feet, and a central angle of 04°06'00"; thence from a tangent bearing of N 70°13'08" W run Westerly along the arc of said curve, 38.93 feet; thence N 50°37'28" W, 20.01 feet to the Point of Beginning; and a point on a non-tangent curve concave Northeasterly having a radius of 538.98 feet, and a central angle of 70°20'43"; thence from a tangent bearing of N 64°04'08" W run Northwesterly along the arc of said curve, 661.74 feet; thence N 06°16'35" E, 540.93 feet to a point of curvature of a curve concave Easterly having a radius of 2063.48 feet, and a central angle of 00°54'05"; thence run Northerly along the arc of said curve, 32.46 feet; thence N 21°31'28" E, 50.81 feet to a point on a non-tangent curve concave Easterly having a radius of 2051.48 feet, and a central angle of 02°37'19"; thence from a tangent bearing of N 08°33'09" E run Northerly along the arc of said curve, 93.88 feet; thence departing said right of way line run along aforesaid deed the following courses; S 26°51'10" E, 381.34 feet to a point of curvature of a curve concave Westerly having a radius of 155.00 feet, and a central angle of 25°40'46"; thence run Southerly along the arc of said curve, 69.47 feet; thence S 01°10'24" E, 89.04 feet to a point of curvature of a curve concave Westerly having a radius of 120.00 feet, and a central angle of 28°08'17"; thence run Southerly along the arc of said curve, 58.93 feet; to a point of reverse curvature of a curve concave Easterly having a radius of 27.00 feet, and a central angle of 28°59'00"; thence run Southerly along the arc of said curve, 13.66 feet; thence S 02°01'06" E, 144.39 feet to a point of curvature of a curve concave Northeasterly having a radius of 97.00 feet, and a central angle of 65°07'24"; thence run Southeasterly along the arc of said curve, 110.25 feet; to a point of reverse curvature of a curve concave Southwesterly having a radius of 88.25 feet, and a central angle of 87°55'22"; thence run Southeasterly along the arc of

said curve, 135.42 feet; to a point of compound curvature of a curve concave Northwesterly having a radius of 56.00 feet, and a central angle of 64°04'30"; thence run Southwesterly along the arc of said curve, 62.63 feet; to a point of reverse curvature of a curve concave Southeasterly having a radius of 70.00 feet, and a central angle of 49°37'11"; thence run Southwesterly along the arc of said curve, 60.62 feet; thence S 35°14'11" W, 10.65 feet; thence S 30°39'10" E, 41.08 feet to a point of curvature of a curve concave Westerly having a radius of 85.00 feet, and a central angle of 20°42'13"; thence run Southerly along the arc of said curve, 30.71 feet; thence S 09°56'56" E, 115.44 feet to a point of curvature of a curve concave Westerly having a radius of 65.00 feet, and a central angle of 36°32'43"; thence run Southerly along the arc of said curve, 41.46 feet; thence S 26°35'47" W, 58.51 feet to the Point of Beginning, containing 6.315 Acres, more or less.

Together with;

Ref: Orange County Parcel 282428000000063

A portion of a deed recorded in Official Records Book 10852, Page 9478 of the Public Records of Orange County, Florida, and lying in Section 28, Township 24 South, Range 28 East, and being more particularly described as follows:

Commence at the Southwest corner of said Section 28, run along the West line of the Southwest 1/4 of said Section 28, N 00°10'16" E, 1691.54 feet; thence S 89°49'44" E, 120.33 feet to a point on aforesaid deed and a fee simple right of way line recorded in Official Records Book 10995, Page 2377 of the Public Records of Orange County, Florida, also being the Point of Beginning; thence run along said deed the following three courses; S 57°32'49" E, 105.73 feet; N 05°58'44" W, 233.27 feet to a point of curvature of a curve concave Easterly having a radius of 566.00 feet, and a central angle of 25°45'55"; thence run Northerly along the arc of said curve, 254.52 feet; thence N 19°47'11" E, 88.80 feet to a point on the aforesaid right of way line; thence departing said deed run along said right of way line the following courses; S 57°32'49" E, 105.73 feet; thence S 12°26'33" W, 107.55 feet to a point on a non-tangent curve concave Easterly having a radius of 2127.48 feet, and a central angle of 11°14'59"; thence from a tangent bearing of S 19°48'09" W run Southerly along the arc of said curve, 417.72 feet to the Point of Beginning, containing 40075 square feet, more or less.



**Exhibit A-18**

DESCRIPTION
OF
PARCEL 802

Ref: Orange County Parcel 282428000000068

A parcel of land lying in Section 28, Township 24 South, Range 28 East, Orange County, Florida, and being more particularly described as follows:

Commence at the Southwest corner of said Section 28, Township 24 South, Range 28 East, (a 6" by 6" concrete monument as currently exists), run N 00°10'16" E along the West line of the Southwest 1/4 of said Section 28, a distance of 387.74 feet to a point on the North limited access right-of-way line of State Road 536 (as shown on the right-of-way Map section 75000-2520 and dated March 5, 1998; thence run along said limited access right-of-way line, N 80°03'33" E, 534.38 feet to the Point of Beginning, and a point on a non-tangent curve concave Northerly having a radius of 538.98 feet, and a central angle of 04°04'56"; thence from a tangent bearing of N 76°21'05" W run Westerly along the arc of said curve, 38.40 feet; thence N 85°42'49" W, 20.01 feet to a point on a non-tangent curve concave Northerly having a radius of 543.98 feet, and a central angle of 04°06'00"; thence from a tangent bearing of N 70°13'08" W run Westerly along the arc of said curve, 38.93 feet; thence N 50°37'28" W, 20.01 feet; thence N 26°35'47" E, 48.81 feet to a point on a non-tangent curve concave Northerly having a radius of 513.14 feet, and a central angle of 21°44'04"; thence from a tangent bearing of S 59°11'23" E run Easterly along the arc of said curve, 194.66 feet to a point on the aforesaid limited access right-of-way line; thence run along said limited access right-of-way line, S 80°03'33" W, 96.68 feet to the Point of Beginning.



Parcel 800

Parcel 802

N. R/W LINE

S 80°03'33" W
96.68'

N 80°03'33" E  534.38'

P.O.B.

