## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

WALT DISNEY PARKS AND RESORTS, U.S., INC.,

        Plaintiff,

v.

RONALD D. DESANTIS, in his official capacity as Governor of Florida; MEREDITH IVEY, in her official capacity as Acting Secretary of the Florida Department of Economic Opportunity; MARTIN GARCIA, in his official capacity as Board Chair of the Central Florida Tourism Oversight District; MICHAEL SASSO, in his official capacity as Board Member of the Central Florida Tourism Oversight District; BRIAN AUNGST, JR., in his official capacity as Board Member of the Central Florida Tourism Oversight District; RON PERI, in his official capacity as Board Member of the Central Florida Tourism Oversight District; BRIDGET ZIEGLER, in her official capacity as Board Member of the Central Florida Tourism Oversight District; and GLENTON GILZEAN, JR., in his official capacity as Administrator of the Central Florida Tourism Oversight District,

        Defendants.

Case No. 4:23-cv-00163-AW-MJF

## PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS

The

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................1

LEGAL STANDARD ...........................................................................................4

ARGUMENT ........................................................................................................5

I.   DISNEY HAS STANDING TO SUE THE STATE DEFENDANTS
     ACTING IN THEIR OFFICIAL CAPACITIES TO EXECUTE THE
     CHALLENGED LAWS ................................................................................5

     A.   The State Defendants Are Responsible For Implementing The
          Laws That Reorganize The District And Strip Disney Of Voting
          Rights And Other Benefits On Unlawful Grounds ............................7

     1.   Governor DeSantis Has A Direct Role In Implementing The
          Unconstitutional Restructuring Of The District ..................................7

     2.   Secretary Ivey Also Has A Direct Role In Implementing The
          Unconstitutional Restructuring Of The District's Governance .........11

     B.   The State Defendants Are Responsible For Implementing The
          Unlawful Abrogation Of Disney's Contracts ....................................14

II.  DISNEY'S CLAIMS ARE NOT BARRED BY SOVEREIGN
     IMMUNITY ................................................................................................16

III. DISNEY'S CLAIMS AGAINST GOVERNOR DESANTIS ARE
     NOT BARRED BY LEGISLATIVE IMMUNITY .....................................17

IV.  THE FAC STATES A CLAIM AS TO EACH OF THE
     CONSTITUTIONAL VIOLATIONS ASSERTED ....................................20

CONCLUSION ..................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
 143 S. Ct. 2298 (2023) ................................................................1, 2

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................................4

*Bd. of Educ. of Kiryas Joel Vill. School Dist. v. Grumet*,
 512 U.S. 687 (1994) ........................................................................9

*Bd. of Pub. Educ. for City of Savannah & Cnty. of Chatham v. Georgia*,
 1990 WL 608208 (S.D. Ga. 1990) ......................................................12

*Bogan v. Scott-Harris*,
 523 U.S. 44 (1998) ........................................................................18

*Citizens State Bank v. Dixie Cnty.*,
 2011 WL 1335805 (N.D. Fla. 2011) ....................................................4

*Citizens United v. Fed. Election Comm'n*,
 558 U.S. 310 (2010) ........................................................................2

*City of S. Miami v. Governor of Fla.*,
 65 F.4th 631 (11th Cir. 2023) ............................................................8

*Crymes v. DeKalb County*,
 923 F.2d 1482 (11th Cir. 1991) ........................................................18

*Culinary Workers Union, Loc. 226 v. Del Papa*,
 200 F.3d 614 (9th Cir. 1999) ............................................................15

*Curling v. Sec'y of Ga.*,
 761 F. App'x 927 (11th Cir. 2019)......................................................19

*Denton v. Bd. of Governors*,
 No. 4:22-cv-00341-RH-MAF, ECF No. 65 (N.D. Fla. 2023)................................8

*Dream Defs. v. Governor of Fla.*,
 57 F.4th 879 (11th Cir. 2023)........................................................5, 6

*Dykes v. Dudek*,
 2011 WL 4552395 (N.D. Fla. 2011) ....................................................5

*Equality Fla. v. Fla. State Bd. of Educ.*,
 2022 WL 19263602 (N.D. Fla. 2022) ..................................................8

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Espanola Way Corp. v. Meyerson*,
  690 F.2d 827 (11th Cir. 1982)................................................................18

