# EXHIBIT A

IN THE CIRCUIT COURT OF THE 9TH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA
CIRCUIT CIVIL DIVISION

**CENTRAL FLORIDA TOURISM OVERSIGHT DISTRICT,**

**Plaintiff,**

v.   CASE NO.: 2023-CA-011818-O

**WALT DISNEY PARKS AND RESORTS U.S., INC.,**

**Defendant.**
_____/

### ORDER DENYING "DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S [CORRECTED[1]] COMPLAINT AS MOOT OR, IN THE ALTERNATIVE, TO STAY THIS ACTION"

THIS CAUSE having come to be heard on July 14, 2023, on "Defendant's Motion To Dismiss Plaintiff's [Corrected] Complaint as Moot or, in the Alternative, to Stay this Action," filed by Defendant Walt Disney Parks and Resorts U.S., Inc. ("Disney"), and the Court having reviewed all filings relating to this motion, heard argument of counsel for Disney and for Plaintiff Central Florida Tourism Oversight District (the "District"), and being otherwise fully advised in the premises, finds as follows:

### BACKGROUND

The District is an independent special district established by the Florida Legislature in 1967 pursuant to House Bill 486, Chapter 67-764, Laws of Florida, and reauthorized and renamed to its current name by House Bill 9-B, Chapter 2023-5, Laws of Florida ("HB 9B"), which passed the Legislature on February 10, 2023, and became law on February 27, 2023. The

---

[1] Disney's motion refers to the District's Corrected Complaint as an Amended Complaint. The Corrected Complaint merely corrected the signature block and is not, in the Court's view, an "amendment" within the meaning of Rule 1.190, Florida Rules of Civil Procedure.

1

District exercises local government authority[2], as authorized by the Florida Legislature, over approximately 25,000 acres of land located in Orange and Osceola Counties. Prior to February 27, 2023, the District was known as the Reedy Creek Improvement District ("RCID").

**The Agreements**

Days before the Florida Legislature passed HB 9B, reforming RCID and its governance structure (and changing its name to the District's), RCID and Disney entered into two agreements that are the crux of this case: (1) the 30-year "Walt Disney World Chapter 163 Development Agreement" (the "Development Agreement"); and (2) the related "Declaration of Restrictive Covenants" (the "Restrictive Covenants") (collectively, the "Agreements"). The District alleges that Disney controlled RCID; that Disney itself drafted the Agreements and caused them to be adopted; and that the Agreements would assure Disney's control of future land use and development within the District, including the District's own lands, consistent with Disney's corporate plans for future expansion.

The Restrictive Covenants contain a forum selection clause that expressly provides that any action seeking "any declaration with respect to any rights, remedies, or responsibilities" shall be submitted "exclusively" to the Circuit Court for Orange County, Florida or, failing that, "any other Court sitting in Orange County, Florida." *See* Restrictive Covenants at p. 8, § 8.10.

At its public meetings on April 19 and April 26, 2023, the District considered the Agreements and the circumstances surrounding their adoption and concluded that they were void from inception, or void *ab initio*, for a number of legal reasons outlined in legislative findings that the Board adopted on April 26, 2023.

---

[2] The RCID was authorized to regulate zoning and development matters, capital improvements, building code enforcement and fire and safety. It also had the power to levy ad valorem taxes.

**The Federal Lawsuit**

Also on April 26, 2023, Disney filed suit in the Northern District of Florida against Florida's Governor, Ron DeSantis, the acting secretary of Florida's Department of Economic Opportunity, each member of the District's Board (in their official capacities), and the District's Administrator (in his official capacity).  In its federal suit, Disney takes the position that the Agreements were valid at inception — demonstrating a bona fide dispute between the parties as to that legal issue.

