## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

WALT DISNEY PARKS AND RESORTS U.S., INC.,

    *Plaintiff*,

    v.                         No. 4:23-cv-163-AW-MJF

RON DESANTIS, in his official capacity
as Governor of Florida, et al.,

    *Defendants*.

_____/

## STATE DEFENDANTS' REPLY
## IN SUPPORT OF MOTION TO DISMISS

Disney's response teems with majestic generalities about how the State Defendants "implement[], administer[], [and] enforc[e]" the challenged provisions. *E.g.*, DE58 at 3. But Disney must do more than generalize: It must show that the State Defendants have specific, formal power to enforce the challenged laws, such that an injunction against them would "be effectual." *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021); *see also Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1342 (11th Cir. 1999) (similar for sovereign immunity). Because neither the Governor nor the Secretary has such formal power, Disney lacks standing and cannot overcome the State Defendants' sovereign immunity. And to the extent Disney continues to challenge acts taken in the Governor's legislative capacity, its claims are barred by legislative immunity.

## ARGUMENT

### I.   DISNEY LACKS STANDING TO SUE THE STATE DEFENDANTS.

Disney's alleged injuries are neither traceable to the State Defendants nor redressable by an injunction against them, so it lacks standing. *Support Working Animals*, 8 F.4th at 1201.

### A.   The Governor

**1.**   Disney first contends (at 7–9) that it has standing to sue the Governor for reorganizing RCID because its injuries are traceable to the Governor's appointment power. Although Disney acknowledges the wall of precedent holding that a plaintiff may not sue a governor to remedy harms caused by the governor's appointees, DE58 at 7–8, it claims this case is different because "the exercise of [the appointment] power *itself* causes" Disney to lose the "voting rights" that secured its electoral stranglehold over the District. *Id.* (emphasis added).[1]

That argument is fatally imprecise. The Governor did not strip Disney of any voting rights by appointing anyone; the Legislature did that when it repealed RCID's 1967 charter in HB 9B. Ch. 2023-5, § 5, Laws of Fla. (2023). The appointment power

---

[1] Disney also suggests that the Governor's appointment power "chill[s]" its "constitutional right to speak." DE58 at 3, 5. But "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). It is not a redressable injury in its own right. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 417–18 (2013); *see also Hallandale Pro. Fire Fighters Loc. 2238 v. City of Hallandale*, 922 F.2d 756, 761 (11th Cir. 1991).

is merely one piece of the governmental apparatus that the Legislature created to replace RCID's original charter; that power itself, however, does not bar Disney from voting. The cause of Disney's voting injury is thus not the Governor's "*enforcement*" of HB 9B's appointment provision, but the "very *existence*" of HB 9B's repeal provision. *Equal. Fla. v. Fla. State Bd. of Educ.*, No. 4:22-cv-134, 2022 WL 19263602, at *2 (N.D. Fla. Sept. 29, 2022) (plaintiffs lack standing to sue state actors for harms flowing from the mere existence of a law).

Indeed, even Disney breaks character in conceding that the act of "stripp[ing]" its voting rights is distinct from the act of "replacing the locally-elected Board with a new Board appointed by the Governor." DE58 at 8. And that distinction is critical because "standing is not dispensed in gross." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Rather, a plaintiff's asserted injury must be "fairly traceable to the defendants' conduct in enforcing the *specific statutory provision* they attack as unconstitutional." *California v. Texas*, 141 S. Ct. 2104, 2120 (2021) (emphasis added); *see also Granite State Outdoor Advert., Inc. v. City of Clearwater*, 351 F.3d 1112, 1117 (11th Cir. 2003) (plaintiff had standing to challenge a provision that harmed him, but lacked standing to challenge other provisions that did not). Because Disney's voting injury flows solely from the provision dissolving its electoral monopoly—which it does not contend the Governor enforces—it lacks standing to challenge the provision endowing the Governor with appointment authority. *See*

3

*Brokamp v. James*, 66 F.4th 374, 389 (2d Cir. 2023) (plaintiff lacked standing to challenge "entire licensing law" because she was harmed only by a discrete part of it).

The redressability prong underscores that point. This Court may not "erase a duly enacted law from the statute books," *Equal. Fla.*, 2022 WL 19263602, at *2 (quoting *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020)), so Disney must show that "enjoin[ing]" the Governor from "enforc[ing]" HB 9B's appointment provision would remedy its harm, *id.* But enjoining the Governor from appointing new District board members would neither restore RCID's prior electoral scheme nor reinstate Disney's electoral monopoly. *Id.* Enjoining the Governor would therefore "be [in]effectual," and thus, impermissible. *Support Working Animals*, 8 F.4th at 1201.

