# EXHIBIT A

**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT**
**IN AND FOR ORANGE COUNTY, FLORIDA**
**CIRCUIT CIVIL DIVISION**

CENTRAL FLORIDA TOURISM OVERSIGHT DISTRICT,

      Plaintiff,

    v.                                   Case No. 2023-CA-011818-O

WALT DISNEY PARKS AND RESORTS U.S., INC.,

      Defendant.

**DEFENDANT'S ANSWER,**
**AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Under Florida Rules of Civil Procedure 1.110(c)-(d) and 1.170, Defendant Walt Disney Parks and Resorts U.S., Inc. ("Disney") answers the allegations in Plaintiff's Corrected Complaint for Declaratory and Injunctive Relief (the "Complaint"), dated May 9, 2023.  Except as expressly admitted, qualified, or otherwise stated, Disney denies each and every allegation and assertion in the Complaint.  The Complaint's headers do not require an answer or response; to the extent a response is required to the headings, Disney denies them.  As a general matter, Disney objects to the Complaint's routine and improper comingling of numerous allegations in single paragraphs.  *See* Fla. R. Civ. P. 1.110(f); *Dewitt v. Rossi*, 559 So. 2d 659 (Fla. 5th DCA 1990).

1.     Disney denies the allegations in Paragraph 1.

2.     Disney admits that there is no question that much good has come from the Reedy Creek Improvement District ("RCID").  Disney admits that it is subject to building and fire codes.  Disney otherwise denies the allegations in Paragraph 2.

3.     The allegations in Paragraph 3 that the Development Agreement (the "Development Agreement") and the Declaration of Restrictive Covenants (the "Restrictive Covenants") (together, the "Contracts") are null and void are legal arguments and conclusions that do not require a response; to the extent a response is required, Disney denies the allegations. Disney otherwise denies the allegations in Paragraph 3.

4.     Disney admits that RCID's elected board was replaced with a board hand-picked by Governor DeSantis.  Disney is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations that the "new Board" has "adopted new rules governing Board conduct," "hired an outside financial advisor," "retained new, independent outside general counsel," "authorized the drafting of fire and building code enforcement provisions," and

"authorized the hiring of an urban planner," and on that basis denies these allegations.  Disney otherwise denies the allegations in Paragraph 4.

5.      Disney admits that it has maintained that the Contracts are valid and would be enforceable but for the operation of Senate Bill 1604.  Disney also admits that the District seeks a judicial declaration finding the Contracts invalid.  Disney otherwise denies the allegations in Paragraph 5.

6.      The referenced legislative act speaks for itself and anything inconsistent with the act is denied.  Disney admits that the Central Florida Tourism Oversight District is a special district established by the Florida legislature that was known as the Reedy Creek Improvement District prior to February 27, 2023.  Disney also admits that the Complaint uses RCID to discuss actions taken by the District prior to February 27, 2023, but otherwise denies the allegations in Paragraph 6.

7.      Disney admits the allegations in Paragraph 7.

8.      Disney admits the allegations in Paragraph 8 for jurisdictional purposes only.

9.      Disney admits that the amount in controversy exceeds $50,000, exclusive of interest, court costs, and attorneys' fees for jurisdictional purposes only.  Disney otherwise denies the allegations in Paragraph 9.

10.     Disney admits that Disney has an office for transaction of its customary business in Orange County, Florida, the cause of action accrued in Orange County, Florida, and property subject to the Development Agreement and Restrictive Covenants is located in Orange County, Florida for venue purposes only.  Disney otherwise denies the allegations of Paragraph 10.

11.     Disney admits that, in 1967, the Florida Legislature created the Reedy Creek Improvement District pursuant to H.B. 486, Chapter 67-764.  Disney denies that The Walt

Disney Company owned the majority of land within the boundaries of the RCID at the time RCID was created.  The remainder of the allegations in Paragraph 11 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations in Paragraph 11.

12.     Disney denies the characterization that the planned community "never materialized" and that its name was "coopted."  Disney otherwise admits the allegations in Paragraph 12.

13.     Disney denies that RCID is similar to other special districts only insofar as it "appeared similar" "[o]n its face."  Whether RCID was "authorized to exercise many of the traditional powers of local government" is a legal conclusion to which no response is required; to the extent a response is required, Disney denies the allegation.  Disney admits that RCID is similar to other special districts, including because RCID had the authority to levy ad valorem taxes.  Disney otherwise denies the allegations in Paragraph 13.

14.     Disney denies the characterization that the Board of Supervisors' "only qualification" was owning land within RCID and denies that RCID's electors "had to own at least one acre of land within the RCID" and "cast one vote for every acre owned."  Disney otherwise admits the allegations in Paragraph 14.

15.     Disney admits that Board members were deeded land and that the deeded land would be transferred back after a Board member left their seat.  Disney otherwise denies the allegations in Paragraph 15.

16.     Disney denies the allegations in Paragraph 16.

17.     Disney admits that RCID has been mutually beneficial for Florida and for Disney. Disney otherwise denies the allegations in Paragraph 17.

18.     The records referenced in Paragraph 18 speak for themselves and anything inconsistent with those records is denied.  Disney denies the allegation that "Florida's elected representatives decided that it was time to reform the RCID and to put Disney on the same footing as every other Florida business."  To the extent that Paragraph 18 alleges that Disney was not subject to "regulation by Orange and Osceola Counties" before enactment of Senate Bill 4-C, Disney denies the allegation.  The remainder of the allegations in Paragraph 18 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

19.     Disney admits that HB 9B changed the District's name from the "Reedy Creek Improvement District" to the "Central Florida Tourism Oversight District."  Disney denies the characterization that the Florida Legislature decided to "reform" RCID because the Legislature's intent was, in fact, to punish Disney for disfavored speech.  Disney also denies the allegation that membership on the Board of Supervisors was "controlled by Disney."  The records referenced in Paragraph 19 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 19 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

20.     The allegation in Paragraph 20 that the Contracts are "riddled with procedural and substantive flaws" is a legal argument and conclusion to which no response is required; to the extent a response is required, Disney denies the allegations.  Disney admits that it rents land to individuals who purchase their own mobile homes for residency on Disney's property.  Disney otherwise denies the allegations in Paragraph 20.

21.     The records referenced in Paragraph 21 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 21 are

5

legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

      22.     Disney admits that RCID approved the Development Agreement and Restrictive Covenants at a public hearing on February 8, 2023.  Disney also admits that copies of the Development Agreement and the Restrictive Covenants are attached to the Complaint.  Disney is without knowledge and information sufficient to form a belief as to the accuracy of the statement that "[n]either the Development Agreement nor the Restrictive Covenants were previously presented to RCID planning staff for their input or consideration," and on that basis, Disney denies the allegations.  The records referenced in Paragraph 22 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 22 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

      23.     The records referenced in Paragraph 23 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 23 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

      24.     The records referenced in Paragraph 24 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 24 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

      25.     The allegations in Paragraph 25 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

26.     The records referenced in Paragraph 26 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 26 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

27.     Disney admits that it asserts the Contracts are valid and enforceable, but that SB 1604 has improperly rendered them inoperative.  Disney admits that it has filed a lawsuit in federal court, but otherwise denies the allegations.

28.     The allegations in Paragraph 28 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

29.     The allegations in Paragraph 29 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

30.     The allegations in Paragraph 30 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

31.     The allegations in Paragraph 31 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

32.     The allegations in Paragraph 32 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

33.     The allegations in Paragraph 33 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

34.     The allegations in Paragraph 34 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

35.     Disney repeats and reasserts each and every response to the allegations asserted in the foregoing paragraphs 1-34 with the same force and effect as if fully set forth herein.

36.     The allegations in Paragraph 36 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

37.     The allegations in Paragraph 37 are legal arguments and conclusions to which no response is required, and the statutory text speaks for itself; to the extent a response is required, Disney denies the allegations.

