## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

WALT DISNEY PARKS AND RESORTS, U.S., INC.,

                Plaintiff,

     v.

RONALD D. DESANTIS, in his official capacity as Governor of Florida; MEREDITH IVEY, in her official capacity as Acting Secretary of the Florida Department of Economic Opportunity; MARTIN GARCIA, in his official capacity as Board Chair of the Central Florida Tourism Oversight District; MICHAEL SASSO, in his official capacity as Board Member of the Central Florida Tourism Oversight District; BRIAN AUNGST, JR., in his official capacity as Board Member of the Central Florida Tourism Oversight District; RON PERI, in his official capacity as Board Member of the Central Florida Tourism Oversight District; BRIDGET ZIEGLER, in her official capacity as Board Member of the Central Florida Tourism Oversight District; and GLENTON GILZEAN, JR., in his official capacity as Administrator of the Central Florida Tourism Oversight District,

                Defendants.

Case No. 4:23-cv-00163-AW-MJF

## PLAINTIFF'S OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

LEGAL STANDARD.........................................................................3

ARGUMENT .....................................................................................4

I.    DISNEY HAS STANDING TO SUE THE STATE DEFENDANTS
      ACTING IN THEIR OFFICIAL CAPACITIES TO EXECUTE THE
      CHALLENGED LAWS ................................................................4

      A.    Governor DeSantis Has A Direct Role In Implementing The
            Unconstitutional Restructuring Of The District ...................6

      B.    The Secretary Has A Direct Role In Implementing The
            Unconstitutional Restructuring Of The District .................14

II.   DISNEY'S CLAIM IS NOT BARRED BY SOVEREIGN
      IMMUNITY ..............................................................................18

III.  DISNEY'S CLAIM AGAINST GOVERNOR DESANTIS IS NOT
      BARRED BY LEGISLATIVE IMMUNITY.............................19

IV.   THE SAC STATES A CLAIM AS TO THE FIRST AMENDMENT
      VIOLATION ASSERTED ..........................................................20

CONCLUSION .................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*,
　512 U.S. 687 (1994) ...................................................................................8

*Bd. of Pub. Educ. for City of Savannah & Cnty. of Chatham v. Georgia*,
　1990 WL 608208 (S.D. Ga. 1990) ...........................................................16

*Bennett v. Spear*,
　520 U.S. 154 (1997) .................................................................................13

*Church of Scientology of Cal. v. United States*,
　506 U.S. 9 (1992) .....................................................................................10

*City of S. Miami v. Governor of Fla.*,
　65 F.4th 631 (11th Cir. 2023) ....................................................................7

*Cordoba v. DIRECTV, LLC*,
　942 F.3d 1259 (11th Cir. 2019) ...............................................................18

*Denton v. Bd. Of Governors*,
　No. 4:22-cv-00341-RH-MAF, Dkt. 65 (N.D. Fla. 2023) ..........................7

*Dep't of Com. v. New York*,
　139 S. Ct. 2551 (2019) .............................................................................13

*Dream Defs. v. Governor of Fla.*,
　57 F.4th 879 (11th Cir. 2023) ...............................................................4, 5

*Equality Fla. V. Fla. State Bd. Of Educ.*,
　2022 WL 19263602 (N.D. Fla. 2022) ........................................................7

*Equality Florida v. Florida State Bd. of Educ.*,
　2022 WL 19263602 (N.D. Fla. 2022) ......................................................11

*Ex parte Young*,
　209 U.S. 123 (1908) .................................................................................16

*Falls v. DeSantis*,
　2022 WL 19333278 (N.D. Fla. 2022) ......................................................19

*Finberg v. Sullivan*,
　634 F.2d 50 (3d Cir. 1980) .......................................................................16

*Ga. Latino All. for Human Rts. v. Governor of Ga.*,
　691 F.3d 1250 (11th Cir. 2012) .................................................................4

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Garcia-Bengochea v. Carnival Corp.*,
    57 F.4th 916 (11th Cir. 2023) ............................................................10

*Grizzle v. Kemp*,
    634 F.3d 1314 (11th Cir. 2011) ........................................................18

*Hunt v. Aimco Properties, L.P.*,
    814 F.3d 1213 (11th Cir. 2016) ..........................................................3

