**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

WALT DISNEY PARKS AND RESORTS
U.S., INC.,

                    Plaintiff,

    -v-

RONALD D. DeSANTIS, in his official
capacity as Governor of Florida, *et al*.

                Defendants.

Case No. 4:23-cv-00163

**BRIEF OF *AMICI CURIAE* FORMER GOVERNORS, SENIOR
GOVERNMENT ATTORNEYS, AND OTHER OFFICIALS
IN SUPPORT OF PLAINTIFF**

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ............................................................. iii

STATEMENT OF INTEREST OF *AMICI* ............................................. 1

ARGUMENT ..................................................................................... 2

I.    Governor DeSantis's Actions Are Anti-Democratic and Exceed
      the Proper Scope of the Executive's Role in Public Policy Debate ............... 2

II.   Plaintiff's Lawsuit is the Natural Consequence of a Public
      Official's Disregard of the Public Trust ........................................... 8

      A.    Governor DeSantis's disregard for his duties to the public
            undermines democratic society ........................................... 10

      B.    Governor DeSantis's disregard for his duties to the public
            undermines the free market .............................................. 12

III.  It is the Proper Role of the Courts to Curb This Abuse of
      Executive Power .................................................................. 15

CONCLUSION ................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**                 **Page(s)**

*303 Creative LLC v. Elenis*,
  600 U.S. __ (2023)............................................................................10

*Austin v. Univ. of Fla. Bd. of Trs.*,
  580 F. Supp. 3d 1137 (N.D. Fla. 2022) .................................................4

*Citizens United v. Federal Election Com'n*,
  558 U.S. 310 (2010)..................................................................12, 13

*Consol. Edison Co. of N.Y., Inc. v. Pataki*,
  292 F.3d 338 (2d Cir. 2002) .................................................................17

*Foretich v. United States*,
  351 F.3d 1198 (D.C. Cir. 2003).............................................................17

*FTC v. Superior Court Trial Lawyers Assn.*,
  493 U.S. 411 (1990)...............................................................................13

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*,
  515 U. S. 557 (1995)...............................................................................10

*Linmark Associates, Inc. v. Willingboro*,
  431 U.S. 85 (1977).................................................................................4

*Lorillard Tobacco Co. v. Reilly*,
  533 U.S. 525 (2001)...............................................................................3

*NAACP v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982).............................................................................13

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964)...............................................................................2

*Nuesse v. Camp*,
  385 F.2d 694 (D.C. Cir. 1967)................................................................8

*Pernell v. Fla. Bd. of Governors of the State Univ. Sys.*,
  2022 U.S. Dist. LEXIS 208374 (N.D. Fla. Nov. 17, 2022)...................4

*Rosenberger v. Rector & Visitors of the Univ. of Va.*,
 515 U.S. 819 ................................................................................13

*United States v. Brown*,
 381 U.S. 437 (1965).............................................................6, 7, 17

*United States v. O'Brien*,
 391 U.S. 367 (1968).....................................................................17

*Whitney v. California*,
 274 U.S. 357 (1927).......................................................................3

*Williams v. State ex rel. Morrison*,
 315 P.2d 981 (Ariz. 1957) .............................................................9

*Wood v. Georgia*,
 370 U.S. 375 (1962)..................................................................9, 13

**Statutes**

Fla. Stat. § 163.3220(2) (2022) ..............................................................14

**Other Authorities**

Alexander Bickel, *Domesticated Civil Disobedience: The First
 Amendment, from Sullivan to The Pentagon Papers, in* THE
 MORALITY OF CONSENT (1975)............................................................2

Alexander Hamilton, THE FEDERALIST 78 ................................................16

Brooks Barnes, *Disney Pulls Plug on $1 Billion Development in
 Florida*, N.Y. TIMES, (May 18, 2023)..................................................14

Claire Fu, *China Fines Ant Group $985 Million, in Sign Crackdown Is
 Over,* N.Y. TIMES (July 7, 2023)........................................................11

