IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

|  |  |
|---|---|
| WALT DISNEY PARKS AND RESORTS U.S., INC.,<br><br>    *Plaintiff*,<br><br>v.<br><br>RONALD D. DESANTIS, in his official capacity as Governor of Florida, et al.,<br><br>    *Defendants*. | Case No. 4:23-cv-163-AW-MJF |

**CFTOD DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Jason Gonzalez (No. 146854)
LAWSON HUCK GONZALEZ PLLC
215 S. Monroe Street, Suite 320
Tallahassee, FL 32301
Tel: (850) 825-4334

Charles J. Cooper (No. 248070DC)
David H. Thompson (No. 450503DC)
Peter A. Patterson (*Pro Hac Vice*)
Megan M. Wold (*Pro Hac Vice*)
John D. Ramer (*Pro Hac Vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601

November 9, 2023

*Counsel for Defendants Martin Garcia, Charbel Barakat, Brian Aungst Jr., Ron Peri, Bridget Ziegler, and Glenton Gilzean, Jr.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

I.    *In re Hubbard* Forecloses Disney's Claim. ......................................................2

II.    The Speech Clause Does Not Limit A State's Ability To Control State Entities That Exercise Sovereign Power...........................................................9

CONCLUSION .......................................................................................................14

## TABLE OF AUTHORITIES

**Cases**                                                                                               **Page**

*Bethune-Hill v. Virginia State Board of Elections*,
    580 U.S. 178 (2017)..................................................................................3, 10

*Bond v. Floyd*,
    385 U.S. 116 (1966)........................................................................................13

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993).....................................................................................3, 8

*Fraternal Order of Police Hobart Lodge No. 121, Inc. v. City of Hobart*,
    864 F.2d 551 (7th Cir. 1988)..............................................................................5

*Georgia Association of Educators v. Gwinnett County School District*,
    856 F.2d 142 (11th Cir. 1988).............................................................................4

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991)...............................................................................2, 9, 13

*Houston Comm. Coll. Sys. v. Wilson*,
    595 U.S. 468 (2022)........................................................................................13

*In re Hubbard*,
    803 F.3d 1298 (11th Cir. 2015)....................................................2, 4, 5, 6, 7

*Murphy v. NCAA*,
    138 S. Ct. 1461, 1487 (2018)............................................................................8

*NetChoice, LLC v. Fla. Att'y Gen.*,
    34 F.4th 1196 (11th Cir. 2022)..........................................................1, 3, 7, 8

*Pernell v. Fla. Bd. of Govs. of State Univ.*,
    No. 23-10616, 2023 WL 7125049 (11th Cir. Oct. 30, 2023) .........................3

*Rucho v. Common Cause*,
    139 S. Ct. 2484 (2019)..............................................................................10, 11

*United States v. O'Brien*,
    391 U.S. 367 (1968).........................................................................................8

**Constitutions**

U.S. CONST. amend. I...............................................................................................8

## INTRODUCTION

The Free Speech clause of the First Amendment does not exempt Disney from our system of representative democracy. Disney asks this Court to set aside actions taken by the elected officials of Florida who sought to restore the State's sovereignty over nearly 25,000 acres of land. Disney's argument is as meritless as it is audacious. It contends that its *free speech* rights were somehow violated when Florida's elected lawmakers restructured the governmental entity that oversees what was formally known as the Reedy Creek Improvement District. In support of its argument, Disney points to no law, no regulation, and no legal rule of any kind that even mentions expressive activity. Instead, Disney's speech claim turns entirely and exclusively on the purported retaliatory motivations of the lawmakers who enacted otherwise facially mundane statutes.

Disney's argument—in the words of the Eleventh Circuit—has been rejected "many times." *NetChoice, LLC v. Fla. Att'y Gen.*, 34 F.4th 1196, 1224 (11th Cir. 2022) (quotations omitted). The Eleventh Circuit has held repeatedly and emphatically that, when a statute is constitutional on its face, a party may not bring a First Amendment retaliation claim based exclusively on the alleged subjective motivations of lawmakers who voted for it. This principle goes back decades. And given our Nation's commitment to government by legislative *text*, rather than intentions, this principle makes judicial and constitutional sense.

1

Disney tries to shoehorn its claim into the narrow exception to that principle for statutes that, on their face, single out a particular individual or entity. But as Disney itself concedes, the statutes it challenges applied to numerous other entities and individuals: SB 4C applied to several other special districts, and HB 9B affected *all* property owners in the District, not just Disney.