STATE ROAD 536
SECTION 75000-2520

West line of the Southwest 1/4
of Section 28-24-28

N 00°10'16" E  387.7'

**TANGENT TABLE**

| LINE# | BEARING | DIS |
|-------|---------|-----|
| L1 | N 4 4 W | |
| L2 | N 30°37'28" W | 20.01 |
| L3 | N 26°55'47" E | 40.01 |

**CURVE TABLE**

| CURVE | RADIUS | DELTA | LENGTH | TANG. BRG. |
|-------|--------|-------|--------|-----------|
| C1 | 538.98 | 04°04'56" | 38.40 | N 76°21'05" W |
| C2 | 543.98 | 04°06'00" | 38.93 | N 70°13'08" W |
| C3 | 513.14 | 21°44'04" | 194.66 | S 59°11'23" E |

**ABBREVIATIONS**
R=RADIUS
L=LENGTH
Δ=DELTA
TB=TANGENT BEARING
SEC=SECTION
TWN=TOWNSHIP
RNG=RANGE
POB=POINT OF BEGINNING
POC=POINT OF COMMENCEMENT
POT=POINT OF TERMINATION

P.O.C.
SOUTHWEST CORNER,
SEC 28, TWN 24 S, RNG 28 E

SURVEYOR'S NOTE
CHAPTER 5J-17, FLORIDA
ADMINISTRATIVE CODE REQUIRES
THE FOLLOWING STATEMENT.
"THIS IS NOT A BOUNDARY SURVEY"

BEARINGS ARE BASED ON THE
W. LINE, SW 1/4, SEC. 28-24S-28E
AS BEING N 00°10'16" E

| SURVEYING AND MAPPING DEPARTMENT P.O.B. 10000 LAKE BUENA VISTA FL 32830-1000 PHONE (407)560-7118 FAX (407)560-7889 | FILING AREA: LAKE BUENA VISTA | DATE: 12/19/14 |
|---|---|---|
| | PROJECT NAME: PARCEL 802 | SCALE: 1" = 100' |
| | SURVEY TYPE: SKETCH OF DESCRIPTION | DRAWN BY: JLG |
| | COMMENTS: | FILENAME: D9JG14118 |

Page 44

**Exhibit A-19**

DESCRIPTION
OF
PARCEL RIB1

Ref: Orange County Parcel 272421000000002
Ref: Orange County Parcel 272416000000003
Ref: Orange County Parcel 272417000000005
Ref: A portion of Orange County Parcel 272421000000037

A parcel of land lying in Sections 8, 16, 17 and 21, Township 24 South, Range 27 East, Orange County, Florida, and being more particularly described as follows:

Begin at the Southwest corner of said Section 17, run along the East line of the Southeast 1/4 of Section 17 to the Northeast corner thereof, N 00°02'13" E, 2669.40 feet; thence S 89°43'49" W, 1347.90 feet along the South line of the East 1/2 of the Northeast 1/4 of Section 17, to the Southwest corner thereof; thence N 00°18'18" W, 2652.68 feet along the West line of the East 1/2 of the Northeast 1/4 of Section 17 to the Northwest corner thereof; thence N 89°39'31" E, 559.27 feet along the North line of Section 17 to a point on the right of way line of Hartzog Road as described in Official Records Book 9782, Page 7172 of the Public Records of Orange County Florida; thence run along said right of way line the following courses; N 23°48'17" W, 1807.61 feet; thence N 24°57'02" W, 499.49 feet to a point of curvature of a curve concave Southwesterly having a radius of 802.00 feet, and a central angle of 65°19'34"; thence run Northwesterly along the arc of said curve, 914.40 feet; thence S 89°43'24" W, 207.22 feet; thence N 00°15'09" E, 50.00 feet; thence N 00°14'57" E, 50.00 feet; thence N 89°43'25" E, 671.30 feet; thence N 23°57'49" E, 158.82 feet; to a point on a on the State Road 429 right of way line as shown on Florida Department of Transportation right of way map project number 403498-3 and a point on a non-tangent curve concave Southwesterly having a radius of 2750.09 feet, and a central angle of 09°13'41"; thence departing Hartzog Road right of way from a tangent bearing of S 33°16'29" E run Southeasterly along the arc of said curve and S.R. 429 right of way, 442.93 feet; thence run along said S.R. 429 right of way the following five courses; S 24°02'35" E, 87.08 feet; thence S 24°56'58" E, 1000.80 feet; thence S 23°48'19" E, 9657.82 feet; thence S 57°20'29" W, 268.56 feet; thence S 79°43'38" W, 2465.96 feet to the Southwest corner of the Northwest 1/4 of said Section 21; thence N 00°35'56" E, 2659.37 feet along the West line of the Northwest 1/4 of said Section 21 to the Point of Beginning, containing 285.031 Acres, more or less.

Less and Except;

A parcel of land lying in Sections 16 and 21, Township 24 South, Range 27 East, Orange County, Florida, and being more particularly described as follows:

Commence at the Northwest corner of said Section 21, run along the North line of the Northwest 1/4 of said Section 21, N 89°50'34" E, 332.11 feet, to the Point of Beginning; thence N 16°45'19"

W, 82.26 feet; thence N 90°00'00" E, 989.75 feet to a point on a non-tangent curve concave Easterly having a radius of 2894.93 feet, and a central angle of 10°26'01"; thence from a tangent bearing of S 06°19'18" E run Southerly along the arc of said curve, 527.16 feet; thence S 16°45'19" E, 670.70 feet; thence S 72°14'26" W, 240.00 feet; thence N 17°45'34" W, 70.00 feet; thence S 72°14'26" W, 10.00 feet; thence S 17°45'34" E, 70.00 feet; thence S 72°14'26" W, 650.00 feet; thence N 16°45'19" W, 1413.80 feet to the Point of Beginning, containing 28.128 Acres, more or less.

Together with;

PARCEL RIB2

A parcel of land lying in Sections 8, 9, 16, 17 and 21, Township 24 South, Range 27 East, Orange County, Florida, and being more particularly described as follows:

Begin at the Northeast corner of the Northwest 1/4 of said Section 9, run S 00°03'05" W, 2653.53 feet along the East line of the Northwest 1/4 of said Section 9 to the Southeast corner thereof; thence S 89°44'05" W, 926.44 feet along the South line of the Southeast 1/4 of the Northwest 1/4 of Section 9 to a point on a deed recorded in Official Records Book 5397, Page 3415 of the Public Records of Orange County Florida; thence run along said deed the following four courses; N 00°09'01" E, 1311.97 feet; thence S 89°41'57" W, 398.92 feet; thence S 06°49'32" W, 733.37 feet; thence S 08°09'52" E, 589.53 feet to the Southwest corner of the Southeast 1/4 of the Northwest 1/4 of said Section 9; thence S 00°08'51" W, 1314.23 feet along the East line of the Northwest 1/4 of the Southwest 1/4 of Section 9 to the Southeast corner thereof; thence N 89°45'10" E, 1327.55 feet along the North line of the Southeast 1/4 of the Southwest 1/4 of Section 9 to the Northeast corner thereof; thence S 00°03'05" W, 1314.64 feet along the East line of the Southeast 1/4 of the Southwest 1/4 of Section 9 to the Southeast corner of the Southwest 1/4 of Section 9; thence S 00°16'08" W, 2656.49 feet along the West line of the Northeast 1/4 of said Section 16 to the Southwest corner thereof; thence N 89°48'58" E, 1333.69 feet along the North line of the Northwest 1/4 of the Southeast 1/4 of said Section 16 to the Northeast corner of the Northwest 1/4 of the Southeast 1/4 of said Section 16; thence S 00°25'50"" W, 2677.60 feet along the East line of the West 1/2 of the Southeast 1/4 of said Section 16 to the Southeast corner thereof; thence entering said Section 21 run, S 00°03'50" E, 577.04 feet along the East line of the West 1/2 of the Northeast 1/4 of said Section 22, to a point on a deed recorded in Official Records Book 5403, Page 1929 of the Public Records of Orange County Florida; thence run along said deed the following five courses; N 89°56'14" W, 436.85 feet; thence S 19°45'46" W, 205.05 feet; thence S 10°52'26" W, 182.06 feet; thence S 07°43'13" W, 96.36 feet; thence S 07°53'58" W, 130.38 feet to a point on a deed recorded in Instrument number 20190265351 of the Public Records of Orange County Florida; thence run along said deed the following four courses; N 72°21'20" W, 49.00 feet; thence S 15°35'14" W, 152.63 feet; thence S 53°38'39" W, 331.49 feet; thence S 12°50'33" W, 337.10 feet to a point on a deed recorded in Instrument number 20190265353 of the Public Records of Orange County Florida; thence run along said deed the following two courses; S 23°48'52" E, 818.61 feet to a point of curvature of a curve concave Northeasterly having a radius of 3970.00 feet, and a central angle of 01°34'48"; thence run Southeasterly along the arc of said curve, 109.47 feet to a point on a deed recorded in Official