*Falls v. DeSantis*,
  2022 WL 19333278 (N.D. Fla. 2022) ....................................................17

*Finberg v. Sullivan*,
  634 F.2d 50 (3d Cir. 1980) ....................................................................12

*Ga. Latino All. for Human Rts. v. Governor of Ga.*,
  691 F.3d 1250 (11th Cir. 2012)........................................................5, 15

*Grizzle v. Kemp*,
  634 F.3d 1314 (11th Cir. 2011)..............................................................17

*Hamilton v. Hall*,
  790 F. Supp. 2d 1368 (N.D. Fla. 2011) ..................................................4

*Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Bos.*,
  515 U. S. 557 (1995) ................................................................................1

*Jacobson v. Fla. Sec'y of State*,
  974 F.3d 1236 (11th Cir. 2020) ..............................................................13

*Kilbourn v. Thompson*,
  103 U.S. 168 (1880) .........................................................................13, 19

*Los Angeles County Bar Association v. Eu*,
  979 F.2d 697 (9th Cir. 1992)....................................................................9

*Luckey v. Harris*,
  860 F.2d 1012 (11th Cir. 1988)........................................................15, 17

*Peter B. v. Sanford*,
  2010 WL 5684397 (D.S.C. 2010) ............................................................8

*Scott v. Taylor*,
  405 F.3d 1251 (11th Cir. 2005)........................................................19, 20

*Socialist Workers Party v. Leahy*,
  145 F.3d 1240 (11th Cir. 1998)................................................................5

*State Emps. Bargaining Agent Coal. v. Rowland*,
  494 F.3d 71 (2d Cir. 2007) ....................................................................18

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Support Working Animals, Inc. v. Governor of Fla.*,
  8 F.4th 1198 (11th Cir. 2021) ..................................................................6

*Supreme Court of Virginia v. Consumers Union of the United States, Inc.*,
  446 U.S. 719 (1980) ...............................................................................19

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007) .................................................................................4

*Tenney v. Brandhove*,
  341 U.S. 367 (1951) ...............................................................................18

*Turner Broad. Sys., Inc. v. F.C.C.*,
  512 U.S. 622 (1994) .................................................................................1

*United States v. Brewster*,
  408 U.S. 501 (1972) ...............................................................................18

*W. Va. State Bd. of Educ. v. Barnette*,
  319 U.S. 624 (1943) .................................................................................1

*Whole Woman's Health v. Jackson*,
  142 S. Ct. 522 (2021) ....................................................................... 13, 14

*Woods v. Gamel*,
  132 F.3d 1417 (11th Cir. 1999) ..............................................................18

**Statutes**

Fla. Stat. § 189.01 ..................................................................................11

Fla. Stat. § 189.012. ...............................................................................11

Fla. Stat. § 189.016 ................................................................................11

Fla. Stat. § 189.019 ................................................................................11

Fla. Stat. § 189.061. ...............................................................................11

Fla. Stat. § 189.062. ...............................................................................11

Fla. Stat. § 189.063. ...............................................................................11

Fla. Stat. § 189.064. ...............................................................................11

Fla. Stat. § 189.065. ...............................................................................11

Fla. Stat. § 189.066. ...............................................................................11

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

Fla. Stat. § 189.067. ................................................................................11

Fla. Stat. § 189.069. ................................................................................11

**INTRODUCTION**

"If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). "Our political system and cultural life rest upon this ideal." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 641 (1994). Laws that "stifle[] speech on account of its message, or that require[] the utterance of a particular message favored by the Government, contravene[] this essential right" and "pose the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information or manipulate the public debate through coercion rather than persuasion." *Id.* This uniquely American commitment to free expression is embodied in the Constitution's First Amendment, which "protects an individual's right to speak his mind" even if "the government considers his speech . . . deeply misguided." *303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2312 (2023) (quoting *Hurley v. Irish-American Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U. S. 557, 574 (1995)).

These foundational principles apply fully to political speech by businesses. "Corporations and other associations, like individuals, contribute to the discussion, debate, and the dissemination of information and ideas that the First Amendment

seeks to foster." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 343 (2010) (quotation omitted).  Speakers thus do not "shed their First Amendment protections by employing the corporate form to disseminate their speech." *303 Creative*, 143 S. Ct. at 2316.