Disney's federal complaint, which as explained below has since been amended to address a law that became effective after the filing of the original complaint, states only federal causes of action, attacking the enactment of HB 9B (which reestablished RCID as the District with a newly appointed Board) and the District's legislative findings (which found the Agreements void *ab initio*).  *See* Disney's Federal Complaint, No. 4:23-cv-163, DE1 (N.D. Fla.).  The complaint also seeks relief from Senate Bill 4-C, Ch. 2022-266, Laws of Florida ("SB 4C"), a 2022 enactment that would have dissolved RCID in the absence of HB 9B.  Disney seeks a declaration that SB 4C, HB 9B, and the District's legislative findings, were "unlawful and unenforceable."  Disney does not, however, (i) seek a declaration that the Agreements were valid at their inception or (ii) allege that the Agreements are void *ab initio*.  Instead, Disney's Complaint alleges that it is the District's "April 26, 2023, legislative findings that Disney's contracts are 'void and unenforceable' " that create "an actual and justiciable controversy between Disney and Defendants, of sufficient immediacy and concreteness relating to the parties' legal rights and duties to warrant relief under [the federal declaratory judgment act]."  Disney seeks that declaration based solely upon allegations that the challenged laws violate provisions of the

3

federal Constitution in various ways. Disney does not allege any state law claims in the federal lawsuit.

After Disney filed its original federal complaint, the Legislature passed and the Governor signed Senate Bill 1604, Ch. 2023-31, Laws of Florida ("SB 1604"). This legislation applies to (i) "any development agreement that is in effect on, or is executed after, [its] effective date," which was May 5, 2023, and (ii) that was executed by an independent special district "within 3 months preceding the effective date of a law modifying the manner of selecting members of the governing body of the independent special district from election to appointment or from appointment to election." *Id.* at § 5. It provides that unless a newly appointed or elected governing body readopts a development agreement to which the law applies, an independent special district is prohibited from complying with such an agreement. *Id*. These provisions of SB 1604 expire on July 1, 2028. *Id.*

Disney amended its federal complaint after the passage of SB 1604. Disney asserts that SB 1604 "void[ed]" the Agreements and thus violated Disney's federal constitutional rights, including the right to be free from legislative impairment of contracts. Disney's Amended Federal Complaint, No. 4:23-cv-163, DE25 at ¶¶ 21, 181, 188 (N.D. Fla.). The necessary implication of Disney's allegations is that *but for* the adoption of SB 1604, the Agreements would "remain in effect and enforceable." *Id.* at ¶ 188.

**The State Lawsuit**

In the instant state court action, the District seeks a binding declaration that the Agreements were void *ab initio* when adopted on February 8, 2023, irrespective of the passage of SB 1604. The District seeks a ruling on the *validity* of the Agreements, regardless of the ability of Disney to currently *enforce* the Agreements. In its motion to dismiss, Disney argues

4

that the dispute between the parties over the validity of the Agreements was mooted by SB 1604 — at least until Disney prevails on the law's unconstitutionality or until SB 1604 expires. In other words, Disney asserts that it is SB 1604 that prohibits the District from complying with the Agreements, and not the fact that they were void from inception. Alternatively, Disney seeks a stay of these proceedings under Florida's "principle of priority," which provides that "[w]here a state and federal court have concurrent jurisdiction over the same parties . . . and the same subject-matter, the tribunal where jurisdiction first attaches retains it exclusively and will be left to determine the controversy and to fully perform and exhaust its jurisdiction and to decide every issue or question properly arising in the case." *Wade v. Clower*, 114 So. 548, 551 (Fla. 1927).

The District argues that because the Agreements are void *ab initio*, they by definition could not have been "in effect on" the effective date of SB 1604 and thus do not fall within the plain language of the legislation. Even if SB 1604 does apply, the District contends that a declaratory judgment will have actual effects and collateral legal consequences over a question of great public importance which is capable of repetition, such that dismissal would be wholly improper.

The District also opposes Disney's alternative motion to stay this action pending the outcome of Disney's federal lawsuit. The District asserts that the principle of priority does not apply because the federal court lacks concurrent jurisdiction over the District's purely state law claims in this action and, even if the federal court had concurrent jurisdiction, jurisdiction attached in this Court first because the District served Disney in this action before Disney served the District's officials in the federal action. Moreover, in the federal litigation, the District's officials have filed their own motion to dismiss in which they assert the District's contractual right to have the controversy settled in this Court, as provided in the forum selection clause, and

5

argue that the federal court should apply the *Pullman* abstention doctrine and abstain from hearing the state law issue raised in this case. *See* Case No. 4:23-cv-163 (N.D. Fla.), DE51-1 at 19-26 (discussing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941)).