In arguing otherwise, the only authority Disney musters is a Ninth Circuit case decided two decades ago. *See L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 699 (9th Cir. 1992). Disney stresses *Eu*'s holding that a different threshold defense—the Eleventh Amendment—did not bar suit against a governor and secretary of state in a challenge to a statute prescribing the number of judges on the state superior court. DE58 at 9 (citing *Eu*, 979 F.2d at 704). But that dubious holding does not speak to whether Disney has Article III standing to sue the Governor. *See Falls v. DeSantis*, No. 4:22-cv-166, 2022 WL 19333278, at *1 (N.D. Fla. July 8, 2022); *see also*

4

*Jacobson*, 974 F.3d at 1256 (declining to extend *Ex parte Young* precedent to the standing analysis).

Not even Disney defends *Eu*'s tortured approach to Article III standing. In *Eu*, a plaintiff sued California's governor for a declaration that a statute prescribing the number of judgeships in Los Angeles County was unconstitutional because more judgeships were necessary to manage the County's overburdened docket. Recognizing that the plaintiff's standing "may appear tenuous" because the governor was powerless to appoint more judges without additional legislation, the Ninth Circuit held (without state opposition) that the plaintiff had standing to sue the governor because the court "assume[d]" it was "substantially likely that the California legislature" would "abide by [the court's] authoritative" declaration, even though the legislature's "members [were] not all parties to th[e] action." *Eu*, 979 F.2d at 700–01.

The Eleventh Circuit has disavowed that reasoning. A party's standing must flow from "*the effect of the court's judgment on the defendant*," not from "[a]ny persuasive effect a judicial order might have upon" nonparties. *Jacobson*, 974 F.3d at 1254 (quoting *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc)). *Eu* therefore holds no weight here.

**2.** Disney next claims (without citation) that it has standing to sue the Governor for all counts because the Governor's public statements show that he is

"functionally in charge" of the Board's actions. *Id.* at 10. But standing does not turn on whether a public official has informal influence over other government actors; it turns on whether the public official has *formal power* to enforce the challenged law. *E.g.*, *City of S. Miami v. Governor of Fla.*, 65 F.4th 631, 643 (11th Cir. 2023) (analyzing *only* whether official had formal power to enforce challenged law); *Jacobson*, 974 F.3d at 1253 (same); *Support Working Animals*, 8 F.4th at 1201 (same); *Lewis*, 944 F.3d at 1301 (same). Were it otherwise, a plaintiff could drag officials with no relevant enforcement authority into countless lawsuits simply by claiming that they hold political sway over those who do. *But see* DE49 at 17 n.10 (collecting cases holding that plaintiffs could not sue appointing officials for the acts of those they appointed); *see also Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022) (governor was not a proper defendant in a challenge to a law that he "publicly advocated" for because he could not enforce the law himself).

Disney's novel standing theory also faces insurmountable traceability and redressability problems. For example, "a plaintiff lacks standing to sue over a defendant's action if an independent source would have caused him to suffer the same injury." *City of S. Miami*, 65 F.4th at 645 (citation omitted). Here, the Board has "independent obligation[s]" both under HB 9B to regulate within the District and under SB 1604 to disregard the alleged contracts. Disney's injuries therefore are not traceable to any authority of the Governor, but to the Board's independent duty

to "follow the law[s]" it is entrusted to execute. *Id.* at 643; *see also Univ. Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1033 (6th Cir. 2022) (no standing to sue state attorney general when local officials had independent obligation to enforce the challenged law).

Disney's Eleventh Circuit cases are inapposite. In both *Luckey v. Harris*, 860 F.2d 1012 (11th Cir. 1988), and *Georgia Latino Alliance for Human Rights. v. Governor of Georgia*, 691 F.3d 1250 (11th Cir. 2012), Georgia's governor was a proper defendant because he was *formally charged* with enforcing the challenged parts of Georgia's criminal-justice system. *See City of S. Miami*, 65 F.4th at 644–45 (distinguishing *Luckey* and *Georgia Latino Alliance* on that basis in holding that plaintiffs lacked standing to sue Florida's Governor). The Governor, by contrast, has no comparable formal power.