38.     Disney admits that it is not the sole property owner in the District but denies that the Development Agreement covers any land that is not Disney-owned.  Disney is without knowledge and information sufficient to form a belief as to the truth or falsity of the remaining allegations and on that basis denies the allegations.

39.     The allegations in Paragraph 39 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

40.     Disney admits that RCID held two public hearings, on January 25, 2023, and February 8, 2023, prior to entering the Development Agreement.  Disney is without knowledge and information sufficient to form a belief as to the truth or falsity of the remaining allegations and on that basis denies the allegations.

41.     Disney admits that prior to the January 25 and February 8 Board meetings, notices were published on January 18 and 27, respectively, and that the *Orlando Sentinel* is a newspaper of general circulation and readership in both Orange and Osceola Counties.  The remaining allegations in Paragraph 41 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

42.     The records referenced in Paragraph 42 speak for themselves and anything inconsistent with those records is denied.  Disney is without knowledge and information

sufficient to form a belief as to the truth or falsity of the remaining allegations and on that basis denies the allegations.

43.     The allegations in Paragraph 43 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

44.     The allegations in Paragraph 44 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

45.     The records referenced in Paragraph 45 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 45 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

46.     The allegations in Paragraph 46 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

47.     Disney repeats and reasserts each and every response to the allegations asserted in the foregoing paragraphs 1-34 with the same force and effect as if fully set forth herein.

48.     The records referenced in Paragraph 48 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 48 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

49.     The records referenced in Paragraph 49 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 49 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

50.     The records referenced in Paragraph 50 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 50 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

51.     The allegations in Paragraph 51 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

52.     The allegations in Paragraph 52 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

53.     The records referenced in Paragraph 53 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 53 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

54.     The allegations in Paragraph 54 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

55.     Disney repeats and reasserts each and every response to the allegations asserted in the foregoing paragraphs 1-34 with the same force and effect as if fully set forth herein.

56.     The records referenced in Paragraph 56 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 56 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

57.     The allegations in Paragraph 57 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

58.     The records referenced in Paragraph 58 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 58 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

59.     The records referenced in Paragraph 59 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 59 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

60.     The records referenced in Paragraph 60 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 60 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

61.     The allegations in Paragraph 61 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

62.     The records referenced in Paragraph 62 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 62 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

63.     The allegations in Paragraph 63 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

64.     Disney repeats and reasserts each and every response to the allegations asserted in the foregoing paragraphs 1-34 with the same force and effect as if fully set forth herein.

65.     The records referenced in Paragraph 65 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 65 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

66.     The records referenced in Paragraph 66 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 66 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

67.     The records referenced in Paragraph 67 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 67 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

68.     The records referenced in Paragraph 68 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 68 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

69.     The records referenced in Paragraph 69 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 69 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

70.     The allegations in Paragraph 70 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

71.     Disney repeats and reasserts each and every response to the allegations asserted in the foregoing paragraphs 1-34 with the same force and effect as if fully set forth herein.

72.     The allegations in Paragraph 72 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

73.     The records of RCID, Bay Lake, and Lake Buena Vista speak for themselves and anything inconsistent with those records is denied.

74.     The records of RCID, Bay Lake, and Lake Buena Vista speak for themselves and anything inconsistent with those records is denied.

75.     The records referenced in Paragraph 75 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 75 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

76.     The records referenced in Paragraph 76 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 76 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

77.     The records referenced in Paragraph 77 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 77 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

78.     The records referenced in Paragraph 78 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 78 are

legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

79.     The records referenced in Paragraph 79 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 79 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

80.     The records referenced in Paragraph 80 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 80 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

81.     The records referenced in Paragraph 81 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 81 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

82.     The records of RCID, Bay Lake, and Lake Buena Vista speak for themselves and anything inconsistent with those records is denied.

83.     The records referenced in Paragraph 83 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 83 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

84.     The records referenced in Paragraph 84 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 84 are

legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

85.     The records referenced in Paragraph 85 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 85 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

86.     The records referenced in Paragraph 86 speak for themselves and anything inconsistent with those records is denied.

87.     The allegations in Paragraph 87 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

88.     The allegations in Paragraph 88 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

89.     The allegations in Paragraph 89 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

90.     The records referenced in Paragraph 90 speak for themselves and anything inconsistent with those records is denied.  The remaining allegations are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

91.     The records referenced in Paragraph 91 speak for themselves and anything inconsistent with those records is denied.  The remaining allegations are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

92.     The records referenced in Paragraph 92 speak for themselves and anything inconsistent with those records is denied.  The remaining allegations are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

93.     The records referenced in Paragraph 93 speak for themselves and anything inconsistent with those records is denied.  The remaining allegations are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

94.     The allegations in Paragraph 94 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

95.     The allegations in Paragraph 95 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

96.     The allegations in Paragraph 96 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

97.     The allegations in Paragraph 97 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

98.     The allegations in Paragraph 98 are legal arguments and conclusions to which no response is required and the statutory text speaks for itself; to the extent a response is required, Disney denies the allegations.

99.     The allegations in Paragraph 99 are legal arguments and conclusions to which no response is required and the contractual text speaks for itself; to the extent a response is required, Disney denies the allegations.

100.    The allegations in Paragraph 100 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

101.    The allegations in Paragraph 101 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

102.    The allegations in Paragraph 102 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

103.    The records referenced in Paragraph 103 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 103 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

104.    The allegations in Paragraph 104 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

105.    Disney repeats and reasserts each and every response to the allegations asserted in the foregoing paragraphs 1-34 with the same force and effect as if fully set forth herein.

106.    The allegations in Paragraph 106 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

107.    The allegations in Paragraph 107 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

108.    The records referenced in Paragraph 108 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 108 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

109.     The records referenced in Paragraph 109 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 109 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

110.     The records referenced in Paragraph 110 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 110 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

111.     The allegations in Paragraph 111 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

112.     The allegations in Paragraph 112 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

113.     The allegations in Paragraph 113 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

114.     The allegations in Paragraph 114 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

115.     The records referenced in Paragraph 115 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 115 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

116.     The records referenced in Paragraph 116 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 116 are

legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

117.    The records referenced in Paragraph 117 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 117 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

118.    The allegations in Paragraph 118 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

119.    The allegations in Paragraph 119 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

120.    The allegations in Paragraph 120 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

121.    Disney repeats and reasserts each and every response to the allegations asserted in the foregoing paragraphs 1-34 with the same force and effect as if fully set forth herein.

122.    The allegations in Paragraph 122 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

123.    The allegations in Paragraph 123 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

124.    Disney admits that House Bill 9-B replaced the elected Board of Supervisors of RCID with an appointed Board hand-picked by the Governor.  The remaining allegations in Paragraph 124 are legal arguments and conclusions to which no response is required and the statute speaks for itself; to the extent a response is required, Disney denies the allegations.

125.    The allegations in Paragraph 125 are legal arguments and conclusions to which no response is required and the statute speaks for itself; to the extent a response is required, Disney denies the allegations.

126.    Disney admits that the Development Agreement and Restrictive Covenants were approved and adopted on February 8, 2023.  Disney also admits that House Bill 9-B was not in effect when the Development Agreement and Restrictive Covenants were approved and adopted by RCID.  The remaining allegations in Paragraph 126 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

127.    The allegations in Paragraph 127 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

128.    The records referenced in Paragraph 128 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 128 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

129.    The records referenced in Paragraph 129 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 129 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

130.    The records referenced in Paragraph 130 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 130 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

131.    The records referenced in Paragraph 131 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 131 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

132.    The allegations in Paragraph 132 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

133.    The allegations in Paragraph 133 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

134.    The allegations in Paragraph 134 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

135.    The records referenced in Paragraph 135 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 135 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

136.    The records referenced in Paragraph 136 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 136 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

137.    The records referenced in Paragraph 137 speak for themselves and anything inconsistent with those records is denied.  The remainder of the allegations in Paragraph 137 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

138.    The allegations in Paragraph 138 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

139.    The allegations in Paragraph 139 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

140.    Disney repeats and reasserts each and every response to the allegations asserted in the foregoing paragraphs 1-34 with the same force and effect as if fully set forth herein.