*Jacobson v. Fla. Sec'y of State*,
    974 F.3d 1236 (11th Cir. 2020) ........................................................17

*Kilbourn v. Thompson*,
    103 U.S. 168 (1880) ................................................................ 16, 17

*Los Angeles County Bar Association v. Eu*,
    979 F.2d 697 (9th Cir. 1992) ..............................................................9

*Luckey v. Harris*,
    860 F.2d 1012 (11th Cir. 1988) ........................................................19

*Miller v. Johnson*,
    515 U.S. 900 (1995) ........................................................................20

*Peter B. v. Sanford*,
    2010 WL 5684397 (D.S.C. 2010) ......................................................7

*Renfroe v. Nationstar Mortg., LLC*,
    822 F.3d 1241 (11th Cir. 2016) ..........................................................4

*Socialist Workers Party v. Leahy*,
    145 F.3d 1240 (11th Cir. 1998) ..........................................................5

*State v. Becerra*,
    544 F. Supp. 3d 1241 (M.D. Fla. 2021) ............................................10

*Support Working Animals, Inc. v. Governor of Fla.*,
    8 F.4th 1198 (11th Cir. 2021) ............................................................5

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ..........................................................................4

*Uzuegbunam v. Preczewski*,
    141 S. Ct. 792 (2021) ......................................................................10

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*Whole Woman's Health v. Jackson*,
   142 S. Ct. 522 (2021) ........................................................................17

*World Holdings, LLC v. Fed. Republic of Germany*,
   613 F.3d 1310 (11th Cir. 2010) ............................................................4

**Statutes**

Fla. Stat. § 189.01 .............................................................................15

Fla. Stat. § 189.016 ...........................................................................15

Fla. Stat. § 189.019 ...........................................................................15

Fla. Stat. § 189.061 ...........................................................................15

Fla. Stat. § 189.062 ...........................................................................15

Fla. Stat. § 189.063 ...........................................................................15

Fla. Stat. § 189.064 ...........................................................................15

Fla. Stat. § 189.065 ...........................................................................15

Fla. Stat. § 189.066 ...........................................................................15

Fla. Stat. § 189.067 ...........................................................................15

Fla. Stat. § 189.069 ...........................................................................15

**Other Authorities**

Ariel Zilber, *Universal Studios Gets Special Tax District After DeSantis Took It
   Away From Disney*, N.Y. POST (Oct. 13, 2023, 2:59 P.M.),
   https://nypost.com/2023/10/13/ universal-studios-gets-special-tax-district-after-
   desantis-stripped-disney/ .....................................................................5

## INTRODUCTION

It is a foundational rule of America's constitutional order that states cannot force government-approved political orthodoxy on the citizenry by punishing individuals and businesses who express political views that depart from official state doctrine.  The Defendants in this case—especially Governor Ron DeSantis—reject that bedrock constitutional rule.

In the Governor's view, corporations must remain "merely economic actors" that do not "become political," and if they "cross the line" by publicly disagreeing with official state doctrine, government leaders are free to weaponize official state powers to punish and control their speech.  Second Amended Complaint for Declaratory and Injunctive Relief ¶¶ 47, 89, ECF No. 87 ("SAC").  The merits of that remarkable position are addressed in Disney's opposition to the broader motion to dismiss filed by the CFTOD Defendants and joined by the State Defendants.  *See* Opp. to CFTOD Mot. to Dismiss 3-4, 17-32.

The State Defendants' own motion addresses a distinct but related point. Having publicly boasted about orchestrating a secret plan to punish Disney for its comments on public affairs and to exercise continuing control over its entertainment programming, the Governor now seeks desperately to avoid any official responsibility for those acts.  According to the Governor, his connection to the state's ongoing efforts to regulate Disney's speech is analogous to comments

from a "lobbyist" voicing support for new laws. That assertion is farcical, as anyone vaguely familiar with Florida government will readily recognize. More importantly, it is directly contrary to the SAC's allegations, which are assumed true at this stage. On the facts alleged in SAC, the Governor and the Secretary of Commerce are proper defendants who can and must be held liable in their official capacities for the executive functions they perform in implementing the State's anti-Disney speech-control program.