FLA. CONST. ART. II SEC. 8 ....................................................................8

Freedom House, FREEDOM IN THE WORLD 2023 (2023)...................10, 11

H.R. Con. Res. 175, 85th Cong. (July 11, 1958) ......................................8

James Madison, THE FEDERALIST 44 ........................................................12

Jaclyn Diaz, *Florida's governor signs controversial law opponents dubbed 'Don't Say Gay'*, NPR (Mar. 28, 2022) .................................................9

Katherine Tangalakis-Lippert, *GOP Critics pile on DeSantis over Disney feud,* BUSINESS INSIDER (Apr. 18, 2023) .................................................15

Laura Rodriguez et al., *Jury Finds Miami Commissioner Joe Carollo Liable in Ball & Chain Lawsuit, Awards Plaintiffs $63M*, NBC 6 (June 2, 2023)..................................................................................15, 16

S. Res. 266, 90th Cong. (1968) ..............................................................................8

Seth Mydans and Erin E. Arvedlund, *Police In Russia Seize Oil Tycoon*, N.Y. TIMES (OCT. 26, 2003) ..................................................11

*Int'l Covenant on Social and Political Rights*, U.N. General Assembly Res. 2200A (XXI) ............................................................................10

U.N. Doc. CCPR/C/GC/34 (2011)........................................................................10

U.S. CONST. ART. I SEC. 10 ...................................................................................17

U.S. CONST. AMEND. I .....................................................................................*passim*

## STATEMENT OF INTEREST OF *AMICI*

*Amici* are a bipartisan group of former governors, legislators, senior government attorneys, and other officials.  Collectively, they have spent decades in public service in both state and federal government throughout the country.  They represent different political parties, different regions of the country, and different policy preferences.  But all agree on one thing of central importance to this litigation: Governor DeSantis's and the Florida Legislature's decision to single out Plaintiff for retribution, based on its comments on an issue of public concern, is anathema to the First Amendment and severely damaging to the political, social, and economic fabric of the State.

The Governor's retaliatory actions are even more damaging because they have nothing to do with the policy debate underlying this case.  Rather, the series of actions at issue in this lawsuit were conceived of and executed solely to punish Plaintiff *for the act of speaking out*, not to help the Governor achieve his policy aims.  After all, the Governor has already won that battle – the bill that Plaintiff spoke out in opposition to is the law of the land in Florida.

*Amici*'s primary purpose in this brief is not to explain to the Court the multiple ways in which the Governor's actions are illegal.  The Second Amended Complaint, Plaintiff's Oppositions to Defendants' Motions to Dismiss, and the *amicus* brief submitted by the Reporter's Committee for the Freedom of the Press

cover that ground admirably.  *Amici*'s purpose is instead to leverage their executive branch experience to provide the Court with insight into the appropriate role of the executive in a scenario like this one, to explain in practical terms how the path the Governor has chosen is corrosive to the form of democracy envisioned by the Constitution, and to re-emphasize this Court's critical constitutional role in curbing the excesses of governance by retaliation.

## ARGUMENT

**I.    Governor DeSantis's Actions Are Anti-Democratic and Exceed the Proper Scope of the Executive's Role in Public Policy Debate.**

During their careers in public service and adjacent fields, *Amici* have been involved in countless policy debates on issues of every type.  In those roles, they have experienced first-hand our country's "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."  *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).  They understand that our system of government, including the First Amendment, requires a sometimes "unruly contest" in the exchange of ideas between members of the public and government officials.  ALEXANDER BICKEL, *Domesticated Civil Disobedience: The First Amendment, from Sullivan to The Pentagon Papers*, *in* THE MORALITY OF CONSENT 57, 82 (1975).  They recognize both: (1) the appropriate tools provided to the executive to engage in

2

those debates – chief among them the platform that the office itself provides; and

(2) the limitations that the law rightfully imposes on what the executive may

permissibly do to further their political aims.