Disney offers no precedent to justify, as a matter of free speech, federal superintendence over the structure and composition of a State's government entities. Nor could it. A State's authority to determine "the structure of its government" and "the character of those who exercise government authority" is a power "reserved" and "guaranteed" to the States by the Constitution. *Gregory v. Ashcroft*, 501 U.S. 452, 460-63 (1991). The Speech Clause does not constrain that power. The Court should therefore dismiss Disney's complaint.

**I.      *In re Hubbard* Forecloses Disney's Claim.**

Disney's claim fails under *In re Hubbard*, 803 F.3d 1298 (11th Cir. 2015). There, the Eleventh Circuit held that "the First Amendment does not support" a "challenge to an otherwise constitutional statute based on the subjective motivations of the lawmakers who passed it." *Id.* at 1312 (citing *United States v. O'Brien*, 391 U.S. 367 (1968)). Here, Disney brings the precise claim *Hubbard* prohibits. Disney has made "clear" that its "claim is not that the U.S. Constitution prohibits a state from establishing special districts with governor-appointed boards." Pl.'s Opp'n to

2

State Defs.' Mot. to Dismiss at 8, Doc. 98. Instead, Disney's claim turns *exclusively* on the purported subjective motivations of the lawmakers who enacted SB 4C and HB 9B.[1] That claim is foreclosed by *Hubbard*.

Disney responds by citing cases in other contexts that suggest courts may consider lawmakers' motivations when reviewing the constitutionality of a legislative enactment. Pl.'s Opp'n to CFTOD Defs.' Mot. to Dismiss at 18-19, Doc. 97 ("Opp.") (citing *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993); *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994); and *Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011)). But the Eleventh Circuit recently canvassed these very cases and held that they do not "overcome the clear statements in *Hubbard* and *O'Brien*" with respect to the Speech Clause. *NetChoice*, 34 F.4th at 1224-25. Disney also cites *Bethune-Hill v. Virginia State Board of Elections*, 580 U.S. 178 (2017), but that case involved a claim of racial gerrymandering, where subjective motivations may be considered, rather than the type of First Amendment retaliation claim that Disney brings here, which is governed directly by *Hubbard*—a decision the Eleventh Circuit just recently reaffirmed and applied. *See Pernell v. Fla. Bd. of Govs. of State Univ.*, No. 23-10616, 2023 WL 7125049 (11th Cir. Oct. 30, 2023).

---

[1] Disney says that "the fact that the Governor seized control over RCID to punish Disney for its disfavored speech is not genuinely disputed here." Opp. 27. But Defendants' motion does not "dispute" the factual allegations in Disney's complaint because this is a motion to dismiss under Rule 12(b)(6).

Disney cites a footnote in *Hubbard* for the proposition that there are "limitations" to the principle established by *Hubbard* and *O'Brien*. Opp. 21. But that footnote makes clear those limitations are only "where a law is challenged as a bill of attainder, as an ex post facto law, or on another ground that requires the court to determine whether the challenged statute is penal in nature." *Hubbard*, 803 F.3d at 1312 n.14 (quotations omitted). And in the very next sentence (omitted by Disney), the *Hubbard* Court made clear that its "discussion of the *O'Brien* rule" applies "to the context before us: a free-speech retaliation challenge to an otherwise constitutional statute." *Id.*

With no way around *Hubbard*, Disney tries to go through it. Specifically, Disney tries to shoehorn the statutes at issue here into *Hubbard*'s narrow exception for statutes that, on their face, single out specific individuals. *See* Opp. 21-24. That exception flows from the Eleventh Circuit's prior decision in *Georgia Association of Educators v. Gwinnett County School District*, 856 F.2d 142 (11th Cir. 1988). *See* Defs.' Mem. in Supp. Mot. to Dismiss Second Am. Compl. at 9-10, Doc. 93-1 ("MTD"). As the Eleventh Circuit has held, however, "[t]he facts of that case limit the holding of the decision to acts of governmental retaliation that *explicitly single out a specific group*." *Hubbard*, 803 F.3d at 1314 (emphasis added). "The crucial fact in *Gwinnett County*," the Eleventh Circuit explained, "is that the school board did not adopt a generally applicable policy—it specifically singled out 'GAE-GCAE

4

members'" by name. *Id.* (citation omitted). Despite rhetoric to the contrary, Disney itself is forced to admit that the statutes at issue here do not "explicitly single out" Disney. *Id.* Although Disney says the "assertion that SB 4C and HB 9B did not single out Disney borders on frivolous," Disney simultaneously concedes that SB 4C applied to several other special districts and that HB 9B affected *all* property owners in the District, not just Disney. Opp. 23-24 (citation omitted). As Disney must therefore acknowledge, these statutes do not "single out" Disney in either name or substance.