Records Book 7253, Page 4329 and Book 7253, Page 4335 of the Public Records of Orange County Florida; thence run along said deeds the following courses; said point being a point of compound curvature of a curve concave Northeasterly having a radius of 3970.00 feet, and a central angle of 12°21'11"; thence run Southeasterly along the arc of said curve, 855.93 feet; thence S 37°44'52" E, 133.87 feet to a point of curvature of a curve concave Northeasterly having a radius of 1607.00 feet, and a central angle of 25°37'00"; thence run Southeasterly along the arc of said curve, 718.49 feet; thence S 63°21'52" E, 583.11 feet to a point of curvature of a curve concave Southwesterly having a radius of 240.00 feet, and a central angle of 10°05'09"; thence run Southeasterly along the arc of said curve, 42.25 feet; thence N 00°10'49" W, 104.81 feet to a point on a non-tangent curve concave Northerly having a radius of 645.00 feet, and a central angle of 09°39'21"; thence from a tangent bearing of N 79°50'29" E run Easterly along the arc of said curve, 108.70 feet; thence N 70°11'08" E, 39.24 feet; thence N 58°17'04" E, 51.30 feet; thence N 82°40'01" E, 38.55 feet; thence N 89°49'11" E, 66.50 feet; thence S 00°10'49" E, 211.42 feet; thence S 58°53'11" W, 41.98 feet; thence S 50°26'48" W, 40.52 feet; thence S 28°11'20" W, 46.02 feet; thence S 00°10'49" E, 36.41 feet; thence S 89°49'11" W, 50.92 feet; thence S 00°10'49" E, 95.57 feet; thence S 89°02'05" E, 166.99 feet; thence S 00°11'18" W, 179.85 feet; thence S 89°49'11" W, 382.27 feet; thence N 79°36'24" W, 132.11 feet; thence N 00°10'51" W, 175.75 feet; thence N 89°49'11" E, 29.99 feet; thence S 85°43'11" E, 181.34 feet; thence N 44°43'08" E, 30.16 feet; thence N 00°20'41" W, 38.33 feet to a point of curvature of a curve concave Southwesterly having a radius of 180.00 feet, and a central angle of 63°01'11"; thence run Northwesterly along the arc of said curve, 197.98 feet; thence N 63°21'52" W, 633.17 feet; thence departing said deeds run, N 89°58'16" W, 174.74 feet along the North line of the Southeast 1/4 of the Southeast 1/4 of said Section 21, to a point on the State Road 429 right of way line as shown on Florida Department of Transportation right of way map project number 403498-3 and a point on a non-tangent curve concave Southwesterly having a radius of 1721.96 feet, and a central angle of 09°21'53"; thence from a tangent bearing of N 32°40'52" W run Northwesterly along the arc of said curve and right of way line, 281.45 feet; thence continue along said right of way line the following courses; N 42°02'46" W, 340.85 feet to a point of curvature of a curve concave Northeasterly having a radius of 2776.91 feet, and a central angle of 18°14'12"; thence run Northwesterly along the arc of said curve, 883.86 feet; thence N 23°48'31" W, 1299.13 feet; thence N 17°33'22" E, 328.65 feet; thence N 03°16'00" W, 329.22 feet; thence N 17°33'22" E, 404.76 feet; thence N 23°48'35" W, 352.28 feet; thence S 66°11'25" W, 600.19 feet; thence N 23°48'17" W, 8254.82 feet; thence N 00°46'31" E, 840.43 feet to a point on a non-tangent curve concave Southerly having a radius of 2834.93 feet, and a central angle of 14°06'15"; thence from a tangent bearing of S 87°35'24" E run Easterly along the arc of said curve, 697.86 feet; thence N 16°30'51" E, 60.00 feet to a point on a non-tangent curve concave Southerly having a radius of 2894.93 feet, and a central angle of 16°47'28"; thence from a tangent bearing of N 73°29'09" W run Westerly along the arc of said curve, 883.86 feet; thence S 89°43'24" W, 258.73 feet; thence N 21°29'36" W, 110.97 feet; thence N 20°48'24" W, 1048.03 feet; thence departing said right of way line run, N 00°08'24" E, 211.55 feet along the West line of the East 530.00 feet of the Southwest 1/4 of the Northeast 1/4 of said Section 8; thence S 89°41'25" W, 80.74 feet along the South line of the North 1/2 of the Northeast 1/4 of said Section 8 to a point on the aforesaid State Road 429 right of way line; thence run along said right of way line the following three courses; N 20°48'24" W, 103.10 feet to a point of curvature of a curve concave Easterly having a radius of

3731.85 feet, and a central angle of 03°56'22"; thence run Northerly along the arc of said curve, 256.59 feet; thence N 89°41'15" E, 10.43 feet to a point that is 10.00 feet Easterly of when measure perpendicular to the Easterly right of way line of aforesaid State Road 429 and a point on a non-tangent curve concave Easterly having a radius of 3721.85 feet, and a central angle of 03°53'37"; thence from a tangent bearing of S 16°54'47" E run Southerly along the arc of said curve, 252.93 feet and a line that is 10.00 feet Easterly of and parallel with said right of way line; thence S 20°48'24" E, 96.16 feet along said parallel line to its intersection with a line that is 10.00 feet North of and parallel with the South line of the Northwest 1/4 of the Northeast 1/4 of said Section 8; thence N 89°41'25" E, 83.88 feet along said line that is 10.00 feet North of and parallel with the South line of the Northwest 1/4 of the Northeast 1/4 of said Section 8, to its intersection with the West line of the East 520.00 feet of the Southwest 1/4 of the Northeast 1/4 of said Section 8; thence S 00°08'24" W, 219.78 feet along the West line of the East 520.00 feet of the Southwest 1/4 of the Northeast 1/4 of said Section 8, to its intersection with a line that is 10.00 feet East of when measure perpendicular to the Easterly right of way line of aforesaid State Road 429; thence S 20°48'24" E, 836.45 feet along said parallel line to a point on a Deed described in Official Records Book 9324, Page 367 of the Public Records of Orange County Florida; thence run along said Deed the following six courses; thence S 87°25'27" E, 291.32 feet; thence N 88°48'53" E, 166.97 feet; thence N 86°44'00" E, 142.45 feet; thence N 06°27'19" W, 91.16 feet; thence N 28°52'42" E, 302.51 feet; thence N 69°30'43" E, 659.82 feet to a point on a deed described in Official Records Book 10810, Page 147 of the Public Records of Orange County Florida; thence run along said Deed the following four courses; N 84°17'43" E, 306.52 feet; thence N 55°03'52" E, 1274.60 feet; thence N 33°11'17" E, 877.94 feet; thence N 08°37'23" E, 258.89 feet; thence N 89°46'07" E, 980.18 feet along the North line of the Northwest 1/4 of said Section 9 to the Northeast corner thereof and to the Point of Beginning, containing 632.422 Acres, more or less.