Governor DeSantis disagrees.  In his view, corporations must remain "merely economic actors," and when they dare to "become political" and seek to "advance a political agenda" that does not conform to the ruling party's program, government leaders are free to "fight back" by wielding official state power against disobedient companies until their disfavored views "die."  First Amended Complaint for Declaratory and Injunctive Relief ¶ 99, ECF No. 25 ("FAC"); *see id.* ¶¶ 56-57, 59-60, 65, 67-69, 74, 81, 82, 97, 99, 100, 168-169, 173-174, 207. Disney, of course, has been the central target of the Governor's weaponized State—a retaliatory campaign he launched because, the Governor's memoir declares, Disney "crossed a line" by expressing the wrong view in a political debate, which he viewed as a "textbook example of when a corporation should stay out of politics."  FAC ¶¶ 69, 100.

This case presents the fundamental question whether the Governor and the State can escape accountability for their open defiance of our Nation's most cherished liberties.  The core merits of that question are presented by the CFTOD Defendants' motion to dismiss (joined by the State Defendants).  In the State

Defendants' separate motion that is addressed here, the Governor seeks to evade responsibility for his actions on a narrower ground, asserting that a governor cannot be held officially liable for implementing, administering, and enforcing state laws that punish residents for political statements violating a state-prescribed speech code. The motion seeks dismissal on Article III standing, sovereign-immunity, and legislative-immunity grounds, but those principles have no application here.

Courts have consistently held that a plaintiff claiming constitutional injury from a state law may properly proceed in federal court against state executive officers responsible for implementing, administering, or enforcing the law. Article III and official-capacity requirements are satisfied in such suits because the injury is traceable to those executive acts and redressable by a judicial order enjoining their performance. Legislative immunity has no bearing in such suits because it is categorically inapplicable to executive acts.

Those principles compel denial of the State Defendants' motion. The State Defendants do not dispute that the challenged laws have caused Disney multiple concrete injuries, including the elimination of its voting rights, abrogation of its contract rights, and chilling of its constitutional right to speak freely on matters of public concern. Those injuries in turn give rise to claims challenging the reorganization of the District (*i.e.*, the replacement of Reedy Creek Improvement

3

District with the Central Florida Tourism Oversight District ("CFTOD") through SB 4C and HB 9B), and claims challenging the laws abrogating the economic development contracts ("Contracts") Disney entered with the District before its reorganization.  As explained in this memorandum, both sets of claims implicate the State Defendants' executive responsibilities under the challenged laws, establishing Disney's standing and defeating the State Defendants' immunity claims.

The motion should be denied.

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), "the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff." *Hamilton v. Hall*, 790 F. Supp. 2d 1368, 1370 (N.D. Fla. 2011). "The motion is properly denied if the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)) (quotations and brackets omitted).  In ruling on the motion, courts consider "the complaint, any exhibits attached to the complaint, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Citizens State Bank v. Dixie Cnty.*, 2011 WL 1335805, at *3 (N.D. Fla. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (quotations omitted)).

Similarly, in a jurisdictional challenge under Rule 12(b)(1), the Court "examines whether the complaint has sufficiently alleged subject-matter jurisdiction and construes the complaint in the light most favorable to Plaintiff[] and accepts all facts alleged in the complaint as true." *Dykes v. Dudek*, 2011 WL 4552395, at *1 (N.D. Fla. 2011).

## ARGUMENT

## I. DISNEY HAS STANDING TO SUE THE STATE DEFENDANTS ACTING IN THEIR OFFICIAL CAPACITIES TO EXECUTE THE CHALLENGED LAWS

To establish Article III standing to sue a state officer in his official capacity, a plaintiff must establish (1) an injury-in-fact, that is (2) traceable to the officer's execution of the challenged law, and that (3) can be redressed by an order enjoining continued execution. *See*, *e.g.*, *Dream Defs. v. Governor of Fla.*, 57 F.4th 879, 888-89 (11th Cir. 2023); *Ga. Latino All. for Human Rts. v. Governor of Ga.*, 691 F.3d 1250, 1257 (11th Cir. 2012); *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244 (11th Cir. 1998). The State Defendants do not dispute that the challenged laws have caused Disney multiple concrete injuries, including the elimination of its voting and contract rights and the chilling of its constitutional right to express political views that do not conform to State-approved doctrine.[1]

---

[1] In public comments, the Governor asserts that the laws simply make Disney subject to the same regulatory structure applicable to other Florida businesses, thereby creating a "level playing field." That contention is an outright

The State Defendants raise only the latter two standing requirements—"traceability" and "redressability."