## ANALYSIS

**I.  The District's Claims Regarding the Validity of the Agreements Are Not Moot.**

    **A.  Whether the Agreements Are Void *Ab Initio* Is Not Moot.**

"[A]n issue is 'moot' 'when the controversy has been so fully resolved that a judicial determination can have no actual effect.'" *Casiano v. State*, 310 So. 3d 910, 913 (Fla. 2021) (quoting *Godwin*, 593 So. 2d at 212).

The "issue" of whether the Agreements are void *ab initio* will not be resolved until a court of competent jurisdiction decides the issue in favor of one party or the other. That issue is alive and active and has real-world consequences for both parties. Disney alleges in its federal complaint that the Agreements are valid and remain in effect because SB 1604 violates the federal Constitution. The District alleges in its complaint that the Agreements were void from the moment they were adopted, regardless of the validity of SB 1604. The District will face legal uncertainty concerning the extent of its power to govern and the concomitant risk of litigation until a court of competent jurisdiction finally declares the status of the Agreements. This is exactly the kind of legal uncertainty that Florida's declaratory judgment statute is designed to redress, as underscored by the statute's plain text. *See* § 86.011(2), Fla. Stat. ("The circuit and county courts have jurisdiction within their respective jurisdictional amounts to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed . . . . *[and t]he court may render declaratory judgments on the existence, or nonexistence . . . [o]f any fact upon which the existence or nonexistence of such . . . power, privilege, or right does or*

6

*may depend*[.]") (emphasis added); § 86.021, Fla. Stat. ("Any person claiming to be interested or who may be in doubt about his or her rights under a . . . contract, or other article, memorandum, or instrument in writing . . . may have determined any question of construction *or validity* arising under such [document] . . . and obtain a declaration of rights, status, or other equitable or legal relations thereunder.") (Emphasis added); §86.031, Fla. Stat. ("A contract may be construed either before or after there has been a breach of it."). The validity and enforceability of the Agreements is at the heart of both the state and federal lawsuits. This alone bodes against a mootness argument.

     Second, with respect to SB 1604, the statute by its unambiguous terms applies to the Agreements only if they were "in effect on" May 5, 2023. Ch 2023-31, Laws of Fla. § 5. Whether an agreement was void at its inception or whether it subsequently became unenforceable has legal significance. Therefore, a judicial declaration as to the validity (or lack of validity) of the Agreements is a necessary prerequisite to any consideration of whether SB 1604 abrogated valid Agreements, as Disney claims, or had no effect because the Agreements were void *ab initio,* as the District asserts. Put differently, if the Agreements were void and thus *never effective* as the District asserts, Disney's argument regarding SB 1604 is irrelevant. In light of Disney's own federal complaint claiming rights under the Agreements, certainly the validity of the Agreements remains a presently existing bona fide dispute. *See, e.g., Imperial Fire & Cas. Ins. Co. v. Acosta*, 337 So. 3d 89, 91–93 (Fla. 3d DCA 2021) (holding that an insurer who had denied coverage based upon an insured's application had alleged sufficient "uncertainty regarding its obligations under the contract" to create a justiciable action for declaratory judgment and that "any doubt as to the practical need for a declaration was assuaged

7

by the fact that appellees separately filed suit seeking the payment of insurance benefits"). The foregoing argument also bodes agains a mootness argument.

> **B.      A Declaratory Judgment Will Have Actual Effects and Collateral Legal Consequences Over a Question of Great Public Importance, Which is Capable of Repetition.**

A ruling on whether the Agreements are valid will also have "actual effects" or, at least, "collateral legal consequences" in both the currently pending federal lawsuit and any subsequent action Disney may bring for breach of contract. *See Godwin v. State*, 593 So. 2d 211, 212 (Fla. 1992) (stating that courts should not dismiss a case as moot if "collateral legal consequences that affect the rights of a party flow from the issue to be determined."). If this Court determines that the Agreements are void, that ruling will have "actual effects" and "collateral legal consequences" in the federal proceeding where Disney's claims presume the existence of valid Agreements. Currently, four of Disney's five federal counts contend the Agremeents are valid. That substantial potential impact keeps this case very much alive, regardless of SB 1604.