Nor does Disney find footing in *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614 (9th Cir. 1999). A fractured panel there held that, even if California's attorney general lacked the power to enforce a criminal statute, her formal written threats to enforce the statute or to refer the case to local prosecutors sufficed to establish standing. *Id.* at 618. But Disney points to no such formal threats here. More fundamentally, the Eleventh Circuit has rejected *Del Papa*'s haphazard approach to standing, *e.g.*, *City of S. Miami*, 65 F.4th at 643; *Jacobson*, 974 F.3d at 1253; *Support Working Animals*, 8 F.4th at 1201; *Lewis*, 944 F.3d at 1301, adopting

instead the position taken by Judge Brunetti in the *Del Papa* dissent: Standing is inappropriate when the state defendant "has no power to" enforce the challenged law. *Del Papa*, 200 F.3d at 619 (Brunetti, J., dissenting).

Finally, Disney suggests (at 10) that the Governor will "indirectly" coerce the Board through his "suspension powers." But remarkably, Disney does not mention *City of South Miami*, which rejected the notion that the Governor's suspension power established standing to sue him for a law enforced by local officials. 65 F.4th at 642–43. Much like that case, the complaint here "contains no [allegations]—*none*—that Governor DeSantis would use his suspension authority" to suspend Board members who do not follow his commands. *Id.* at 643. At most, the complaint highlights the commonsense fact that Governor DeSantis has appointed Board members with similar views on how best to regulate tourism in central Florida. *E.g.*, DE25 ¶ 129 (quoting Governor as saying, in reference to the Board, that "[w]hen you lose your way, you've got to have people that are going to tell you the truth"); *see also Kurowski v. Krajewski*, 848 F.2d 767, 770 (7th Cir. 1988) (Easterbrook, J.) ("Holders of the appointing authority may seek to ensure that [their appointees] agree with them" and may thus "consider [the appointees'] views . . . when making the appointment."). That is a far cry from plausibly alleging that the Governor will suspend divergent Board members or that Board members are regulating Disney only to avoid suspension.

8

### B. The Secretary

Disney agrees that it must establish how the Secretary's "performance of [a] duty causes [Disney's] injury." DE58 at 12. But Disney still does not explain how the only relevant duty the Secretary performs—placing the District on the Official List of special districts—causes Disney harm. That mine-run recording act does not dissolve Disney's prior voting rights; HB 9B's repeal of RCID's old charter did that. *Supra* 2–4. The Official List also does not affect Disney's contracts; only SB 1604 (and on Disney's view, the Legislative Declaration) does that. DE49 at 13–14. Nor does the Official List in any meaningful way regulate Disney; again, that is HB 9B. *Id.* at 17. And though Disney vaguely speaks of "constitutional injuries" when discussing the Secretary (at 12), it does not explain what those injuries are or how the Official List inflicts them.

Instead, Disney argues (at 12) that its harms are traceable to the Official List because the District is unlawful and "cannot be properly included on the Official List." But that merely restates the end-result of Disney's constitutional theory; it says nothing of what *concrete harm* Disney suffers from the District's placement on the Official List. No doubt, Plaintiffs often contend that unlawful acts should be undone, but Article III requires that the act be challenged by someone *actually harmed* by it. *See Granite State*, 351 F.3d at 1117 (plaintiff lacked standing to challenge an act that did not harm him). And here, Disney's alleged harms flow not

9

from recording the District in the Official List, but from the legislative provisions that reconstituted the District and endowed it with powers. None of those acts are enforced by the Secretary.

For similar reasons, Disney fails to show how its injuries would be redressed by erasing the District from the Official List. In that world, Disney would still lack the right to vote for the District's Board; its alleged contracts would still be defunct; and it would still be regulated by the reconstituted District. Since an injunction against the Secretary would "accomplish nothing, it should not issue." *Hartmann v. Fed. Rsrv. Bank of Phila.*, 55 F. Supp. 801, 810 (E.D. Pa. 1944); *see also Support Working Animals*, 8 F.4th at 1201 (court's injunction must "be effectual").

Disney fares no better in its other attempts to hitch the Secretary to this case. It first claims that the Secretary has "direct statutory responsibility for supervising special districts and enforcing their compliance with law." DE58 at 16. Hardly. The Secretary does not have roving authority to patrol the constitutionality of special districts and their actions. She is responsible only for maintaining their presence on the Official List and supervising their compliance with procedural reporting requirements. *E.g.*, Fla. Stat. § 189.016. That limited authority is not a general power to "enforc[e] their compliance with law." DE58 at 16. And even if it were, a state official's general duty to enforce the law does not establish standing to sue that official for a local entity's actions. *E.g.*, *Jacobson*, 974 F.3d at 1254; *Lewis*, 944 F.3d

at 1300; *see also Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003).