141.    The allegations in Paragraph 141 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

142.    The allegations in Paragraph 142 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

143.    The allegations in Paragraph 143 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

144.    The allegations in Paragraph 144 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

145.    Disney admits that Board members were deeded land and that the deeded land would be transferred back after a Board member left their seat.  Disney admits that the former RCID Board was elected by landowners.  Disney otherwise denies the allegations in Paragraph 145.

146.    Disney admits that the "District's general counsel at that time also represented Disney in real estate and other matters at the time of his engagement in 2019" under the terms of a written conflict waiver agreement.  The remaining allegations in Paragraph 146 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

147.     The records in Paragraph 147 speak for themselves and anything inconsistent with those records is denied.  Disney denies the remaining allegations in Paragraph 147.

148.     The records in Paragraph 148 speak for themselves and anything inconsistent with those records is denied.  Disney denies the remaining allegations in Paragraph 148.

149.     The allegations in Paragraph 149 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

150.     The allegations in Paragraph 150 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

151.     The records referenced in Paragraph 151 speak for themselves and anything inconsistent with those records is denied.  The remaining allegations in Paragraph 151 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

152.     The records referenced in Paragraph 152 speak for themselves and anything inconsistent with those records is denied.  The remaining allegations in Paragraph 152 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

153.     The records referenced in Paragraph 153 speak for themselves and anything inconsistent with those records is denied.  The remaining allegations in Paragraph 153 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

154.     The records referenced in Paragraph 154 speak for themselves and anything inconsistent with those records is denied.  The remaining allegations in Paragraph 154 are legal

arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

155.    The allegations in Paragraph 155 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

156.    The records in Paragraph 156 of speak for themselves and anything inconsistent with those records is denied.  The remaining allegations in Paragraph 156 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

157.    The allegations in Paragraph 157 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

158.    The allegations in Paragraph 158 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

159.    The records referenced in Paragraph 159 speak for themselves and anything inconsistent with those records is denied.  The remaining allegations in Paragraph 159 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

160.    The records referenced in Paragraph 160 speak for themselves and anything inconsistent with those records is denied.  The remaining allegations in Paragraph 160 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

161.    The allegations in Paragraph 161 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

162.     The allegations in Paragraph 162 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

163.     Disney repeats and reasserts each and every response to the allegations asserted in the foregoing paragraphs 1-34 with the same force and effect as if fully set forth herein.

164.     The allegations in Paragraph 164 are legal arguments and conclusions to which no response is required.

165.     The allegations in Paragraph 165 are legal arguments and conclusions to which no response is required.

166.     The records referenced in Paragraph 166 speak for themselves and anything inconsistent with those records is denied.  The remaining allegations in Paragraph 166 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

167.     The allegations in Paragraph 167 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

168.     The allegations in Paragraph 168 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

169.     The allegations in Paragraph 169 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

170.     The records referenced in Paragraph 170 speak for themselves and anything inconsistent with those records is denied.  The remaining allegations in Paragraph 170 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

171.     The allegations in Paragraph 171 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

172.     The allegations in Paragraph 172 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

173.     The allegations in Paragraph 173 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

174.     The allegations in Paragraph 174 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

175.     The allegations in Paragraph 175 are legal arguments and conclusions to which no response is required; to the extent a response is required, Disney denies the allegations.

Disney denies that the relief requested in the Prayer for Relief is appropriate or warranted.

## DISNEY'S AFFIRMATIVE DEFENSES

Without assuming any burden of proof that it would not otherwise bear, Disney asserts the following defenses.  Disney reserves the right to assert further defenses that may be identified in the course of further investigation, discovery, or litigation of this action.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff lacks standing to assert its claims for relief, including for the following reasons. With respect to Count I, Plaintiff fails to assert that it was entitled to receive notice, that it never received notice, or that it suffered any injury as a result of its predecessor RCID's alleged failure to provide sufficient notice, let alone that it has standing to invoke a purported injury caused by its predecessor RCID; indeed, in Paragraph 39 of the Complaint, Plaintiff asserts Count I on behalf of unspecified "other property owners."  As to Count II, Plaintiff fails to identify how the

26

asserted lack of an adopted ordinance caused any injury to Plaintiff or assert that it has standing to invoke a purported injury caused by its predecessor RCID, let alone identify how an injunction against enforcement of the Contracts would remedy any such injury.  Count III alleges that the Contracts invade the authority and jurisdiction of two municipalities without articulating any basis for Plaintiff—which is neither of those municipalities—to have standing to bring such a claim.  Under Count IV, Plaintiff is challenging a tax it (itself) would potentially levy, not pay or otherwise suffer from.  Count V focuses on alleged procedural infirmities with an amendment to the comprehensive plan, but Plaintiff is not an entity entitled to notice of that amendment.  Count VI is a claim by a government entity that it—itself—delegated too much authority away.  Such fabrication of a self-imposed alleged injury does not suffice for standing.  Count VII, which reflects a claim by a government entity that a contract *it* entered violates its (the government's) own public policy, fails on standing grounds for the same reason.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims fail because Plaintiff is equitably estopped from asserting that the Development Agreement and the Restrictive Covenants it entered into with Disney are invalid based on Plaintiff's own procedural or substantive failures.  Equitable estoppel bars these claims because: (1) the District represented to Disney that it had the authority to enter into the Development Agreement and the Restrictive Covenants; (2) Disney relied on this representation in entering into the Development Agreement and the Restrictive Covenants with Plaintiff; and (3) Disney has detrimentally relied on Plaintiff's representation that Plaintiff could enter into these agreements by planning for development in accordance with the terms of the Contracts. Based on these and other actions, Plaintiff is estopped from asserting the Development Agreement and Restrictive Covenants are invalid.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of waiver as Plaintiff received deliberate opportunities to challenge the Development Agreement and Restrictive Covenants in every manner currently asserted before this lawsuit was filed.  After appearing at and holding public meetings, and having due opportunity to object and raise such challenges, no such objections or challenges were made.  Plaintiff had actual and constructive knowledge of any rights asserted here, and intentionally relinquished these rights.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail because the relief that Plaintiff seeks against Disney, if granted, would be inequitable and unjust to Disney as it would void duly-entered Contracts upon which Disney has relied in its corporate operations and planning.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's requested equitable remedies are barred under the doctrine of unclean hands. Plaintiff comes to this court with unclean hands because: (1) if the Development Agreement and Restrictive Covenants were indeed improperly executed and are invalid as Plaintiff claims, then Plaintiff acted condemnably by entering into the Development Agreement and the Restrictive Covenants with Disney, without following procedures necessary to ensure the validity of its Contracts, and by now attempting to void the agreements it signed; (2) Disney has acted in reliance on this condemnable conduct by entering into the Contracts and planning for development with the understanding that Plaintiff would honor them; (3) this condemnable conduct relates to and forms a basis of the litigation at hand; and (4) Plaintiff's condemnable conduct will result in injury to Disney by way of financial harm, harm to its business operations,

and harm to its constitutional right to engage in protected speech.  For these and other reasons,

Plaintiff comes to this court with unclean hands and should be denied the requested relief.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred due to the material misrepresentations of fact made by

Plaintiff regarding: the authority of Plaintiff to enter into the Contracts, the substantive validity

of the Contracts, and the sufficiency of the process by which the Contracts were enacted.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail because Plaintiff has acted and continues to act unconstitutionally

under the Florida Constitution, article 1, section 10 (the Contracts Clause); article 10, section

6(a) (the Takings Clause); article 1, section 9 (the Due Process Clause); and article 1, section 4

(the Free Speech Clause).  Accordingly, the relief that Plaintiff seeks against Disney, if granted,

would be unconstitutional under the same constitutional provisions.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff cannot pursue Count IV because it has no ripe claim for an alleged violation of

article VII, section 12 of the Florida Constitution.  Plaintiff cannot assert a claim under article