Under settled standing and sovereign immunity rules, a plaintiff claiming constitutional injury from a state law may proceed in federal court against any of the state executive officers responsible for implementing, administering, or enforcing the law. Article III and official-capacity requirements are satisfied in such suits because the injury is *traceable* to those executive acts and *redressable* by a judicial order enjoining their performance.

As set forth more fully in Disney's response to the Defendants' broader motion to dismiss, the SAC alleges—and the State Defendants do not dispute—that the challenged laws have caused Disney concrete injuries and that these serious harms are ongoing. Disney's alleged injuries arise from a scheme that the Governor, by his own account, intentionally orchestrated in secret to ensure no public input or even awareness as it was developed and implemented. SAC ¶ 50. Again according to the Governor and other State leaders, the Governor instigated

the enactment of laws to punish Disney's speech and exert continuing control over its political comments and programming. *See* Opp. to CFTOD Mot. to Dismiss 8-16. To achieve those objectives, the State eliminated Disney's voting rights in the governing body that regulates the use of its property, replacing the landowner-elected body with a Governor-appointed "state receivership" board explicitly charged with using its *land-use* powers to control Disney's *speech*. *Id.* at 10-14. The injuries from elimination of its voting rights and the institution of a de facto speech-control board in turn give rise to Disney's claim challenging the laws reorganizing the District—SB 4C and HB 9B—by replacing the landowner-elected Reedy Creek Improvement District ("RCID") with the Governor-controlled Central Florida Tourism Oversight District ("CFTOD").

As explained in this memorandum, Disney's claim plainly implicates the State Defendants' executive responsibilities under the challenged laws, foreclosing the standing or sovereign immunity objections the State Defendants now assert.

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the Court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). "To survive a motion to dismiss, a complaint need only present sufficient facts, accepted as true, to state a claim to relief that is plausible on its

face." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1243 (11th Cir. 2016) (quotations omitted).  In ruling on the motion, the Court may consider not only the complaint itself but also "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007).

Similarly, in a jurisdictional challenge under Rule 12(b)(1), the court evaluates whether the complaint has sufficiently alleged a basis for subject-matter jurisdiction upon "constru[ing] the complaint in the light most favorable to the plaintiff and accept[ing] all well-pled facts alleged in the complaint as true." *World Holdings, LLC v. Fed. Republic of Germany*, 613 F.3d 1310, 1312 n.1 (11th Cir. 2010).

## ARGUMENT

## I.  DISNEY HAS STANDING TO SUE THE STATE DEFENDANTS ACTING IN THEIR OFFICIAL CAPACITIES TO EXECUTE THE CHALLENGED LAWS

To establish Article III standing to sue a state officer in his official capacity, a plaintiff must establish (1) an injury-in-fact, that is (2) traceable to the officer's execution of the challenged law, and that (3) can be redressed by an order enjoining continued execution.  *See, e.g.*, *Dream Defs. v. Governor of Fla.*, 57 F.4th 879, 888-89 (11th Cir. 2023); *Ga. Latino All. for Human Rts. v. Governor of Ga.*, 691 F.3d 1250, 1257 (11th Cir. 2012); *Socialist Workers Party v. Leahy*, 145

F.3d 1240, 1244 (11th Cir. 1998).  The State Defendants do not dispute that the challenged laws have caused—and will continue to cause—Disney multiple concrete injuries, as summarized above.  *See supra* at 2-3.[1]  The State Defendants instead challenge only the latter two standing requirements—"traceability" and "redressability."

"To establish traceability and redressability in a lawsuit seeking to enjoin a government official from enforcing [an allegedly unconstitutional] law, a plaintiff must show 'that the official has the authority to enforce the particular provision [being] challenged, such that [the] injunction prohibiting enforcement would be effectual.'"  *Dream Defs.*, 57 F.4th at 888-89 (quoting *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 2001 (11th Cir. 2021)) (first alteration