   As to the former, the Governor of course has every right to use his so-called

"bully pulpit" to advance his policy objectives.  *Cf.* ALAN ROSENTHAL, THE

DECLINE OF REPRESENTATIVE DEMOCRACY, p. 301 (1998) (explaining the "bully

pulpit" inherent to every governorship).  He is free to use this platform to influence

public debate and public sentiment in favor of his policies and against those of his

critics.  He is even free to criticize Plaintiff for its publicly expressed viewpoint

and to persuade others to do the same.  That is an entirely appropriate way to

engage in the political process consistent with the First Amendment.  As Justice

Brandeis observed nearly 100 years ago:

> To courageous, self-reliant men, with confidence in the
> power of free and fearless reasoning applied through the
> processes of popular government . . . the remedy to be
> applied [to speech they disagree with] is more speech, not
> enforced silence.

*Whitney v. Cal.*, 274 U.S. 357, 377 (1927) (Brandeis, J. concurring).  This

"counterspeech" principle is firmly embedded in Constitutional law.  *See, e.g.*,

*Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 586 (2001) (Thomas, J, concurring)

(if the government is concerned about "a message with which it disagrees," it is

able "to counteract that message with more speech, not enforced silence.");

*Linmark Associates, Inc. v. Willingboro*, 431 U.S. 85, 97 (1977) (Marshall, J.). And those who have held positions of significant public trust, as *Amici* have, understand how and when a public officeholder properly employs the megaphone of their office to pursue their political and policy goals. Most importantly, *Amici* understand, as the Founders did, that debates over public policy are to be welcomed, not feared; spirited debate is the lifeblood of a healthy democratic process. The proper role of a governor when faced with such dissent is to engage with it, not to suppress or punish it through the exercise of government power.

The facts of this case demonstrate that Governor DeSantis plainly either fails to understand or deliberately flouts the constitutional and normative limitations on what the executive can do to further his aims.[1] In seeking to punish Plaintiff for nothing more than speech he dislikes, Governor DeSantis has proven himself the

---

[1]   Notably, federal courts have already enjoined the DeSantis administration at least twice in the past year and a half for enacting viewpoint discriminatory policies aimed at controlling speech. *See, e.g.*, *Austin v. Univ. of Fla. Bd. of Trs.*, 580 F. Supp. 3d 1137 (N.D. Fla. 2022) (enjoining a policy forbidding professors at a state university from serving as expert witnesses against the state); *Pernell v. Fla. Bd. of Governors of the State Univ. Sys.*, 2022 U.S. Dist. LEXIS 208374 (N.D. Fla. Nov. 17, 2022) (enjoining the "Stop W.O.K.E. Act", a law that limited teachers ability to discuss race in the classroom, and noting that Governor DeSantis had sought to "take[] over the 'marketplace of ideas' to suppress disfavored viewpoints and limit where professors may shine their light on . . . specific ideas . . . But the First Amendment does not permit the State of Florida to muzzle its university professors, impose its own orthodoxy of viewpoints, and cast us all into the dark.").

antithesis of the "courageous, self-reliant men" who founded this country.

Governor DeSantis might have properly employed the "power of free and fearless

reasoning," to explain to the people of Florida why his administration disagrees

with Disney's public statements.  Instead, he improperly employed the executive

powers of his office, together with a compliant legislature, to *punish* Plaintiff for

taking a public position contrary to his own.

There is no serious question that Governor DeSantis's actions are retributive.