Disney's out-of-circuit authority does more to harm Disney's argument than help it. In particular, Disney holds up Judge Posner's opinion for the Seventh Circuit in *Fraternal Order of Police Hobart Lodge No. 121, Inc. v. City of Hobart*, 864 F.2d 551 (7th Cir. 1988). But there, the panel acknowledged the same distinction that *Hubbard* acknowledges and held that an ordinance regulating workweek hours for public employees did not "single out" the police department because "[n]o outside observer reading" the "ordinance would suppose it directed against the police or any other definable group" and "[p]olicemen were not the only employees of the City of Hobart who were" affected by the ordinance since "firemen were in the same boat." *Hobart*, 864 F.2d at 553-54, 556. Moreover, "the ordinance did not hurt only the police who had opposed the incumbent mayor and councilmen; it hurt all the police." *Id.* at 556. In sum, the court concluded the ordinance was "not pinpointed against a

5

named individual or group; it is general in its wording and impact." As explained, the same is true of SB 4C and HB 9B. Thus, Disney's claim fails even under the leading out-of-circuit authority that Disney puts forth.

Disney next suggests that *Hubbard* "might" control if the statutes applied to "*all* special land-use districts in Florida" or to "*all* landowner-elected district boards with Governor-appointed bodies." Opp. 23 (emphasis added). But Disney cites nothing to support this gerrymandered recharacterization of the principle recognized by *Hubbard* and *O'Brien*. And *Hubbard* itself forecloses it because the Court made clear that *Hubbard* controls a First Amendment retaliation claim like Disney's unless the statute "explicitly" and "specifically singled out" a particular individual or organization. *Hubbard*, 803 F.3d at 1314. And neither SB 4C nor HB 9B single out Disney.

Disney also misunderstands Defendants' point that the statutes at issue here make this case an even easier call for the application of the rule affirmed in *Hubbard*, *O'Brien*, and *NetChoice* than the application of the rule in those cases. *See* Opp. 25. As Defendants previously explained (MTD 8-9), the statutes challenged in those cases at least arguably applied to expressive activity *on their face*, while the statutes here have literally nothing to do with expression. Disney counters that retaliatory acts are often carried out through means that do not regulate speech. Opp. 25. But the point is not what a run-of-the-mill retaliation claim involves; the point is that

6

when a First Amendment retaliation claim attacks *a duly enacted statute*, *Hubbard*, *NetChoice*, and *O'Brien* foreclose the claim when it is premised solely on the subjective motivations of lawmakers. And because the statutes here do not event hint at expressive activity—they are mundane reorganizations of subsidiary government entities—this case markedly differs from cases like *Hubbard*, *NetChoice*, and *O'Brien* and thus calls even more clearly for the application of the principle applied in those cases.

Finally, with no answer to *Hubbard* and *O'Brien*, Disney attempts to transform those decisions. Disney contends that they declined to look at legislative history because that history "was ambiguous, unknown, or both." Opp. 26. But *Hubbard* did not create a mere evidentiary rule regarding the degree of "ambiguity" in legislators' public statements. Instead, it flatly foreclosed First Amendment claims like Disney's premised on "the alleged retaliatory motive that [Florida's] lawmakers had when passing" the challenged statutes. *Hubbard*, 803 F.3d at 1313. And in *NetChoice* (which Disney ignores for this argument) the Court did not remotely suggest there was "ambiguity" surrounding lawmakers' motivations. Indeed, the Court highlighted particular statements that the challengers had suggested were evidence that lawmakers enacted the law with a subjective motivation to target specific entities. *See NetChoice*, 34 F.4th at 1205, 1224. But after recounting these statements, the court nevertheless reiterated that the Eleventh Circuit has "held—

7

many times—that when a statute is facially constitutional, a plaintiff cannot bring a free-speech challenge by claiming that the lawmakers who passed it acted with a constitutionally impermissible purpose." *Id.* at 1224 (cleaned up). That holding does not turn on any perceived "ambiguity" in lawmakers' public statements.