## TANGENT TABLE

| LINE# | BEARING | DIST. | LINE# | BEARING | DIST. |
|-------|---------|-------|-------|---------|-------|
| L1 | N 89°39'31" E | 559.27 | L42 | N 89°49'11" E | 29.99 |
| L2 | N 24°57'02" W | 499.49 | L43 | S 85°43'11" E | 101.34 |
| L3 | S 89°43'24" W | 207.22 | L44 | N 44°43'08" E | 30.16 |
| L4 | N 00°15'09" E | 50.00 | L45 | N 00°20'41" W | 38.33 |
| L5 | N 00°14'57" E | 50.00 | L46 | N 63°21'52" W | 633.17 |
| L6 | N 89°43'25" E | 671.30 | L47 | N 89°58'16" W | 174.74 |
| L7 | N 23°57'49" E | 158.82 | L48 | N 42°02'46" W | 340.85 |
| L8 | S 24°02'35" E | 87.08 | L49 | N 17°33'22" E | 328.65 |
| L9 | S 57°20'29" W | 268.56 | L50 | N 03°16'00" W | 329.22 |
| L10 | S 89°41'57" W | 398.92 | L51 | N 17°33'22" E | 404.76 |
| L11 | S 06°49'32" W | 733.37 | L52 | N 23°48'35" W | 352.28 |
| L12 | S 08°09'52" E | 589.53 | L53 | S 66°11'25" W | 600.19 |
| L13 | N 89°56'14" W | 436.85 | L54 | N 00°46'31" E | 840.43 |
| L14 | N 19°45'46" W | 205.05 | L55 | N 16°30'31" E | 60.00 |
| L15 | N 16°58'26" W | 182.06 | L56 | S 89°49'24" W | 898.73 |
| L16 | S 07°43'19" W | 96.36 | L57 | N 21°09'36" W | 110.97 |
| L17 | S 07°53'56" W | 130.38 | L58 | N 00°00'24" E | 211.55 |
| L18 | N 72°21'20" W | 49.00 | L59 | S 89°41'05" W | 80.74 |
| L19 | S 15°35'14" W | 152.63 | L60 | N 20°48'24" W | 103.10 |
| L20 | S 53°38'39" W | 331.49 | L61 | N 89°41'15" E | 10.43 |
| L21 | S 12°50'33" W | 337.10 | L62 | S 20°48'24" E | 96.16 |
| L22 | S 23°48'52" E | 818.61 | L63 | N 89°41'25" E | 83.88 |
| L23 | S 37°44'58" E | 133.87 | L64 | S 00°08'24" W | 219.78 |
| L24 | S 63°21'36" E | 583.11 | L65 | S 20°48'24" E | 836.45 |
| L25 | N 00°10'49" W | 104.81 | L66 | S 87°28'27" E | 891.32 |
| L26 | N 70°11'08" E | 39.84 | L67 | N 88°48'53" E | 166.97 |
| L27 | N 58°17'04" E | 51.30 | L68 | N 86°44'00" E | 142.45 |
| L28 | N 92°40'01" E | 38.55 | L69 | N 06°27'19" W | 91.16 |
| L29 | N 89°49'11" E | 66.50 | L70 | N 28°52'42" E | 302.51 |
| L30 | S 00°10'49" E | 211.42 | L71 | N 59°30'23" E | 459.82 |
| L31 | S 58°53'11" W | 41.98 | L72 | N 84°17'49" E | 306.52 |
| L32 | S 50°26'48" W | 40.52 | L73 | N 08°37'23" E | 258.89 |
| L33 | S 28°11'20" W | 46.02 | L74 | N 89°50'34" E | 332.11 |
| L34 | S 00°10'49" E | 36.41 | L75 | N 16°45'19" W | 82.26 |
| L35 | N 89°49'11" W | 50.92 | L76 | S 16°45'19" E | 670.70 |
| L36 | N 00°10'49" E | 95.57 | L77 | S 72°14'26" W | 240.00 |
| L37 | S 89°02'05" E | 166.99 | L78 | N 17°45'34" W | 70.00 |
| L38 | S 00°11'18" W | 179.85 | L79 | S 72°14'26" W | 10.00 |
| L39 | S 89°49'11" W | 382.27 | L80 | S 17°45'34" E | 70.00 |
| L40 | N 79°36'24" W | 132.11 | L81 | S 72°14'26" W | 650.00 |
| L41 | N 00°10'51" W | 175.75 | | | |

## CURVE TABLE

| CURVE | RADIUS | DELTA | LENGTH | TANG. BRG. |
|-------|--------|-------|--------|------------|
| C1 | 802.00 | 65°19'34" | 914.40 | |
| C2 | 2750.09 | 09°13'41" | 442.93 | S 33°16'29" E |
| C3 | 3970.00 | 04°39'16" | 373.42 | |
| C4 | 180.00 | | 778.49 | |
| C6 | 240.00 | 10°05'09" | 42.25 | |
| C7 | 645.00 | 09°39'21" | 108.70 | N 79°50'29" E |
| C8 | 180.00 | 63°01'11" | 197.98 | |
| C9 | 1781.96 | 09°21'53" | 291.45 | N 32°40'52" W |
| C10 | 2776.91 | 18°14'15" | 883.86 | |
| C11 | 2834.93 | 14°06'15" | 697.86 | S 87°35'24" E |
| C12 | 2894.93 | 16°47'28" | 848.38 | N 73°29'09" W |
| C13 | 3731.85 | 03°56'28" | 256.59 | |
| C14 | 3721.85 | 03°53'37" | 252.93 | S 16°54'47" E |
| C15 | 2894.93 | 10°26'01" | 527.16 | S 06°19'18" E |

| | | |
|---|---|---|
| FILING AREA | *OVERALL* | DATE: 1/12/23 |
| PROJECT NAME | *RCID LAND* | SCALE: 1" = 1000' |
| SURVEY TYPE | *SKETCH OF DESCRIPTION* | DRAWN BY: JLG |
| COMMENTS | *SHEET 2  OF 3 SHEETS* | FILENAME: 10JG23001 |