"To establish traceability and redressability in a lawsuit seeking to enjoin a government official from enforcing [an allegedly unconstitutional] law, a plaintiff must show 'that the official has the authority to enforce the particular provision [being] challenged, such that [the] injunction prohibiting enforcement would be effectual.'" *Dream Defs.*, 57 F.4th at 888-89 (quoting *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 2001 (11th Cir. 2021)) (first alteration added); *see* State Defs.' Mot. to Dismiss and Incorporated Mem. of Law at 13, ECF No. 49 ("State Defs.' Mem.").  None of the Defendants denies that the CFTOD Defendants have the kind of responsibilities under the challenged laws that make Disney's injuries both traceable to them and redressable by a judicial order declaring the laws invalid and enjoining their operations under those laws.

---

falsehood.  Most businesses and other property owners in Florida are regulated by elected, politically-accountable municipal bodies.  Few Florida businesses are subject, as Disney now is, to governance by a special district with a Governor-controlled Board that closely regulates the use of private property with no accountability to local property owners and taxpayers.  In any event, what matters here is that the challenged laws indisputably eliminate Disney's rights and impose new burdens, thereby creating an injury-in-fact.

The State Defendants argue only that Disney lacks standing to assert its claims *against the State Defendants in particular*.[2]

That argument is incorrect.  As explained below, Disney's constitutional injuries are directly traceable to the State Defendants' executive duties under the challenged laws, and they would be redressed by an order declaring the laws unconstitutional and enjoining their continued execution.

### A.   The State Defendants Are Responsible For Implementing The Laws That Reorganize The District And Strip Disney Of Voting Rights And Other Benefits On Unlawful Grounds

The State Defendants' standing objection to the reorganization claim rests on a mischaracterization of the State Defendants' responsibilities to implement SB 4C and HB 9B.

### 1.   *Governor DeSantis Has A Direct Role In Implementing The Unconstitutional Restructuring Of The District*

The Governor contends that his authority to appoint the District's Board does not make Disney's injuries traceable to his actions or redressable by an order enjoining those actions.  State Defs.' Mem. 17.  The Governor is wrong in two respects.

*First*, an officer's appointment power does suffice, where—as here—the exercise of that power itself causes the plaintiff's injury.  In the "appointment-

---

[2] The CFTOD Defendants assert no standing or other jurisdictional objections to suit.

power-only" cases cited by the State Defendants, Mem. 17 & n.10, the injuries and claims arose solely from the *actions* of the relevant state agency, and the only alleged connection to the governor was his power to appoint agency officials. *See Equality Fla. v. Fla. State Bd. of Educ.*, 2022 WL 19263602, at *8 n.8 (N.D. Fla. 2022); *Peter B. v. Sanford*, 2010 WL 5684397, at *3 (D.S.C. 2010); *Denton v. Bd. of Governors*, No. 4:22-cv-00341-RH-MAF, ECF No. 65 at 1, 3-4 (N.D. Fla. 2023); *see also City of S. Miami v. Governor of Fla.*, 65 F.4th 631 (11th Cir. 2023) (same). By contrast, Disney's reorganization claim challenges not only the District's actions, but also *the governing structure of the District Board itself*, including the statutory provision making all Board members Governor-appointed rather than landowner-elected. According to Disney, HB 9B's reorganization of the District violated Disney's First Amendment rights because, among other things, it stripped Disney of its longstanding District voting rights for impermissible and discriminatory reasons, replacing the locally-elected Board with a new Board appointed by the Governor and accountable only to him, rather than to District landowners. Disney thus alleges not only that the District Board has taken unlawful actions injuring Disney, but also that the Governor's appointment of Board members violates Disney's rights.