Florida courts also will not dismiss a case as moot when "the questions raised are of great public importance or are likely to recur." *Godwin*, 593 So. 2d at 212. The validity of these Agreements is clearly a question of great public importance. They contradict the Legislature's policies toward the District and, if valid, would permit Disney to control all development rights and land use regulations in one of the most heavily visited areas in Central Florida. These issues implicate matters of the State's sovereignty and are of great interest to its economy and citizenry.

The issues here are also likely to recur. SB 1604 sunsets by its own terms on July 1, 2028. Accordingly, unless the Legislature affirmatively reinstates SB 1604, it will no longer preclude the District from "complying with the terms" of the Agreements. The Agreements' validity will again take center stage in the fight over whether the District must comply with

them.  A dismissal would arguably mean kicking the can down the road when the need for judicial intervention is certain.  *See, e.g.*, *McLaughlin v. Dep't of Highway Safety and Motor Vehicles*, 2 So. 3d 988, 990 (Fla. 2d DCA 2008) (holding that challenge to license suspension was not moot even though the suspension terminated because it "presents a question that is likely to recur"), *quashed on other grounds*, *Dep't of Highway Safety and Motor Vehicles v. Hernandez*, 2 So. 3d 988 (Fla. 2008); *Wexler v. Lepore*, 878 So. 2d 1276, 1280 (Fla. 4th DCA 2004) (holding candidate's challenge to vote recount process did not become moot when candidate failed to draw opposition because he would likely seek reelection).

Accordingly, for the foregoing reasons, Disney's motion to dismiss is due to be denied.

**II.      Disney Is Not Entitled to a Stay.**

**A.      Because the Federal Court Lacks "Concurrent Jurisdiction" Over the District's State Law Claims, Binding Precedent Precludes This Court from Relying on the Principle of Priority to Grant a Stay.**

Binding precedent precludes this Court from applying the "principle of priority" to stay this case.  As a matter of law, that principle applies only where a federal court has "concurrent jurisdiction" over claims made in state court.  *Sunshine State Serv. Corp. v. Dove Invs. of Hillsborough*, 468 So. 2d 281, 283 (Fla. 5th DCA 1985) (explaining that the priority principle only applies "[w]here a state and federal court have *concurrent jurisdiction*") (emphasis added). In this context, "concurrent jurisdiction" refers to "subject-matter jurisdiction, not personal jurisdiction." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 411 (2017) (quotation omitted).  Federal courts are courts of limited original subject matter jurisdiction that, as relevant here, extends only to federal-question or diversity jurisdiction.  *See* §§ 28 U.S.C. 1331, 1332(a), 1343 (2022). Thus, the federal court's jurisdiction would be "concurrent" with this Court's jurisdiction only if the District's claims arose under federal law (federal question jurisdiction) or if the District and

9

Disney were citizens of different states (diversity jurisdiction). Neither is true. Rather, the District's claims arise solely under Florida state law, and the District and Disney are both citizens of Florida.

Disney's arguments that "concurrent jurisdiction" does not refer to original subject matter jurisdiction — so that the federal court's potential *pendent* jurisdiction over the District's state law claims would satisfy this element of the principle of priority — are at odds with not one, but two decisions from the Fifth District Court of Appeal, which held the exact opposite. *See Sebor v. Rief*, 706 So. 2d 52, 53 (Fla. 5th DCA 1998) ("[W]e said in *Sunshine* that in a case involving federal pendent jurisdiction over state causes of action, such as tort and contract claims, there is no concurrent jurisdiction in any event. Thus, stay of the state suit would not be appropriate, even if it were filed *after* the federal suit.") (citing *Sunshine*, 468 So. 2d 281). Although Disney says that this is not the rule, none of the decisions cited by Disney expressly address how to define "concurrent jurisdiction." Contrary to Disney's assertion that the District can assert the invalidity of the Agreements by way of defense in the federal lawsuit, the District's claims in this action seek a declaratory *judgment* that the Agreements are void *ab initio* — i.e., an affirmative claim for relief, not a defense. To achieve that affirmative relief (as opposed to avoiding liability by way of defense), the District would need to assert a counterclaim under the federal court's pendent jurisdiction; but *Sunshine* and *Sebor* hold that a federal court's pendent jurisdiction over state-law claims does *not* constitute concurrent jurisdiction and thus does *not* trigger the principle of priority.