In its final effort, Disney contends (at 16) that the Secretary has questioned the validity of the Comprehensive Plan, "likely necessitating an order enjoining her to abide by her own Department's determination concerning the Comprehensive Plan." That non-sequitur will not do. Disney nowhere challenges the Secretary's compliance with the Comprehensive Plan in its complaint; the complaint is limited to challenging HB 9B and SB 4C, the Legislative Declaration, and SB 1604—none of which are enforced by the Secretary. That the Secretary has raised the Plan's invalidity as a defense to the validity of Disney's contracts does not empower Disney to amend its complaint to seek new injunctive relief in its response to a motion to dismiss. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (a plaintiff may not raise new claims for relief in its motion-to-dismiss response). And regardless, the Court may not order the Secretary to comply with "her Department's determination" about the validity of the Plan under *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 121 (1984) (federal courts may not enjoin state officials to comply with state law).

## II.   DISNEY'S CLAIMS AGAINST THE STATE DEFENDANTS ARE BARRED BY SOVEREIGN IMMUNITY.

To bypass the State Defendants' sovereign immunity, Disney must show that they "enforce the law[s] . . . at issue in the suit." *Grizzle v. Kemp*, 634 F.3d 1314,

1319 (11th Cir. 2011); *Summit Med. Assocs.*, 180 F.3d at 1342. As detailed above and in the State Defendants' initial motion, the State Defendants do not enforce any of the acts that Disney challenges here. As a result, they are not proper parties under *Ex parte Young*, 209 U.S. 123, 161 (1908), and should be dismissed, *see Tex. All. for Retired Americans v. Scott*, 28 F.4th 669, 672–74 (5th Cir. 2022) (dismissing Texas Secretary of State on sovereign-immunity grounds because he did not enforce the challenged provisions).

### III.   TO THE EXTENT DISNEY CHALLENGES THE GOVERNOR'S LEGISLATIVE ACTS, ITS CLAIMS ARE BARRED BY LEGISLATIVE IMMUNITY.

Disney's complaint is chock full of allegations about the Governor's legislative actions. It alleges that the Governor "called on the Legislature to pass bills to punish Disney for its speech," DE25 ¶ 21; "worked with both leaders of the House and Senate" to pass those bills, *e.g.*, *id.* ¶ 207 (quotations omitted); "signed [the bills] into law," *id.* ¶ 21; and "would not have promoted or signed" the bills "but for [a] desire to punish Disney," *id.* ¶ 215. Because all those acts are legislative in nature, *see In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015), they are protected by absolute legislative immunity, *see Women's Emergency Network*, 323 F.3d at 950.

In response, Disney effectively concedes that those assertions—much of its complaint, really—were more a glorified press release than part of a legal document.

Disney now claims that it is challenging only the Governor's *executive* actions: his appointment power and his purported control over the Board's actions. DE58 at 17–20. The Governor welcomes Disney's surrender on all of its claims challenging his legislative acts. As for the claims Disney continues to press, Disney lacks standing to sue the Governor for those actions and has not overcome his sovereign immunity for the reasons discussed above.

## CONCLUSION

The Court should dismiss the amended complaint, or at minimum, dismiss all claims against the State Defendants.

Dated: August 9, 2023

Respectfully submitted,

ASHLEY MOODY
  *Attorney General of Florida*

JOHN GUARD (FBN 374600)
  *Chief Deputy Attorney General*

JAMES H. PERCIVAL (FBN 1016188)
  *Chief of Staff*

*/s/ Henry C. Whitaker*
HENRY C. WHITAKER (FBN 1031175)
  *Solicitor General*

DANIEL W. BELL (FBN 1008587)
  *Chief Deputy Solicitor General*

DAVID M. COSTELLO (FBN 1004952)
  *Deputy Solicitor General*

**OFFICE OF THE ATTORNEY GENERAL**
The Capitol, PL-01
Tallahassee, FL 32399
(850) 414-3300
*henry.whitaker@myfloridalegal.com*

*Counsel for Governor DeSantis and
Secretary Ivey*

14

## CERTIFICATE OF COMPLIANCE

This motion complies with the requirements of Local Rule 7.1(F) because it contains 2,972 words.

/s/ Henry C. Whitaker
Solicitor General

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2023, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

/s/ Henry C. Whitaker
Solicitor General