VII, section 12 of the Florida Constitution unless and until Plaintiff issues bonds expressly

payable from ad valorem taxes.  A court cannot pass on the validity of bonds unless and until the

specific nature of the bonds is known.  Neither the Development Agreement nor Restrictive

Covenants constitute pledges of ad valorem tax debt.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff cannot pursue Count V for alleged failure to comply with applicable law in

adopting the 2022 amendments to the Comprehensive Plan, including because Plaintiff's claim is

barred by the statute of limitations and laches.  Plaintiff has failed to follow the procedures

outlined in Fla. Stat. § 163.3184.  Under Fla. Stat. § 163.3184(5)(a), "[a]ny affected person"

must challenge a comprehensive plan or comprehensive plan amendment's compliance with

applicable law "within 30 days after the local government adopts the amendment" by filing a

petition with the Florida Division of Administrative Hearings.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to join indispensable parties.  To the extent the Complaint calls into

question the validity of the 2022 amendments to the Comprehensive Plan and revisions to the

land development regulations, the Cities of Bay Lake and Lake Buena Vista must be made

parties to the litigation.  *See* Fla. Stat. § 86.091 ("In any proceeding concerning the validity of a

county or municipal charter, ordinance, or franchise, such county or municipality shall be made a

party and shall be entitled to be heard."); *see also Yanes v. OC Food & Beverage LLC*, 300 So.

3d 798 (Fla. 5th DCA 2020) (reversing and remanding trial court order finding county ordinance

unconstitutional where plaintiff failed to join county as a party).  Plaintiff has failed to join the

Cities of Bay Lake and Lake Buena Vista as parties here.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail as they, and Plaintiff's lawsuit, violate public policy.  Plaintiff is

infringing upon the right to exercise free speech in connection with public issues as protected by

article 1, section 4 of the Florida Constitution.  It is the public policy of the State of Florida that a

person or governmental entity not engage in a strategic lawsuit against public participation, such

as this lawsuit, because such actions are inconsistent with the right of persons to exercise

constitutional rights of free speech in connection with public issues.  The prohibition of such

lawsuits is fundamental state policy as set forth by the Florida legislature, and is necessary to

preserve the constitutional rights of persons in Florida.  It is further the expressed intent of the

Florida legislature that strategic lawsuits against public participation, such as this one, be

expeditiously disposed of by the courts on public policy grounds.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff cannot obtain relief on its claims because such relief would violate Plaintiff's

own enabling legislation, Fla. Laws ch. 2023-5, which states that "[a]ll lawful debts, bonds,

obligations, contracts, franchises, promissory notes, audits, minutes, resolutions, and other

undertakings of the Reedy Creek Improvement District are validated and shall continue to be

valid and binding on the Central Florida Tourism Oversight District in accordance with their

respective terms, conditions, and covenants."  Both the Development Agreement and the

Restrictive Covenants were ratified by the above enabling legislation, and other minutes and

resolutions passed by Plaintiff.

## COUNTERCLAIM FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

Defendant/Counter-Plaintiff Walt Disney Parks and Resorts U.S., Inc. ("Disney") files

and serves this Counterclaim for Declaratory, Injunctive, and Other Relief ("Counterclaim")

against Plaintiff/Counter-Defendant Central Florida Tourism Oversight District ("CFTOD" or

"the District") in the above-styled case, cause and court, and alleges as follows:

## PARTIES

1.      Disney is a Florida corporation with its principal place of business in Orange

County, Florida.  Disney owns and operates Walt Disney World in Central Florida.  Guests from

around the world visit to enjoy a Disney vacation, where family members of all ages laugh, play,

and learn together.

2.      CFTOD is an independent special district established by the Florida Legislature in

1967 pursuant to House Bill 486, Chapter 67-764, which maintains an office and does business

in Orange County, Florida.  The District exercises authority over approximately 25,000 acres of land located in Orange and Osceola Counties.  Prior to February 27, 2023, the date upon which House Bill 9B, Chapter 2023-5, became law, the District was known as the Reedy Creek Improvement District ("RCID").  Importantly, "[a]ll lawful debts, bonds, obligations, contracts, franchises, promissory notes, audits, minutes, resolutions, and other undertakings of the Reedy Creek Improvement District are validated and shall continue to be binding on the Central Florida Tourism Oversight District in accordance with their respective terms, conditions, and covenants."  Ch. 2023-5, § 2, Laws of Fla.

3.      Pursuant to *England v. State Board of Medical Examiners*, 375 U.S. 411 (1964), Disney respectfully reserves the right to have the U.S. District Court independently address any and all available federal claims not expressly raised herein.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over the subject matter of this action because the amount in controversy exceeds $50,000.00, exclusive of interest, fees, and recoverable costs, and because the Court has jurisdiction to grant declaratory relief pursuant to chapter 86, Florida Statutes.

5.      Venue is proper in this Court because the Defendant resides, the cause of action accrued, and the subject property is located in Orange County, Florida.

6.      All conditions precedent to the institution of this lawsuit have occurred, been performed, or been waived.

## FACTUAL BACKGROUND

7.      In March 2022, the Florida Legislature passed the Parental Rights in Education Act ("House Bill 1557").

32

8.      The public discussion before and after the bill's passage was robust not only in Florida, but across the country.  As a Florida corporation and taxpayer with tens of thousands of Florida-based employees, Disney took an interest in the bill.

9.      On March 9, 2022, the then-CEO of The Walt Disney Company (Disney's parent company), called Governor DeSantis to express the company's concern.  Governor DeSantis recounts telling Disney's then-CEO, "'You shouldn't get involved[;] it's not going to work out well for you.'"[1]

10.     On March 28, 2022, the day the Florida Legislature passed House Bill 1557, The Walt Disney Company issued a statement expressing its views that the legislation "never should have been signed into law," that its "goal as a company is for this law to be repealed by the [L]egislature or struck down in the courts," and that The Walt Disney Company "remains committed to supporting the national and state organizations working to achieve that."[2]

11.     On March 29, 2022, Governor DeSantis said that he thought The Walt Disney Company's March 28, 2022 statement had "crossed the line" and pledged "to make sure we're fighting back" in response to Disney's protected speech.[3]

12.     On March 30, 2022, State Representative Spencer Roach revealed that the Legislature was considering dissolving RCID and announced, "If Disney wants to embrace woke ideology, it seems fitting that they should be regulated by Orange County."[4]

---

[1]      Kimberly Leonard, *Florida Gov. Ron DeSantis Said He Warned Disney Not to Get Involved in Schools Debate: 'It's Not Going to Work Out Well for You,'* BUSINESS INSIDER (June 8, 2022), https://www.businessinsider.com/desantis-sayshe-told-disney-to-stay-out-of-dont-say-gay-fight-2022-6.
[2]      Press Release, The Walt Disney Company, Statement From The Walt Disney Company on Signing of Florida Legislation (Mar. 28, 2022), https://thewaltdisneycompany.com/statement-from-the-walt-disney-company-onsigning-of-florida-legislation/.
[3]      David Kihara, *DeSantis Says Disney 'Crossed the Line' in Calling for 'Don't Say Gay' Repeal*, POLITICO (Mar. 29, 2022), https://www.politico.com/news/2022/03/29/desantis-disney-dont-say-gay-repeal-00021389.
[4]      Fatma Khaled, *Disney at Risk of Losing Its Own Government in Florida*, NEWSWEEK (Apr. 1, 2022), https://www.newsweek.com/disney-risk-losing-itsown-government-florida-1693955.