---

[1] In repeated public comments, the Governor declared that the laws do not injure Disney because they simply make the company subject to the same regulatory structure applicable to all other Florida businesses, thereby creating a "level playing field."  That contention is an outright falsehood.  In fact, a special district was established just this month to regulate the land encompassing Universal's new Epic Universe theme park in Orange County—with its inaugural board of supervisors comprising only Universal employees.  *See* Ariel Zilber, *Universal Studios Gets Special Tax District After DeSantis Took It Away From Disney*, N.Y. POST (Oct. 13, 2023, 2:59 P.M.), https://nypost.com/2023/10/13/ universal-studios-gets-special-tax-district-after-desantis-stripped-disney/.  Further, most businesses and other property owners in Florida are regulated by elected, politically-accountable municipal bodies.  Few Florida businesses are subject, as Disney now is, to governance by a special district with a Governor-controlled board that closely regulates the use of private property with no accountability to local property owners and taxpayers.  In any event, what matters with respect to the pending motion to dismiss is that the challenged laws indisputably eliminate Disney's rights and impose new burdens, thereby creating an injury-in-fact.

added); *see* State Defs.' Mot. to Dismiss and Incorporated Mem. of Law at 9, ECF No. 94 ("State Defs.' Mem.").  None of the Defendants denies that the CFTOD Defendants have the kind of responsibilities under the challenged laws that make Disney's injuries both traceable to CFTOD and redressable by a judicial order declaring the laws invalid and enjoining CFTOD's operations under those laws. The State Defendants argue only that Disney lacks standing to advance its case against the State Defendants in particular.[2]

That argument is incorrect.  As explained below, Disney's constitutional injuries are directly traceable to the State Defendants' executive duties under the challenged laws, and they would be redressed by an order declaring the laws unconstitutional and enjoining Defendants from continuing to implement and enforce them.

## A.   Governor DeSantis Has A Direct Role In Implementing The Unconstitutional Restructuring Of The District

The Governor contends that Disney's injuries are not traceable to any of his executive actions or redressable by an order enjoining those actions.  State Defs.' Mem. 10.  The Governor is wrong in two respects.

*First*, a state governor's power to appoint allegedly unlawful executive officers itself establishes traceability and redressability where—as here—the claim

---

[2] The CFTOD Defendants do not assert standing or other jurisdictional objections.

challenges the very fact of the appointments themselves.  The Governor cites cases in which courts rejected standing theories based solely on a governor's appointment power, State Defs.' Mem. 10 & n.6, but in those cases the injuries and claims arose from the *actions* of the relevant state agency, and the *only* alleged connection to the governor was his power to appoint the officials who committed the injurious acts.  *See Equality Fla. v. Fla. State Bd. of Educ.*, 2022 WL 19263602, at *8 n.8 (N.D. Fla. 2022); *Peter B. v. Sanford*, 2010 WL 5684397, at *3 (D.S.C. 2010); *Denton v. Bd. of Governors*, No. 4:22-cv-00341-RH-MAF, ECF No. 65 at 1, 3-4 (N.D. Fla. 2023); *see also City of S. Miami v. Governor of Fla.*, 65 F.4th 631 (11th Cir. 2023).  In this case, Disney's claim challenges *the governing structure of the District Board itself*, including the statutory provision making all Board members Governor-appointed rather than landowner-elected.  HB 9B's reorganization of the District violated Disney's First Amendment rights because, among other things, it replaced the locally-elected Board with a new Board appointed by the vindictive Governor and accountable only to him, rather than to District landowners, for unlawful retaliatory reasons.  As Disney's complaint further details, the Governor's appointees were publicly charged with using their land-use powers to undermine Disney's interests and thereby exercising continuing control over Disney's speech.  As examples, the Governor declared that his Board could approve the use of property adjacent to Disney's to construct a state prison

7

or develop a rival theme park.  SAC ¶ 103.  The injuries caused by exercising

unlawful appointment power plainly would be redressed by a court order

invalidating the reorganization laws and directing the Governor to rescind his

legally impermissible appointments.

To be clear, Disney's claim is not that the U.S. Constitution prohibits a state

from establishing special districts with governor-appointed boards.  The

Constitution does, however, prohibit states from allocating government benefits

and burdens on impermissible bases, including race, religion, and retribution for

protected speech.  *See* Opp. to CFTOD Mot. to Dismiss 3-4.  In other words,

Florida cannot allocate rights and privileges to special districts expressly to punish

(or favor) their residents' political viewpoints—just as it could not do so expressly

to punish (or favor) their residents' race or religion.  *See*, *e.g.*, *Bd. of Educ. of*

*Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687 (1994) (state violated First

Amendment's religious neutrality command by creating special school district

along lines of particular religious community).  Because the Governor's

appointments directly implement the allegedly unlawful scheme eliminating

District voting rights and local representation in favor of a Governor-controlled

"state receivership," SAC ¶ 88, a challenge to those appointments properly names

the Governor in his official capacity.