Even setting aside all the times he and his allies have explicitly and publicly said

so, *see* Second Am. Compl., ECF No. 87, ¶¶ 9, 11, 43-44, 47-51, 56, 58-60, 65-66,

71-73, 87-90, 94-95, 100-104, 111-112, the conclusion is obvious from the simple

fact that Governor DeSantis has already *won* the policy battle: the bill that Plaintiff

publicly opposed – which bans public school teachers from holding classroom

instruction about sexual orientation or gender identity – is the law of land in

Florida.  *See* Jaclyn Diaz, *Florida's governor signs controversial law opponents*

*dubbed 'Don't Say Gay'*, NPR (Mar. 28, 2022).[2]  Thus, none of the actions he has

taken that are at issue in this litigation can be explained away as natural parts of the

political process.  Rather, those actions are quite clearly designed to do two things:

(1) inflict economic harm on Plaintiff as retribution for its opposition to his

---

[2]    Available at: https://www.npr.org/2022/03/28/1089221657/dont-say-gay-florida-desantis

policies; and (2) discourage Plaintiff, and others, from opposing his policies in the future. *See, e.g.*, Am. Compl. ¶ 112 (quoting Governor DeSantis in a televised interview noting that since he began taking action against Plaintiff, "[t]hey have not made a peep.  That, ultimately, is the most important [thing].").

That course of action – seeking to silence and punish political opponents for nothing more than their dissent – goes well beyond the proper limits of political debate or the appropriate use of the power and position of the governor's office.  In *Amici*'s view, the Governor has thrown down nothing short of a direct challenge to the founding principles of this country.  The fact that Governor DeSantis has taken these anti-democratic actions so blatantly and brazenly – that he is *proud* of them – only makes them all the more damaging to the political and social fabric of Florida and the country as a whole.

The Supreme Court has observed that the Constitution forbids "legislative punishment, of any form or severity, of specifically designated persons or groups." *United States v. Brown*, 381 U.S. 437, 447 (1965).  That is because the Founders were well aware of the danger to the constitutional framework they created, posed by the misuse of executive and legislative power to target individuals.   As Alexander Hamilton noted, "[n]othing is more common than for a free people, in times of heat and violence, to gratify momentary passions, by letting into the government principles and precedents which afterwards prove fatal to themselves."

*Brown*, 381 U.S. at 444 (1965) (quoting III JOHN C. HAMILTON, HISTORY OF THE REPUBLIC OF THE UNITED STATES, p. 34 (1859)).  Writing in the Federalist Papers, James Madison likewise observed that retaliatory laws "are contrary to the first principles of the social compact, and to every principle of sound legislation." THE FEDERALIST NO. 44 (James Madison).  The Founders thus incorporated safeguards against these evils throughout the Constitution, including (among other places) in the First Amendment.

*Amici*, when they were in office, knew and understood that these foundational principles imposed limits on their executive authority, and that chief among those limits was that they could not use the power of their position to single out political opponents for government-sanctioned punishment.  Governor DeSantis' conduct here at issue runs afoul of that basic precept of life in a democratic society.  He has used the power of his office to violate this core principle enshrined in the First Amendment and has celebrated that.  Regardless of what they think of the Governor's policies, every American should be concerned by his willingness to not only disregard, but to flaunt his contempt for these foundational principles.  *Amici*, who know intimately the powers and responsibilities of public office, certainly are concerned.

## II. Plaintiff's Lawsuit is the Natural Consequence of a Public Official's Disregard of the Public Trust.

*Amici*, with their decades of combined public service, believe deeply that "a public office is a public trust." As does the State of Florida – those words are enshrined directly in its Constitution. Art. II, § 8 Fla. Const. Moreover, this maxim is "[a] living tenet of our society and not mere rhetoric." *Nuesse v. Camp*, 385 F.2d 694, 706 (D.C. Cir. 1967). It has long guided our nation's philosophy: "Any person in Government service should . . . [p]ut loyalty to the highest moral principles and to country above loyalty to persons, party, or Government department [and] uphold these principles, ever conscious that public office is a public trust." H.R. Con. Res. 175, 85th Cong. (July 11, 1958). The seven words capture the essence of American public service:

> The ideal concept of public office, expressed by the words, 'a public office is a public trust,' signifies that the officer has been entrusted with public power by the people; that the officer holds this power in trust to be used only for their benefit and never for the benefit of himself or of a few; and that the officer must never conduct his own affairs so as to infringe on the public interest.