Moreover, *Hubbard* and *O'Brien* foreclosed that type of inquiry for good reason. "Because we have a Government of laws, not of men, we are governed by legislated text, not legislators' intentions." *Murphy v. NCAA*, 138 S. Ct. 1461, 1487 (2018) (Thomas, J., concurring) (cleaned up). Moreover, the "First Amendment does not refer to the purposes for which legislators enact laws, but to the effects of the laws enacted." *Lukumi*, 508 U.S. at 558 (Scalia, J., concurring). The Speech Clause prohibits laws "abridging the freedom of speech." U.S. CONST. amend. I. The text of the Speech Clause thus does not put courts "in the business of invalidating laws by reason of the evil motives of their authors." *Lukumi*, 508 U.S. at 558 (Scalia, J., concurring). Therefore, like the Supreme Court in *O'Brien*, the Court should "decline to void essentially on the ground that it is unwise legislation which [the State of Florida] had the undoubted power to enact and which could be reenacted in its exact form if the same or another legislator made a 'wiser' speech about it." *O'Brien*, 391 U.S. at 384. Disney's claim fails under *Hubbard* and should be dismissed.

## II. The Speech Clause Does Not Limit A State's Ability To Control State Entities That Exercise Sovereign Power.

Under our constitutional system, States have the power to determine who will exercise "important elective and nonelective positions whose operations go to the heart of representative government." *Gregory*, 501 U.S. at 463 (quotations omitted). "It is a power reserved to the States under the Tenth Amendment and guaranteed them by that provision of the Constitution under which the United States 'guarantees to every State in this Union a Republican Form of Government.'" *Id.* (quoting U.S. CONST. art. IV, § 4) (brackets omitted). "Through the structure of its government, and the character of those who exercise government authority, a State defines itself as a sovereign," *id.* at 460, and the Speech Clause does not limit "State's constitutional responsibility for the establishment and operation of its own government, *id.* at 462 (quotations omitted). Disney's attempt to leverage the Speech Clause to alter a "governing body's composition and structure," Second Am. Compl. ¶ 118, Doc. 87 ("SAC"), thus fails.

Disney's primary response is to caricature Defendants' argument. Defendants neither suggest that "state laws relating to the 'structure' of government are categorically immune from First Amendment protections," nor do they contend that States may structure their own government "free from federal constitutional

9

restraints." Opp. 27-28 (emphasis omitted).[2] Similarly, Defendants are not arguing that the State may restructure an agency to establish a State religion. *See id.* at 28 (citing *Bd. of Educ. of Kiryas Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 709-10 (1994)). Nor are Defendants arguing that the State may restructure an agency for the purpose of invidiously discriminating on the basis of race. *See id.* at 28-29 (citing *Bethune-Hill*, 580 U.S. at 181-83). Instead, as Defendants explained, "[n]o precedent supports the proposition that *the Speech Clause* requires such federal judicial oversight of State elected officials making policy decisions about how to structure their own government bodies." MTD 12-13 (emphasis added).

Indeed, Disney's invocation of gerrymandering cases only undercuts its argument. While a claim for racial gerrymandering is cognizable under the Equal Protection Clause, *Bethune Hill*, 580 U.S. at 187, a claim for *partisan* gerrymandering under *the Speech Clause* is not, *Rucho v. Common Cause*, 139 S. Ct. 2484, 2502, 2504-05 (2019). Disney asserts that this argument "misunderstand[s] *Rucho*" because *Rucho* was grounded in the political-question doctrine. *See* Opp. 29 n.3. But Disney overlooks *why* the Court determined that partisan gerrymandering was a political question: Because *some* partisan considerations were permissible in

---

[2] Disney's use of scare quotes around the word "structure" is puzzling since that is precisely how Disney has characterized its own claim. *See* SAC ¶ 118 ("Disney has a significant interest in *its governing body's* composition and *structure*, which has been directly targeted by the enactment of legislation providing for its complete revision." (emphases added))

10

redistricting, there were no judicially manageable standards to determine "how much" partisanship "is too much." *Rucho*, 139 S. Ct. at 2501. Here, Disney does not appear to argue (and it is difficult to see how it could argue) that elected officials are categorically prohibited from taking *any* policy considerations into account when deciding how to structure their government. Therefore, on Disney's theory, courts would be faced with the same problem identified in *Rucho*—determining how many policy considerations are too many when structuring an entity and selecting the officials who will run it.

The same flaw infects Disney's attempt to dismiss the cases regarding policymaking officials as "irrelevant." Opp. 30. Disney says "nobody disputes that a state may remove unelected policymaking officials from high office or that elected leaders may employ senior officers committed to implementing their political agenda." *Id.* (quotations omitted). But if that is true, this case should be over because Disney's claim is, in effect, a derivative suit asserting that Florida's elected officials may not select the officials who oversee the District. Disney suggests there is a distinction between selecting individual officers and "determining the structure and composition of state entities." *Id.* But Disney never explains the distinction, and no distinction is readily apparent. For example, "the hiring and firing of senior government policymaking officers" in a state entity would seem akin to determining the "composition of state entities." *Id.* (quotations and emphasis omitted). Moreover,

Disney never explains why this illusory distinction would make any *constitutional* difference.