P.O.B. 10000
LAKE BUENA VISTA
FL 32830-1000
PHONE 407-824-8866

**Exhibit A-20**

DESCRIPTION
OF
GIFFORD SUBSTATION

Ref: Orange County Parcel 272421000010001

A parcel of land lying in Sections 16 and 21, Township 24 South, Range 27 East, Orange County, Florida,  and being more particularly described as follows:

Commence at the Southwest corner of said Section 16, run along the South line of the Southwest, 1/4 of said Section 16, N 89°50'34" E, 332.11 feet, to the Point of Beginning; thence N 16°45'19" W, 82.26 feet: thence N 90°00'00" E, 989.75 feet to a point on the Westerly right-of-way line of Hartzog Road as recorded in Deed Book 838. Page 447, of the Public Records of this County, also being a point on a non-tangent curve concave easterly having a radius of 2894. 93 feet and a central angle of I 0°26'0 I": thence from a tangent bearing of S 06° 19' 18" E run Southerly along the arc of said curve and right-of-way line, 527.16 feet; thence continue along said right-of-way S 16°45' 19" E, 670.70 feet: thence S 72°14'26" W, 240.00 feet; thence N 17°45'34'" W, 70.00 feet: thence S 72°14'26" W, 10.00 feet thence S 17°45'34" E, 70.00 feet: thence S 72°14'26" W, 650.00 feet; thence N 16°45'!9" W, 1413.80 feet to the Point of Beginning. Containing 28.128 Acres, more or less.



**Exhibit A-21**

DESCRIPTION

OF

RCID Solid Waste Material Recovery Facility and Access Roads and
RCID Technical Services Building and Storm water Retention

Ref: Orange County Parcel 272422000000007
Ref: Orange County Parcel 272427000000013

A parcel of land lying in Sections 22 and 27, Township 24 South, Range 27 East, Orange County, Florida, and being more particularly described as follows:

Commence at the Northeast corner of said Section 27, run along the North line of the Northeast 1/4 of said Section 27, N 89°04'27" W, 850.04 feet; thence S 00°00'00" E, 1.15 feet to a point on the boundary of a deed recorded in Official Records Book 9795, Page 6197 of the Public Records of Orange County, Florida and the Point of Beginning; thence run along said deed the following courses; S 37°47'40" E, 51.03 feet; thence S 28°25'14" E, 47.80 feet; thence S 61°36'26" E, 76.78 feet; thence S 15°35'57" E, 60.62 feet; thence S 02°55'55" W, 91.89 feet; thence S 64°37'40" E, 26.16 feet; thence S 68°26'45" E, 43.14 feet; thence S 70°14'11" E, 35.79 feet; thence S 24°14'17" E, 48.79 feet; thence S 80°28'06" E, 30.50 feet; thence S 11°06'37" E, 45.56 feet; thence S 65°37'22" E, 32.10 feet; thence S 67°30'32" E, 28.36 feet; thence S 15°47'09" W, 54.74 feet; thence S 14°26'10" W, 31.37 feet; thence N 83°34'09" W, 37.14 feet; thence S 32°49'25" W, 96.24 feet; thence S 33°42'14" W, 40.19 feet; thence S 19°14'48" E, 40.26 feet; thence S 53°02'17" E, 40.15 feet; thence N 58°07'44" E, 38.18 feet; thence S 33°53'24" W, 201.02 feet; thence N 89°55'17" W, 96.69 feet; thence departing said deed run, S 05°53'15" W, 159.28 feet along the boundary of deed recorded in Official Records Book 10478, Page 9310 of the Public Records of Orange County, Florida; thence continue along said deed the following four courses; S 17°28'56" W, 125.88 feet; thence N 89°59'58" W, 263.84 feet to a point of curvature of a curve concave Northerly having a radius of 1760.01 feet, and a central angle of 19°21'52"; thence run Westerly along the arc of said curve, 594.84 feet; thence N 18°49'37" W, 127.84 feet to a point on the boundary of deed recorded in Official Records Book 10742, Page 2215 of the Public Records of Orange County, Florida; thence continue along said deed the following courses; said point being a point on a non-tangent curve concave Northerly having a radius of 750.00 feet, and a central angle of 22°56'46"; thence from a tangent bearing of S 70°24'33" E run Easterly along the arc of said curve, 300.36 feet; thence N 86°38'41" E, 180.48 feet to a point of curvature of a curve concave Northerly having a radius of 800.00 feet, and a central angle of 26°46'56"; thence run Easterly along the arc of said curve, 373.95 feet; thence N 89°56'03" W, 123.99 feet to a point of curvature of a curve concave Northeasterly having a radius of 149.32 feet, and a central angle of 61°06'13"; thence run Northwesterly along the arc of said curve, 159.24 feet; thence S 28°49'50" E, 70.53 feet to a point on a non-tangent curve concave Northerly having a radius of 700.00 feet, and a central angle of 11°38'01"; thence from a tangent bearing of S 75°00'40" W run Westerly along the arc of said curve, 142.13 feet; thence S 86°38'41" W, 180.48 feet to a point of curvature of a curve concave Northerly having a radius of 650.00 feet, and a central angle of 29°06'11";

thence run Westerly along the arc of said curve, 330.16 feet; thence N 64°15'08" W, 28.34 feet; thence N 26°48'44" E, 345.56 feet; thence N 63°08'59" W, 333.60 feet; thence S 26°48'01" W, 66.41 feet; thence N 63°12'08" W, 84.08 feet; thence departing said deed run, N 63°11'12" W, 975.43 feet along the boundary of deed recorded in Official Records Book 4674, Page 559 and Official Records Book 4674, Page 542  of the Public Records of Orange County, Florida; thence continue along said deed the following two courses; N 26°48'49" E, 557.70 feet; thence run along the boundary of deed recorded in Official Records Book 7435, Page 2854 of the Public Records of Orange County, Florida; thence continue along said deed the following four courses; S 62°58'18" E, 738.86 feet; thence S 71°51'04" E, 408.01 feet to a point of curvature of a curve concave Northwesterly having a radius of 75.00 feet, and a central angle of 89°13'24"; thence run Northeasterly along the arc of said curve, 116.79 feet; thence N 18°55'31" E, 664.87 feet; thence run N 90°00'00" E, 203.27 feet along the boundary of deed recorded in Official Records Book 7435, Page 2865 of the Public Records of Orange County, Florida; thence run along the boundary of deed recorded in Official Records Book 4674, Page 542 of the Public Records of Orange County, Florida; thence continue along said deed the following courses; N 90°00'00" E, 367.27 feet thence S 03°01'09" W, 216.21 feet to a point on a non-tangent curve concave Easterly having a radius of 449.95 feet, and a central angle of 10°43'50"; thence from a tangent bearing of S 03°12'01" W run Southerly along the arc of said curve, 84.27 feet; thence N 90°00'00" W, 622.91 feet; thence S 18°55'31" W, 359.92 feet to a point on a non-tangent curve concave Easterly having a radius of 50.00 feet, and a central angle of 82°00'23"; thence from a tangent bearing of S 18°55'44" W run Southerly along the arc of said curve, 71.56 feet; thence S 64°17'49" E, 219.33 feet to a point of curvature of a curve concave Southwesterly having a radius of 100.01 feet, and a central angle of 29°53'43"; thence run Southeasterly along the arc of said curve, 52.18 feet; thence departing said deed run S 89°04'54" E, 345.24 feet along the boundary of a deed recorded in Official Records Book 9795, Page 6197 of the Public Records of Orange County, Florida and the Point of Beginning, containing 44.562 Acres, more or less.