To be clear, Disney's claim is not that the U.S. Constitution prohibits a state from establishing special districts with governor-appointed boards. The

8

Constitution does, however, prohibit states from allocating government benefits and burdens on impermissible bases, including race, religion, and political viewpoint.  In other words, Florida cannot decide which rights and privileges to confer on special districts based on their residents' political viewpoints—just as it could not do so based on their residents' race or religion.  *See*, *e.g.*, *Bd. of Educ. of Kiryas Joel Vill. School Dist. v. Grumet*, 512 U.S. 687 (1994) (state violated First Amendment's religious neutrality command by creating special school district along lines of particular religious community).  Because the Governor's appointments implement the allegedly unlawful scheme eliminating District voting rights and local control in favor of a Governor-controlled "state receivership," FAC ¶ 98, a challenge to those appointments properly names the Governor in his official capacity.

This case is similar to *Los Angeles County Bar Association v. Eu*, 979 F.2d 697 (9th Cir. 1992), where the plaintiff challenged a statute prescribing the number of judges on the Superior Court for Los Angeles County.  *Id.* at 699.  The plaintiff sued various state officers including the governor, who sought to be dismissed on the ground that he lacked a sufficient enforcement connection to the statute.  *Id.* at 704.  The Ninth Circuit disagreed, explaining that because the governor had "a duty to appoint judges to any newly-created judicial positions," the allegedly unlawful statute was "being given effect by" him.  *Id.*  The same is true here.

9

*Second*, and in any event, the Governor's connection to the reconstituted District Board is not limited to appointment and suspension of its members. The FAC alleges—based on many explicit public statements—that the Governor is affirmatively using the Board to punish Disney by imposing various new burdens and costs, as retaliation for its political speech. FAC ¶ 88 (Board is "state-controlled"); ¶ 95 (Governor boasting that he is "new sheriff in town" to regulate Disney); ¶ 98 (Governor spokesperson stating that HB 9B places District into "state receivership"); ¶ 147 (Governor proposing "prison" and other potential uses for District land adjacent to Disney); ¶ 150 (Governor announcing that Board would take "additional actions" to increase Disney's burdens).

This case thus again differs from cases holding that the appointment power *alone* cannot satisfy standing's traceability requirement. Unlike the plaintiffs in those cases, Disney plausibly alleges that the Governor himself is using the District—either directly, or indirectly through his appointment and suspension powers—to implement his oft-declared goal of punishing Disney because it expressed a disfavored political viewpoint. By announcing that the District henceforth would be "state-controlled" and a "state receivership," the Governor and his allies made clear that the Governor—the self-proclaimed "new sheriff in town"—would be functionally in charge of the new weaponized bureaucracy.

2.     *Secretary Ivey Also Has A Direct Role In Implementing The Unconstitutional Restructuring Of The District's Governance*

The State Defendants also contend that Meredith Ivey, Acting Secretary of the Florida Department of Economic Opportunity, lacks any relevant responsibility with respect to the dissolution and restructuring of the District.  According to the State Defendants, her only connection to this litigation is her duty to "maintain the Official List of Special Districts," which they say is a "ministerial duty" that does not establish traceability or redressability.  State Defs.' Mem. 13, 17.  Once again, they err on both fronts.

At the outset, the parties agree that the Secretary is charged with maintaining the Official List of Special Districts (the "Official List"), which includes all special districts in Florida.  *Id.*; FAC ¶ 22 (citing Fla. Stat. §§ 189.061(1)(a), (2), 189.012(1)).  The State Defendants concede that municipalities and special districts exist only by virtue of the State, State Defs.' Mem. 4, and the Secretary is in charge of overseeing that relationship.  *See* Special District Accountability Act, Fla. Stat. § 189.01 *et seq.*  The "Official List" is not merely a "list" in the colloquial sense; by formally recognizing special districts' status as such, it gives them the imprimatur of the State and also triggers myriad reporting and qualification requirements—which the Secretary likewise oversees.  *See, e.g.*, *id.* §§ 189.016, 189.019, 189.061-189.067, 189.069.

11

As already discussed, Disney's claim in this case is that the laws reorganizing the District violated Disney's constitutional rights. If that claim is correct, then the reorganized District is not a lawfully constituted special district and cannot be properly included on the Official List. Put differently, Disney's constitutional injuries from the District's reorganization are directly traceable to the Secretary's substantive determination that what is now called CFTOD is a valid special district properly included on the Official List. This determination would be redressed by a judicial order invalidating the reconstituted District and enjoining the Secretary to remove it from that List. The Secretary accordingly is a proper defendant in this action.