The Court cannot dismiss the holdings of *Sunshine* and *Sebor* as dicta. *Sunshine* — the first decision to address the issue — plainly relies upon the lack of concurrent jurisdiction as an alternate basis for its holding. 468 So. 2d at 283 ("In the instant case the state and federal courts

10

*do not have concurrent jurisdiction* of the cause of action which petitioners filed in state court, or of the counterclaim respondents initiated. . . .") (emphasis added) (footnote omitted). Thereafter, in analyzing whether the trial court had departed from the essential requirements *of the law* by relying on the principle of priority to stay a case, *Sebor* expressed this rule: "We . . . said in *Sunshine* that in a case involving federal pendent jurisdiction over state causes of action, such as tort and contract claims, there is no concurrent jurisdiction in any event." 706 So. 2d at 53. *Sebor* clearly eliminates any doubt as to the law this court is obligated to follow.

The court has not been made aware of any binding authority that contradicts *Sunshine* or *Sebor:* accordingly, this Court is bound to follow the Fifth District's definition of concurrent jurisdiction. *See Pardo v. State*, 596 So. 2d 665, 666-67 (Fla. 1992). The federal court thus lacks "concurrent jurisdiction" over the District's state court claims, so it would be an abuse of discretion for this Court to grant a stay. *See Sebor*, 706 So. 2d at 53-54.

  **B.**  **This Court Need Not Consider Where Jurisdiction First Attached.**

The parties agree that, under Florida law, the court where service of process is first perfected is the court that first acquires jurisdiction and gets priority. *See Shooster v. BT Orlando Ltd. P'ship*, 766 So. 2d 1114, 1116 (Fla. 5th DCA 2000). The date that jurisdiction attached in this state court action is not disputed: the District served Disney on May 12, 2023.

The parties disagree about the date that the federal court obtained jurisdiction over the District's officials. Disney says that jurisdiction attached in federal court on May 1, 2023, when its process server left the summonses and complaints for the five District officials with the District's Communications Director, allegedly in compliance with section 48.111(1)(b)4., Florida Statutes. In support of this claim, Disney has provided the process server's supplemental affidavit to the May 1 returns of service. The District, in contrast, contends that because

Disney's May 1 service attempt was legally defective – based on both the face of the May 1 returns of service and an affidavit by its Communications Director as to her interaction with the process server — the federal court did not obtain jurisdiction over the District's officials until they accepted service on May 22, 2023.

This court need not address the principle of priority issue where it has determined the federal court lacks concurrent jurisdiction over the District's state law claims and is is obliged to follow *Sunshine* and *Sebor.*

      C.      **Other Considerations Warrant Denying a Stay.**

Four other considerations also warrant denying a stay — regardless of whether the principle of priority applies.

*First*, other elements vital to applying the principle of priority are lacking, namely the requisite identity of parties and claims. An exact carbon copy lawsuit is not required, but the critical "nucleus of facts," *Roche v. Cryulnik*, 337 So. 3d 86, 88 (Fla. 3d DCA 2021), must be present. It is not. In federal court, Disney's five-count complaint contends that various public officials violated several provisions of the United States Constitution. Four of Disney's counts depend upon the Agreements being valid, but Disney has pleaded no cause of action for the federal court to declare them so. Rather, Disney's complaint assumes and asks the federal court to accept that the Agreements are valid. In contrast, in this state court action, the District claims that the Agreements are invalid from their inception as a matter of Florida law. Because "[t]he crux of the controversy" differs between state and federal court, the principle of priority does not apply. *Sebor*, 706 So. 2d at 54 (explaining that it was a departure from the essential requirements of law to stay state-law claims based upon a federal suit raising federal claims even though the state law questions "may be relevant in the final resolution of the federal lawsuit").