13.     On April 20, 2022, the Senate passed Senate Bill 4C, which was later adopted by the House and signed by Governor DeSantis.  House sponsor Representative Randy Fine said to the Florida House State Affairs Committee: "You got me on one thing, this bill does target one company. It targets The Walt Disney Company."[5]  Senator Joe Gruters said, "Disney is learning lessons and paying the political price of jumping out there on an issue."[6]

14.     Senate Bill 4C set RCID to dissolve on June 1, 2023.

15.     Amid a climate of escalating retaliation against Disney by the Florida government, Disney sought de-escalation, including through several attempts to spark a productive dialogue with the DeSantis Administration.  These efforts were unsuccessful.  The threatening rhetoric heightened, and Disney worked with its local government to secure future plans and protect investments.

16.     On January 18, 2023, RCID issued public notice in the Orlando Sentinel: "NOTICE IS HEREBY GIVEN that the Reedy Creek Improvement District will hold the first of two public hearings," on January 25, 2023, "on the intent to consider a development agreement[.]"  The publication continued with specifics about the contract terms.

17.     In accordance with the Orlando Sentinel notice, RCID considered the Development Agreement at the January 25 public hearing.  As reflected in the minutes of the January 25 meeting, attendees included representatives from WESH 2 News, the Orlando Sentinel, Channel 9 WFTV, Channel 6 WKMG, Telemundo, and the Orlando Business Journal. The RCID District Administrator advised that "the Board is being asked to consider a proposed

---

[5]     Hearing on HB 3C Before the Fla. H.R. State Affairs Comm., Special Session 2022C (Apr. 19, 2022) (remarks by Representative Randy Fine, sponsor of HB 3C, companion bill to SB 4C, starting at 1:13:00), https://www.myfloridahouse.gov/VideoPlayer.aspx?eventID=8085.
[6]     Jacob Ogles, *Joe Gruters, Despite Special Session Votes, Still Sees a Beautiful Tomorrow with Disney*, FLORIDA POLITICS (Apr. 22, 2022), https://floridapolitics.com/archives/518669-joe-gruters-despite-special-session-votes-stillsees-a-beautiful-tomorrow-with-disney.

development agreement between the District and Walt Disney Parks and Resorts U.S., Inc. (Disney)." He explained several key provisions of the Development Agreement, including that it would "[v]est[] development entitlements in Disney as the owner of the vast majority of the lands within the District and the master developer of the Walt Disney World resort." The RCID board president asked if there were any public comments. There were none.

18.     After that discussion and opportunity for public comment, RCID gave notice that the matter would be on the agenda again for the next public meeting, set for February 8, 2023. Two days after the first public hearing, RCID published a second notice in the Orlando Sentinel: "NOTICE IS HEREBY GIVEN that the Reedy Creek Improvement District will hold the second and final of two public hearings," on February 8, 2023, "on the intent to consider a development agreement pursuant to Chapter 163, Florida Statutes," and again continuing with accompanying specifics about the contract terms.

19.     In accordance with that Orlando Sentinel notice, RCID considered the matter for a second time at the February 8 public hearing. As reflected in the minutes, attendees again included representatives from several news outlets including WESH 2 News, Fox 35, the Orlando Sentinel, Channel 9 WFTV, Bloomberg, and the Orlando Business Journal.

20.     The District Administrator advised that there had been no changes to the Development Agreement since its first reading at the previous meeting. He added that this February 8 meeting was the second of two public hearings required to approve the Development Agreement. The RCID board president asked if there were any public comments and there were none. Upon a motion to approve the Development Agreement, and a second to the motion, the RCID board unanimously approved it.

21.     At the February 8 meeting, the District Administrator also requested board approval and authorization to sign a Declaration of Restrictive Covenants.  He explained that the Restrictive Covenants are "associated" with the Development Agreement.  He then described several provisions of the Restrictive Covenants.  The RCID board president asked if there were any public comments and, again, there were none.  Upon a motion to approve the Restrictive Covenants, and a second to the motion, the RCID board unanimously approved them.

22.     Disney and RCID executed the Contracts that same day (February 8), and then recorded them in official county records.

23.     The Development Agreement precludes Disney from using its land except as authorized in the Development Agreement, which permits Disney to use its land within the District up to a defined maximum development program.  Down to the square foot, the maximum development program specifies how much mixed-use commercial space for offices and retail/restaurants Disney can build through 2032.  The maximum development program also approves one additional major theme park and two additional minor theme parks for construction through 2032.  Finally, the maximum development program approves 14,000 additional keys for hotels and resorts.

24.     Thus, the maximum development program tracks the planning set forth in the Comprehensive Plan governing the District.  All development rights and entitlements, as established by the maximum development program, are vested in Disney.  The Development Agreement further provides that any proposed development utilizing the maximum development program must follow the development review and approval process defined in the District's land development regulations.

25.     The Development Agreement recognizes that the maximum development program will require new or expanded facilities in public infrastructure systems and requires that the District shall fund, design, and construct those public facilities.  Thus, with respect to any land owned by Disney that is needed for public facilities, Disney agrees to sell its land to the District (instead of the District having to go through condemnation proceedings) and agrees not to seek payment from the District in excess of the land's fair market value as determined by a jointly-approved appraiser.

26.     The Restrictive Covenants provide that the standards under which the District's properties exist as of the Restrictive Covenants' effective date shall be maintained.  Under the Restrictive Covenants, the exterior design, appearance, and exterior aesthetic qualities of any improvements to any portion of the District's properties are subject to Disney's prior review and comment, which Disney cannot unreasonably withhold, condition, or delay.

27.     In relation to the District's properties, the Restrictive Covenants provide that the District shall not use names or symbols associated with Disney without Disney's express prior written approval; use fanciful characters (such as Mickey Mouse) or other intellectual property in designs, symbols, or other representations created by Disney; sell or distribute merchandise, souvenirs, or other items referring to Disney Properties or other Disney properties or Disney logos or trademarks; or use, reproduce, sell, distribute, or display any work copyrighted by Disney.

28.     On February 27, 2023, three weeks after the Contracts had been executed following public notice and hearing, Florida Governor Ron DeSantis signed into law House Bill 9B, which replaced RCID's landowner-election process with a Governor-appointment process

and changed RCID's name to CFTOD.  The same day, Governor DeSantis announced the names of the five individuals he had selected to replace the elected members of the District's board.

29.     In one important respect, things remained unchanged:  The bill left RCID's financial and contractual obligations intact.  Specifically, all preexisting contracts, debts, bonds, and other liabilities "shall continue to be valid and binding on CFTOD in accordance with their respective terms, conditions, and covenants."[7]

30.     The new members of the District's board sat for their first meeting on March 8, 2023.

31.     On March 29, 2023, the new members of the District's board gathered for their second meeting.  At that meeting, CFTOD members claimed that they had just discovered the Contracts (which had been publicized in the press, read out at board meetings, and recorded in county records almost two months earlier).

32.     On April 17, 2023, Governor DeSantis convened a press conference to discuss next steps in the Florida government's campaign against Disney.  He declared that forthcoming legislation would "make sure that people understand that you don't get to put your own company over the will of the people of Florida."  The Governor's office issued a press release later that day, announcing, "Disney's corporate kingdom is over," and that "the agreements will be nullified by new legislation that I intend to execute. … I look forward to the additional actions that the state control board will implement in the upcoming days."

33.     Senator Blaise Ingoglia also spoke at the press conference.  He threatened, "I know this Governor, and I know this Governor well, so I have a couple words for Disney:  'You are not going to win this fight. This Governor will.'"

---

[7]     House Bill 9-B, Fla. Laws ch. 2023-5 ("House Bill 9B"); Fla. Laws ch. 2023-5 ("CFTOD Charter") § 4(1).

34.     On April 19, 2023, the new members of the District's board sat for their third meeting.  At the meeting, the District's outside counsel attacked Disney's exercise of development contract rights and proclaimed that Disney's "efforts are illegal, and they will not stand"—even though he acknowledged that it is "well established under Florida law that a development agreement and a restrictive covenant" are "contract[s]" and are "governed by the law of contract."  The District's counsel also admitted that Disney "did publish notice … in the newspaper" before entering into the Development Agreement.