The causation analysis in *Los Angeles County Bar Association v. Eu*, 979 F.2d 697 (9th Cir. 1992), is instructive.  In that case, the plaintiff challenged a statute prescribing the number of judges on the Superior Court for Los Angeles County.  *Id.* at 699.  The plaintiff sued various state officers including the governor, who sought to be dismissed on the ground that he lacked a sufficient enforcement connection to the statute.  *Id.* at 704.  The Ninth Circuit disagreed, explaining that because the governor had "a duty to appoint judges to any newly-created judicial positions," the allegedly unlawful statute was "being given effect by" him.  *Id.*  The same logic applies here.

The State Defendants contend that *Eu* incorrectly found standing, and that its discussion of the governor's immediate role in appointments focused not on standing at all, but on sovereign immunity.  State Defs.' Mem. 12.  Defendants miss the point.  What matters—and what Defendants do *not* contest—is *Eu*'s substantive recognition that where a plaintiff's claimed injury derives from the *exercise of the challenged appointment power itself*, the appointing officer has a "specific connection to the challenged statute."  979 F.2d at 704.  That connection is precisely what standing rules require, and it is precisely why Disney has standing here to challenge the Governor's exercise of appointment power under a statute alleged to be unlawful.  Defendants may quarrel with the other reasons the *Eu* court ultimately found standing, but they cannot deny that the Governor's

9

appointment power is directly connected to the statute under which he acts to exercise that power. That connection establishes Disney's standing to sue him in his official capacity for those executive acts.

Apart from misstating *Eu*'s relevance, the Governor asserts that even if his exercise of allegedly unlawful appointment power caused *part* of Disney's claimed injuries, Disney *also* claims injury from the elimination of landowner-voting rights, so an order enjoining only his unlawful appointments could not provide complete relief. State Defs.' Mem. 9-11. The Governor is wrong: "[F]or standing purposes the relief sought need not be complete." *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 927 (11th Cir. 2023). As the Supreme Court has explained time and again, "the ability 'to effectuate a partial remedy' satisfies the redressability requirement." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992)). Accordingly, "even if other 'variables' contribute to [a plaintff's] injury," standing exists so long as the challenged conduct "accounts for some of, or aggravates, [the plaintiff's] injury." *State v. Becerra*, 544 F. Supp. 3d 1241, 1255 (M.D. Fla. 2021) (citing cases). At a minimum, the Governor's District Board appointments seriously aggravated the injury caused by the elimination of RCID. For example, absent the unlawful governance structure implemented by the Governor's exercise of appointment power, the elimination of

RCID's electoral system would have left the regulation of Disney's property in the hands of locally-accountable elected leaders at the city and county level, rather than the unelected members now on the District's Board who are accountable only to the Governor.  Thus, a judicial order addressed solely to the Governor's exercise of appointment power under HB 9B thus would provide very meaningful redress for Disney.  No more is required for standing.

In arguing that Disney lacks standing because it challenges more than just his alleged unlawful appointments, the Governor mistakenly invokes *Equality Florida v. Florida State Bd. of Educ.*, 2022 WL 19263602 (N.D. Fla. 2022), for the proposition that the cause of Disney's injuries is "not the Governor's '*enforcement*' of HB 9B's appointment provision, but the '*very existence*' of HB 9B's repeal provision."  State Defs.' Mem. 10-11 (quoting *Equality Florida*, 2022 WL 19263602, at *2).  As just discussed, Disney claims injury from the Governor's exercise of appointment power, not only from HB 9B's elimination of the RCID electoral system and other preexisting rights and benefits.  But *Equality Florida* was also different in another key respect.  The plaintiffs there only alleged injury from anti-LGBTQ "sentiment" that pervaded the challenged law and would embolden discriminatory behavior by others—injuries that "flowed from something other than the law's enforcement."  2022 WL 19263602, at *2.  By

11

contrast, Disney's alleged injuries flow directly from the statutes' actual implementation by the Governor.