S. Res. 266, 90th Cong. (1968). Meeting this standard requires self-control. The temptation to abuse public power for retaliation, retribution, or self-service can be tantalizing: "[o]ne who has power, owing to the frailty of human nature will be too readily seized with the inclination to use the opportunity for securing his own

interest at the expense of that for which he is intrusted [sic]." *Williams v. State ex rel. Morrison,* 315 P.2d 981, 984 (Ariz. 1957).

Dialogue, political self-promotion, and crafting public policy messaging by elected officials is expected and natural. In fact, democracy is well-served by it. *See Wood v. Georgia,* 370 U.S. 375, 395 (1962) ("The role that elected officials play in our society makes it all the more imperative that they be allowed freely to express themselves on matters of current public importance."). But when a public official's words and actions devolve into actual, retaliatory harm targeting an ideological opponent, democracy is not well-served. At that point, the public trust is broken — and judicial intervention is appropriate.

Here, Plaintiffs' Second Amended Complaint describes how Governor DeSantis has violated the public trust and why they need this Court's help. When criticized by Plaintiff, rather than meeting the words with counterspeech, the Governor exercised his authority to call the Legislature into Special Session. Second Am. Compl. ¶ 52. He closely collaborated with legislative leadership to develop means specifically to harm Plaintiff. *Id.* ¶ 50. And he has done so for the purpose of advancing his own personal political interests. *See, e.g., id.* ¶¶ 44, 47, 56, 60, 66, 72-73, 88-90.

Plaintiff's lawsuit does not present a mere policy debate. Far from it. It demands relief from real, tangible harm caused by DeSantis' brazen breach of the

public trust — and the Constitutional torts that naturally flow from his misconduct. *Amici* urge this Court to take note of the serious consequences of DeSantis' behavior.

### A. Governor DeSantis's disregard for his duties to the public undermines democratic society.

The Constitution protects speech "[r]egardless of whether the government considers [such] speech sensible and well intentioned or deeply misguided." *303 Creative LLC v. Elenis,* 600 U.S. __ (2023) (citing *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U. S. 557, 574 (1995)). Other modern nations around the world generally recognize the right to hold opinions without state interference or retaliation. U.N. General Assembly Res. 2200A (XXI), Int'l Covenant on Civil and Political Rights (Dec. 16, 1966). Indeed, "[f]reedom of opinion and freedom of expression . . . are essential for any society. They constitute the foundation stone for every free and democratic society." Human Rights Comm., General Comment No. 34, at 2, U.N. Doc. CCPR/C/GC/34 (2011). Retaliation and censorship are not badges of a healthy democracy.

Rather, retaliation and censorship are symptoms of autocracy. When expression is muzzled through punitive and censorial government actions, authoritarianism thrives. *See* FREEDOM HOUSE, FREEDOM IN THE WORLD 2023 at 14 (2023) ("The denial of press freedom and freedom of personal expression bolsters authoritarian control by cutting citizens off from accurate information and, just as

importantly, from one another.").[3]  Examples of government retaliation against

business for expressing dissent are not hard to find, and they invariably arise in the

world's most repressive regimes.  For example, in 2003, Mikhail Khodorovsky,

then the richest man in Russia, was arrested, charged, and convicted of fraud, while

his company was subject to severe economic retaliation, because he openly

criticized the Putin regime.  Seth Mydans and Erin E. Arvedlund, *Police In Russia*

*Seize Oil Tycoon*, N.Y. TIMES (OCT. 26, 2003).[4] Similarly, China investigated and

fined world famous entrepreneur Jack Ma, founder of the Ant Group, nearly $1

billion after he publicly criticized Chinese regulators in 2020.  Claire Fu, *China*

*Fines Ant Group $985 Million, in Sign Crackdown Is Over,* N.Y. TIMES (July 7,

2023).[5]

   In following these autocratic examples, Governor DeSantis's actions cause

harm that is far broader than that suffered by Plaintiff.  In choosing to punish

Plaintiff for criticizing contentious legislation in the public square, Governor

DeSantis has made clear that he will use the power of his office to exact retribution

---

[3] Available at: https://freedomhouse.org/sites/default/files/2023-03/FIW_World_2023_DigtalPDF.pdf.