Disney is left to resort to a hypothetical that "a state could redraw a city's boundaries for the explicitly stated purposes of segregating voters by race or religion." *Id.* As Defendants explained, *supra* at 9-10, this case has nothing to do with discriminating on the basis of race or religion and thus does not implicate the Equal Protection Clause or the Religion Clauses. Disney continues its hypothetical with a state "redraw[ing] a city's boundaries" for political reasons, Opp. 30, but that is simply a description of partisan gerrymandering, which (as explained) is not subject to scrutiny under the Speech Clause. And this case is not a gerrymandering case in any event. Nor does it involve an attempt at "wholly excluding one political party from local governance." *Id.* To the contrary, HB 9B and SB 4C ensure the District is governed by officials *responsive to* the State's elected officials—no matter what party those officials are from.

Disney seemingly acknowledges the untenable consequences of its theory—which would lead to partisan lawsuits any time a State eliminates or restructures an agency for policy reasons. *See* Opp. 31. But Disney now says its theory applies only to government decisions restructuring an agency "that directly alter a citizen's rights." *Id.* (emphasis omitted). Disney does not explain what "rights" it is referring to, what it means for those unenumerated rights to be "alter[ed]," or what makes an

12

alteration "direct" as opposed to "attenuated." *Id.* (emphases omitted). It is possible Disney is referring to what Disney has called "its voting rights in the governing body." Opp. 5. But to assume that Disney's voting power under the prior regime was a "right" with *constitutional significance* is to assume Disney's own conclusion. There is no individual "right" to a particular structure for a government entity because the Constitution "reserved" the power of a State to determine "the structure of its government" and "the character of those who exercise government authority." *Gregory*, 501 U.S. at 460, 463.

Despite months of back-and-forth briefing, Disney has failed to identify a single case upholding a Free Speech challenge to a State government "body's composition and structure." SAC ¶ 118. Indeed, the only *Speech* case Disney cites in support if its argument is *Bond v. Floyd*, 385 U.S. 116, 137 (1966). Opp. 28-29. But that case involved a lone elected legislator, not a state regulatory entity staffed with unelected officials. Moreover, as the Supreme Court recently explained, because the plaintiff there was an elected legislator, the government action "in *Bond* implicated not only the speech of an elected official, it also implicated the franchise of his constituents." *Houston Comm. Coll. Sys. v. Wilson*, 595 U.S. 468, 481 (2022). Here, it is precisely the opposite. It is *Disney* that seeks to undermine the State's elected officials. It is *Disney* that aims to nullify the actions of the government selected by Florida's voters. And it is *Disney* that asks the Court to create a Disney-

13

only exception to our system of representative democracy. There is no precedent for this audacious demand, and the Court should reject it.

## CONCLUSION

For these reasons, Disney's complaint should be dismissed.

Dated: November 9, 2023

Jason Gonzalez (No. 146854)
LAWSON HUCK GONZALEZ PLLC
215 S. Monroe Street
Suite 320
Tallahassee, FL 32301
Tel: (850) 825-4334
jason@lawsonhuckgonzalez.com

Respectfully submitted,

/s/ Charles J. Cooper
Charles J. Cooper (No. 248070DC)
David H. Thompson (No. 450503DC)
Peter A. Patterson (*Pro Hac Vice*)
Megan M. Wold (*Pro Hac Vice*)
John D. Ramer (*Pro Hac Vice*)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
mwold@cooperkirk.com
jramer@cooperkirk.com

*Counsel for Defendants Martin Garcia, Charbel Barakat, Brian Aungst Jr., Ron Peri, Bridget Ziegler, and Glenton Gilzean, Jr.*

## CERTIFICATE OF WORD COUNT

Pursuant to Northern District of Florida Rule 7.1(F), the undersigned counsel hereby certifies that the foregoing Defendants' Memorandum of Law in Support of Motion to Dismiss, including body, headings, quotations, and footnotes, and excluding those portions exempt by Local Rule 7.1(F), contains 3,195 words as measured by Microsoft Office for Word 365.

Respectfully submitted,

/s/ Charles J. Cooper
Charles J. Cooper