LESS OUT

A parcel of land lying in Section 27, Township 24 South, Range 27 East, Orange County, Florida, and being more particularly described as follows:

Commence at the Northeast corner of said Section 27, run along the North line of the Northeast 1/4 of said Section 27, N 89°04'27" W, 1300.35 feet; thence S 00°00'00" E, 216.57 feet to the Point of Beginning; thence run S 26°48'18" W, 84.25 feet along the boundary of deed recorded in Official Records Book 9795, Page 6045 of the Public Records of Orange County, Florida; thence N 63°11'45" W, 134.61 feet along the boundary of deed recorded in Official Records Book 10478, Page 9310 of the Public Records of Orange County, Florida; thence run along the boundary of deed recorded in Official Records Book 9795, Page 6045 of the Public Records of Orange County, Florida the following courses; N 26°48'18" E, 149.16 feet; S 63°11'42" E, 134.61 feet to the Point of Beginning, containing 13001 square feet, more or less.





## TANGENT TABLE

| LINE# | BEARING | DIST. |
|---|---|---|
| L1 | S 00°00'00" E | 1.15 |
| L2 | S 37°47'40" E | 51.03 |
| L3 | S 28°25'14" E | 47.80 |
| L4 | S 61°36'26" E | 76.78 |
| L5 | S 15°35'57" E | 60.62 |
| L6 | S 02°55'35" W | 91.89 |
| L7 | S 64°37'40" E | 26.16 |
| L8 | S 68°26'45" E | 43.14 |
| L9 | S 70°14'11" E | 35.79 |
| L10 | S 24°14'17" E | 48.79 |
| L11 | S 80°28'06" E | 30.50 |
| L12 | S 11°06'37" E | 45.56 |
| L13 | S 65°37'32" E | 32.10 |
| L14 | S 67°30'32" E | 28.35 |
| L15 | S 19°47'09" W | 54.74 |
| L16 | S 14°26'10" W | 31.37 |
| L17 | N 83°34'09" W | 37.14 |
| L18 | S 82°49'25" W | 96.24 |
| L19 | S 33°42'14" W | 40.15 |
| L20 | S 19°14'48" E | 40.86 |
| L21 | S 53°02'17" E | 40.15 |
| L22 | N 59°07'44" E | 38.18 |
| L23 | S 33°53'24" W | 201.02 |
| L24 | N 89°55'17" W | 96.69 |
| L25 | S 05°33'13" W | 159.28 |
| L26 | S 17°28'56" W | 125.88 |
| L27 | N 18°49'37" W | 127.84 |
| L28 | N 86°38'41" E | 180.48 |
| L29 | N 89°56'03" W | 123.99 |
| L30 | S 28°49'50" E | 70.53 |
| L31 | S 86°38'41" W | 180.48 |
| L32 | N 64°19'08" W | 28.34 |
| L33 | S 26°48'01" W | 66.41 |
| L34 | N 63°12'08" W | 84.08 |
| L35 | S 26°48'18" W | 84.25 |
| L36 | N 63°11'45" W | 134.61 |
| L37 | N 26°48'18" E | 149.16 |
| L38 | S 63°11'42" E | 134.61 |

## CURVE TABLE

| CURVE | RADIUS | DELTA | LENGTH | TANG. BRG. |
|---|---|---|---|---|
| C1 | 1760.01 | 19°21'52" | 594.84 | |
| C2 | 750.00 | 22°56'46" | 300.36 | S 70°24'33" E |
| C3 | 900.00 | 26°46'56" | 373.95 | |
| C4 | 149.32 | 61°06'19" | 159.24 | |
| C5 | 700.00 | 11°38'01" | 142.13 | S 75°00'40" W |
| C6 | 650.00 | 29°06'11" | 330.16 | |
| C7 | 75.00 | 89°13'24" | 116.79 | |
| C8 | 449.95 | 10°43'50" | 84.27 | S 03°12'01" W |
| C9 | 50.00 | 82°00'23" | 71.56 | S 18°55'44" W |
| C10 | 100.01 | 29°53'43" | 52.18 | |

| | | |
|---|---|---|
| **PG&D** | P.O.B. 10000 LAKE BUENA VISTA FL. 32830-1000 PHONE 407-824-5858 | |

| FIELD AREA | SOUTH SERVICE AREA | DATE: 1/24/23 |
|---|---|---|
| PROJECT NAME | RCID LAND | SCALE 1" = 250' |
| SURVEY TYPE | SKETCH OF DESCRIPTION | DRAWN BY: JLG |
| COMMENTS | SHEET 3 OF 3 | FILE NAME 08JG23005 |

**Exhibit A-22**
DESCRIPTION
OF
Landscape Maintenance Area

Ref: Orange County Parcel 272402000000027

A parcel of land lying in Section 2, Township 24 South, Range 27 East, Orange County, Florida, and being more particularly described as follows:

Commence at the Southeast corner of said Section 2, run along the East line of the Southeast 1/4 of said Section 2, N 00°00'53" W, 1331.96 feet; thence N 90°00'00" W, 2372.77 feet to the Point of Beginning, thence N 90°00'00" W, 967.18 feet to a point of curvature of a curve concave Southerly having a radius of 630.04 feet, and a central angle of 38°00'09"; thence run Westerly along the arc of said curve, 417.88 feet; thence N 12°21'31" W, 421.05 feet to a point on the Easterly boundary of a deed recorded in Official Records Book 2221, Page 92 of the Public Records of Orange County and a non-tangent curve concave Southeasterly having a radius of 558.41 feet, and a central angle of 29°56'54"; thence from a tangent bearing of N 22°43'57" E run Northeasterly along the arc of said curve and deed, 291.88 feet; thence continue along said deed the following two courses; N 52°40'57" E, 375.99 feet; N 37°18'48" W, 15.00 feet; thence run along the Easterly and Southerly boundary of a deed recorded in Official Records Book 2137, Page 357 of the Public Records of Orange County the following courses; N 52°40'52" E, 256.85 feet to a point of curvature of a curve concave Northwesterly having a radius of 175.00 feet, and a central angle of 52°40'52"; run Northeasterly along the arc of said curve, 160.91 feet; N 00°00'00" E, 96.23 feet; N 90°00'00" W, 5.00 feet; N 00°00'00" E, 50.00 feet; N 90°00'00" E, 1461.61 feet; thence departing said deed run S 00°00'05" W, 74.05 feet; thence run along the Northerly line of a deed recorded in Official Records Book 7353, Page 646 of the Public Records of Orange County the following two courses; N 90°00'00" W, 845.66 feet; S 00°00'00" E, 34.55 feet; thence S 00°00'00" E, 96.74 feet; to a point on a non-tangent curve concave Southeasterly having a radius of 73.65 feet, and a central angle of 77°43'54'"; thence from a tangent bearing of S 88°58'37" W run Southwesterly along the arc of said curve, 99.92 feet; thence S 00°00'00" E, 101.49 feet; thence S 25°35'54" E, 15.92 feet; thence N 90°00'00" E, 105.62 feet; thence S 10°01'40" E, 255.83 feet; thence run along the Westerly boundary of a deed recorded in Official Records Book 5741, Page 3885 of the Public Records of Orange County, S 00°00'00" E, 545.69 feet to the Point of Beginning, containing 30.818 Acres, more or less.