Not only do the State Defendants err in treating the Official List as essentially a ministerial recordkeeping nuisance, the legal premise of their argument is wrong: even if a state officer's duty to implement a statute is ministerial, when performance of that duty causes injury, it establishes traceability and redressability for purposes of standing in an official-immunity suit under *Ex parte Young*. In fact, the exercise of ministerial duties is *frequently* the basis for official-immunity suits. Courts "often have allowed suits to enjoin the performance of ministerial duties in connection with allegedly unconstitutional laws." *Finberg v. Sullivan*, 634 F.2d 50, 54 (3d Cir. 1980); *see Bd. of Pub. Educ. for City of Savannah & Cnty. of Chatham v. Georgia*, 1990 WL 608208, at *5

12

(S.D. Ga. 1990) ("The ministerial nature of [a state officer's] duties does not render their connection to the unlawful act insufficient."). In the leading case of *Kilbourn v. Thompson*, 103 U.S. 168 (1880), for example, the Supreme Court held that while the Speech and Debate Clause protected members of Congress from suit for ordering a false arrest, the House sergeant-at-arms could be sued in his official capacity for performing the ministerial function of executing the arrest order. *Id.* at 196-205. More recently, the Eleventh Circuit held that the proper defendants in a suit challenging ballot format are the individual county Supervisors of Elections, because they exercise the function—purely ministerial—of printing and distributing the challenged ballots. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1258 (11th Cir. 2020).

The State Defendants rely solely on *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021), to support their contention that a state executive officer's performance of a ministerial duty under an allegedly unlawful statute cannot establish traceability and redressability. *Whole Woman's Health* holds no such thing. The standing issue in that case involved a *judicial* employee's performance of the clerical duty to accept litigation filings. *Id.* at 532-33. The Court emphasized that *Ex parte Young* itself had held that judicial officers were not proper defendants in suits to enjoin the litigation process; *Whole Women's Health* simply extended that principle to the judicial employees who perform the

13

ministerial duties necessary to initiate litigation. *See id.* Unlike "executive" officials," the Court explained, court clerks—like the judges they serve—do not enforce state laws and do not function as "adversaries" in litigation. *Id.* Nowhere did the Court suggest that where, as here, the suit names an *executive* officer responsible for implementing an allegedly unconstitutional law, the assertedly ministerial nature of the officer's duty precludes a finding that the plaintiff's injury is traceable to performance of the duty or redressable by a judicial order enjoining that performance.

### B.   The State Defendants Are Responsible For Implementing The Unlawful Abrogation Of Disney's Contracts

Unlike its reorganization-based injuries, Disney's contract-based injuries do not arise directly from the Governor's allegedly unlawful appointment of District Board members. Rather, according to the FAC's allegations—which must be accepted as true at this stage—the Governor has been working directly with the Board to abrogate the Contracts. As the FAC alleges, the Governor has repeatedly touted his influence over the Board and his central role in voiding the Contracts. FAC ¶¶ 88, 129, 130, 141, 142, 145. The Governor has also claimed ownership over his self-proclaimed "war" with Disney, *id.* ¶ 100, including the attack on the Contracts in particular. Referencing the Contracts, he declared that "come hell or high water *we're* going to make sure that policy of Florida carries the day," "*we're* not *just* going to void the development agreement[s] they tried to do," and

14

"ultimately *we're* going to win on every single issue involving Disney." *Id.*
¶¶ 141-42 (emphases added).[3]

Having demanded public credit for abrogating Disney's Contracts, the
Governor cannot escape responsibility when called to answer for that action in
court, particularly before fact discovery is completed. *See Culinary Workers
Union, Loc. 226 v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999) (attorney general's
assertion of influence and authority supplied requisite connection with enforcement
of challenged statute); *see also Ga. Latino All. for Hum. Rts. v. Governor of Ga.*,
691 F.3d 1250, 1260 & n.5 (11th Cir. 2012) (rejecting governor's standing
challenge to lawsuit presenting constitutional challenge to state statute because
"[e]ach injury is directly traceable to the passage of H.B. 87 and would be
redressed by enjoining each provision" even though governor had only "indirect[]
contact" with enforcement); *Luckey v. Harris*, 860 F.2d 1012, 1016 (11th Cir.
1988) (similar).