*Second*, even when the priority of principle applies, a court has discretion to deny a stay based on exceptional circumstances, which the court finds exist here. *In re Guardianship of Morrison*, 972 So. 2d 905, 910 (Fla. 2d DCA 2007). Undue delay in the other pending proceeding is the most common example. *See id.* To require the District to wait to have its claims heard here is untenable because the District is a local government that must continue governing while Disney's case winds its way through the federal system. Indeed, it could take years for Disney's case to complete its course through the federal trial and appellate courts.

*Third*, staying this action is unwarranted because the *Pullman* abstention doctrine suggests that the federal court should abstain while this Court resolves the state-law dispute about the validity of the Agreements. *See Gold-Fogel v. Fogel*, 16 F.4th 790, 799 n.11 (11th Cir. 2021) ("*Pullman* abstention . . . refers to abstention 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.' ") (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)). If the Agreements are, as the District has alleged here, invalid from their inception under Florida law, four of Disney's five federal claims likely fail.

*Fourth*, and last, delaying the resolution of this case pending the federal litigation would deny to the District its home-venue privilege. *See Carlile v. Game & Fresh Water Fish Comm'n*, 354 So. 2d 362, 363-64 (Fla. 1977). Ironically, such a ruling would allow Disney to escape the plain terms of the forum selection clause contained in one of the Agreements that Disney contends is valid *under Florida law*.

For all of these reasons, Disney's alternative request for a stay is due to be denied.

## CONCLUSION

Because this case is not moot and a stay is not proper, the Court hereby denies Disney's Motion to Dismiss or, in the Alternative, to Stay this Action. Disney shall file its answer to the District's Corrected Complaint within twenty (20) days of the date of this order.

DONE AND ORDERED in Chambers in Orange County, Florida, on this 28th day of July, 2023.

*eSigned by Margaret H. Schreiber  07/28/2023 15:46:35 s-B4GrB7*

**MARGARET H. SCHREIBER**
Circuit Court Judge

## CERTIFICATE OF SERVICE

The foregoing was electronically filed with the Clerk of Court on the date electronically signed, above, by using the Florida Courts eFiling Portal, which will provide electronic notification to all counsel of record in this action, as set forth herein. Counsel of record for Plaintiff: Alan Lawson, Esquire (alan@lawsonhuckgonzalez.com, leah@lawsonhuckgonzalez.com, and michelle@lawsonhuckgonzalez.com); David Thompson, Esquire (dthompson@cooperkirk.com); Pete Patterson, Esquire (ppatterson@cooperkirk.com); Joe Masterman, Esquire (jmasterman@cooperkirk.com and ppatterson@cooperkirk.com); Megan Wold, Esquire (mwold@cooperkirk.com); Daniel W. Langley, Esquire (dlangley@fishbacklaw.com and sc@fishbacklaw.com); A. Kurt Ardaman, Esquire (ardaman@fishbacklaw.com); John J. Bennett, Esquire (jbennett@nardellalaw.com and nmacdougall@nardellalaw.com); Michael A Nardella, Esquire (mnardella@nardellalaw.com and nmacdougall@nardellalaw.com); Paul C Huck Jr, Esquire (paul@lawsonhuckgonzalez.com, marsha@lawsonhuckgonzalez.com and leah@lawsonhuckgonzalez.com); and Jason B Gonzalez, Esquire (jason@lawsonhuckgonzalez.com, marsha@lawsonhuckgonzalez.com and leah@lawsonhuckgonzalez.com). Counsel of record for Defendant: Adam C. Losey, Esquire (alosey@losey.law & docketing@losey.law); M. Catherine Losey, Esquire (closey@losey.law & docketing@losey.law); Daniel Petrocelli, Esquire (dpetrocelli@omm.com); Jonathan Hacker, Esquire (jhacker@omm.com); Alan Schoenfeld, Esquire (alan.schoenfeld@wilmerhale.com); and Stephen Brody, Esquire (sbrody@omm.com).