35.     When the board chair asked the District's counsel "what action he recommends that the board take," the board's special counsel recommended that the board move to direct counsel to prepare "a resolution" for consideration at the board's April 26, 2023 meeting that would (1) declare the Contracts void ab initio, (2) make findings of fact in support thereof, and (3) direct action as needed to assert the District's positions on these issues.  A motion in support of this action passed with unanimous support.

36.     The same day, the board published the agenda for the April 26, 2023 meeting. The agenda included a single item under "New Business," labeled "Approval of legislative findings regarding and declare [sic] the Development Agreement and Declaration of Restrictive Covenants entered into by Reedy Creek Improvement District and Walt Disney Parks and Resorts U.S. void ab initio and direction to litigation counsel regarding same."

37.     On April 24, 2023, the District published proposed "legislative findings" for its predetermined voiding of the Contracts.  The purported findings asserted a scattershot collection of alleged contract infirmities and then declared the Contracts to be "void and unenforceable."

38.     On April 26, 2023, just as the District previewed it would do the week before, the District's board unanimously approved the legislative findings and declaration, declaring that the

Contracts were "void and unenforceable."  In its declaration, CFTOD stated: "[T]he Board has no desire to readopt or ratify [the Contracts]."

39.     The District has made clear that it intends to abide by the legislative findings and declaration by refusing to comply with the terms of the Contracts.

40.     The legislation Governor DeSantis promised in his April 17 press conference also came to pass.  On April 18, 2023, Senator Ingoglia introduced an amendment to Senate Bill 1604 that voided the Contracts.

41.     As previewed by the statements of the Governor and his allies, the amendment was drafted to target the Contracts specifically—and only the Contracts. It states:

> An independent special district is precluded from complying with the terms of any development agreement, or any other agreement for which the development agreement serves in whole or part as consideration, which is executed within 3 months preceding the effective date of a law modifying the manner of selecting members of the governing body of the independent special district from election to appointment or from appointment to election.

42.     CFTOD, Disney's only counter-party to the Contracts, is the "independent special district" charged with enforcing Senate Bill 1604 vis-à-vis Disney.  CFTOD was empowered to readopt the Contracts "within 4 months of taking office," but elected not to do so.

43.     Senator Ingoglia called the amendment to Senate Bill 1604 a "reversion" of the Contracts, which he said RCID and Disney "put in place at the last second."

44.     During the Florida House's May 3, 2023 floor session, multiple House members explicitly tied Senate Bill 1604 to the Contracts.  Representative Toby Overdorf stated, "[Disney] chose to break the law, and now we have to come back and re-write it one more time so that other special districts don't follow that bad example."  Likewise, Representative William Robinson, Jr., speaking in favor of the bill, stated:  "Two of my most terrifying words are 'lame duck.'  And that's really what we're dealing with, right here. A lame duck board that is saddling

a new board with obligations. … This development agreement has saddled the new board with obligations that the old board in a lame duck session was doing."

45.     By May 4, 2023, both the Senate and the House had passed Senate Bill 1604. One day later, May 5, 2023, Governor DeSantis signed the bill into law.

## COUNT I
### (Breach of Contract)

46.     Disney realleges and incorporates by reference paragraphs 1 through 45.

47.     This is an action for breach of contract.

48.     Disney entered into two written contracts with the District on February 8, 2023.

49.     The Contracts are valid contracts and are binding on the District.

50.     Disney has fully complied with any and all of its obligations under the Contracts and remains ready, able, and willing to perform.

51.     The District has repudiated its duty to perform under the Contracts, including by declaring them void ab initio.

52.     In the alternative, the District has a duty under the terms of the Contracts to do such further acts and assurances as shall be reasonably requested by Disney to carry out the intent of the Contracts and give effect thereto and the District has refused to perform its obligations under the Contracts and has instead breached the Contracts by, among other things, declaring them void ab initio.

53.     As a direct and proximate result of the District's anticipatory repudiations and, in the alternative, material failure to perform its duties under both Contracts, Disney has suffered and will continue to suffer damages, including consequential damages.

**WHEREFORE**, Disney respectfully requests that this Court enter a judgment against the District for damages and, in the alternative, awarding such other relief as this Court deems proper, including the equitable relief of ordering the District to comply with the Contracts.

**COUNT II**
**(Request for Declaratory Relief)**

54.    Disney realleges and incorporates by reference paragraphs 1 through 45.

55.    This is an action for declaratory judgment under Chapter 86, Florida Statutes.

56.    The District contends that it has no obligations under the Contracts.

57.    Disney desires for the parties to comply with their agreed-upon obligations under the Contracts.

58.    Disney has a bona fide, actual, present, and practical need for a declaration of the parties' rights and obligations under the Contracts.

59.    The parties' rights and obligations under the Contracts depend upon the Court's application of the law to the facts.

60.    Disney and the District have an actual, present, adverse, and antagonistic interest regarding the Contracts.

61.    All interested persons and entities are before the Court in this action.

62.    Disney seeks relief not out of curiosity or for legal advice but to resolve a present controversy regarding the parties' obligations under the Contracts.

**WHEREFORE**, Disney respectfully requests that this Court enter a judgment declaring that the Contracts exist and are valid and enforceable; confirming the terms of the Contracts; declaring that the District must perform its obligations under the Contracts; and awarding such other relief as this Court deems proper.

## COUNT III
**(Specific Performance)**

63.      Disney realleges and incorporates by reference paragraphs 1 through 45.

64.      This is an action for specific performance of a contract.

65.      Disney entered into two written contracts with the District on February 8, 2023.

66.      The Contracts are valid contracts and are binding on the District.

67.      Disney has fully complied with its obligations under the Contracts and remains ready, able, and willing to continue performance.

68.      The District has a duty under the terms of the Contracts to do such further acts and assurances as shall be reasonably requested by Disney to carry out the intent of the Contracts and give effect thereto.

69.      The District has refused to perform and has instead breached the Contracts by, among other things, declaring the Contracts void ab initio.

70.      Disney will be irreparably harmed if the District is allowed to avoid its contractual obligations under the Contracts.

71.      Disney has no adequate legal remedy for the District's breach of the Contracts, as an award of damages would not fully compensate Disney for the losses caused by the District's breach of the Contracts.

72.      An order directing the District's specific performance of the contract will be fair and practical.  The Contracts are valid, enforceable contracts that clearly outline the parties' obligations to perform.  The Contracts were properly noticed, subject to public hearing, and adopted after a vote of the District's board.

73.     Disney is entitled to entry of an order requiring the District to specifically perform its obligations and responsibilities under the Contracts as specified herein, and permanently enjoining the District from taking any action to violate and breach the Contracts.

**WHEREFORE**, Disney respectfully requests that this Court enter an order directing and ordering the District to do all such acts as may be required under the terms of the Contracts to fully comply with the duties, obligations, and undertakings as expressed therein by the District.

## COUNT IV
### (Injunctive Relief)

74.     Disney realleges and incorporates by reference paragraphs 1 through 45.

75.     This is an action for injunctive relief.

76.     Disney is a party to the Development Agreement and is entitled to all the rights and benefits thereto.  Notwithstanding the foregoing, the District has refused and continues to refuse to comply with the terms of the Development Agreement, and has instead purported to declare the Development Agreement void ab initio.

77.     Section 163.3243, Florida Statutes, provides for injunctive relief to enforce the terms of a development agreement.

78.     Disney is an "aggrieved or adversely affected" party with standing to enforce the terms of the Development Agreement under sections 163.3243 and 163.3215(1)-(2) of the Florida Statutes.

79.     As a result of the District's refusal to comply with the terms of the Development Agreement, Disney has suffered and will continue to suffer an adverse effect to interests protected by the Development Agreement and the Comprehensive Plan.  As a party to the Development Agreement, a developer under the Development Agreement, and the District's

largest landowner, Disney has interests that exceed the general interest in community good shared by all.