*Second*, and in any event, the Governor's connection to Disney's injuries is not limited to appointment of the District Board members.  The SAC alleges—based on repeated, explicit public statements—that the Governor is affirmatively controlling the District Board to impose new burdens and costs on Disney to retaliate against its political speech and to exercise continuing control over its political speech and even its entertainment programming.  SAC ¶ 77 (Board "operate[s] under the Governor's thumb"); ¶ 79 (Board is "state-controlled"); ¶ 85 (Governor boasting that he is "new sheriff in town" to regulate Disney); ¶ 88 (Governor spokesperson stating that HB 9B places District into "state receivership"); ¶ 95 (new Board would oversee "the type of entertainment" Disney produces and stop Disney from "trying to inject woke ideology" into children's entertainment); ¶ 103 (Governor proposing "prison" and other potential uses for District land adjacent to Disney, and announcing that Board would take "additional actions" to increase Disney's burdens).  The Governor has claimed ownership over his self-proclaimed "war" with Disney, SAC ¶ 90, declaring that "ultimately *we're* going to win on every single issue involving Disney" and, through his appointed Board, "make sure Disney is held accountable," SAC ¶¶ 101-02 (emphasis added).

These allegations and public admissions concerning the Governor's control over the District Board easily satisfy Article III, which "requires no more than de facto causality." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019) (internal quotation marks omitted).  An official-capacity defendant's actions need not be "the very last step in the chain of causation" to the plaintiff's injury; Article III can be satisfied where the injury is "produced by determinative or coercive effect upon the action of someone else." *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997).  In other words, traceability can arise from "the predictable effect of Government action on the decisions of third parties." *Dep't of Commerce*, 139 S. Ct. at 2566.

This case thus differs from those holding that the appointment power *alone* cannot satisfy standing's traceability requirement.  Unlike the plaintiffs in those cases, Disney plausibly alleges that the Governor is affirmatively using his control over the District to implement his oft-declared goal of punishing Disney for disfavored speech and controlling its future political comments and entertainment choices.  By announcing that the District henceforth would be "state-controlled" and a "state receivership," the Governor and his allies made abundantly clear that the Governor—the self-proclaimed "new sheriff in town"—would be functionally in charge of the new weaponized bureaucracy.  SAC ¶¶ 77, 79, 85, 88.

The Governor's only response is to misconstrue Disney as arguing that "mere political influence is sufficient to support standing," such that "a plaintiff could drag anyone—lobbyists for example—with no relevant enforcement authority into countless lawsuits simply by claiming that they hold informal sway over those who do."  State Defs.' Mem. 13-14.  Disney argues no such thing.  The SAC's allegations do not assert "mere political influence" or "informal sway"— they assert the Governor exercises *actual control* over the District Board's actions, which operates as a "state receivership" under the "Governor's thumb" to use land-use powers to hold Disney "accountable" for political comments and entertainment programming the Governor finds objectionable.  *See supra* at 12.  At this stage, those allegations must be accepted as true.  Perhaps discovery will show that— contrary to the Governor's *own* repeated public characterization of who is in charge—Board members actually operate free from supervision or influence by the Governor's office.  But until the evidence is developed and the facts are found, the Governor's alleged and admitted control over the entity that regulates Disney's property suffices to establish standing to sue him for exercising that control to punish and control Disney's speech.

### B. The Secretary Has A Direct Role In Implementing The Unconstitutional Restructuring Of The District

The State Defendants also contend that the Secretary lacks any relevant responsibility with respect to the dissolution and restructuring of the District.

According to the State Defendants, the Secretary's only connection to this litigation is the duty to "maintain the Official List of Special Districts," which they say is a "ministerial duty" that does not establish traceability or redressability. State Defs.' Mem. 17.  They err on both fronts.

At the outset, the parties agree that the Secretary is charged with maintaining the Official List of Special Districts (the "Official List"), which includes all special districts in Florida.  *Id.*; SAC ¶ 18 (citing Fla. Stat. §§ 189.061(1)(a), (2), 189.012(1)).  The State Defendants concede that municipalities and special districts exist only by virtue of the State, State Defs.' Mem. 4, and that the Secretary is in charge of overseeing that relationship.  *See* Uniform Special District Accountability Act, Fla. Stat. §§ 189.01 *et seq.*  The "Official List" is not merely a "list" in the colloquial sense; by formally recognizing special districts' legal status as such, it gives them the State's official imprimatur and triggers myriad reporting and qualification requirements—which the Secretary likewise oversees.  *See, e.g., id.* §§ 189.016, 189.019, 189.061-189.067, 189.069.