[4] Available at: https://www.nytimes.com/2003/10/26/world/police-in-russia-seize-oil-tycoon.html

[5] Available at: https://www.nytimes.com/2023/07/07/business/alibaba-ant-group-fine.html.

against *any* corporation that dares to "[u]se their economic power to advance" an agenda contrary to his own, or to "become political and not merely economic actors." Second Am. Compl. ¶ 122.  The Court should not validate this chilling authoritarian impulse if the promise of the First Amendment is to have any meaning in the State of Florida.

### B. Governor DeSantis's disregard for his duties to the public undermines the free market.

Governor DeSantis' targeted pursuit of legislation against Plaintiff not only chills the free exchange of ideas and public debate; it also erodes the free-market economic principles that underpin the American economy.  In *Amici*'s view, safeguarding those principles, and fostering an environment where private industry can thrive, is one of the highest purposes of the executive.  Here, Governor DeSantis has ignored this responsibility in favor of a form of political retaliation that will continue to impair the economic health of his state.

As a legal matter, to the extent Governor DeSantis believes that there is something wrong with corporations "using their economic might to advance a political agenda," he is incorrect.  Second Am. Compl. ¶ 122.  The Supreme Court has concluded that businesses and corporations have as much right to participate in the political process as do natural persons.  *Citizens United v. Federal Election*

*Com'n,* 558 U.S. 310, 339 (2010).[6]  Of course, if the people disagree with a

corporation's political actions, they are free to conversely use *their* economic

power to make their voices heard through boycotts.  *See, e.g.*, *NAACP v. Claiborne*

*Hardware Co*., 458 U.S. 886, 915 (1982).  Indeed, "[f]rom the colonists' protest of

the Stamp and Townsend Acts to the Montgomery bus boycott and the National

Organization for Women's campaign to encourage ratification of the Equal Rights

Amendment, boycotts have played a central role in our Nation's political

discourse." *FTC v. Superior Court Trial Lawyers Assn.,* 493 U.S. 411, 447 (1990)

(Brennan, J. concurring in part).  And of course, the executive is allowed to use his

voice to speak out against corporate speech he disagrees with.  *Wood*, 370 U.S. at

395.  But he may not, consistent with the Constitution, employ the apparatus of

government – including the legislative process – to favor one side or another in

such debates.  *See, e.g.*, *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515

U.S. 819, 828 ("In the realm of private speech or expression, government

regulation may not favor one speaker over another.").

    Indeed, the very law that enabled Plaintiff to enter into the contracts with

local government – contracts that Governor DeSantis is now attempting to rescind

– noted the important function of government in creating a stable climate for

---

[6]    Not all *Amici* agree with the Court's decision in *Citizens United*.  But all
recognize that it is the law of the land.

business development.  That law, the Florida Local Government Development Agreement Act, expressly recognizes that "lack of certainty" in a business's regulatory environment "can result in a waste of . . . resources, discourage sound capital improvement planning and financing, escalate the cost of [economic development], and discourage commitment to comprehensive planning."  Fla. Stat. § 163.3220(2) (2022).