**Exhibit A-23**
DESCRIPTION
OF
Chilled Water Storage Site

Ref: Orange County Parcel 272402000000019



**EXHIBIT B**
**WDPR Properties**

All that certain property located in Orange and Osceola Counties, Florida, in the Townships, Sections and Ranges hereinafter set forth (and as graphically depicted on the page attached hereto), and owned, whether now or in the future, by WDPR and/or its Affiliates (including, but not limited to: a) Compass Rose Corporation; b) Walt Disney Parks and Resorts U.S., Inc. (f/k/a Walt Disney World co. and Walt Disney World Hospitality & Recreation Corporation); c) Walt Disney Travel Co., Inc.; and d) The Celebration Company) (excluding, however, any homeowners', or similar association formed with respect to any of such real property).

| ORANGE COUNTY | | | OSCEOLA COUNTY | | |
|---|---|---|---|---|---|
| Sections | Township | Range | Sections | Township | Range |
| 1, 2, 3, 4 | 24 South | 27 East | 1,2 | 25 South | 27 East |
| 9, 10, 11, 12, 13,14, 15, 16 | 24 South | 27 East | 11, 12, 13, 14 | 25 South | 27 East |
| 21, 22, 23, 24, 25, 26, 27, 28 | 24 South | 27 East | 23, 24, 25, 26 | 25 South | 27 East |
| 33, 34, 35, 36 | 24 South | 27 East | 5, 6, 7, 8, 9 | 25 South | 28 East |
| 6, 7, 8 | 24 South | 28 East | 17, 18, 19, 20 | 25 South | 28 East |
| 17, 18, 19, 20, 21, 22, 23 | 24 South | 28 East | 30 | 25 South | 28 East |
| 27, 28, 29, 30, 31 | 24 South | 28 East | | | |

## EXHIBIT C

## PROHIBITED USES

1.      any of the following uses: (i) residential (whether single-family or multi-family or hotel, motel or hostel or any other type of facility or business providing living or sleeping accommodations on a transitory, overnight or short-term basis); (ii) "timeshare", "interval ownership", or other similar use; (iii) a condominium or any other form of whole ownership or for any cooperative form of ownership; (iv) timeshare, fractional or similar ownership; and/or (v) short-term rental (meaning stays of less than the longer of: (x) six (6) months; and (y) the period of time Orange County designates as a short-term rental);

2.      any Entertainment Venue.  "Entertainment Venue" shall mean any venue or facility the primary business of which is offering shows, exhibits, attractions, rides, rollercoasters, water slides, games or any other amusement or entertainment devices (such as game arcades, virtual reality or similar) and/or other forms of entertainment, regardless of whether an admission fee is charged for admission thereto (collectively "Attractions"), such as, by way of example, but without limitation, MAGIC KINGDOM® Park, EPCOT®, DISNEY'S HOLLYWOOD STUDIOS™ (f/k/a Disney-MGM Studios), DISNEY'S ANIMAL KINGDOM® Theme Park, Disney's Wide World of Sports® Complex, DISNEY'S BLIZZARD BEACH Water Park, as DISNEY'S TYPHOON LAGOON Water Park.  For purposes of clarification, the term "Entertainment Venue" shall include all facilities, land and improvements advertised, promoted, advertised, associated, marketed with or under the same or similar name as, or otherwise held out to the public as comprising a part, or component of, such Attractions, including, without limitation, resorts, hotels, restaurants, golf courses and shopping areas, even though some of the components or elements of such areas may not be contiguous to or within the area primarily identified as the Entertainment Venue. Notwithstanding the foregoing, "Entertainment Venue" shall exclude Category B Water Parks. "Category B Water Parks" shall mean a Water Park that is not a Category A Water Park. "Category A Water Park" shall mean a Water Park that is either (i) part of a Theme Park Complex, (ii) operated under or associated with the same name or brand as any Amusement Facility that is not a Water Park or (iii) under common ownership with any Amusement Facility that is not a Water Park.  "Water Park" shall mean an Amusement Facility in which (i) more than two-thirds of the total number of exhibits, shows, tours, animal experiences, attractions, rides, water slides, games, or other amusement or entertainment activities are Water Park Activities and (ii) the majority of guests wear bathing suits. "Theme Park Complex" shall mean all facilities, land and improvements that include at least one Amusement Facility that is not a Water Park and that (i) are advertised, promoted, associated, marketed or otherwise held out to the general public as comprising part of a single integrated or related area, even though some of the components or elements of such area may not be contiguous or within one general admission, show or entertainment area, or (ii) are marketed under the same name or brand.  "Amusement Facility" shall mean any theme, amusement or entertainment park or any other park or facility which offers exhibits, shows, tours, animal experiences, attractions, rides, water slides, games, or other amusement or entertainment activities. "Water Park Activity" means (i) a ride (including, without limitation, a lazy river) or water slide on which the guest gets wet from water supplied by the ride or water slide and on which the majority of guests wear bathing suits or (ii) a swimming pool.

3.      any building, structure or other use that is more than four (4) stories tall measured from grade on the Effective Date;

4.      arcades, game rooms or video parlors;

Exhibit C
Page 1

5.      bowling alleys;

6.      bars, taverns, night clubs or other establishments or facilities engaged in the offering of alcoholic
        beverages for on-site consumption;

7.      gun stores or indoor (or outdoor) gun ranges;

8.      theaters or cinemas;

9.      "adult entertainment uses" as that term is defined by the Orange County Zoning Code, including,
        but not limited to, any establishment featuring the exhibition of nude or partially dressed male or
        female dancers or models or featuring the sale or rental of sexually explicit materials which term
        shall mean, for the purposes of this Declaration, any theater, establishment or facility which:
        (i) shows, previews, sells, rents, distributes or promotes in any way, movies, films, videos,
        magazines, books, or other medium (whether now or hereafter developed) rated "X" or "NC-17"
        by the movie production industry (or any successor rating established by the movie production
        industry), or otherwise of a pornographic or obscene nature; or (ii) sells, rents, or distributes
        sexually explicit games, toys, devices, or similar merchandise;

10.     flea markets, fire and bankruptcy sales operations, rummage sales, and/or flea markets;

11.     outdoor entertainment;

12.     establishments renting or selling movies, books, or other media, games, toys and similar materials
        which are rated "X" by the movie production industry (or any successor rating established by the
        movie production industry) or are otherwise of a pornographic or obscene nature;

13.     retail establishments;