---

[3] The State Defendants suggest in a footnote that CFTOD's Legislative
Declaration voiding the Contracts "does not have freestanding legal force" and
instead "is simply a statement reflecting CFTOD's belief" that the Contracts are
void.  State Defs.' Mem. 14 n.9.  That suggestion is wrong for the reasons
explained in response to the CFTOD Defendants' motion.  *See* Opp. to CFTOD
Mem. 39-42.

In any event, the State Defendants' passing objection to the legal force of the
Legislative Declaration is a merits argument with no bearing on this standing
motion.

Secretary Ivey also is a proper defendant for the Contract-based claims.  As discussed above, she has direct statutory responsibility for supervising special districts and enforcing their compliance with law.  If the Court concludes that the District's Contracts with Disney were unconstitutionally impaired, it would be appropriate to issue a declaration requiring the Secretary to ensure that the District complies with its lawful and binding contractual obligations.  Such an order would be especially appropriate given that the Contracts implement the Comprehensive Development Plan, FAC ¶¶ 120, 122, which the Secretary's own Department of Economic Opportunity reviewed and certified as compliant with state law on July 15, 2022, pursuant to the Department's statutory duties, *id.* ¶ 47.  The Secretary now seeks to backtrack from that official certification, *see* CFTOD Defs.' Mem. of Law at 23, ECF No. 51-1, likely necessitating an order enjoining her to abide by her own Department's determination concerning the Comprehensive Plan implemented by the Contracts.

## II.   DISNEY'S CLAIMS ARE NOT BARRED BY SOVEREIGN IMMUNITY

The State Defendants' sovereign-immunity defenses fail for the same reasons their standing objections fail.

As the Supreme Court established in *Ex parte Young*, 209 U.S. 123 (1908), a state's sovereign immunity does not apply to a "suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive

relief on a prospective basis," because such an official-capacity suit "is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011).  To satisfy *Ex parte Young*, "it is sufficient that the state officer sued must, by virtue of his office, have some connection with the unconstitutional act or conduct complained of." *Luckey v. Harris*, 860 F.2d 1012, 1015-16 (11th Cir. 1988) (internal quotation marks and brackets omitted).

As the State Defendants admit, the "some connection" requirement of *Ex parte Young* is more lenient than the traceability and redressability requirements of Article III.  State Defs.' Mem. 17 (citing *Falls v. DeSantis*, 2022 WL 19333278, at *1 (N.D. Fla. 2022)).  Accordingly, for the same reasons the State Defendants' enforcement responsibilities make them proper defendants under Article III, they are necessarily proper defendants under *Ex parte Young* as well, precluding any assertion of sovereign immunity.

## III. DISNEY'S CLAIMS AGAINST GOVERNOR DESANTIS ARE NOT BARRED BY LEGISLATIVE IMMUNITY

Governor DeSantis—but not Secretary Ivey—further contends that even if he is otherwise a proper defendant under Article III and *Ex parte Young*, the claims against him in his official capacity nevertheless should be dismissed because the doctrine of legislative immunity precludes the Court from ordering effective relief against him.  The Governor is incorrect.  As its name implies, the doctrine applies

17

only to *legislative* acts; it has no relevance to an *executive* officer's acts of

*implementation* and *enforcement* that provide the basis for official-capacity suits

under *Ex parte Young*.

To assert legislative immunity against an *Ex parte Young* official-capacity

suit, the defendant must show that the official acts subject to injunction were

"legislative acts."  *Woods v. Gamel*, 132 F.3d 1417, 1419 (11th Cir. 1999).

Legislative acts are "actions taken 'in the sphere of legitimate legislative activity,'"

*Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (citing *Tenney v. Brandhove*, 341

U.S. 367, 376 (1951)), *i.e.*, those acts "necessary to preserve the integrity of the

legislative process," *United States v. Brewster*, 408 U.S. 501, 517 (1972).  "A

legislative act involves policy-making rather than mere administrative application

of existing policies."  *Crymes v. DeKalb County*, 923 F.2d 1482, 1485 (11th Cir.

1991).  Legislative immunity thus applies to *Ex parte Young* suits only when "the

particular relief sought" would enjoin the defendant officers in their "*legislative*

capacities, and not in some other capacity in which they would not be entitled to

legislative immunity."  *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d

71, 89 (2d Cir. 2007) (emphasis added); *see Espanola Way Corp. v. Meyerson*, 690

F.2d 827, 829 (11th Cir. 1982) ("no immunity exists for actions outside the sphere

of legitimate legislative activity").