80.     Disney is entitled to entry of an injunction requiring the District to comply with the terms of the Development Agreement.

**WHEREFORE**, Disney respectfully requests that this Court enter an order enjoining the District from violating the terms of the Development Agreement and requiring the District to comply with the terms of the Development Agreement.

<u>**COUNT V**</u>
**(Breach of Duty of Good Faith and Fair Dealing)**

81.     Disney realleges and incorporates by reference paragraphs 1 through 45.

82.     Every contract in Florida includes an implied covenant that the parties will perform in good faith.  The purpose of this covenant is to protect the reasonable expectations of the contracting parties in light of their express agreement.

83.     As set forth above, Disney entered into two written Contracts with the District on February 8, 2023.

84.     Both Contracts are valid contracts and are binding on the District.

85.     Disney has fully complied with its obligations under the Contracts.

86.     The District has a duty under the terms of the Contracts to do such further acts and assurances as shall be reasonably requested by Disney to carry out the intent of the Contracts and give effect thereto.

87.     Disney reasonably expected that the District would comply with its obligations under the Contracts.

88.     The District has refused to perform and has instead breached its duty of good faith and fair dealing under the Contracts by, among other things, declaring the Contracts void ab initio.

**WHEREFORE**, Disney respectfully requests that this Court enter an order directing and ordering the District to do all such acts as may be required under the terms of the Contracts to fully comply with the duties, obligations, and undertakings as expressed therein by the District.

## COUNT VI
### (Fla. Const. Contracts Clause Violation)

89.     Disney realleges and incorporates by reference paragraphs 1 through 45.

90.     By abrogating the Contracts and enforcing Senate Bill 1604, the District has violated Disney's rights under the Florida Constitution, article 1, section 10, known as the "Contracts Clause," which states that "[n]o … law impairing the obligation of contracts shall be passed."

91.     The Contracts Clause prohibits government entities from impairing their own contractual obligations toward private entities.  "Impairing" "mean[s] to make worse; to diminish in quantity, value, excellency, or strength; to lessen in power; to weaken." *Citrus Cnty. Hosp. Bd. v. Citrus Mem'l Health Found.*, 150 So. 3d 1102, 1108 (Fla. 2014) (citation omitted).  The Constitution has "generally prohibited all forms of contract impairment," including conduct "that detracts in any way from the value of the contract."  *Id.* (citations omitted).

92.     The Florida Supreme Court has pronounced the "right to contract" to be "one of the *most sacrosanct rights* guaranteed by our fundamental law."  *Chiles v. United Faculty of Fla.*, 615 So. 2d 671, 673 (Fla. 1993) (emphasis added).

93.     The District's legislative declaration and Senate Bill 1604 violate that most sacrosanct right and thus deprive Disney of its rights under the Contracts Clause.  By declaring

the Contracts void, the legislative declaration and Senate Bill 1604 purport to rescind Disney's

rights and protections under the Contracts and to relieve the District of any obligation to comply

with its obligations under the Contracts or to pay damages for any breaches.

94.     The substantial—indeed, total—impairment of Disney's contract rights was not

"the least restrictive means possible" to achieve a "sufficient countervailing" public purpose, as

is required to survive Contracts Clause scrutiny.  *Pomponio v. Claridge of Pompano Condo.,*

*Inc.*, 378 So. 2d 774, 782 (Fla. 1979).  Where, as here, "the impairment is severe," there must be

a "'significant and legitimate public purpose'" behind the impairment.  *Searcy, Denney, Scarola,*

*Barnhart & Shipley, etc. v. State*, 209 So. 3d 1181, 1192 (Fla. 2017) (quoting *Energy Rsrvs.*

*Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983)).  The Contracts were

abrogated as part of an explicit campaign of official government retaliation against Disney for

expressing a viewpoint the Governor, Legislature, and District disagreed with—the opposite of a

"significant and legitimate public purpose."

95.     Any other asserted reasons for abrogating the Contracts are pretextual.  RCID was

fully empowered to enter into the Contracts.  Special districts commonly enter into contracts

with developers, including special districts with governing structures defined by land ownership.

And the law establishing the District expressly provides that all preexisting RCID contracts

remain fully enforceable.  CFTOD Charter § 1.

96.     Just as in other long-term development contracts in other special districts, the

Contracts here involve land-use rights and obligations, not sovereign or police powers that

special districts are legally barred from delegating.  The Contracts establish Disney's rights

concerning use of its property and, as expressly authorized by RCID's charter, restrict the

District from using its own property for non-public purposes that interfere with Disney's

development of its property.  Fla. Laws ch. 67-764 ("Reedy Creek Enabling Act") § 9
(authorizing RCID to subject its land to "encumbrance").  In exchange, the Contracts restrict
Disney's use of its own property to specified development purposes and obligate Disney to
convey its property at fair market value when needed for public purposes.

97.     Neither the District nor the Legislature has identified any legitimate reason or
need to treat the Contracts differently from long-term development agreements entered into by
developers in other special districts.

98.     Even if the District could articulate a "significant and legitimate public purpose"
implicated by the Contracts, *Searcy*, 209 So. 3d at 1192, that is not implicated by other special
district development contracts, it cannot show that complete abrogation of the Contracts is "the
least restrictive means possible," *Pomponio*, 378 So. 2d at 782, to serve such a purpose.  The
District has not identified any significant government interest justifying its abrogation at all,
much less any significant interest that cannot be satisfied by modifying some provision or
provisions of the Contracts.

99.     The decision of the District and the State Legislature to abrogate the Contracts
completely, rather than pursue modification of whatever provisions the District or the State
Legislature claims to be unlawful, underscores its motivation to punish Disney for its political
speech rather than to operate as a good-faith counterparty in the continued development of the
District.

**WHEREFORE**, Disney respectfully requests that this Court enter an order declaring that
abrogation of the Contracts violates Disney's rights under the Contracts Clause and directing the
District to do all such acts as may be required under the terms of the Contracts to fully comply
with the duties, obligations, and undertakings as expressed therein.

## <u>COUNT VII</u>
### (Fla. Const. Takings Clause Violation)

100.    Disney realleges and incorporates by reference paragraphs 1 through 45.

101.    The District's legislative declaration and enforcement of Senate Bill 1604 take Disney's property without providing just compensation, in violation of the Takings Clause of the Florida Constitution, article 10, section 6(a).  The Takings Clause provides: "No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner …."

102.    For purpose of the Takings Clause, "property" includes contractual obligations. "The right to make contracts … is both a liberty and property right and is within the protection of the guaranties against the taking of liberty or property without due process of law."  *Lugassy v. Lugassy*, 298 So. 3d 657, 659 (Fla. 4th DCA 2020) (quoting *State ex rel. Fulton v. Ives*, 167 So. 394, 398-399 (1936)).

103.    The Florida Supreme Court has interpreted the state and federal Takings Clauses "coextensively."  *St. Johns River Water Management Dist. v. Koontz*, 77 So. 3d 1220, 1222 (Fla. 2011), *reversed on other grounds by Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013).  Though "not all property interests are compensable under the Takings Clause," *Gulf Coast Transp., Inc. v. Hillsborough County*, 352 So. 3d 368, 379 (Fla. 2d DCA 2022), the U.S. Supreme Court has made clear that when a law overrides "substantive" contract rights in "specific" real property, the Clause's protections apply.  *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 590 (1935); *see Pa. Coal Co. v. Mahon*, 260 U.S. 393 (1922) (regulation overriding contractual right to mine land invalid under Takings Clause).

104.    The Contracts secure valuable substantive rights in specific property, *i.e.*, the parcels explicitly identified in the Contracts.  The Development Agreement, for example, grants

Disney various long-term rights in the use and development of its land, consistent with the

Comprehensive Plan that the DeSantis Administration found was compliant with Florida law.