As already discussed, Disney's claim is that the laws reorganizing the District violate Disney's constitutional rights.  If that claim is correct, then the Secretary cannot include the District on the Official List as a lawfully constituted special district.  Put differently, Disney's injuries are directly traceable to the Secretary's executive determination that CFTOD is a valid special district with

lawful authority to regulate Disney's use of its own property.  That determination

would be redressed by a judicial order invalidating the reconstituted District and

enjoining the Secretary from treating it as a legitimate state entity.  Removing it

from the Official List would constitute a necessary formal declaration that CFTOD

no longer exercises the power of a government entity.  Because the Secretary is the

officer empowered to revise the Official List, the Secretary is a proper defendant.

Not only do the State Defendants err in treating the Official List as

essentially a ministerial recordkeeping nuisance, the legal premise of their

argument is wrong:  a purely ministerial function in implementing an allegedly

unconstitutional law to the plaintiff's detriment suffices for the traceability and

redressability elements of standing in official-immunity suits under *Ex parte

Young*, 209 U.S. 123 (1908).  In fact, the exercise of ministerial duties is *frequently*

the basis for official-immunity suits.  Courts "often have allowed suits to enjoin the

performance of ministerial duties in connection with allegedly unconstitutional

laws." *Finberg v. Sullivan*, 634 F.2d 50, 54 (3d Cir. 1980); *see Bd. of Pub. Educ.

for City of Savannah & Cnty. of Chatham v. Georgia*, 1990 WL 608208, at *5

(S.D. Ga. 1990) ("The ministerial nature of [a state officer's] duties does not

render their connection to the unlawful act insufficient.").  In the leading case of

*Kilbourn v. Thompson*, 103 U.S. 168 (1880), for example, the Supreme Court held

that while the Speech and Debate Clause protected members of Congress from suit

for ordering a false arrest, the House sergeant-at-arms could be sued in his official capacity for performing the ministerial function of executing the arrest order.  *Id.* at 196-205.  More recently, the Eleventh Circuit held that the proper defendants in a suit challenging ballot format were the individual county Supervisors of Elections, because they exercised the purely ministerial function of printing and distributing the challenged ballots.  *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1253, 1258 (11th Cir. 2020).[3]

At base, the State Defendants' standing arguments rest on the notion that the Secretary's role is simply not significant enough to establish traceability or redressability.  But their argument of degree is ill-suited to the standing context. Standing is not a question of *how* traceable or *how* redressable Disney's harm is

---

[3] The State Defendants appear to abandon their previous reliance on *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021), for their contention that a state executive officer's performance of a ministerial duty under an allegedly unlawful statute cannot establish traceability and redressability.  But they do cite *Whole Woman's Health* in their sovereign immunity discussion.  State Defs.' Mem. 20. To be clear, *Whole Woman's Health* does not hold that executive officers with only ministerial duties cannot be proper defendants under *Ex parte Young*.  The standing issue in that case involved a *judicial* employee's performance of the clerical duty to accept litigation filings.  142 S. Ct. at 532-33.  Unlike "executive officials," the Court explained, court clerks—like the judges they serve—do not enforce state laws and do not function as "adversaries" in litigation.  *Id*.  Nowhere did the Court suggest that where, as here, the suit names an *executive* officer responsible for implementing an allegedly unconstitutional law, the assertedly ministerial nature of the officer's duty precludes a finding that the plaintiff's injury is traceable to performance of the duty or redressable by a judicial order enjoining that performance.

with respect to a given officer-defendant.  *See*, *e.g.*, *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019) ("[e]ven a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement").  As shown above, even partial relief satisfies standing requirements. *See supra* at 10.  Disney is not obligated to sue only the officer with the closest enforcement connection to the challenged law.  Rather, to enable the fullest relief possible, Disney had and exercised the right to bring claims against each of the actors whose duties—ministerial or not—include implementing the challenged laws.  Because each Defendant has distinct and relevant enforcement duties, Disney has standing to sue any and all of them.