By contrast, Governor DeSantis, by seeking to legislate economic harm on Plaintiff in retaliation for its political opposition, has signaled to the marketplace that it cannot expect the certainty and predictability it requires to safely and profitably do business in the State of Florida.  Any business considering expansion or further investment in the state must now take into account not just the business risks any going concern faces, but also the risk of economic retaliation from the Governor if it publicly opposes his political positions.  Indeed, such effects have already begun.  *See, e.g.,* Brooks Barnes, *Disney Pulls Plug on $1 Billion Development in Florida*, N.Y. TIMES, (May 18, 2023).[7]  As a result, even prominent members the Governor's own party have roundly criticized his actions

---

[7]    Available at: https://www.nytimes.com/2023/05/18/business/disney-ron-desantis-florida.html

as "anti-business."  Katherine Tangalakis-Lippert, *GOP Critics pile on DeSantis over Disney feud,* BUSINESS INSIDER (Apr. 18, 2023).[8]

Economic stagnation is the natural end point of Governor DeSantis's disregard of the basic requirement that he conduct the Office of the Governor in accordance with the Constitution, as well as his normative obligation to govern for *all* the citizens of his state, not just those that agree with him.  The First Amendment violations documented in Plaintiff's Second Amended Complaint are the consequence of the Governor's disregard for the public's sacred trust.  This transcends disagreement about the role of special economic districts or of LGBTQIA+ curricula in education policy.  *Amici* respectfully urge this Court to closely examine how the basic democratic and economic principles threatened by Governor DeSantis's actions will continue to erode unless his retaliation is restrained.

## III.   It is the Proper Role of the Courts to Curb This Abuse of Executive Power

While this case has received substantial attention because of the Governor's bullying of Plaintiff, the fact pattern is unfortunately all too common.  *See, e.g.*, Laura Rodriguez et al., *Jury Finds Miami Commissioner Joe Carollo Liable in Ball*

---

[8]   Available at: https://www.businessinsider.com/gop-critics-turn-on-ron-desantis-over-disney-business-feud-2023-4.

*& Chain Lawsuit, Awards Plaintiffs $63M*, NBC 6 (June 2, 2023) (detailing jury verdict against Miami Commissioner who "weaponized the city's police and code enforcement departments to shut down several of [Plaintiff's] businesses . . . because they supported his political opponent.").[9]  It is important to recognize that such scenarios are only "political" in the most attenuated sense.  In other words, they do not really have anything to do with policy – they are all about *power*.  As noted above, the governmental and legislative actions Plaintiff challenges in this case were not taken in furtherance of policy aims – Governor DeSantis had already achieved those aims by passing the legislation that Plaintiff originally opposed.  As Governor DeSantis and his allies' repeated public statements make obvious, they were taken to punish Plaintiff for engaging in the political process – and to discourage Plaintiff from doing so in the future.

Since *Marbury v. Madison*, the Supreme Court has made it clear that it is the role of the courts to police the excesses of executive and legislative power. 5 U.S. 137 (1803).  Courts provide the safeguard against the impulse to tyranny that the Founders prophesied would infect executive and legislative bodies.  *See, e.g.*, THE FEDERALIST NO. 78 (Alexander Hamilton) ("Limitations [on legislative authority] can be preserved in practice no other way than through the medium of courts of

---

[9]   Available at: https://www.nbcmiami.com/news/local/miami-commissioner-joe-carollo-found-liable-in-ball-chain-lawsuit/3045344/

justice, whose duty it must be to declare all acts contrary to the manifest tenor of the Constitution void."). Plaintiff in this case is emphatically not asking the Court to meddle in the political process. Instead, this is quite simply a case where a litigant seeks redress for an alleged violation of its constitutional rights by the government. As this Court is well aware, federal and state courts around the country adjudicate hundreds of such disputes every day.

Nor does it matter that some of the specific actions challenged here were nominally legislative. While, as a general matter, courts are hesitant to inquire into the legislative process, *see United States v. O'Brien*, 391 U.S. 367, 383-84 (1968), courts will not flinch in protecting citizens from laws that are demonstrably punitive. *See id* at 383 n. 30 (nothing bars courts from seeking "to determine whether [a] statute[] under review w[as] punitive in nature."); *see also Brown*, 381 U.S. 437, 462 (1965) (striking down federal law that barred communist party members from serving as officers of labor unions); *Foretich v. United States*, 351 F.3d 1198, 1226 (D.C. Cir. 2003) (striking down a D.C. law that targeted one party to a custody dispute), *Consol. Edison Co. of N.Y., Inc. v. Pataki*, 292 F.3d 338, 355 (2d Cir. 2002) (striking down New York state law that imposed retaliatory economic burdens on utility company). Indeed, the Constitution itself recognizes that legislation can impermissibly target political opponents. *See* U.S. Const. Art. I

Sec. 10 ("No state shall . . . pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts.").