14.     any establishment which contains any devices, equipment or facilities for the participation in, or to
        be used to hold any events, functions or programs that involve gambling, wagering, betting or other
        similar activities (including, but not limited to, card games, keno, slot machines, sports betting and
        animal racing), where the participants have the opportunity to receive monetary or other
        consideration (irrespective of whether any such facilities or activities or devices are legally
        permissible);

15.     any signage or displays which would violate Laws and/or which are more than four stories tall
        measured from grade on the Effective Date;

16.     a liquor or package store (i.e., an establishment engaged in the sale of alcoholic beverages for off-
        site consumption);

17.     the scheduling or offering to schedule appointments, visitations or tours at or of, or the sale, leasing,
        offering, or other transfer, display, distribution or promotion (or the provision of any support,
        clerical or administrative services relating thereto) of real property (including homes) as timeshare
        resorts, time shares or time share units, interval ownership rights or interests, vacation clubs, or
        other similar products;

18.     trailer courts, mobile home parks, and recreation vehicle campgrounds;

19.     oil, gas or mineral exploration, drilling, boring, development, refining, quarrying, or mining

Exhibit C
Page 2

operations and all construction and equipment incident thereto, oil or gas wells, shafts;

20.     junk yards, scrap metal yards, automobile used parts and/or dismantling operations and sanitary landfills;

21.     lumberyards or sawmills (except in the usual course of construction on the site);

22.     truck terminals or truck stop-type facilities;

23.     massage parlors, and any establishment which offers entertainment or service which includes nude or partially or provocatively or skimpily dressed male or female persons;

24.     "head" shops or similar establishments offering any substance which may not be sold or given away unless the provider thereof has obtained and maintains one (1) or more special licenses.

25.     any sale, distribution, promotion or use of marijuana or goods or products that include marijuana or any derivative of marijuana or any paraphernalia;

26.     tattoo, body piercing or similar operations or establishments;

27.     any establishment providing skilled nursing or nursing-assisted care or any full-time skilled nursing or other care, except for those nursing services which are allowed under a limited nursing services license or an extended congregate care license;

28.     a nursing home facility;

29.     outlet, discount or wholesale or similar stores or establishments;

30.     outdoor display or sale(s) of merchandise;

31.     go-cart racing, miniature golf, water rides or other rides or other amusements;

32.     any outdoor or indoor structures or containers for the collection of new or used clothing, toys, aluminum cans, furniture, equipment or any other items;

33.     services for the provision of management and/or operation of commercial or residential rental properties;

34.     promotional events; and

35.     medical, specialty medical, physician or dental uses.

Exhibit C
Page 3

**APPENDIX**

**GLOSSARY OF CERTAIN DEFINED TERMS**

"**Affiliates**" shall mean, with respect to any Person, another Person which: (a) directly or indirectly controls, (b) is, directly or indirectly, under common control with, or (c) is, directly or indirectly, controlled by, such first-referenced Person. "Control" shall mean the power to direct the management of a Person, directly or indirectly, whether through the ownership of voting securities or other beneficial interests, by contract or otherwise and the terms "controlling" and "controlled" shall have meanings correlative to the foregoing.

"**Declaration**" shall mean this document.

"**Alterations**" shall mean any and all alterations, additions, modifications, renovations, substitutions, replacements or other changes made to the RCID Properties or any portion thereof including, without limitation, the exterior portion of the Improvements comprising a part thereof.

"**Designee**" shall mean any Person designated by WDPR or an Affiliate of WDPR (or to whom WDPR has assigned its interest) to exercise any of its rights under this Declaration. For clarity, a Designee need not be related or affiliated with WDPR.

"**Effective Date**" shall have the meaning assigned in the preambles to this Declaration.

"**Fee**" shall have the meaning assigned in Section 2 hereof.

"**Governmental Authority**" shall mean the United States of America, and any state, county, city or political subdivision thereof, and any board, bureau, council, commission, department, agency, court, legislative body or other instrumentality of the United States of America, or any state, county, city or political subdivision thereof.

"**Identifying Symbols**" shall mean any names, designs, symbols, stories, fanciful characters or other words, pictures or representations identifying or commonly associated with a Person, place or thing, and any variation or derivation thereof.

"**Improvements**" shall mean any and all buildings, structures, sheds, driveways, parking areas, paved areas, fences, signs, curb-cuts and any and all other physical improvements now or hereafter constructed, installed, placed or located on, or attached or affixed to, the RCID Properties, and any and all Alterations thereto and/or thereof. The term Improvements does not include the RCID Properties. RCID shall be solely responsible, at its sole cost and expense, for all costs, expenses, fees and charges associated or incurred in connection with the planning, design, development, build out, use, operation, management, maintenance, periodic renovation, repair and replacement of the Improvements now or hereafter constructed on the RCID Properties, and any and all Alterations, whether foreseen or unforeseen.

"**Laws**" shall mean any and all federal, state, county, municipal and other governmental constitutions, statutes, ordinances, codes, regulations, resolutions, rules, requirements and directives (including, without limitation, building codes, zoning ordinances and the American's With Disabilities Act and similar legal requirements) and all decisions, judgments, writs, injunctions, orders, decrees or demands of courts, administrative bodies and other authorities construing any of the foregoing.

"**RCID**" shall initially mean RCID and, from and after the date of this Declaration, any and all successors in title to RCID's fee simple interest and estate in the RCID Properties or any portion thereof. If RCID or successors in title to RCID's fee simple interest and estate in the RCID Properties or any portion thereof

sells, conveys or otherwise transfers its fee simple interest and estate in the RCID Properties or any portion thereof then RCID or its successor making such sale, conveyance or transfer shall be released from all covenants and obligations accruing hereunder after the date of such sale, conveyance or transfer as to (and only as to) the RCID Properties or portion thereof sold, conveyed or transferred and the successor owner of the RCID Properties or portion thereof sold, conveyed or transferred shall automatically, and without the necessity of further action of any kind, be deemed to have assumed all of RCID's covenants and obligations hereunder accruing after the date of such sale, conveyance or transfer as to (and only as to) the RCID Properties or portion thereof sold, conveyed or transferred.

**"RCID Property(ies)"** shall have the meaning assigned in the recitals.

**"Permitted Uses"** shall have the meaning assigned in Section 3.1 hereof.

**"Person"** shall mean any natural person, corporation, general partnership, limited partnership, limited liability company, association, trust or other entity, including any Governmental Authority.

**"Prohibited Uses"** shall have the meaning assigned in Section 3.2 hereof.

**"Tenant"** shall mean any person or entity that is in possession or occupancy of, or entitled to possess or occupy, any portion of the RCID Properties by a lease agreement, sublease, concession, license or other contract with the RCID (or any person or entity claiming by or through any such Tenant).

**"WDPR"** shall mean Walt Disney Parks and Resorts U.S., Inc., a Florida corporation, and shall include the legal representatives, and any successors and assigns of WDPR which has (from time to time) been affirmatively and specifically assigned or delegated one or more of the rights reserved to WDPR hereunder by written instrument recorded among the Public Records of the County. The term "WDPR" shall also include its Affiliates as the context may require.

**"WDPR Property(ies)"** shall have the meaning assigned in the recitals.