Because this suit seeks to enjoin the Governor from performing *executive* acts, legislative immunity does not protect him from suit.  *See Curling v. Sec'y of Ga.*, 761 F. App'x 927, 934 (11th Cir. 2019) ("implementation and execution of a state law and policy" does not qualify as legislative act).  Courts have consistently distinguished relief that seeks to enjoin the performance of a legislative actor's policymaking function from relief that seeks to enjoin an executive officer's performance of administration, implementation, or enforcement functions.  As noted above, the Supreme Court held in *Kilbourn* that the House sergeant-at-arms could be sued to enjoin his enforcement of an allegedly improper false arrest order, even though the House members who ordered the arrest were immune from suit under the Speech and Debate Clause.  103 U.S. at 196-205.  The Supreme Court likewise held in *Supreme Court of Virginia v. Consumers Union of the United States, Inc*., 446 U.S. 719 (1980), that while legislative immunity would preclude an injunction compelling a state supreme court to perform the policymaking act of repealing its state bar code, legislative immunity did not bar an injunction against the executive function of enforcing the bar code against particular individuals.  *Id.* at 733-36.  The Eleventh Circuit, too, has recognized that legislative immunity does not apply to a suit seeking an injunction against "enforcement of [a] challenged voting district and a declaration as to its legality."  *Curling*, 761 F. App'x at 934 (quoting *Scott v. Taylor*, 405 F.3d 1251, 1256 (11th Cir. 2005)).  In

*Scott*, the Court held that a suit challenging electoral district lines as racially discriminatory could not proceed against the individual legislators who voted for the statute creating the district, but it could proceed against the Board of Elections, which administered elections in the district.  *See* 405 F.3d at 1256.

The foregoing principles and precedents foreclose the application of legislative immunity here.  The Governor's motion confuses the *substantive constitutional violation claimed—i.e.*, the enactment of state laws that discriminate against Disney for expressing disfavored political viewpoints and laws that violate its rights under the Contracts, Takings, and Due Process Clauses—with the *judicial relief sought*, which focuses on the Governor's duty to execute the challenged laws.  *See supra* Section I.  He has no legislative immunity from an injunction addressing the performance of those executive duties.

## IV.   THE FAC STATES A CLAIM AS TO EACH OF THE CONSTITUTIONAL VIOLATIONS ASSERTED

The State Defendants "adopt and incorporate the additional arguments raised in the CFTOD Defendants' motion to dismiss."  State Defs.' Mem. 24.  Disney likewise adopts and incorporates the arguments in its response to the CFTOD Defendants' motion.  For the reasons explained therein, the CFTOD Defendants' motion lacks merit.

## CONCLUSION

The State Defendants' motion to dismiss should be denied.

Dated:  July 26, 2023

Respectfully submitted,

ALAN SCHOENFELD
(*pro hac vice*)
New York Bar No. 4500898
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel. (212) 937-7294
alan.schoenfeld@wilmerhale.com

*/s/ Daniel M. Petrocelli*

DANIEL M. PETROCELLI
(*pro hac vice*)
California Bar No. 97802
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel. (310) 246-6850
dpetrocelli@omm.com

ADAM COLBY LOSEY
LOSEY PLLC
Florida Bar No. 69658
1420 Edgewater Drive
Orlando, FL 32804
Tel. (407) 906-1605
alosey@losey.law

JONATHAN D. HACKER
(*pro hac vice*)
District of Columbia Bar
No. 456553
STEPHEN D. BRODY
(*pro hac vice*)
District of Columbia Bar
No. 459263
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Tel. (202) 383-5285
jhacker@omm.com

*Attorneys for Plaintiff Walt Disney Parks and Resorts, U.S., Inc.*

21

## CERTIFICATE OF WORD COUNT

Pursuant to Northern District of Florida Rule 7.1(F), the undersigned counsel hereby certifies that the foregoing Plaintiff's Opposition to the State Defendants' Motion to Dismiss, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F), contains 4,537 words as measured by Microsoft Office for Word 365.

Respectfully submitted,

*/s/ Daniel M. Petrocelli*
DANIEL M. PETROCELLI