The Restrictive Covenants likewise protect Disney's rights to develop its land by limiting the

District's ability to use its adjacent lands in ways that damage or destroy Disney's development

rights.  *Cf. Stop the Beach Renourishment, Inc. v. Florida Dep't of Env't Prot.*, 560 U.S. 702,

713 (2010) (Scalia, J., concurring) ("[W]hen the government uses its own property in such a way

that it destroys private property, it has taken that property.").  The legislative declaration and

Senate Bill 1604 thus take Disney's property without just compensation.

    **WHEREFORE**, Disney respectfully requests that this Court enter an order declaring that

the taking of Disney property rights without payment of just compensation violates the Takings

Clause and that the property rights set forth in the Contract remain in effect and enforceable.

Disney is further entitled to an order enjoining the District from enforcing the legislative

declaration and Senate Bill 1604.

## <u>COUNT VIII</u>
### (Fla. Const. Due Process Clause Violation)

    105.    Disney realleges and incorporates by reference paragraphs 1 through 45.

    106.    The District's legislative declaration and Senate Bill 1604 abrogate the Contracts

without any rational basis and for only impermissible reasons, in violation of the Due Process

Clause of the Florida Constitution, article 1, section 9.  The Due Process Clause provides: "No

person shall be deprived of life, liberty or property without due process of law … ."

    107.    Because "[t]he right to make contracts … is both a liberty and property right and

is within the protection of the guaranties against the taking of liberty or property without due

process of law," the State is prohibited from "impos[ing] any arbitrary or unreasonable restraint

on the freedom of contract."  *State ex rel. Fulton v. Ives*, 167 So. 394, 399 (Fla. 1936).  Restraint

on the right to contract thus "can be justified only by exceptional circumstances." *Id.* (quoting *Ex parte Messer*, 99 So. 330, 333 (1924)).

108.    The District cannot make that showing here.  The legislative declaration purporting to abrogate the Contracts was not enacted for any non-arbitrary or reasonable state interest.  Nor was Senate Bill 1604.  They were instead enacted to further an official State campaign of retaliation against Disney for expressing a viewpoint that Governor DeSantis and his legislative allies disagree with.

109.    Further, the District does not and cannot demonstrate that complete abrogation of the Contracts is reasonably necessary to advance any state interest that could be legitimate.  The State cannot show that the Contracts are dissimilar in character to contracts between other developers and special districts to fix long-term development rights and obligations.  Nor can it show that the Contracts contradict any aspect of the Comprehensive Plan found compliant by the State.  The District thus cannot identify a non-arbitrary, reasonable basis for singling out and voiding the Contracts.

**WHEREFORE**, Disney respectfully requests that this Court enter an order declaring that the arbitrary and irrational voiding of the Contracts violates the Due Process Clause and that the Contracts remain in effect and enforceable.  Disney is further entitled to an order enjoining Plaintiffs from enforcing the Legislative Declaration and Senate Bill 1604.

### COUNT IX
### (Fla. Const. Free Speech Clause Violation)

110.    Disney realleges and incorporates by reference paragraphs 1 through 45.

111.    The Free Speech Clause of the Florida Constitution, article 1, section 4, provides: "Every person may speak, write and publish sentiments on all subjects but shall be responsible

for the abuse of that right.  No law shall be passed to restrain or abridge the liberty of speech or of the press."

112.    Disney's public statements on House Bill 1557—political speech pertaining to an important and controversial legislative issue—are fully protected by the Free Speech Clause. The Florida Supreme Court has made clear that "[l]iberty of speech must be respected by public agents, even if the speech is angry, critical, [or] adverse" to public officials.  *Lieberman v. Marshall*, 236 So. 2d 120, 127 (Fla. 1970).

113.    The District's retaliatory interference with the Contracts, via the legislative declaration and its predicates, has chilled and continues to chill Disney's protected speech.  *See Bennett v. Hendrix*, 423 F.3d 1247, 1254 (11th Cir. 2005) (discussing action that "would likely deter a person of ordinary firmness from the exercise of First Amendment rights"); *Dep't of Educ. v. Lewis*, 416 So. 2d 455, 461 (Fla. 1982) ("The scope of the protection accorded to freedom of expression in Florida under article I, section 4 is the same as is required under the First Amendment.").  So too has the State's retaliatory interference through Senate Bill 1604 and CFTOD's enforcement of the legislation.  This unconstitutional chilling effect is particularly offensive here due to the express retaliatory and punitive intent that has motivated the District's and the State Legislature's actions, at the Governor's directive.  *See Bailey v. Wheeler*, 843 F.3d 473, 486 (11th Cir. 2016) ("Our First Amendment demands that a law-enforcement officer may not use his powerful post to chill or punish speech he does not like.").

114.    Disney has a significant interest in its own contracts, which have been directly targeted by the legislative declaration and Senate Bill 1604.  Disney faces concrete, imminent, and ongoing injury as a result of the contractual impairment.

115.    The District's actions were motivated by retaliatory intent.  On April 17, Governor DeSantis warned that the District would be meeting a few days later to "make sure Disney is held accountable."  Later that day, Governor DeSantis announced, "I look forward to the additional actions that the state control board will implement in the upcoming days."  He also said that he had worked with "both leaders of the House and Senate" on a "bill that will be put out in the Florida legislature that will make sure" that the Contracts "are revoked."

116.    There is no rational basis to invalidate the Contracts, and the purported justifications for doing so are pretextual.

**WHEREFORE**, Disney respectfully requests that this Court enter an order (1) declaring that the legislative declaration and Senate Bill 1604 are unconstitutional because they retaliate against Disney for its protected speech, and (2) enjoining Plaintiffs from enforcing them.

Dated:  August 17, 2023     Respectfully submitted.


ALAN SCHOENFELD
(*pro hac vice*)
New York Bar No. 4500898
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel. (212) 937-7294
alan.schoenfeld@wilmerhale.com


ADAM COLBY LOSEY
LOSEY PLLC
Florida Bar No. 69658
1420 Edgewater Drive
Orlando, FL 32804
Tel. (407) 906-1605
alosey@losey.law

DANIEL M. PETROCELLI
(*pro hac vice*)
California Bar No. 97802
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel. (310) 246-6850
dpetrocelli@omm.com

JONATHAN D. HACKER
(*pro hac vice*)
District of Columbia Bar
No. 456553
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Tel. (202) 383-5285
jhacker@omm.com

STEPHEN D. BRODY
(*pro hac vice*)
District of Columbia Bar
No. 459263
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Tel. (202) 383-5167
sbrody@omm.com


*Attorneys for Defendant/Counterclaim-Plaintiff*
*Walt Disney Parks and Resorts U.S., Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing was electronically filed with the Clerk of Court by using the ECF system, which will provide electronic notification to Alan Lawson, Esquire at alan@lawsonhuckgonzalez.com, paul@lawsonhuckgonzalez.com, jason@lawsonhuckgonzalez.com, David Thompson, Esquire at dthompson@cooperkirk.com, Pete Patterson, Esquire at ppatterson@cooperkirk.com, Joe Masterman, Esquire at jmasterman@cooperkirk.com, and Megan Wold, Esquire at mwold@cooperkirk.com, A. Kurt Ardaman, Esquire at ardaman@fishbacklaw.com, Daniel W. Langley at dlangley@fishbacklaw.com and sc@fishbacklaw.com this 17th day of August, 2023.

A true copy of the foregoing was also served on Ashley Moody, Esquire, via certified mail: Office of the Attorney General, State of Florida, PL-01, The Capitol, Tallahassee, FL 32399-1050; and electronic mail: ashley.moody@myfloridalegal.com.

ADAM C. LOSEY
Florida Bar No. 69658
alosey@losey.law
docketing@losey.law
M. CATHERINE LOSEY
Florida Bar No. 69127
closey@losey.law
docketing@losey.law
LOSEY PLLC
1420 Edgewater Drive
Orlando, Florida, 32804
Tel. (407) 906-1605

*Counsel for Defendant/*
*Counterclaim-Plaintiff Walt Disney*
*Parks and Resorts U.S., Inc.*