## II.   DISNEY'S CLAIM IS NOT BARRED BY SOVEREIGN IMMUNITY

The State Defendants' sovereign-immunity defenses fail for the same reasons their standing objections fail.

As the Supreme Court established in *Ex parte Young*, a state's sovereign immunity does not apply to a "suit alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis," because such an official-capacity suit "is not a suit against the state, and, accordingly, does not violate the Eleventh Amendment."  *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011).  To satisfy *Ex parte Young*, "it is sufficient that the state officer sued must, by virtue of his office, have some connection with the

unconstitutional act or conduct complained of." *Luckey v. Harris*, 860 F.2d 1012, 1015-16 (11th Cir. 1988) (internal quotation marks and brackets omitted).

As the State Defendants admit, the "some connection" requirement of *Ex parte Young* is more lenient than the traceability and redressability requirements of Article III.  State Defs.' Mem. 10 (citing *Falls v. DeSantis*, 2022 WL 19333278, at *1 (N.D. Fla. 2022)).  Accordingly, for the same reasons the State Defendants' enforcement responsibilities make them proper defendants under Article III, they are necessarily proper defendants under *Ex parte Young* as well, precluding any assertion of sovereign immunity.

## III.   DISNEY'S CLAIM AGAINST GOVERNOR DESANTIS IS NOT BARRED BY LEGISLATIVE IMMUNITY

Governor DeSantis—but not the Secretary—further contends that the claim against him is barred "to the extent Disney challenges the Governor's legislative acts."  State Defs.' Mem. 21.  It is true, as the Governor appears to recognize, that the bases for standing and *Ex parte Young* relief rest on the Governor's *executive* responsibilities under legislation being challenged, as those doctrines require.  The legislative immunity doctrine accordingly is irrelevant here.  But there should be no misunderstanding:  Disney's claim substantively challenges laws that violate the Constitution and injure Disney, and the Governor's statements and actions orchestrating the enactment of those laws are absolutely relevant to the merits of that claim, just as the statements and actions of legislative and executive actors are

relevant to *any* otherwise-cognizable claim alleging that a law was enacted for an impermissible purpose.  *See*, *e.g.*, *Miller v. Johnson*, 515 U.S. 900, 916 (1995) (plaintiff in racial gerrymandering case may rely on "direct evidence going to legislative purpose").

## IV.   THE SAC STATES A CLAIM AS TO THE FIRST AMENDMENT VIOLATION ASSERTED

The State Defendants "adopt and incorporate the additional arguments raised in the CFTOD Defendants' motion to dismiss."  State Defs.' Mem. 21.  Disney likewise adopts and incorporates the arguments in its response to the CFTOD Defendants' motion.  For the reasons explained therein, the CFTOD Defendants' motion lacks merit.

## CONCLUSION

The State Defendants' motion to dismiss should be denied.

Dated:  October 30, 2023

Respectfully submitted,

ALAN SCHOENFELD
(*pro hac vice*)
New York Bar No. 4500898
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel. (212) 937-7294
alan.schoenfeld@wilmerhale.com

ADAM COLBY LOSEY
LOSEY PLLC
Florida Bar No. 69658
1420 Edgewater Drive
Orlando, FL 32804
Tel. (407) 906-1605
alosey@losey.law

*/s/ Daniel M. Petrocelli*

DANIEL M. PETROCELLI
(*pro hac vice*)
California Bar No. 97802
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Tel. (310) 246-6850
dpetrocelli@omm.com

JONATHAN D. HACKER
(*pro hac vice*)
District of Columbia Bar
No. 456553
STEPHEN D. BRODY
(*pro hac vice*)
District of Columbia Bar
No. 459263
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
Tel. (202) 383-5285
jhacker@omm.com

*Attorneys for Plaintiff Walt Disney Parks and Resorts, U.S., Inc.*

21

## CERTIFICATE OF WORD COUNT

Pursuant to Northern District of Florida Rule 7.1(F), the undersigned counsel hereby certifies that the foregoing Plaintiff's Opposition to State Defendants' Motion to Dismiss Second Amended Complaint, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F), contains 4,594 words as measured by Microsoft Office for Word 365.

Respectfully submitted,

*/s/ Daniel M. Petrocelli*
DANIEL M. PETROCELLI