Where, as here, the Second Amended Complaint alleges exactly that scenario, this Court should have no hesitation to fulfill its constitutional role of policing the limits of executive and legislative authority.

## **CONCLUSION**

For the foregoing reasons, *amici* urge this Court to deny the motion to dismiss, and allow this case to proceed to discovery.

Dated: October 31, 2023                                  Respectfully Submitted,

/s/ *Charles D. Tobin*

Charles D. Tobin
Florida Bar No. 816345
Joseph Slaughter
(admitted *pro hac vice*)
Ballard Spahr LLP
1909 K Street N.W., 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
tobinc@ballardspahr.com
slaughterj@ballardspahr.com

Norman L. Eisen
(admitted *pro hac vice*)
Norman Eisen PLLC
1015 15th St. NW, Suite 1000
Washington, DC 20005
Tel: (202) 709-4945
nleisen@normaneisenllc.com

Matthew T. Newton
Florida Bar No. 111679
Older Lundy Koch & Martino LLP
1000 West Cass Street
Tampa, Florida 33606
Telephone: (813) 254-8998
mnewton@olderlundylaw.com

*Attorneys for Amici Curiae*

## APPENDIX A – LIST OF *AMICI*

### Former Governors

- **Governor Arne Carlson** - Former Governor of Minnesota (R)
- **Governor Christine Todd Whitman** - Former Governor of New Jersey (R)

### Other Former Elected Officials

- **Representative Tom Coleman** - Former U.S. Representative (R-MO)
- **Lieutenant Governor Kerry Murphy Healey** - Former Lieutenant Governor of Massachusetts (R)
- **Representative Claudine Schneider** - Former U.S. Representative (R-RI)
- **Representative Christopher Shays** - Former U.S. Representative (R-CT)

### Former Senior Government Attorneys and Officials

- **Karen Agnifilo** - Former Chief Assistant District Attorney for the Manhattan District Attorney's Office
- **Hon. Donald Ayer** – Former Deputy Attorney General under President George H.W. Bush
- **Hon. John Farmer** - Former Attorney General of New Jersey
- **Hon. Stuart Gerson** - Former Assistant Attorney General and Acting U.S. Attorney General
- **Hon. William Kristol** – Former Chief of Staff to Vice President Dan Quayle
- **Renato Mariotti** - Former Assistant U.S. Attorney
- **Professor Richard Painter** – Former Chief Ethics Lawyer to President George W. Bush
- **Hon. Trevor Potter** - Former Commissioner and Chair, Federal Election Commission
- **Hon. Alan Charles Raul** - Former General Counsel for Office of Management and Budget and U.S. Department of Agriculture
- **Hon. Sarah Saldaña** - Former Director of U.S. Immigration and Customs Enforcement under President Barack Obama
- **Hon. Olivia Troye** - Former Homeland Security and Counterterrorism Advisor to Vice President Mike Pence
- **Hon. Stanley Twardy** - Former U.S. Attorney, District of Connecticut
- **Shanlon Wu** - Former Counsel to Attorney General Janet Reno

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies this motion complies with Local Rule 7.1(F).

The motion contains 4004 words, excluding the caption, signature blocks, and

certificates.


/s/ *Charles D. Tobin*
Charles D. Tobin

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Rule 7.1, the undersigned certifies that on October 23, 2023, he electronically filed this motion with the Clerk of the United States District Court for the Northern District of Florida through its CM/ECF system, which will generate an electronic copy served on all counsel of record.


/s/ *Charles D. Tobin*
Charles D. Tobin